



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MAR 1 6 2022

CLERK'S OFFICE
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

      Plaintiff,

v.

D-1 YLLI DIDANI,

      Defendant.

Criminal No. 21-cr-20264

HON. DENISE PAGE HOOD

Violations:
21 U.S.C. § 841(a)(1) and 846
46 U.S.C. §§ 70503(a),70506(b)
18 U.S.C. § 1956(h)

_____/

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE
21 U.S.C. § 841(a)(1) and 846
*Conspiracy to Distribute Controlled Substances*

D-1 YLLI DIDANI

1.  From a date unknown to the Grand Jury, but no later than July 30, 2015, through 2020, in the Eastern District of Michigan, and elsewhere, defendant YLLI DIDANI and others known and unknown to the Grand Jury did combine, confederate, and agree to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 846.

1

2.  With respect to defendant YLLI DIDANI, the controlled substance involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A)(ii)(II).

### Manner and Means

The manner and means used to accomplish the objectives of this conspiracy include, among others, the following:

3.  It was part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury would plan and did finance the distribution of controlled substances while in the Eastern District of Michigan and elsewhere.

4.  It was further part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury would and did use United States currency to finance their accumulation and distribution of controlled substances.

5.  It was further part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury would and did use telecommunication facilities, including cellular telephones, to facilitate the distribution of controlled substances.

6.  It was further part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury would and did utilize residences in the Eastern District of Michigan to plan their accumulation and distribution of controlled substance transactions.

7.  It was further part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury would and did utilize automobiles, aircraft, and other means of transportation for purposes of obtaining and distributing controlled substances.

8.  It was further part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury planned to have a container (torpedo) designed that was capable of holding large quantities of cocaine that would be used to transport cocaine across waterways.

Overt Acts

9.  In furtherance of the conspiracy, and to affect the objects and purposes thereof, defendant YLLI DIDANI and others known and unknown to the Grand Jury committed various overt acts, including but not limited to the following:

(1)  Between June 2016 and December 2017, in the Eastern District of Michigan, Conspirator One provided several checks to Conspirator Two for the purpose of purchasing bulk cocaine.

(2)   Between June 2016 and December 2017, Conspirator Two cashed these checks at banks, pawn shops, and gold exchange businesses located in the Eastern District of Michigan.

(3)   On or about June 9, 2016, in the Eastern District of Michigan, defendant YLLI DIDANI met with Conspirator Two for the purpose of receiving U.S. currency from Conspirator Two that was derived from the checks Conspirator One provided to Conspirator Two.

(4)   On or about June 9, 2016, in the Eastern District of Michigan, defendant YLLI DIDANI received over $100,000 in U.S. currency from Conspirator Two for the purpose of purchasing bulk cocaine.

(5)   On or about November 16, 2017, while Conspirator One was in the Eastern District of Michigan, defendant YLLI DIDANI and Conspirator One exchanged text messages about a seizure of 140 kilograms of cocaine that occurred in the Netherlands. Defendant YLLI DIDANI sent Conspirator One a text message stating, "We just fucked up." Conspirator One responded sending defendant YLLI DIDANI a text message stating, "We will fix brother." Defendant YLLI DIDANI responded sending Conspirator One a text message stating, "Not like this brother we need to clear heads." Defendant YLLI DIDANI also sent Conspirator One a text message that contained a link to an online news article. The news article, dated

4

November 16, 2017, described the seizure of 140 kilograms of cocaine in the Netherlands.

(6)   On or about December 18, 2017, defendant YLLI DIDANI, drove Conspirator One's Porsche SUV from the Eastern District of Michigan to Washington D.C., where he checked into a hotel, the JW Marriott.

(7)   On or about December 19, 2017, while at the JW Marriott in Washington D.C, defendant YLLI DIDANI took a photograph with a cellular telephone of another photograph that was displayed on the screen of another cellular telephone. The photograph depicted over 190 rectangular-shaped packages, consistent with kilogram-size cocaine packages.

(8)   On or about December 21, 2017, Conspirator Two flew from the Eastern District of Michigan to Washington D.C. in a private airplane owned by Conspirator One for the purpose of providing defendant YLLI DIDANI with approximately $450,000 in U.S. currency derived from the checks Conspirator One provided to Conspirator Two.

(9)   On or about December 21, 2017, defendant YLLI DIDANI met with Conspirator Two in Washington D.C. where defendant YLLI DIDANI received approximately $450,000 in U.S. currency from Conspirator Two for the purpose of purchasing bulk cocaine.

**COUNT TWO**
46 U.S.C. §§ 70503(a) and 70506(b)
*Conspiracy to Possess with Intent to Distribute and Distribute a Controlled
Substance on Board a Vessel Subject to the Jurisdiction of the United States*

D-1 YLLI DIDANI

1. From a date unknown to the Grand Jury, but no later than October 2016, through March 2021, in the Eastern District of Michigan, Ecuador, Columbia, the Netherlands, Spain, the high seas, in international waters, and elsewhere, defendant YLLI DIDANI and others known and unknown to the Grand Jury did combine, confederate, and agree to knowingly and intentionally possess with intent to distribute and distribute, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, on board a vessel(s), subject to the jurisdiction of the United States, to wit: the MSC Anisha R, the Jean Gabriel, and the Cartagena Express in violation of Title 46, United States Code, Sections 70503(a) 70506(b), and Title 21, United States Code, Section 960(b)(1)(B).

2. With respect to defendant YLLI DIDANI, the controlled substance involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 46, United States Code, Section 70506(a) and Title 21, Section 960(b)(1)(B).

6

<u>MANNER AND MEANS</u>

The manner and means used to accomplish the objectives of this conspiracy include, among others, the following:

3. It was part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury would and did use telecommunication facilities, including cellular telephones, to facilitate the distribution of cocaine via maritime containerships ("vessel(s)").

4. It was further part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury would regularly communicate with each other utilizing cellular telephone applications including Signal and WhatsApp and cellular telephones encrypted with Sky ECC software.

5. It was further part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury would arrange for the purchase, acquisition and delivery of luxury armored vehicles and bullet proof jackets to be used in furtherance of the conspiracy.

6. It was further part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury would plan the distribution of cocaine utilizing vessels traveling from South America to Europe.

7. It was further part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury caused cocaine to be loaded into

shipping containers in South America, which were then placed on vessels in South America and transported on those vessels on the high seas and in international waters, from South America to Europe.

8.  It was further part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury caused cocaine to be loaded into shipping containers on vessels on the high seas and in international waters after the vessels had left South America in route to Europe.

9.  It was further part of the conspiracy that defendant YLLI DIDANI and others known and unknown to the Grand Jury would communicate with conspirators unknown to the Grand Jury, who had access to port information, to determine whether the vessel shipping containers where the cocaine was concealed were selected for inspection by port authorities.

OVERT ACTS

10. In furtherance of the conspiracy, and to affect the object and purposes thereof, defendant, YLLI DIDANI and others known and unknown to the Grand Jury committed various overt acts, including but not limited to the following:

(1)   On or about September 2, 2019, to September 8, 2019, and on or about December 16, 2019, to December 26, 2019, while defendant YLLI DIDANI was in the United States, he engaged in several text message conversations with

8

conspirators known and unknown to the Grand Jury that discussed cocaine seizures and the utilization of "tokens" for large cash payments of U.S. currency.

(2)   On or about June 2020 to February 2022, defendant YLLI DIDANI and other conspirators known and unknown to the Grand Jury, ordered, paid for, and had delivered to Ecuador and the Dominican Republic, several armored vehicles, including, but not limited to a 2020 Lexus LX570, a 2020 Mercedes Benz G63, and a 2021 Chevrolet Tahoe.

<u>MSC Anisha R Seizure</u>

(3)   On or about July and August 2019, defendant YLLI DIDANI and other conspirators known and unknown to the Grand Jury caused approximately 753 kilograms of cocaine to be shipped from South America to the Port of Rotterdam in the Netherlands.

(4)   On or about July 14, 2019, a conspirator known to the Grand Jury sent Defendant YLLI DIDANI a photograph from the Mediterranean Shipping Company ("MSC") website depicting the booking information for a vessel, the MSC Anisha R, showing a direct transit departing Ecuador on July 23, 2019, and scheduled to arrive in Europe on August 9, 2019.

(5)   On or about July 2019, unknown conspirators concealed the 753 kilograms of cocaine in a shipping container on the vessel, the MSC Anisha R, which departed Ecuador on or about July 23, 2019, and arrived at the Port of

Rotterdam in the Netherlands on or about August 9, 2019, where law enforcement seized the cocaine.

(6)   On or about July 24, 2019, defendant YLLI DIDANI sent several photographs to a conspirator unknown to the Grand Jury. The photographs depicted the 753 kilograms of cocaine in packages with an insignia of a black semi-automatic handgun taped to the packages. The photographs also depicted the cocaine mixed in with batches of bananas and loaded into a shipping container.

(7)   On or about July 26, 2019, to July 28, 2019, defendant YLLI DIDANI sent multiple text messages to a conspirator known to the Grand Jury requesting the "BL" for the "cargo" that defendant YLLI DIDANI and the conspirator "sent."

(8)   On or about July 27, 2019, defendant YLLI DIDANI sent a series of text messages to a conspirator known to the Grand Jury including text messages stating, "We have rott and now Antwerp" and "Then powers soon in Barcelona my brother." The conspirator replied sending a text message to defendant YLLI DIDANI stating, "Tell him to start increasing the containers." Defendant YLLI DIDANI replied sending text messages to the conspirator stating, "Yes brother," "Next week is done," and "Order will go 5 every week."

(9)   On or about July 29, 2019, the conspirator in the preceding paragraph sent a text message containing a .pdf attachment to defendant YLLI DIDANI. The .pdf attachment was a Bill of Lading (BL) for five shipping containers aboard the

10

vessel, the MSC Anisha R, including the container carrying the 753 kilograms of cocaine.

(10) On or about August 14, 2019, Defendant YLLI DIDANI sent two photographs to a conspirator unknown to the Grand Jury depicting law enforcement officers standing in front of the shipping container that the 753 kilograms was seized from.

(11) On or about September 5, 2019, while defendant YLLI DIDANI was in the United States, he sent a video to several conspirators known to the Grand Jury depicting himself wearing and describing a bullet proof jacket.

(12) On or about September 5, 2019, while defendant YLLI DIDANI was in the United States, he sent a series of text messages to a conspirator known to the Grand Jury discussing the bullet proof jackets, including the following text messages, "I got 4 of those," "One for me and one for you," and "They will stop all the gun bullets."

(13) On or about September 6, 2019, while defendant YLLI DIDANI was in the United States, he sent a series of text messages to a conspirator known to the Grand Jury stating, "I got some very sad news about the lost" and "I mad as fuck bro." After sending these text messages, defendant YLLI DIDANI texted the conspirator a link to an online news article dated August 13, 2019, describing the

11

cocaine that had been seized form the MSC Anisha R and an additional seizure of 500 kilograms of cocaine at the Port of Rotterdam.

Jean Gabriel Seizure

(14) On or about January 2020 and February 2020, defendant YLLI DIDANI and other conspirators known and unknown to the Grand Jury caused approximately 644 kilograms of cocaine to be shipped from Ecuador to the Port of Rotterdam in the Netherlands.

(15) After the vessel, Jean Gabriel ("CMA CGM Jean Gabriel"), departed Ecuador on or about January 20, 2020, conspirators hid the cocaine in a shipping container onboard the CMA CGM Jean Gabriel. The CMA CGM Jean Gabriel arrived at the Port of Rotterdam in the Netherlands on or about February 22, 2020, where law enforcement seized the cocaine.

(16) On or about February 2, 2020, at defendant YLLI DIDANI's request, a conspirator known to the Grand Jury sent defendant YLLI DIDANI several videos showing several unknown conspirators aboard the vessel, the CMA CGM Jean Gabriel.

(17) The videos received by defendant YLLI DIDANI depict the unknown conspirators breaking into a sealed and locked shipping container, removing a pallet of produce from the shipping container, and replacing the produce with 14 black duffle bags containing the 644 kilograms of cocaine.

12

(18) On or about February 25, 2020, defendant YLLI DIDANI exchanged text messages with a conspirator known to the Grand Jury that discussed the 644 kilograms of cocaine that were seized. On or about February 25, 2020, defendant YLLI DIDANI sent a text message to the conspirator, "And this with CMA is very bad." The conspirator sent a text message back to defendant YLLI DIDANI, "Yes bro we also lost."

### Cartagena Express Seizure

(19) On or about March 2020 to April 2020, defendant YLLI DIDANI and other conspirators known and unknown to the Grand Jury caused approximately 1000 kilograms of cocaine to be shipped from South America to the Netherlands.

(20) After the vessel, the Limari, departed Peru on or about March 11, 2020, conspirators hid the cocaine on the Limari in a shipping container, which was then transferred to the vessel, the Cartegena Express, which departed Columbia on or about March 26, 2020. The Cartegena Express arrived at the Port of Rotterdam in the Netherlands on or about April 7, 2020, where law enforcement seized the cocaine.

(21) Prior to April 3, 2020, a conspirator unknown to the Grand Jury sent several videos to defendant YLLI DIDANI depicting several unknown conspirators aboard the vessel, the Limari.

(22) The videos received by defendant YLLI DIDANI depict an unknown conspirator on the Limari breaking into a sealed and locked shipping container by utilizing bolt cutters to cut lock seals off the shipping container. Once the lock seals were cut off the shipping container, several unknown conspirators placed several large black bags in the shipping container and then an unknown conspirator resealed the shipping container with new fraudulent lock seals.

(23) Starting on or about April 7, 2020, defendant YLLI DIDANI sent and received text messages to several individuals discussing the seizure of the cocaine.

(24) On or about April 7, 2020, to April 10, 2020, defendant YLLI DIDANI exchanged text messages regarding the cocaine seizure with a conspirator known to the Grand Jury. On or about April 7, 2020, the conspirator sent photographs to defendant YLLI DIDANI depicting the lock seals that had been broken off the shipping container and photographs of the new fraudulent lock seals that were used to reseal the shipping container.

(25) On or about April 9, 2020, defendant YLLI DIDANI sent a text message to one of his relatives known to the Grand Jury that contained a screenshot of an online news article that described the cocaine seizure.

(26) On or about April 9, 2020, defendant YLLI DIDANI sent a text message to an individual known to the Grand Jury that contained a screenshot of an online news article that described the cocaine seizure. After sending the screenshot

14

to the individual, defendant YLLI DIDANI sent text messages to the individual

stating that he was really sad and that he had lost three, one after the other.

<u>Jenny Seizure</u>

(27) On or about March 2020 and April 2020, defendant YLLI DIDANI

and other conspirators known and unknown to the Grand Jury caused approximately

1100 kilograms of cocaine to be shipped from South America to Spain.

(28) Conspirators hid the 1100 kilograms of cocaine in a shipping

container that was placed on a vessel, the Arushi R., which departed Ecuador on or

about March 22, 2020. The shipping container was then transferred to a vessel, the

Jenny, which departed Belgium on or about April 17, 2020, and arrived at the Port

of Bilbao in Spain, on or about April 20, 2020, where law enforcement seized the

cocaine.

(29) On or about March 25, 2020, a conspirator unknown to the Grand Jury

sent defendant YLLI DIDANI several photographs and videos depicting black

duffle bags being loaded on top of pallets containing boxes of bananas in the rear of

a shipping container.

(30) On or about April 8, 2020, a conspirator unknown to the Grand Jury

sent defendant YLLI DIDANI three photographs via cellular telephone. The first

photograph depicted the rear of a closed shipping container carrying the 1100

kilograms of cocaine and the shipping container number. The second and third

photographs depicted the lock seals on the shipping container carrying the 1100 kilograms of cocaine.

<u>Star Care Seizure</u>

(31) On or about September 2020, defendant YLLI DIDANI and other conspirators known and unknown to the Grand Jury caused approximately 1200 kilograms of cocaine to be shipped from Ecuador to the United Kingdom.

(32) Conspirators hid the 1200 kilograms of cocaine on a vessel, the Star Care, which departed Guayaquil, Ecuador on or about September 5, 2020. The Star Care arrived at the Port of Dover in the United Kingdom on or about September 21, 2020, where law enforcement seized the cocaine.

(33) Beginning on or about September 22, 2020, defendant YLLI DIDANI sent text messages to several individuals known to the Grand Jury discussing the cocaine seizure. Defendant YLLI  DIDANI sent some of the individuals an internet link to an online news article and sent some of the individuals a photograph of the news article. The article described the seizure of the 1200 kilograms of cocaine after the Star Care arrived in the United Kingdom.

(34) On or about September 22, 2020, defendant YLLI DIDANI texted one of the individuals, "Had some prbl today in morning," "Lost 11 mil," "My cost was 11 mil," and "Someone make mistake."

Case 2:21-cr-20264-DPH-KGA   ECF No. 38, PageID.169   Filed 03/16/22   Page 17 of 23

(35) On or about September 23, 2020, defendant YLLI DIDANI sent an internet link of the news article to one of the individuals followed by a text message stating, "you get the chills."

(36) On or about September 23, 2020, defendant YLLI DIDANI sent an internet link of the news article to one of the individuals, followed by several text messages stating, "Delete after you see the news," "I lost millions yesterday," "Stupid fuckes there bro," "Use sistem of phones I never approved," "I don't mind losing bro," and "But they was using sistem police broke in."

(37) On or about September 25, 2020, after defendant YLLI DIDANI sent a photograph of the news article to one of the individuals, defendant YLLI DIDANI sent several text messages to the individual including, "I'm mad and angry," "But I'm ok," and "I'm sending one 4 times bigger then that."

## COUNT THREE
18 U.S.C. § 1956(h)
*Conspiracy to Launder Monetary instruments*

1.  From a date unknown to the Grand Jury, but no later than June 2016, continuing through at least December 2017, in the Eastern District of Michigan, and elsewhere, defendant, YLLI DIDANI and others known and unknown to the Grand Jury did combine, confederate, and agree to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956, to wit: to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a

17

monetary instrument and funds from a place in the United States to and through a

place outside the United States with the intent to promote the carrying on of

specified unlawful activity, in violation of Title 18, United States Code, Section

1956(a)(2)(A).

MANNER AND MEANS

The manner and means used to accomplish the objectives of the conspiracy

included, among others, the following:

2.  As part of the conspiracy, in 2016 and 2017, Conspirator One issued

several checks, which were later cashed by Conspirator Two. Conspirator Two

then provided defendant YLLI DIDANI the converted cash ("funds") for the

purposes of transferring the funds internationally to promote a specified unlawful

activity.

3.  It was further part of the conspiracy that defendant YLLI DIDANI and

others known and unknown to the Grand Jury would and did utilize automobiles

and aircraft for purposes of transporting the funds used to promote a specified

unlawful activity.

4.  It was further part of the conspiracy that defendant YLLI DIDANI and

others known and unknown to the Grand Jury would and did use

telecommunication facilities, including cellular telephones, to communicate with

each other in furtherance of the money laundering conspiracy.

OVERT ACTS

5.  In furtherance of the conspiracy, and to affect the object and purposes thereof, defendant, YLLI DIDANI and others known and unknown to the Grand Jury committed various overt acts, including but not limited to the following

(1)  On or about December 18, 2017, defendant YLLI DIDANI drove Conspirator One's Porsche SUV from the Eastern District of Michigan to Washington D.C., where he checked into a hotel, the JW Marriott.

(2)  On or about December 19, 2017, while at the JW Marriott in Washington D.C, defendant YLLI DIDANI took a photograph with a cellular telephone of another photograph that was displayed on the screen of another cellular telephone. The photograph depicted 190 rectangular-shaped packages, consistent with kilogram-size cocaine packages.

(3)  On or about December 21, 2017, Conspirator Two flew from the Eastern District of Michigan to Washington D.C. in a private airplane owned by Conspirator One for the purpose of providing defendant YLLI DIDANI with approximately $450,000 in U.S. currency derived from some of the checks Conspirator One provided to Conspirator Two.

(4)  On or about December 21, 2017, defendant YLLI DIDANI met with Conspirator Two in Washington D.C. where defendant YLLI DIDANI received

19

approximately $450,000 in U.S. currency from Conspirator Two for the purpose of purchasing bulk cocaine outside of the United States.

## FORFEITURE ALLEGATIONS

1.  The allegations contained in this Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982, Title 21, United States Code, Section 853, Title 46, United States Code, Section 70507, and Federal Rule of Criminal Procedure 32.2.

2.  Pursuant to Title 21, United States Code, Section 853, upon conviction of the Count One offense in violation of Title 21, United States Code, Sections 841 and 846, the defendant, YLLI DIDANI, shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of his offense and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense.

3.  Pursuant to Title 46, United States Code, Section 70507, upon conviction of the Count Two offense in violation of Title 46, United States Code, Sections 70503(a) and 70506(b), the defendant, YLLI DIDANI, shall forfeit to the United States of America any property that was used or intended to be used to commit, or to facilitate the commission of, the offense alleged in Count Two.

20

4. Pursuant to Title 18, United States Code, Section 982 upon conviction of the Count Three offense in violation of Title 18, United States Code, Sections 1956(h), the defendant, YLLI DIDANI, shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

5. If the property described above, as being subject to forfeiture, as a result of any act or omission of defendant YLLI DIDANI:

> (1) Cannot be located upon the exercise of due diligence;
>
> (2) Has been transferred or sold to, or deposited with, a third party;
>
> (3) Has been placed beyond the jurisdiction of the Court;
>
> (4) Has been substantially diminished in value; or
>
> (5) Has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), Title 28, United States Code, Section 2461(c), and Title 46, United States Code, Section 70507.

THIS IS A TRUE BILL

*s/ Grand Jury Foreperson*
GRAND JURY FOREPERSON

DAWN N. ISON
United States Attorney

*s/ Craig Wininger*
CRAIG WININGER
Chief, Violent & Organized Crime Unit

*s/ Mark Bilkovic*
MARK BILKOVIC
Assistant United States Attorney

*s/ Timothy McDonald*
TIMOTHY MCDONALD
Assistant United States Attorney

Dated: March 16, 2022

| United States District Court<br>**Eastern District of Michigan** | **Criminal Case Cover Sheet** | Case Number:<br>21-cr-20264 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based on **LCrR 57.10(b)(4)**[1]: | |
| ☐Yes ☑No | **AUSA's Initials:** |

**Case Title:** USA v.  Ylli Didani

**County where offense occurred:** Wayne, Macomb, Oakland, and elsewhere

**Offense Type:** Felony

Indictment --- based upon **LCrR 57.10 (d)** [Complete Superseding section below]

## Superseding Case Information

**Superseding to Case No:**    21-cr-20264                    **Judge:**    **Denise Page Hood**

**Reason:**
Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant Name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| D-1 Ylli Didani | 21 U.S.C. § 841(a)(1) and 846<br>46 U.S.C. §§ 70503(a),70506(b)<br>18 U.S.C. § 1956(h) | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case**

March 16, 2022
Date

Mark Bilkovic
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
mark.bilkovic@usdoj.gov
(313) 226-9623
Bar #: P48855

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence.  Cases may be companion cases even though one of them may have already been terminated.