UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

            Plaintiff,                  Case No. 21-cr-20264

v.

                                    Hon. Denise Page Hood
Ylli Didani,                       United States District Judge

            Defendant.

---

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNT ONE AND THREE OF THE SUPERSEDING INDICTMENT (ECF No. 52)

### I.    INTRODUCTION

From at least 2015 until his arrest in March 2021, the defendant, Ylli Didani directed a cocaine distribution conspiracy that originated in the Eastern District of Michigan and a transnational cocaine distribution conspiracy with substantial ties to the United States and this district. During the conspiracies, Didani secured financing in this district from a now deceased coconspirator, as well as other coconspirators, to purchase thousands of kilograms of cocaine from South America. Didani and other coconspirators utilized several methods to have the cocaine sent from South America to other countries, including hiding the cocaine

on containerships so it could be transported from South America to Europe for further distribution.

Up until his arrest in March 2021, Didani also utilized international money laundering organizations to move millions of dollars of drug proceeds around the world. These organizations moved money at Didani's request for a variety of purposes including to fund the transnational drug conspiracy, to launder drug proceeds, and to pay for luxury armored vehicles that Didani purchased. To pay for some of these vehicles, Didani utilized the United States banking system. And in one instance Didani had over $200,000 in drug proceeds delivered to New York as a down payment towards a $2,775,000 parcel of real estate in the Dominican Republic that Didani was attempting to purchase.

## II.     PROCEDURAL BACKGROUND

On March 26, 2021, Didani was charged in a sealed complaint with three counts: (1) conspiracy to distribute controlled substances in violation 21 U.S.C. §§ 841 and 846; (2) conspiracy to distribute controlled substances on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. § 70503; and (3) money laundering in violation of 18 U.S.C. § 1956(a). (See 21-mj-30148: ECF No. 1, PageID.1). On March 31, 2021, Didani was arrested on the complaint at the Charlotte Douglas International Airport in Charlotte, North Carolina after arriving on a flight from the Dominican Republic.

2

On April 21, 2021, a grand jury in this district returned a one-count indictment charging Didani with conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841 and 846. (ECF No. 1, PageID.1-6).

On March 16, 2022, a grand jury returned a three-count superseding indictment charging Didani with two additional counts – Count Two: conspiracy to possess with intent to distribute and distribute a controlled substance on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a) and 70506(b) (a violation of the Maritime Drug Law Enforcement Act); and Count Three: conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). (ECF No. 38, PageID.153-174).

On October 19, 2022, Didani filed a motion to dismiss Count One and Three of the superseding indictment. (ECF No. 52, PageID.259). In his motion, Didani argues that these counts should be dismissed because first, the Eastern District of Michigan is not the appropriate venue; and second, that asserting jurisdiction of Didani in the United States violates his due process rights. For the reasons set forth below, Didani's motion to dismiss Count One and Count Three of the superseding indictment is meritless and should be denied.

## III.   FACTS

In 2016 and 2017, while the drug distribution conspiracy was well underway, Didani received large amounts of U.S. currency from a coconspirator

(a/k/a "Toni Stark" hereinafter, "Toni Stark") residing in the Eastern District of Michigan ("this district") for the purpose of purchasing bulk cocaine. At least one transfer of approximately $100,000 occurred in this district. A separate bulk cash transfer that occurred in December 2017, also started in this district. In that transfer, a coconspirator obtained approximately $450,000 from Toni Stark in this district. The coconspirator then flew from this district in a private airplane owned by Toni Stark to Washington D.C., where the coconspirator gave the $450,000 to Didani for the purchase of bulk cocaine.[1] Didani kept photographs of the $450,000 on his phone. The photograph below was taken by Didani on December 19, 2017, in his hotel room in Washington D.C. after the $450,000 had been delivered to him by the coconspirator:

---

[1] Didani argues that the $450,000 from December 2017 could not represent the amount that he paid for the 753 kilograms of cocaine that were seized in August 2019. The government agrees. First, contrary to Didani's argument that the government "tried[d] to tether" the $450,000 from December 2017 to the August 2019 cocaine seizure, the government did not. The government has never alleged that the $450,000 from 2017 had anything to do with the 753 kilograms of cocaine that were seized in August 2019. Second, to support his argument, Didani cites an article estimating the cost of a kilogram of cocaine in the Netherlands in 2010 was approximately $46,000. That may be true but as Didani knows, and as witnesses will testify at trial, Didani was not purchasing cocaine from the Netherlands. He and other coconspirators were purchasing it directly from South America and they were purchasing it for approximately $4000-$5000 a kilogram. Third, once cocaine traffickers establish relationships, the entire cost of a cocaine shipment is not paid up front. Finally, as Didani also knows, he was not the only investor in these large cocaine shipments. The large cocaine shipments had multiple investors, each of whom were responsible for a portion of the down payment.



   While Didani oftentimes arranged to have the cocaine hidden in containers

on containerships, that was not Didani's only plan. Instead, in 2016, Didani and

Toni Stark, who was still residing in this district, came up with a plan to transport

cocaine underwater, and by 2017, they contracted with a company to design a

submersible container ("torpedo" or "drone") capable of holding up to 1000

kilograms of cocaine. The torpedo would operate using remote control, GPS, and

magnets. The cocaine would be loaded into the torpedo before the torpedo

magnetically attached to a containership. Once the containership was

approximately 100 miles from its destination, the torpedo would detach from the

containership via remote control, the torpedo would come to the surface, and a

fishing boat using GPS, would locate and retrieve the cocaine-filled torpedo

   The company designing the torpedo ceased working on it after the July 2018

death of Toni Stark. However, prior to Toni Stark's death, Didani oftentimes used

encrypted Blackberry cellular telephones and encrypted applications to discuss the

progress of the torpedo. These encrypted messages were usually programmed to self-destruct in a matter of days:



Fortunately for investigators, Didani regularly used his iPhone to take photographs of the messages that were on his encrypted Blackberrys before the messages self-destructed. Didani did this with hundreds, if not thousands, of encrypted messages related to the cocaine distribution conspiracy, including encrypted messages related to the torpedo, a few of which are depicted below:





While Didani was in the United States he also regularly communicated with conspirators through encrypted applications to plan and arrange cocaine shipments; to facilitate the payments for cocaine shipments; and to discuss the success of some shipments and the law enforcement interdiction of others.

7

Following the July 2018 death of Toni Stark, Didani began utilizing Europe-based financers to fund his cocaine trafficking and he continued to arrange transportation of cocaine from South America to Europe. He also began utilizing international money laundering organizations (MLOs) to move millions of dollars of drug proceeds around the world. These MLOs utilized at least two methods to move drug proceeds for Didani. The first method involved the use of purported General Trading Companies that wired payments at Didani's request. The second method involved the use of "tokens" which Didani's organization utilized for large cash payments.

Between April 2020 and January 2021, the MLOs used both methods to make over $800,000 in payments towards Didani's purchase of several luxury armored vehicles, which Didani purchased to protect himself and other conspirators. Didani also made sure that some of the armored vehicles were equipped with "traps" that would be able to conceal firearms. Didani purchased these vehicles from a company in North America and had them shipped to Ecuador and the Dominican Republic. At Didani's request, the MLOs made the first several payments via wire transfers, including payments of approximately $259,907 and $63,800 that were made by purported General Trading Companies located in the United Arab Emirates. To send these wire payments to the North American

armored car company, the MLOs, on Didani's behalf, utilized correspondent banks in the United States.

Didani also attempted to purchase a $2,775,000 parcel of real estate in the Dominican Republic through a United States-based realtor. In September 2020, at Didani's request, a courier for a MLO delivered over $200,000 of Didani's drug proceeds to New York as a down payment towards the property. Unfortunately for Didani, the sale of the property fell through, and law enforcement seized the $200,000.

In addition to utilizing the United States banking system to purchase multiple armored vehicles with drug proceeds, in September 2019, to protect himself and his coconspirators from the perils of the dangerous profession they had chosen, Didani also arranged the purchase of several bulletproof jackets from an individual in the United States. Didani arranged the purchase of these bulletproof jackets while he was also in the United States. Didani even modeled the bulletproof jackets so his coconspirators outside the United States could see what they looked like:



These examples represent just a miniscule fraction of the evidence in this case establishing that this conspiracy took place both in this district (venue) and in the United States (jurisdiction).

## IV.   ARGUMENT

### A.   Standard of review.

In his brief, Didani ignores the standard of review that the Court must utilize in deciding his motion and he ignores the purpose and requirements of an indictment. In doing so, he fails to acknowledge that the government does not need to include all facts, overt acts, or a complete outline of all its witnesses' anticipated trial testimony in the indictment. The silly quips in Didani's brief attacking the superseding indictment do nothing to help the Court understand the issues before it. So, the government will do that by starting with Rule 12 of the Federal Rules of

Criminal Procedure, which provides that a defendant may bring a motion

challenging "a defect in the indictment or information," including "a claim that the

indictment or information fails to invoke the court's jurisdiction or to state an

offense." Fed. R. Crim. P. 12(b)(3)(B).

An indictment is sufficient if (1) it contains the elements of the offense

charged; (2) it fairly informs the defendant of the charge against which he must

defend; and (3) it enables the defendant to plead an acquittal or conviction in bar of

future prosecutions for the same offense. *Hamling v. United States,* 418 U.S. 87,

117 (1974). The superseding indictment here does all three of these. "An

indictment as drafted is presumed sufficient if it tracks statutory language, cites the

elements of the crimes charged, and provides approximate dates and times." *United

States v. Chichy,* 1 F.3d 1501, 1504 n.3 (6th Cir. 1993).

As this Court noted in denying Didani's prior motion for a bill of particulars,

when a defendant is charged with conspiracy, "not all of the overt acts in

furtherance of the alleged conspiracy need to be alleged" and "[a] defendant is not

entitled to all of the overt acts that might be proven at trial." (ECF No. 45, Page

ID.212, 215); citing *United States v. Henson*, 848 F.2d 1374, 1385 (6th Cir. 1988);

*United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993).

When deciding a motion to dismiss an indictment, the factual allegations set

forth in the indictment must be accepted by the Court as true and must be viewed

11

by the Court in the light most favorable to the government. *United States v. Landham,* 251 F.3d 1072, 1080 (6th Cir. 2001); *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990); *United States v. Keller,* 2009 WL 2475454 *4 (E.D. Mich. Aug. 11, 2009). A trial court does not evaluate the evidence upon which the indictment is based in ruling on a motion to dismiss. *Landham,* 251 F.3d at 1080.

In denying Didani's previous motion for a bill of particulars, this Court also held:

> The Court's review of the Indictment (and the Superseding Indictment) finds that there are sufficient facts to inform Didani the nature of the charge pending against him with sufficient precision to enable him to adequately prepare for trial or contest said charge by way of pre-trial motions. Didani is sufficiently on notice that from July 30, 2015 through 2020, Didani and others, agreed to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, specifically five kilograms or more of a substance containing a detectable amount of cocaine. *These allegations are not vague*. The Indictment (and Superseding Indictment) further alleges the manner and means of how Didani and others accomplished the objectives of the conspiracy, including the planning, financing, the communication used, the transportation and the places used to plan and distribute the controlled substance. (ECF No. 45, PageID.217) (emphasis added).

So, while Didani argues that there are innocent explanations for his behavior, such that the allegations could simply be read as "Joe accepted money from a friend, Joe checked into a hotel, Joe dined at a restaurant..." (ECF No. 52, PageID.272), this argument is silly for several reasons. For starters, when seeking to have a court dismiss an indictment, an argument

that factual allegations in the indictment may have "innocent explanations" is improper as it is "an attack on the sufficiency of the government's evidence, not on the sufficiency of the indictment itself." *United States v. Norris*, 719 F.Supp.2d 557, 564 (E.D. PA. 2010). An indictment "may not be properly challenged by a pretrial motion on the ground that it is not supported by adequate evidence." *United States v. Carll,* 105 U.S. 611, 612 (1881).

Didani's argument also ignores the fact that this Court has previously ruled that the allegations in the superseding indictment "are not vague." Instead, the allegations in Count One and Count Three of the superseding indictment, which this Court must view in the light most favorable to the government, are very specific and include the following allegations:

- ***In the Eastern District*** and elsewhere, Didani conspired to knowingly possess with intent to distribute and distribute a controlled substance (ECF No. 38, PageID.153, ¶ 1) (emphasis added).

- As part of the conspiracy, Didani and others planned and financed the distribution of controlled substances ***while in the Eastern District of Michigan*** and elsewhere (ECF No. 38, PageID.154, ¶ 3 (emphasis added).

- As part of the conspiracy, Didani and others utilized residences ***in the Eastern District of Michigan*** to plan the distribution of controlled substances (ECF No. 38, PageID.155, ¶ 6 (emphasis added).

- From June 2016, through at least December 2017, ***in the Eastern District of Michigan*** and elsewhere, Didani and others engaged in the laundering monetary instruments in furtherance of a specified unlawful activity (ECF No. 38, PageID.169, 170, ¶ 1) (emphasis added).

The superseding indictment also alleges numerous overt acts in furtherance of the conspiracies charged in Count One and Count Three that also occurred in this district.  (ECF No. 38, PageID. 155, 156, 157, 171). Again, this Court must view these allegations as true and view them in the light most favorable to the government. *Landham,* 251 F.3d at 1080.

Didani's argument also ignores the fact that he has been provided with hundreds of thousands of pages of discovery, so he is aware that the allegations contained in the superseding indictment represent a very small sample of his conspiratorial acts that occurred in the United States and in this district. Didani also is aware that the government has several cooperating witnesses who will obliterate Didani's fanciful hypotheticals.

So, against this backdrop, the government now turns to Didani's

venue and jurisdiction arguments.

     **B.**   **Venue is proper in the Eastern District of Michigan because the conspiracy started here and Didani and several coconspirators committed several overt acts here.**

          i.  *The Eastern District of Michigan is an appropriate venue for Count One of the Superseding Indictment.*

Where a defendant is prosecuted pursuant to a statute that does not contain a

venue provision, an "offense… begun in one district and completed in another, or

committed in more than one district, may be …prosecuted in any district in which

such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). "For drug

conspiracies, venue is proper in any district where the conspiracy was formed or

where an overt act in furtherance of the conspiracy was performed. *United States v.*

*Crozier*, 259 F.3d 503, 519 (6th Cir. 2001). See also, *United States v. Turner*, 936

F.2d 221, 226 (6th Cir. 1991) (Conspiracy to distribute drugs is a "continuous

crime" and is "not completed until the drugs reach their final destination, and

venue is proper in any district along the way."). Furthermore, in drug conspiracies,

a "defendant need not have entered the district so long as" the defendant is

prosecuted in a district where the conspiracy was formed or where an overt act in

furtherance of the conspiracy was performed. *Crozier,* 259 F.3d at 519. See also,

*United States v. Character*, 76 Fed. Appx. 690, 695 (6th Cir. 2003) (Venue in

Michigan was proper even though the defendant never entered Michigan to commit

an overt act in furtherance of the drug conspiracy, because a coconspirator committed an act in furtherance in that district).

Here, Count One of the superseding indictment clearly alleges that the conspiracy to distribute cocaine took place partially in the Eastern District of Michigan. Furthermore, the conspiracy to distribute controlled substances began in this district and continued in this district for several years. The superseding indictment also alleges that seven of the nine overt acts in furtherance of the drug conspiracy, including three overt acts committed by Didani, were committed in this district.

For example, the superseding indictment alleges that Didani planned and financed the distribution of controlled substances from this district (ECF No. 38, PageID.154, ¶ 3); that Didani received U.S. currency in this district for the purchase of bulk cocaine (ECF No. 38, PageID.155-156, ¶ (4)); and that a conspirator travelled from this district to Washington D.C. to provide Didani with $450,000 for the purchase of bulk cocaine. (ECF No. 38, PageID.154, ¶ (8)-(9)). As pointed out earlier, in deciding this motion, the Court must assume that the allegations contained in the superseding indictment are true and the Court must evaluate the allegations in the light most favorable to the government. *Landham,* 251 F.3d at 1080.

Because the drug conspiracy in Count One began in this district, and because Didani and his coconspirators committed several overt acts in furtherance of the drug conspiracy in this district, this district is an appropriate venue for Didani's trial.

ii. *The Eastern District of Michigan is an appropriate venue for Count Three of the Superseding Indictment*

Didani is charged in Count Three with conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). This statute, unlike the drug conspiracy statute charged in Count One, does contain a venue provision: "A prosecution for an attempt or conspiracy offense under this section… may be brought in the district where venue would lie for the completed offense under paragraph (1), *or in any district where an act in furtherance of the… conspiracy took place*."[2] 18 U.S.C. § 1956(i)(2) (emphasis added). Didani's argument regarding venue for Count Three is primarily based on the venue provision for the substantive offense of money laundering found in 18 U.S.C. § 1956(i)(1)(A) and (B). However, Didani is charged with *conspiracy* to launder monetary instruments and so venue is dictated by 18 U.S.C. § 1956(i)(2). Because Didani is charged with *conspiracy* to launder monetary instruments, venue is appropriate "*in any district*

---

[2] In his motion to dismiss, Didani cites the venue provision for the substantive offense of money laundering found in 18 U.S.C. § 1956(i)(1)(A) and (B). However, Didani is charged with *conspiracy* to launder monetary instruments and so venue is dictated by 18 U.S.C. § 1956(i)(2).

*where an act in furtherance of the… conspiracy took place."* (18 U.S.C. § 1956(i)(2) (emphasis added).

Again, in deciding this motion, the Court must assume that the allegations contained in the superseding indictment are true and the Court must evaluate the allegations in the light most favorable to the government. *Landham,* 251 F.3d at 1080. Count Three of the superseding indictment includes allegations that Didani conspired to launder monetary instruments in this district and that he and coconspirators committed overt acts in furtherance of the money laundering conspiracy in this district. Therefore, there is no question that the Eastern District of Michigan is an appropriate venue for Count Three.

> **C.   Didani's Fifth Amendment due process rights have not been violated where over several years, Didani and his coconspirators committed overt acts in furtherance of the conspiracies charged in Count One and Count Three while in the United States.**

A court may assert jurisdiction over a matter if the offense, or part of the offense, occurred within the United States. *United States v. Moncini*, 882 F.2d 401, 403 (9th Cir. 1989). Here, Didani is charged with conspiracy offenses involving drugs and money laundering. The elements of a conspiracy to distribute drugs charged under 21 U.S.C. § 846 are "(1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v Hall*, 20 F.4th 1085, 1106 (6th Cir. 2022), (quoting *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999).

18

Here, Didani engaged in acts in the United States that prove all elements of the drug conspiracy charged in Count One. As detailed above, while Didani was in the United States, he agreed with other coconspirators who were also in the United States, to violate drug laws. Second, as a leader and orchestrator of the conspiracy, Didani knowingly and intentionally agreed to join the conspiracy while he was in the United States. Third, Didani actively participated in the conspiracy while he was in the United States. Because part of Count One occurred in the United States, and more significantly, because Didani orchestrated and actively participated in the conspiracy while he was in the United States, his claim that he is unfairly being prosecuted here fails.

Didani's reliance on *United States v. Lopez-Vanegas*, 493 F.3d 1305 (11th Cir. 2007) does not save the day for him. There, the defendants were convicted of conspiracy to possess with intent to distribute five kilograms or more of a controlled substance in violation of 21 U.S.C. § 846. The defendants actively helped broker a cocaine deal to transport cocaine by airplane from Venezuela to France. The only contact the defendants had with the United States occurred when they were present at several meetings in Miami where details of the drug shipment were discussed. In reversing the defendants' convictions, the Eleventh Circuit held that discussions occurring in the United States related to the possession of controlled substances outside of the United States with intent to distribute those

controlled substances outside of the Unites States was not sufficient to establish a nexus to the United States. *Lopez-Vanegas*, 493 F.3d at 1313.

The facts here are a far cry from the facts that the Eleventh Circuit was faced with in *Lopez-Vanegas*. In *Lopez-Vanegas*, the defendants had no ties to the United States; none of the acts taken in furtherance of the conspiracy took place within the United States; and there were no effects on the United States. Here, Didani was a lawful permanent resident of the United States, he lived in the United States during portions of the drug conspiracy, and when he moved from the United States, he regularly returned the United States during the drug conspiracy. Furthermore, Didani formed the drug conspiracy in the United States, and he and his coconspirators committed multiple overt acts in furtherance of the conspiracy while they were in the United States.

The drug conspiracy also effected the United States as Didani and his conspirators utilized the United States banking system in furtherance of the conspiracy; Didani and his conspirators regularly used telecommunications systems in the United States in furtherance of the conspiracy; and Didani and coconspirators intended to direct drug proceeds back into the United States. See e.g., *United States v. Daniels*, 2010 WL 2557506 *5 (N.D. Cal. 2010) (distinguishing facts from *Lopez-Vanegas* and holding sufficient nexus to the United States existed where overt acts in furtherance of the conspiracy, including

the transfer of money, occurred in the United States, and drug proceeds or drugs were to be directed to the United States).

Finally, while Didani alleges that there is no evidence that the conspiracy involved any intent to possess or distribute cocaine in the United States, the government does not concede that issue for purposes of this motion. Didani is aware that the government has significant *Jencks* material that it has not yet disclosed, including evidence from cooperators. Didani also forgets that some of the discovery provided to him includes reports related to truck crossings at the United States – Canadian border, and the discussion of "product" being stored in Canada.

With respect to Count Three, the elements of conspiracy to engage in money laundering charged under 18 U.S.C. § 1956(h) are "(1) an agreement or understanding entered into by two or more persons to commit money laundering, (2) the performance of an overt act in furtherance of the agreement, and (3) defendant's knowing and deliberate participation in the conspiracy." *United States v. White*, 492 F.3d 380, 397 (6th Cir. 2007). Again, Didani and his coconspirators committed acts in the United States that satisfy all three of these elements. Money was removed from the United Sates banking system to purchase cocaine and proceeds of drug trafficking were funneled back into the United States. Therefore, the United States appropriately has jurisdiction over Didani

### D.   Didani's motion to dismiss the indictment is premature because it relies on contested facts.

A defendant may bring a motion challenging "a defect in the indictment or information," including "a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). However, such motion is limited to the extent that the Court can decide it without a trial on the merits. Fed. R. Crim. P. 12(b)(1).  Because the jury is the fact-finder, any arguments raised in a motion to dismiss that rely on disputed facts should be denied. *United States v. Shriver,* 989 F.2d 898, 906 (7th Cir.1992).

It is clear from Didani's motion and the government's response that there are factual disputes between the parties. The government has not, nor is it required to at this stage of the proceedings, identify every fact that exists to prove the allegations contained in the superseding indictment. Until then, Didani's motion to dismiss Count One and Count Three is premature and should be denied.

### V.   CONCLUSION

Didani filed two motions to dismiss one superseding indictment. He filed the instant motion to dismiss Count One and Count Three on the same day he filed a separate motion to dismiss Count Two (ECF No. 54, PageID.309). But in deciding each motion, the Court should consider them in tandem. By filing two separate motions, Didani conceals what he is ultimately be asking for. Didani is asking this Court to hold that the United States is powerless to prosecute him for his drug

22

dealing or to stop his drug dealing. And he does this despite the fact that while he was a lawful permanent resident of the United States and while he was residing in the United States, he was the mastermind of a conspiracy to distribute massive quantities of cocaine; despite the fact that he planned the conspiracy while living in the United States; despite the fact that he committed multiple overt acts in furtherance of the conspiracy while in the United States; and despite the fact that after he moved from the United States following the death of his United States financer, he increased his cocaine distribution using vessels on the high seas through overt acts that he and other coconspirators committed while in the United States.

Didani's actions violated the laws of the United States, and he has been appropriately charged in the Eastern District.  His motion should be denied.

Respectfully submitted,

DAWN N. ISON
United States Attorney

s/Mark Bilkovic
Mark Bilkovic
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9623
mark.bilkovic@usdoj.gov

s/Timothy P. McDonald
Timothy McDonald
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0221
timothy.mcdonald@usdoj.gov

Dated: January 13, 2023

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2023, I electronically filed the

foregoing document with the Clerk of the Court using the ECF system which

will send notification of such filing to counsel of record.

<u>*s/ Mark Bilkovic*</u>
Mark Bilkovic P48855
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
mark.bilkovic@usdoj.gov
(313) 226-9623