# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

YLLI DIDANI,

    Defendant.

Case No. 21-20264

Hon. Denise Page Hood

---

| | |
|---|---|
| Mark Bilkovic | Wade G. Fink (P78751) |
| Assistant United States Attorney | WADE FINK LAW PC |
| 211 W. Fort Street, Suite 2001 | 500 W. Merrill St., Suite 100 |
| Detroit, Michigan 48226 | Birmingham, Michigan 48009 |
| (313) 226-9100 | (248) 712-1054 |
| Mark.bilkovic@usdoj.gov | wade@wadefinklaw.com |
| *Attorneys for the United States* | *Attorneys for Ylli Didani* |

---

## DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR PRETRIAL DETERMINATION OF JURISDICTION

Defendant Ylli Didani ("Didani"), by and through counsel, Wade Fink Law, P.C., and Brian Kaplan, P.C., submits the following in response to the Government's Motion for Pretrial Determination of Jurisdiction ("Government's Motion"). ECF No. 57.

## **PERTINENT BACKGROUND**

Didani relies on the factual background provided in his Motion for Dismiss Count II of the Superseding Indictment. *See* ECF No. 54, PageID.318-320.

However, the government's instant motion makes a jarring concession worth noting. The Court will recall that Count II of the Superseding Indictment charged a conspiracy to deliver narcotics overseas on shipping vessels under the controversial statute known as the Maritime Drug Law Enforcement Act (the "MDLEA"). *See* 46 U.S.C. §§70503(a) and 70506(b). The Court will also recall that the allegations supporting this charge contained assertions that no less than five (5) vessels, allegedly controlled by Didani and others, distributed cocaine internationally. In quite a change, the government concedes in the instant motion that it is only able to claim jurisdiction with regard to three (3) of those vessels – the MSC Anisha R (Liberia), the Jean Gabriel (Malta), and the Cartegena Express (Germany).

The implication of this assertion, of course, means that the other vessels described in the Superseding Indictment– the Jenny (Portugal) and the Star Care (Singapore) – are subject to the jurisdiction of foreign countries that did not consent to American jurisdiction. *See* ECF No. 54, at PageID.318-20 and 329-330 for more detail. This will be addressed in greater detail in future reply briefs in support of Didani's motions. However, it is certainly worth the Court's attention that two instances of wholly foreign conduct is being claimed as properly before this Court.

2

Nevertheless, according to the government, Dutch authorities, without United States intervention, seized cocaine from banana boxes aboard the **MSC Anisah R**. A post-hoc analysis by the United States allegedly showed that the banana boxes and cocaine matched certain pictures on Didani's devices. Similarly, allegedly acting on a tip from the United States, in March of 2020, the Dutch seized additional cocaine from the **Jean Gabriel** that apparently matched photographs and other information on Didani's devices. And finally, United States information from Didani's devices apparently led to a cocaine seizure aboard the **Cartegena Express** in April of 2020.

What is conspicuously missing from the government's factual background, and even its brief, is candor regarding the dates the foreign nations allegedly consented to American jurisdiction. The Court will recall from Defendant's Motion to Dismiss Count II that a vessel is not subject to American jurisdiction unless the foreign nation for which it is flagged "**has** consented" to such. Germany (Cartegena Express) allegedly consented on December 9, 2021, about 8 months after the seizure occurred. Malta (Jean Gabriel) allegedly consented on December 21, 2021, again, about 8 months after the seizure occurred. And Liberia (MSC Anisha R.) allegedly consented on December 29, 2021, nearly 9 months after the seizure.

The government's motion claims that jurisdictional questions regarding these three vessels, specifically as it relates to Count II under the MDLEA, should be

3

resolved by this Court, rather than by a jury. The government is incorrect and the Constitution requires this jurisdictional element be decided by a jury.[1]

## ARGUMENT

The Court will recall from Didani's Motion to Dimiss Count II of the Superseding Indictment that the relevant statutory language at issue is as follows:

> Didani is charged under 46 U.S.C. §70503(a)(1) and its related subsections. This part of the MDLEA provides that "[w]hile on board a covered vessel, an individual may not knowingly or intentionally . . . manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance." *Id.* A "covered vessel" is "a vessel subject to the jurisdiction of the United States" *Id.* at 70503(e)(1). Whether a ship is subject to United States' jurisdiction is defined in several ways, but relevant here, it is defined as "a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of the United States law by the United States." Id. at 70502(c)(1)(A), (C) (emphasis added).

ECF No. 54, at PageID.321.

It is true, as the government asserts, that the MDLEA provides for this jurisdictional question to be tried "solely" by a judge. *See* 46 U.S.C. §70504(a). However, this statutory language improperly infringes on Didani's Fifth and Sixth Amendment rights. Our Circuit has not confronted the issue and this Court is therefore free to decide this issue of first impression.

---

[1] Didani has moved the Court to find (if it reaches the question) that MDLEA jurisdictional questions are jury questions. *See* ECF No. 54, PageID.339.

4

The Second Circuit advises its district courts to permit juries to decide the jurisdictional element of the MDLEA. The Second Circuit first laid the basis for this in *United States v. Prado,* 933 F.3d 121, 139 n. 9 (2d Cir. 2019), opining:

> In future prosecutions under § 70503 with respect to vessels "subject to the jurisdiction of the United States," trial courts might be well advised after making the preliminary determination required by § 70504(a) so that trial may proceed, to submit the issue of jurisdiction over the vessel to the jury notwithstanding the statutory word "solely."

The Second Circuit then strengthened this consideration in *United States v Van Der End,* 943 F.3d 98, 104 (2d Cir. 2019), by stating, in reliance on *Prado*: "'...70504(a)'s' provision that the jurisdiction of the United States be determined '*solely* by the trial judge' might be stricken as violative of a criminal defendant's right to a jury trial." Thus, the *Van Der End* Court continued, district courts "would be well advised to submit the issue of jurisdiction over the vessel to the jury notwithstanding the statutory word 'solely'—after making the preliminary determination required by § 70504(a) so that trial may proceed." *Id.* citing *Prado, supra,* at 139 n.9.

The Second Circuit found support for this suggestion to its district courts from the First Circuit. In *United States v. Gonzalez,* 311 F3d 440, 444 (1st Cir. 2022), the First Circuit, relying on Supreme Court precedent, opined that Congress, "by providing for a judge to decide the vessel issue rather than jury" may have

5

"introduced a possible Sixth Amendment objection to the statute." The Court further described a situation where a "defendant might claim, if the issue were tried, that he was entitled to a jury trial on whether the boat was a stateless vessel…" *Id.*

Supreme Court precedent supports the conclusion that the jurisdictional question here is a jury question. In fact, *Torres and Taylor v. United States,* 136 S. Ct. 2074 (2016) leave little doubt about how our highest Court will interpret §70504(a). In *Taylor,* Justice Alito wrote for the majority it was settled law that in order to prove a person liable for a robbery under the Hobbs Act, the government must prove that the robbery affected "commerce over which the United States has jurisdiction." *Id.* at 2080. This commerce element of the Hobbs Act is a "jurisdictional element." *Id.* And, jurisdictional elements must be proven "beyond a reasonable doubt" even though the meaning of "commerce" is left to a judge. *Id.* In other words, whether or not the conduct comes within the statute's purview – or federal jurisdiction – was a question for the jury decide. In essence, the jury is asked, did the robbery affect commerce?

The same is true here. The MDLEA has a jurisdictional element. It requires a showing by the government that the vessel was "subject to the jurisdiction of the United States." And in order to show that a vessel was "subject to the jurisdiction of the United States," a jury is required to decide the facts. In this case, the jury must

6

decide if a foreign nation "has consented." That is the only way in which to read this issue in harmony with the strong signal from the Supreme Court.

Do not take this writer's word for it. The Second Circuit, too, believes the Supreme Court has signaled its reading. In *Prado,* the Court concluded, "the Court's utterances in *Torres and Taylor* increase the likelihood that the Court will invalidate §70504(a)'s provision that the jurisdiction of the United States be determined *solely* by a judge." *Prado, supra,* at n. 9.

For its argument, the government relies on the statutory language of §70504(a), two circuit court cases decided before *Torres and Taylor, Prado,* and *Van Der End*, and several district court cases that do not remotely address the issue. In fact, the government's circuit court authority, even if one were to ignore the fact the cases were decided before the relevant cases above, do not even stand for the propositions cited.

For example, the government relies on *United States v De La Garza,* 516 F.3d 1266 (11th Cir. 2008) for the proposition that the jurisdictional question here is solely for a trial judge. Yet, the *De La Garza* Court specifically wrote: the "arguments that [] that the MDLEA violates an individual's Fifth and Sixth Amendment rights by allowing judicial determination of facts were therefore waived, so we do not address them." In another case cited by the government, *United States v Munoz Miranda,* 414 US App DC 305 (D.C. Cir. 2015), the Court specifically concludes: "To be sure,

7

allocation of the issue to the court rather than the jury gives rise to a possible Sixth Amendment claim (regardless of whether the issue goes to subject-matter jurisdiction), but appellants raise no such claim here.

Where that leaves the analysis is with the government asking the Court to merely follow the plain language of the statute. But it is axiomatic, no matter Congress' language, that a prosecutor must prove all elements of a criminal offense beyond a reasonable doubt. *Sullivan v. Louisiana,* 508 U.S. 275 (1993). This applies in *all* proceedings. *Id.* And, "it is self-evident hat the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated. [] In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt."

The statute here attempts to take from the jury what the Fifth and Sixth Amendment require – a factual finding beyond a reasonable doubt that Didani's alleged vessels were subject to the jurisdiction of the United States. And that could theoretically come in many forms: were the certificates presented by the government authentic? Did the government agents accurately and honestly represent the facts within the certificates? Were the certificates timely received within the meaning of the statute? Are there any other credibility issues the jury has with the alleged consent or waiver? As much faith as the undersigned has in the Court here, these factual questions are run-of-the-mill questions for a jury to resolve.

## CONCLUSION

This Court should deny the Government's Motion for a pretrial determination of jurisdiction because the Fifth and Sixth Amendments require the conduct allegedly giving rise to jurisdiction be submitted to a jury for factual determination.

Date: January 13, 2023

                                            Respectfully submitted,

                                            WADE FINK LAW, P.C.

                                            /s/ Wade G. Fink (P78751)
                                            *Attorneys for Didani*
                                            550 W. Merrill St., Suite 100
                                            Birmingham, MI 48009
                                            248-712-1054
                                            Wade@wadefinklaw.com

## PROOF OF SERVICE

On January 13, 2023, the foregoing was filed using the Court's e-filing system, which will send notice of such file and a copy of same to all counsel of record.

                                     /s/ Wade G. Fink