## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**v.**

**YLLI DIDANI,**

       **Defendant.**

_____/

**CASE NO. 21-20264**

**HON. DENISE PAGE HOOD**

## ORDER DENYING MOTION TO DISMISS
## COUNTS ONE AND THREE (ECF No. 52),
## DENYING MOTION TO DISMISS COUNT TWO (ECF No. 54)
## and
## GRANTING MOTION FOR PRETRIAL
## DETERMINATION AS TO JURISDICTION (ECF No. 57)

## I.    BACKGROUND

An Indictment was filed against Defendant Ylli Didani on April 21, 2021 alleging one count of Conspiracy to Distribute Controlled Substances of five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(6) and 846, and a Forfeiture Allegation.   (ECF No. 1) On March 16, 2022, a Superseding Indictment was filed charging Didani with:   Count One – Conspiracy to Distribute Controlled Substances, 21 U.S.C. §§ 841(a)(1) and 846; Count Two – Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance on Board a Vessel Subject to the Jurisdiction of the United States, 46 U.S.C. §§ 70503(a) and

70506(b), 21 U.S.C. § 960(b)(1)(B); and Count Three – Conspiracy to Launder Monetary Instruments, 18 U.S.C. § 1956(h).   Didani remains in custody after the Court denied his oral motion for release pending trial.   (ECF No. 47)

The Superseding Indictment (ECF No. 38) alleges that no later than July 30, 2015 through 2020, in the Eastern District of Michigan and elsewhere, Didani and others known and unknown conspired to finance and distribute controlled substances.   They used residences in this District to plan their accumulation and distribution of controlled substance transactions.   Didani and others utilized automobiles, aircraft, and other means of transportation for purposes of obtaining and distributing controlled substances.   As part of the conspiracy, Didani and others planned to have a container (torpedo) designed that was capable of holding large quantities of cocaine that would be used to transport cocaine across waterways.

Between June 2016 and December 2017, in this District, Conspirator One provided several checks to Conspirator Two for purpose of purchasing bulk cocaine.   Conspirator Two cashed these checks at banks, pawn shops, and gold exchange businesses located in this District.   On June 9, 2016, in this District, Didani met with Conspirator Two and received $100,000 in U.S. currency from Conspirator Two that was derived from the checks Conspirator One provided to

2

Conspirator Two, for the purpose of purchasing bulk cocaine.

On November 16, 2017, while Conspirator One was in this District, Didani and Conspirator One exchanged text messages about a seizure of 140 kilograms of cocaine that occurred in the Netherlands. Didani sent a test to Conspirator One stating, "We just fucked up," and Conspirator One responded to Didani with a text stating, "We will fix brother."

On December 18, 2017, Didani drove Conspirator One's Porsche SUV from this District to Washington D.C., where he checked into a hotel, the JW Marriott. On December 19, 2017, while at the JW Marriott in D.C., Didani took a photograph with a cellular telephone of another photograph that was displayed on the screen of another cellular telephone that depicted over 190 rectangular-shaped packages, consistent with kilogram-size cocaine packages. Conspirator Two flew from this District to D.C. in a private plane owned by Conspirator One to provide Didani with approximately $450,000 in U.S. currency derived from checks Conspirator One provided to Conspirator Two. Conspirator Two met with Didani in D.C. on December 21, 2017 at which time Didani received approximately $450,000 in U.S. currency from Conspirator Two for the purpose of purchasing bulk cocaine.

The Superseding Indictment further alleges that from no later than October

2016 through March 2021, in this District, Ecuador, Columbia, the Netherlands, Spain, the high seas, in international waters and elsewhere, Didani and others conspired to intentionally possess with intent to distribute, five kilograms or more of a mixture or substance containing cocaine, on board vessels subject to the jurisdiction of the United States, on the MSC Anisha R, the Jean Gabriel, and the Cartagena Express. Didani and others would arrange for the purchase, acquisition and delivery of luxury armored vehicles and bullet proof jackets to be used in the conspiracy. The distribution of cocaine would utilize vessels traveling from South America to Europe. Didani and others caused cocaine to be loaded into shipping container in South America, which were then placed on vessels in South America and transported on those vessels on the high seas and in international waters, from South America to Europe. Didani and others caused cocaine to be loaded into shipping containers on vessels on the high seas and in international waters after the vessels had left South America in route to Europe.

In July and August 2019, Didani and others caused approximately 753 kilograms of cocaine to be shipped from South America to the Port of Rotterdam in the Netherlands. A photograph from the Mediterranean Shipping Company website was sent to Didani depicting the booking information for a vessel, the MSC Anisha R, showing a direct transit departing Ecuador on July 23, 2019 with a

scheduled arrival in Europe on August 9, 2019.   Upon arrival at the Port of Rotterdam in the Netherlands, law enforcement seized the cocaine in a shipping container.

In January 2020 and February 2020, Didani and others caused approximately 644 kilograms of cocaine to be shipped from Ecuador to the Port of Rotterdam in the Netherlands.   Conspirators hid the cocaine in a shipping container onboard the CMA GGM Gabriel.   When the CMA Jean Gabriel arrived at the Port of Rotterdam on February 22, 2020, law enforcement seized the cocaine.

In March 2020 to April 2020, Didani and others caused approximately 1000 kilograms of cocaine to be shipped from South America to the Netherlands.   On March 11, 2020, conspirators hid the cocaine on the Limari vessel, which was then transferred to the vessel, the Cartagena Express, which departed Columbia on March 26, 2020.   Upon arrival at the Port of Rotterdam in the Netherlands, law enforcement seized the cocaine.

In March 2020 and April 2020, Didani and others caused approximately 1100 kilograms of cocaine to be shipped from South America to Spain. Conspirators hid the 1100 kilograms of cocaine in a shipping container that was placed on a vessel, the Arushi R., which departed Ecuador on March 20, 2020. The shipping container was then transferred to a vessel, the Jenny, which departed

Belgium on April 17, 2020, and arrived at the Port of Bilbao, Spain on April 20, 2020, where law enforcement seized the cocaine.

In September 2020, Didani and other conspirators caused approximately 1200 kilograms of cocaine to be shipped from Ecuador to the United Kingdom. Conspirators hid the 1200 grams of cocaine on a vessel, the Star Care, which departed Guayaquil, Ecuador on September 5, 2020.  Upon arrival at the Port of Dover in the United Kingdom on September 21, 2020, law enforcement seized the cocaine.  On September 23, 2020, Didani sent an internet link of the news article to one of the individuals, followed by several text messages stating, "I lost millions yesterday."

This matter is now before the Court on:   1) Defendant's Motion to Dismiss Counts One and Three (ECF No. 52, 10/19/22); 2) Defendant's Motion to Dismiss Count Two (ECF No. 54, 10/19/22); and 3) the Government's Motion for Pretrial Determination as to Jurisdiction (ECF No. 57, 10/25/22).  Briefs have been filed and hearings held on the matter.

## II.     ANALYSIS

### A.     Motion to Dismiss Standard

#### 1.     Standard

Motions to dismiss under Rule 12(b)(2) of the Rules of Criminal Procedure permits a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."   Rule 12(b)(3)(B) provides that a motion may be brought to challenge "a defect in the indictment or information," including failure to invoke the court's jurisdiction or to state an offense.   A motion under Rule 12 is therefore appropriate when it raises questions of law rather than fact.   *United States v. Ali,* 557 F.3d 715, 719 (6th Cir. 2009).

#### 2.     Defendant's Motion to Dismiss Counts One and Three of the Superseding Indictment (ECF No. 52)

Didani seeks to dismiss Counts One (Conspiracy to Distribute Controlled Substances) and Three (Conspiracy to Launder Monetary Instruments) asserting that the same overt acts utilized in both counts, do not allege that the conspiracy involved plans to, at any point, transport cocaine to, through, or within the State of Michigan, or the United States.   The photograph of "190 rectangular-shaped packages," without further information or evidence, cannot discount the possibility that those packages could just as easily have contained anything from electronics to coffee beans to books.   Didani asserts that for a drug conspiracy like the one

7

alleged in this case, the relevant offenses are "continuous crimes" when the drugs reach their final destination.  Didani argues that the venue should be the intended destination of the drugs, not here in this District, because the overt acts alleged were intended to have an effect in another country and did not have an effect in this District.  Didani claims the charging document in this case is "ugly and disjointed" and that Counts One and Three should be dismissed for improper venue.

The Government responds that where a statute does not contain a venue provision, an offense which began in one district and completed in another, may be prosecuted in any district in which such offense was begun, continued, or completed.   18 U.S.C. § 3237(a).

The Constitution and Federal Rules of Criminal Procedure establish that venue for a criminal prosecution is proper only in the district where the crime was committed. *United States v. Castaneda*, 315 F. App'x 564, 569 (6th Cir. 2009). "[V]enue [is proper] for continuous crimes in any district where the 'offense was begun, continued, or completed.'" *Id*. (quoting 18 USC § 3237(a)). "Conspiracy and drug importation are continuous crimes; that is, they are not completed until the drugs reach their final destination, and venue is proper in any district along the way." *United States v. Turner*, 936 F.2d 221, 226 (6th Cir.1991); *see also United*

8

*States v. Williams*, 274 F.3d 1079, 1084 (6th Cir.2001).   Although the Government must prove venue by a preponderance of the evidence at trial, it is sufficient to establish venue at the pre-trial stage where the indictment alleges that each offense occurred within a certain district.   *See United States v. Coffman*, No. 2:22-cr-154, 2023 WL 371830, at *5 (S.D. Ohio Jan. 24, 2023).

A co-conspirator's acts need not be foreseeable to a defendant for venue to properly lie in the district where such acts took place, nor is it necessary for a co-conspirator to "have entered the district" where venue lies "so long as this standard is met." *See United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001) (citation omitted); *United States v. Iossifov*, 45 F.4th 899, 911 (6th Cir. 2022).

Didani is charged in Count One with Conspiracy to Distribute Controlled Substances, 21 U.S.C. §§ 841(a)(1) and 846.   The superseding indictment alleges that  the conspiracy occurred in the Eastern District of Michigan. It alleges that Didani planned and financed the distribution of controlled substances while in this District and elsewhere.   (ECF No. 38, PageID.154) Other allegations in the superseding indictment include: Didani and others utilized residences in this District to plan their accumulation and distribution of the controlled substance transactions; several checks were provided to conspirators for the purpose of purchasing bulk cocaine in this District; checks were cashed at banks, pawn shops

and gold exchange businesses located in this District; Didani met with a conspirator to receive currency derived from the checks in this District for the purpose of purchasing bulk cocaine. *Id*. at PageID.155-156.   At this pre-trial stage, the allegations set forth in the superseding indictment are sufficient to establish venue in this District for the conspiracy to distribute controlled substances alleged in Count One.

In Count Three, Didani is charged with conspiracy to launder monetary instruments under 18 U.S.C. § 1956(h). In a money-laundering conspiracy case, venue is proper "in any ... district where an act in furtherance of the ... conspiracy took place." 18 U.S.C. § 1956(i)(2); *see also Whitfield v. United States*, 543 U.S. 209, 217–18 (2005); *United States v. Guerrero*, 76 F.4th 519, 528 (6th Cir. 2023). Money-laundering conspiracy prohibits a particular type of criminal agreement: "conspir[acy] to commit any offense defined in" the money-laundering statute. 18 U.S.C. 1956(h).   Money-laundering conspiracy does not require proof of overt acts: "Because the text of § 1956(h) does not expressly make the commission of an overt act an element of the conspiracy offense, the Government need not prove an overt act to obtain a conviction."   *Whitfield*, 543 U.S. at 214; *United States v. Myers*, 854 F.3d 341, 356 (6th Cir. 2017).

The superseding indictment alleges that Didani and others agreed "to

transport, transmit and transfer, and attempt to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A)."   (ECF No. 38, PageID.169-170)  The superseding indictment alleges the agreement by Didani and others to launder monetary instruments occurred in this District.   This is sufficient to support the allegation against Didani since the statute does not require proof of an overt act in furtherance of the conspiracy.   Venue is proper in the Eastern District of Michigan since the agreement to launder money occurred in this District as alleged in Count Three.

### 3.   Defendant's Motion to Dismiss Count Two of the Superseding Indictment (ECF No. 54)

Defendant seeks to dismiss Count Two of the Superseding Indictment asserting that the Maritime Drug Law Enforcement Act (MDLEA) is inapplicable because the Government failed to obtain timely consent to prosecute the case in the United States from the foreign nations where the drugs were seized.   Didani also claims that the MDLEA is unconstitutional on its face.   The Government responds it obtained such consents and that courts have held the MDLEA is constitutional.

Didani is charged in Count Two with Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance on Board a Vessel Subject to the

11

Jurisdiction of the United States, 46 U.S.C. §§ 70503(a) and 70506(b), 21 U.S.C. § 960(b)(1)(B).   The term "vessel subject to the jurisdiction of the United States" includes, ... "(C) a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States;" or "(E) a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States."   46 U.S.C.A. § 70502(c)(1).   Consent or waiver of objection may be obtained by radio, telephone, or similar oral or electronic means; and is proved conclusively by certification of the Secretary of State or the Secretary's designee.   46 U.S.C.A. § 70502(c)(2). The MDLEA jurisdictional element may be satisfied by consent of a foreign nation provided at any time before trial. *United States v. Greer*, 285 F.3d 158 (2nd Cir. 2022); *United States v. Bustos-Useche*, 273 F.3d 622, 627 (5th Cir. 2011); *United States v. Juda*, 46 F.3d 961, 966 (9th Cir. 1995); *United States v. Hurtado*, 89 F.4th 881, 894 (11th Cir. 2023).

The Government asserts that the United States obtained consent from the flagged nations alleged in Count Two of the superseding indictment (Liberia, Malta and Germany) by January 2022, prior to the March 2022 indictment by the grand jury.   In addition, the Government asserts the Secretary of State has certified such on July 21, 2022.   Based on the Government's submissions, it has

shown that the foreign flagged nations have consented to the United States' enforcement of the statute and that the Secretary of State has so certified.

Didani asserts that the MDLEA is unconstitutional on its face because it exceeds Congress' Article I powers. Didani further asserts that drug trafficking is not piracy and that the case lacks a nexus with the United States. The Government responds that the MDLEA is constitutional.

The MDLEA's conspiracy provision, 46 U.S.C. § 70506(b), provides that a "person attempting or conspiring to violate section 70503 of this title is subject to the same penalties as provided for violating section 70503." The underlying substantive offense set forth in § 70503 prohibits "knowingly or intentionally manufactur[ing] or distribut[ing], or possess[ing] with intent to distribute, a controlled substance on board," inter alia, "a vessel subject to the jurisdiction of the United States," *id*. § 70503(a), which includes "a vessel without nationality," *id*. § 70502(c)(1)(A).

Congress has authority to criminalize this action under the Define and Punish Clause, U.S. Const. art. I, § 8, cl. 10 which states that Congress the authority "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations." The clause encompasses three distinct powers: (i) to define and punish piracy; (ii) to define and punish felonies

committed on the high seas; and (iii) to define and punish offenses against the Law of Nations. *See United States v. Smith*, 18 U.S. (5 Wheat.) 153, 158–59, 5 L.Ed. 57 (1820).   Based on the Felonies Clause, Congress has the authority to criminalize drug trafficking committed in the high Seas.

Didani cites the Eleventh Circuit's decision in *United States v. Bellaizac–Hurtado*, 700 F.3d 1245 (11th Cir.2012). In that case, Panamanian officials apprehended the defendants on board a stateless vessel in Panamanian waters. Panama consented to the prosecution of the defendants in the United States, but the Eleventh Circuit found that the application of the MDLEA to the defendants' conduct lay beyond Congress's constitutional authority. Critically, however, the government in *Bellaizac–Hurtado* relied solely on the Law of Nations Clause to support the constitutionality of the MDLEA's application. The Eleventh Circuit held that "drug trafficking is not a violation of customary international law and, as a result, falls outside the power of Congress under the [Law of Nations] Clause." *Id*. at 1249. *Bellaizac–Hurtado* did not address whether any alternative source of congressional authority—such as the Felonies Clause—could serve to criminalize the defendants' conduct. *Id.* at 1258. In fact, the court observed that "all of the [other] appeals in which we have considered the constitutionality of [drug trafficking] laws involved conduct on the high seas," and

14

those convictions were upheld "as an exercise of [Congress's] power under the Felonies Clause." *Id.* at 1257. Because Congress has the authority under the Felonies Clause, the decision of the court in *Bellaizac–Hurtado* is inapplicable.

The Felonies Clause grants Congress the power to criminalize a drug trafficking conspiracy. The Supreme Court has held that "the overt act of one partner in a crime is attributable to all," *Pinkerton*, 328 U.S. at 647, as long as the act "was done in furtherance of the conspiracy, and was reasonably foreseeable as a 'necessary or natural consequence of the unlawful agreement,'" *Washington*, 106 F.3d at 1011 (quoting *Pinkerton*, 328 U.S. at 647–48). *United States v. Ballestas*, 795 F.3d 138, 146–47 (D.C. Cir. 2015).

Didani agreed to consider the stipulated facts at the April 2023 hearing. The stipulated facts establish that Didani and others agreed to commit felonious acts on the high seas. Based on the allegations in the superseding indictment, the Felonies Clause provides Congress with authority to "punish" Ballestas for his role in that conspiracy.

Courts have found that the Due Process Clause imposes limits on the extraterritorial application of federal criminal laws. *See, e.g., United States v. Brehm*, 691 F.3d 547, 552–54 (4th Cir.2012); *United States v. Ibarguen–Mosquera*, 634 F.3d 1370, 1378–79 (11th Cir.2011). Those courts

15

generally require a showing of "sufficient nexus between the defendant and the United States, so that ... application [of the law] would not be arbitrary or fundamentally unfair." *United States v. Davis*, 905 F.2d 245, 248–49 (9th Cir.1990).   The extraterritorial application of the MDLEA in this case would not run afoul of due process. Nexus with the United States merely serves as a "proxy for due process" requirements. *Ali*, 718 F.3d at 944. "The 'ultimate question'" under the Due Process Clause is not nexus, but is "whether 'application of the statute to the defendant [would] be arbitrary or fundamentally unfair.'" *Id.* (quoting *United States v. Juda*, 46 F.3d 961, 967 (9th Cir.1995)). There is no arbitrariness or fundamental unfairness in the circumstances of this case.   As alleged, Didani was part of an international drug smuggling organization that planned the operations in the United States, used vessels to transport drugs across the high seas, bound to Europe and elsewhere, with the proceeds ultimately to the United States. The application of a United States drug trafficking law (the MDLEA) to Didani is neither arbitrary nor fundamentally unfair.

### B.   Government's Motion for Pretrial Determination as to Jurisdiction (No. 57)

The Government seeks a determination that the vessels in this case are vessels subject to the jurisdiction of the United States and that the Republic of Liberia, the Republic of Malta and Germany have consented or waived objection to

the enforcement of United States law by the United States over the three vessels at issue.

Based on the above analysis of the MDLEA, the Court has jurisdiction over the vessels, in light of the consent by Liberia, Malta and Germany in 2022, prior to Didani's indictment and the Secretary's certifications in July 2022.

## III.   CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that the Motion to Dismiss Counts One and Three **(ECF No. 52)** is DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss Count Two **(ECF No. 54)** is DENIED.

IT IS FURTHER ORDERED that the Motion for Pretrial Determination as to Jurisdiction **(ECF No. 57)** is GRANTED.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED:   April 17, 2024