UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

CASE NO. 21-cr-20264

vs.

HON. DENISE PAGE HOOD

YLLI DIDANI,

Defendant.

---

**GOVERNMENT'S MOTION TO ADJOURN TRIAL AND EXCLUDE PERIODS OF DELAY UNDER THE SPEEDY TRAL ACT**

---

The United States of America, by and through its undersigned attorneys, request that the Court adjourn the November 5, 2024 jury trial date approximately 90-120 days, and exclude the period from November 5, 2024, to the new trial date set by the Court, in computing the time in which trial must commence under the Speedy Trial Act, 8 U.S.C. § 3161, and in support of its motion, states:

1.     The defendant, Ylli Didani, was originally charged in an indictment with one count of conspiracy to distribute controlled substances – specifically five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841 and 846. (ECF No. 1, PageID.1).

2.     On April 28, 2021, Didani was arraigned on the indictment and consented to detention. (ECF No. 11, PageID.21; ECF No. 13, PageID.24).

1

3.      On March 16, 2022, a grand jury returned a superseding indictment charging Didani with Count One, conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841 and 846; Count Two, conspiracy to possess with intent to distribute and distribute a controlled substance on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a) and 70506(b); and Count Three, conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). (ECF No. 38, PageID.153).

4.      On April 20, 2022, the Court issued an order granting the government's motion to schedule trial date and finding periods of excludable delay. (ECF No. 46).

5.      The Court has previously entered stipulated orders finding periods of excludable delay. (ECF Nos. 48, 50, 78, 79, 80, and 88).

6.      The parties appeared before the Court on February 14, 2024 to argue several motions. (ECF No. 52, ECF No. 53, ECF No. 54 and ECF No. 57). At the conclusion of the hearing, the Court permitted the parties to file limited supplemental briefs, which were due by February 29, 2024. The Court also scheduled a status conference for April 10, 2024.

7.      On March 6, 2024, the Court entered a stipulated order excluding the period from February 14, 2024, through April 10, 2024, in computing the time in which trial must commence under the Speedy Trial Act.

2

8.     On April 10, 2024, with the consent of Didani's counsel and government counsel, the parties agreed to adjourn the status conference to April 17, 2024.

9.     On April 17, 2024, the Court entered orders denying two defense motions to dismiss (ECF No. 52, ECF No. 54) and an order granting the government's motion for pretrial determination as to jurisdiction. (ECF No. 57).

10.     At the April 17, 2024 status conference, the parties agreed to continue the status conference to May 9, 2024, so they could discuss scheduling a trial date, and so defense counsel could have additional time to meet with Didani and determine whether to file additional motions.

11.     On May 8, 2024, the Court entered an order denying Didani's motion to suppress evidence. (ECF No. 95).

12.     On May 9, 2024, the Court conducted a status conference. However, Didani's lead counsel did not appear. The Court rescheduled the status conference for May 22, 2022, and entered an order requiring all counsel of record appear. (ECF No. 96).

13.     On May 20, 2024, Didani's lead counsel filed a motion to withdraw as counsel for Didani, citing a breakdown in the attorney-client relationship. (ECF No. 97, PageID.1179).

14.     On May 22, 2024, all parties appeared for a status conference.

At the status conference, the Court granted lead counsel's motion to withdraw (ECF No. 98) and granted remaining counsel's oral motion to be appointed to represent Didani. (ECF No. 99).

15.     At the status conference, Didani's counsel agreed that he would need several months to prepare for trial due the voluminous amount of discovery. The Court scheduled a trial date for October 8, 2024, and a scheduled backup trial date for November 5, 2024. (ECF No. 100). The Court scheduled the backup date in the event government counsel was unavailable in October due to a previously scheduled jury trial scheduled to begin on October 16, 2024.

16.     Section 3161(h)(7)(A) of the Speedy Trial Act provides that any period of delay resulting from a continuance granted by the Court shall be excluded in computing the time in which a trial must commence if the Court finds that the ends of justice served by granting the continuance outweigh the best interest of the public and the defendant in a speedy trial.

17.     Multiple reasons exist in this case for the Court to grant an "ends of justice" continuance.

18.     This is the government's first request to adjourn trial.

19.     Lead counsel for the government is scheduled to begin a jury trial starting October 16, 2024, before United States District Judge Terrence

G. Berg (*United States v. James Deshawn Williams*, Case No. 18-cr-20547). The defendant in that case is charged with several charges including use of interstate commerce facilitates in the commission of murder-for-hire resulting in death. The trial is expected to last approximately two weeks, excluding jury deliberations.

20.    It would be unreasonable to require lead counsel to try these cases back to back, with virtually no break between trials, particularly given the fact that this Court recently designated this case a "complex case" (ECF No. 103, PageID.1206-1213), and considering the remaining outstanding issues identified below, and in the government's accompanying brief.

21.    On July 18, 2024, at Didani's counsel's request, the parties met to discuss discovery. During the meeting, Didani's counsel explained that he did not have, had not received from prior counsel, or could not locate:

 a.  Discovery Productions #3-2 (originally produced by the government on June 17, 2021). The materials in this production included 11 extractions of Didani's iCloud account (560 Gigabytes) and forensic extractions of two cellular phones seized from Didani after his arrest in 2021 (110 Gigabytes).

 b.  Discovery Production #7 (originally produced by the government on February 24, 2022). The materials in this

production included "SkyECC" data obtained from a French Mutual Legal Assistance Treaty (MLAT) request. SkyECC was an encrypted messaging platform. Its users were assigned a unique 6 character Pin, under which they could communicate. This Production contained the underlying data and media from 6 Pins. (1.11 Gigabytes, 982 folders, 9942 files).

c. Discovery Production #8 (originally produced by the government on April 29, 2022). The materials in this production included multiple Bills of Lading, audio recordings, photographs, videos, invoices, and laboratory reports for maritime seizures of controlled substances on August 11, 2019, December 10, 2019, January 14, 2000, February 22, 2020, April 7, 2020, April 21, 2020, and September 22, 2020. (718 Megabytes, 7 folders, 65 files).

d. Discovery Production #10 (originally produced by the government on March 6, 2023). The materials in this production included additional SkyECC Pin data; cell phone subscriber information; DEA-7A reports, DEA-6 reports, ROI reports, Certificates of Maritime Jurisdiction, Search warrants, search warrant returns. (1785 pages).

e.  Discovery Production #11 (originally produced by the government on March 31, 2023). The materials in this production included three extractions of Didani's iCloud account (283 Gigabytes), forensic extraction of Didani's cell phone seized in 2015 (18.1 Gigabytes), toll records, and the French MLAT request.

Because Didani's counsel did not have this material, Mr. Didani has not had an adequate opportunity to review it.

22.  At the conclusion of the meeting with Didani's counsel, the government indicated that it would provide these materials a second time.

23.  On August 1, 2024, the government re-produced this material on a hard drive provided by Didani's counsel. At Didani's counsel's direction, the government left the hard drive on the 20th Floor of the United States Attorney's Office for Didani's counsel to pick up.

24.  The government has also obtained additional discovery, including documents requested by the government from foreign nations pursuant to Mutual Legal Assistance Treaties: Dutch MLAT and return (831 Megabytes), and a Spain MLAT and return (767 Megabytes).

25.  On July 30, 2024, Didani's counsel filed a written motion to withdraw as counsel. (ECF No. 106). Citing the defendant's distrust of

counsel, and an unpleasant working relationship, Didani's counsel argued that there had been "a complete breakdown in the attorney-client relationship." (*Id*. at PageID.1242-43). Notably, in his motion, Didani's counsel reiterated the legal and factual complexities of this case and the voluminous amount of discovery. (*Id*.).

26.    The Court originally scheduled a hearing on Didani's counsel's motion to withdraw for August 21, 2024. (ECF No. 107, PageID1245). However, Didani's counsel was unavailable on that date and requested a new date.

27.    The Court's staff proposed a hearing date of August 28, 2024, but Didani's counsel was unavailable during the times proposed by the Court's staff because he was in a murder trial in Macomb County. As a result, the hearing was scheduled for September 4, 2024.

28.    On the morning of the hearing, Didani's counsel requested the government bring the hard drive that the government had made available on August 1, 2024.

29.    At the hearing, the Court granted Didani's counsel's motion to withdraw and Didani advised the Court that he wanted to represent himself. As a result, the government needed to review and remove material from the hard drive that was subject to the Parties' Stipulated Protective Order,

entered by the Court on July 22, 2022. (ECF No. 49). The government also

advised the Court that it was awaiting receipt of material from a United

Kingdom MLAT, that the United Kingdom has not yet provided due to an

ongoing criminal trial in Scotland.

30.     At the hearing, Didani's counsel agreed to act as standby

counsel until new standby counsel could be appointed or until the Court

decided whether to appoint Didani's counsel as permanent standby counsel.

31.     On September 6, 2024, the government advised Didani's

counsel via email that it had completed its review of the hard drive for

material that fell under the protective order. The government offered to

deliver the hard drive to Didani's counsel or leave it at United States

Attorney's Office for Didani's counsel to pick it up.

32.     On September 13, 2024, the government again emailed

Didani's counsel advising him that the hard drive was available. Didani's

counsel responded requesting that the government either mail the hard drive

to his office or send it directly to FCI Milan, where Didani is being held. On

September 16, 2024, the government mailed the hard drive to Didani's

counsel.

33.     On September 16, 2024, despite having withdrawn from

representing Didani due to a "complete breakdown in the attorney-client

relationship," Didani's counsel accepted the appointment as Didani's standby counsel.

34.     On September 24, 2024, Didani's standby counsel advised the government that he mailed the hard drive to Didani at FCI Milan. As of today's date, the government believes that Didani does not have the above-mentioned discovery materials. And as result, Didani has not had the opportunity to review the evidence the government intends to introduce against him.

35.     During the September 4, 2024, motion hearing, Didani claimed that the discovery that he did not have was duplicative. However, having not seen the discovery, Didani has no way of knowing whether it is duplicative. Furthermore, as described in the accompanying brief, the discovery material on the hard drive is not duplicative.

36.     Didani's claim at the motion hearing that he does not need to see the discovery materials calls into question his ability to adequately represent himself. Proceeding to trial without Didani having reviewed this material is not in the public or Didani's best interests.

37.     Securing the appearance of several international witnesses for trial has not been completed because this involves a two-step process, including the issuance of additional MLATs.

38.     At least one of the government's essential witnesses, including a foreign witness, is unavailable for the November 5, 2024 trial.

39.     Section 3161(h)(7)(A) of the Speedy Trial Act provides that any period of delay resulting from a continuance granted by the Court shall be excluded in computing the time in which a trial must commence if the Court finds that the ends of justice served by granting the continuance outweigh the best interest of the public and the defendant in a speedy trial.

40.     With the exception of the government's request to exclude time under 18 U.S.C. § 3292 to obtain evidence in a foreign country, a substantial portion of the prior delay has been the result of motions filed by Didani, requests by Didani's counsel for additional time to file motions and supplemental pleadings, and hearings on those motions. Throughout the pendency of the case, the government, recognizing the complexity of the issues presented in this case, has stipulated to every extension request made by Didani's counsel to allow Didani's counsel more time for effective preparation.

41.     Additional delay has been caused by failure of Didani's lead counsel to appear at a status conference; the time needed by the Court to decide several complex motions, and the time needed by the parties to adequately and effectively prepare for trial.

42.     On July 11, 2024, the Court determined that this case is a complex case within the meaning of 18 U.S.C. § 3161(h)(7)(B)(ii), due to the quantity of evidence, the complexity of the case, the nature of the prosecution, and the existence of novel questions of fact and law. (ECF No. 103). Furthermore, Didani's representation and more importantly, outstanding discovery remains unclear. It is therefore unreasonable to expect adequate preparation for pretrial proceedings and trial within the time limits of the Speedy Trial Act.

43.     In a prior order granting the government's motion to exclude periods of delay, the Court noted that "[t]he investigation took several years and the discovery includes multiple cell phone forensic extractions, over 10 iCloud extractions consisting of over 100,000 pages, thousands of pages of text messages, multiple recorded phone calls, hundreds of pages of investigative reports and documentary evidence, hundreds of pages of search warrant affidavits hundreds of photographs, multiple videos, and multiple laboratory reports. The Government's anticipated trial witnesses are located not just within this district, but in several states, Europe, and South America." (ECF No. 46, PageID.223-24).

44.     The government proposes that the November 5, 2024 trial date be adjourned approximately 90-120 days. The requested adjournment would allow the government and the foreign countries where witnesses are located, the time needed

to complete the MLAT process so the foreign witnesses can be secured for trial. The requested adjournment would also allow the government the time needed to make travel arrangements for these foreign witnesses.

45.   The requested adjournment would also allow Didani time needed to adequately review the voluminous discovery that is contained on the hard drive.

46.   Now that Didani is representing himself, there is also a need for the parties to agree to a revised protective order as it relates to *Jencks* material and material covered by the Parties' original protective order. The requested adjournment would allow parties the time needed to agree to a revised protective that would allow the government to provide *Jencks* and other material to Didani in advance of trial.

47.   For the reasons stated above, the ends of justice served by the delay from November 5, 2024, to the new trial to be set by the Court, outweigh the best interest in the public and the defendant in a speedy trial.

48.   Pursuant to EDMI Local Rule 7.1(a)(2)(D), concurrence in this motion has not been sought because the nonmovant is an incarcerated prisoner proceeding pro se.

WHEREFORE, the government requests that the Court enter an order adjourning the trial approximately 90-120 days; excluding the period of

delay from November 5, 2024, to the new trial date set by the Court, in computing when trial must commence under the Speedy Trial Act; and find that ends of justice served by the delay outweigh the best interest in the public and Didani in a speedy trial.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/Timothy P. McDonald*
Timothy P. McDonald
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
Phone: (313) 226-0221
timothy.mcdonald@usdoj.gov

*s/Mark Bilkovic*
Mark Bilkovic
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
Phone: (313) 226-9623
mark.bilkovic@usdoj.gov

Dated: September 25, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

CASE NO. 21-cr-20264

vs.

HON. DENISE PAGE HOOD

YLLI DIDANI,

Defendant.

---

**BRIEF IN SUPPORT OF GOVERNMENT'S MOTION TO ADJOURN TRIAL AND EXCLUDE PERIODS OF DELAY UNDER THE SPEEDY TRAL ACT**

---

The defendant, Ylli Didani, is charged in a superseding indictment with three counts: Count One, conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841 and 846; Count Two, conspiracy to possess with intent to distribute and distribute a controlled substance on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a) and 70506(b); and Count Three, conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). (ECF No. 38, PageID.153).

The government requests that the Court adjourn the trial scheduled for November 5, 2024, approximately 90-120 days. Pursuant to the Speedy Trial Act, 18 U.S.C § 3161, the government further requests that the Court exclude the period

from November 5, 2024, to the new trial date set by the Court, in computing when trial must commence. This delay is necessary to ensure the continuity of counsel, the availability of domestic and international witness, and to make certain, in light of the discovery issues described in detail below, that Didani and the government are adequately prepared for trial.

## I.   BACKGROUND

Since Didani's first appearance, he has filed several motions unrelated to the substantive charges against him. (ECF No. 14, PageID.25; ECF No. 21, PageID.59; ECF No. 97, PageID.1177; ECF No. 105, PageID.1233; ECF No. 106, PageID.1239).

Didani has also filed several substantive motions. (ECF No. 52, PageID.259; ECF No. 53, PageID.283; ECF No. 54, PageID.309). Count Two of the superseding indictment charges Didani with violating the Maritime Drug Law Enforcement Act (MDLEA). Because Didani is the first person charged with violating the MDLEA in this district, some of the motions filed by Didani and one motion filed by the government were novel to the parties and this Court. As a result, the government stipulated to four separate stipulations extending the time for Didani's counsels to file response briefs because they needed additional time. (ECF No. 67, PageID.487; ECF No. 68, PageID.489; ECF No. 71, PageID.508; ECF No. 73, PageID.526). Consequently, the filing of pleadings related to the

multiple complex motions, and subsequent hearings on those motions, resulted in considerable delay.

Recognizing the complexity of this case, the parties have entered into numerous stipulations seeking more time for effective preparation. Based on stipulations of the parties, the Court has entered several stipulated orders excluding delay under the Speedy Trial Act, including excluding delay through April 10, 2024. (ECF No. 92).

On April 17, 2024, the Court denied two defense motions to dismiss (ECF No. 52, ECF No. 54) and granted the government's motion for pretrial determination as to jurisdiction. (ECF No. 57). At a status conference on April 17, 2024, the parties agreed to continue the status conference to May 9, 2024, so they could discuss scheduling a trial date, and so defense counsel could have additional time to meet with Didani to determine whether to file additional motions.

On May 8, 2024, the Court entered an order denying defendant's motion to suppress evidence. (ECF No. 95). On May 9, 2024, the Court conducted a status conference. However, Didani's lead counsel did not appear. The Court rescheduled the status conference for May 22, 2022, and entered an order requiring all counsel of record appear. (ECF No. 96). On May 20, 2024, Didani's lead counsel filed a motion to withdraw, citing a breakdown in the attorney-client relationship. (ECF No. 97).

On May 22, 2024, all parties appeared for a status conference. At the status conference, the Court granted lead counsel's motion to withdraw (ECF No. 98) and granted remaining counsel's oral motion to be appointed to represent Didani. (ECF No. 99). At the status conference, Didani's counsel agreed that he would need several months to prepare for trial due the voluminous amount of discovery. The Court scheduled a trial date for October 8, 2024, and a backup trial date for November 5, 2024. (ECF No. 100).

On July 18, 2024, Didani's counsel and the government met. During the meeting, Didani's counsel notified the government that he could not locate or did not have several of the Government's prior Discovery Productions. Although the government had previously tendered this discovery, the government agreed to produce it again. The material counsel was missing is significant – both in quantity and relevance to the offenses described in the Superseding Indictment. A substantial portion of the evidence the government intends to admit in its case-in-chief was obtained from 14 search warrants of Didani's iCloud Account. While there is some overlap of evidence in these iCloud accounts, each of the 14 iCloud returns contained the latest data Didani uploaded to his iCloud, including, videos, photos, text messages, documents, email, etc. Didani does not have any of this evidence. In addition, among other items, Didani has not reviewed the forensic extractions from his cell phones, the entire panoply of SkyECC evidence, the

evidence from three MLATs, and materials from many of the seizures listed as overt acts in the Superseding Indictment.

Didani's remaining counsel filed a motion to withdraw on July 30, 2024, 12 days after meeting with the government regarding discovery. On August 1, 2024, the government notified Didani's counsel that the discovery was ready to be picked up. Having filed a motion to withdraw, Didani's counsel asked the government to bring the hard drive containing the discovery to the September 4, 2024, hearing on the motion to withdraw.

At the hearing, the Court granted counsel's motion to withdraw. The Court also granted Didani's oral motion to represent himself at trial. This compounded the discovery issues for several reasons. For starters, the hard drive that the government was going to provide Didani's counsel contained material that was subject to an earlier stipulated protective order that the Court entered on July 22, 2022. (ECF No. 49). However, because Didani no longer had counsel, the government needed to review and remove material from the hard drive that was subject to the Parties' Stipulated Protective Order. The government did so and on September 6, 2024, advised Didani's counsel (who agreed to act as standby counsel until permanent standby counsel could be appointed) via email that it had completed its review of the hard drive for material that fell under the protective order. The government offered to deliver the hard drive to Didani's counsel or

counsel could pick up the hard drive at the U.S. Attorney's Office. On September 13, 2024, the government again emailed Didani's counsel advising him that the hard drive was available. Didani's counsel responded requesting that the government either mail the hard drive to his office or send it directly to FDC Milan, where Didani is being held. On September 16, 2024, the government mailed the hard drive to Didani's counsel. On September 24, 2024, Didani's counsel advised the government that he mailed the hard drive to Didani at FCI Milan. And as of today, Didani still does not have, and has not reviewed this important and voluminous discovery.

Didani's self-representation also creates a significant issue with *Jencks* material. This investigation has direct ties to South American cartels and several of the government's witnesses are civilians. When Didani was being represented by counsel, the stipulated protective order provided safeguards that any protected material would not be allowed to remain in Didani's physical possession, but instead, would be provided to Didani's counsel. Didani's counsel could then review it with Didani but could not provide Didani with physical copies of the protected material.

While the government was initially willing to provide Didani's counsel *Jencks* material under the stipulated protective order 30 days prior to trial, now that Didani is representing himself, and because of the pending November 5, 2024, trial

date, this is no longer possible. Now that Didani's counsel has withdrawn, the parties need a revised protective order identifying the person or persons who will be able to review the *Jencks* material with Didani without leaving that material in Didani's possession. Furthermore, the extensive *Jencks* material combined with the government's lead counsel preparing for an upcoming murder for hire trial that begins October 16, 2024, the government cannot, and pursuant to 18 U.S.C. § 3500(a) and (b), is not required to furnish Didani with *Jencks* material prior to the November 5 trial date.

An adjournment of the trial date would allow the parties the time needed to agree to a revised protective order whereby Didani would have ample time to review the *Jencks* material but not retain it. An adjournment would also provide the government with the time needed to provide the necessary *Jencks* material to Didani pursuant to the revised protective order.

While Didani has decided to represent himself at trial, the issue of Didani's representation, or lack thereof, remains murky. First, the Court scheduled a hearing for October 8, 2024, to "inquire whether Didani intends to continue to self-represent at trial." (ECF No. 108, PageID. 1251). On September 6, 2024, this Court appointed the Federal Community Defender to represent Didani as standby counsel or permitted the appointment an attorney from the CJA panel if necessary. (ECF No. 109). On September 16, 2024, Attorney Wade Fink accepted the appointment

as standby counsel, which may create an appellate issue, given that Mr. Fink alleged in his motion to withdraw as Didani's counsel and the Court found in its order granting the motion, that there was a "complete breakdown of the Attorney/Client relationship" between Didani and Mr. Fink. The government believes that the Court should further inquire into this apparent conflict before allowing Mr. Fink to proceed as Didani's standby counsel at trial.

Several of the government's witnesses are from Spain and the Netherlands and it necessary to provide a firm trial date to these witnesses to secure their testimony. While the government previously sought and obtained information from both of these countries via MLAT, the government is now required to first consult with each foreign witness to ensure their availability and then obtain a separate MLAT to secure the trial testimony of these witnesses. The government has begun this process, but the MLAT may not be approved for these witnesses prior to the November 5, 2024 trial date to timely secure their attendance. Although Didani's trial has been scheduled since May 22, 2024, the unforeseen, intervening events described in this brief have created uncertainty in the November 5, 2024 trial date and caused the government to delay making the arrangements for these witnesses.

A 90-120 day adjournment would provide the time needed to finalize the MLAT process; it would provide the time needed for the witnesses to obtain necessary travel documents; and would provide the time needed to arrange

transportation for these witnesses.

With Didani representing himself, the government now expects the trial to take 8-10 weeks. If trial begins November 5, 2024, that 8-10 weeks will be extended by several additional weeks due to the Thanksgiving, Christmas, and New Year's holidays. Conducting a lengthy trial during this period will also make it much more difficult to seat a jury as a large number of people in the juror pool will undoubtably have vacations and other obligations during this period. Adjourning the trial approximately 90-120 days eliminates these concerns and allows the parties the time needed to adequately prepare for trial.

Next, lead counsel for the government is schedule to begin a federal murder-for-hire trial on October 16, 2024, before U.S. District Court Judge Terrence Berg (*United States v. James Deshawn Williams*, Case No. 18-cr-20547). The trial is expected to last approximately two weeks (excluding jury deliberations). The subject matter of this trial is also complex as it involves a murder for hire that occurred in 2016. In that case, the government expects to call approximately 25 witnesses and introduce approximately 100 exhibits. As a result, lead counsel for the government will be unable to properly interview and prepare witnesses in this case, timely file expert notices, review and disclose *Jencks* material, and otherwise adequately prepare for trial.

Finally, one of the government's essential domestic witnesses is not

available for the November 5, 2024 trial. Farmington Hills Officer Brandon Leach

is the officer-in-charge of two Assault With Intent to Murder trials scheduled to

commence in Oakland County on October 28, 2024 (*People v. Jeremy Stephen*

*Hope Taylor*, Case No. 2023-285274-FC, Judge Yasmine Poles) and on October

29, 2024 (*People v. Curtis Leroy Washington, Jr.,* Case No. 2023-287242-FC,

Judge Kwame L. Rowe).

## II.   ARGUMENT

### A. The Speedy Trial Act

Under the Speedy Trial Act, a defendant must be brought to trial within

seventy days of his initial appearance on the indictment. 18 U.S.C. § 3161(c)(1).

But there are certain periods of delay that are excluded from the time period. 18

U.S.C. § 3161(h). These delays include those resulting from "any pretrial motions"

(18 U.S.C. § 3161(h)(1)(D)), and witness unavailability (18 U.S.C. §

3161(h)(3)(A)). These delays are automatically excludable and require no findings

by the district court. *Henderson v. United States*, 476 U.S. 321, 327 (1986); *Bloate*

*v. United St*ates, 130 S.Ct. 1345, 1351 (2010); *United States v. Robinson*, 887 F.2d

651, 656-58 (6th Cir. 1989); *see also Untied States v. O'Connor*, 656 F.3d 630, 642

(7th Cir. 2011) ("In contrast to the ends-of-justice continuances, however, periods

of delay excludable under § 3161(h)(1)-(6) may be automatically excluded if the

specified conditions are present; no ends-of-justice balancing by the court is necessary because the balance has already been struck by Congress.").

In addition, the Speedy Trial Act's "ends of justice" provision permits the district court to exclude delays resulting from continuances granted "on the basis of [the judge's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Factors for the court to consider include whether the delay would permit the defendant and the government "continuity of counsel" and "effective preparation." 18 U.S.C. § 3161(h)(7)(B)(iv).

 "[T]he district court must consider certain statutory factors: whether the failure to grant a continuance would result in a miscarriage of justice or make continuation of the proceeding impossible; whether the case's unusual nature or complexity requires extra time for preparation; whether there is a delay in filing the indictment because of timing or complex or unusual facts; and whether the failure to grant a continuance would deny the defendant reasonable time to obtain counsel, unreasonably deny a party continuity of counsel, or deny a party reasonable time necessary for effective preparation. 18 U.S.C. § 3161(h)(7)(B). Next—but still before granting the continuance—the district court must make findings, even "if only in the judge's mind," that the ends of justice would be served by a continuance and would outweigh the defendant's and public's interests in a speedy trial. *United*

*States v. Brown*, 100 F.4th 703, 712 (6th Cir. 2024) (citing *Zedner v United States*, 547 U.S. 489, 506-07 (2006).

### B.  The trial should be adjourned and the delay found to be excludable

An adjournment is necessary to ensure that the government has continuity of counsel, and that counsel has reasonable time for effective preparation. Lead counsel for the government has a federal murder-for-hire trial scheduled to begin on October 16, 2024, that may bleed into this Court's current trial schedule. The Speedy Trial Act asks this Court to consider "whether the failure to grant such a continuance . . . would unreasonably deny the defendant or the Government continuity of counsel" or "would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation." 18 U.S.C. § 3161(h)(7)(B)(iv).

An adjournment is also required so that Didani, particularly if he continues to self-represent, can adequately prepare for trial. *See United States v. Nwoke*, 2020 WL 3044817 *3 (E.D. Mich., August 2, 2020) (J. Denise Page Hood) (finding that the goal of discovery in criminal trials is to ensure fair and thorough determination of a defendant's guilt or innocence) and *United States v. Nwoke*, 2020 WL 674345 *4 (E.D. Mich., February 11, 2020) (J. Denise Page Hood) (finding an adjournment of trial is appropriate where defendant had not received discovery and therefore could not adequately prepare for trial). Although Didani has received

some discovery, he is missing, among other items, hundreds of gigabytes of electronic evidence. For perspective, a single Gigabyte can store 1000 high quality photos, 42 minutes of video, 16 hours of music, or 384 eBooks. https://usefoyer.com/how-big-is/1GB. A single Netflix movie may contain 4 Gigabytes of memory and most smart phones store 64 or 128 Gigabytes. https://www.lifewire.com/terabytes-gigabytes-amp-petabytes-how-big-are-they-4125169. Didani has yet to review at least <u>800 Gigabytes</u> of material.

Didani's claim at the motion hearing that he does not need to see these materials calls into question his ability to adequately represent himself. This material is extremely damaging to Didani. The first time he views it should not when it is introduced against him during trial. In the government's view, proceeding to trial under these circumstances is not in the public or Didani's best interests. At the very least, Didani should be provided an adequate opportunity to review the material, which he cannot do under the time constraints of the November 5, 2024 trial date. However, a 90-120 day adjournment would allow him the time to do so.

Furthermore, just three months ago, at the government's request, the Court designated this a complex case within the meaning of 18 U.S.C. § 3161(h)(7)(B)(ii). (ECF No. 103). Didani is the first person charged in this district with violating the MDLEA. As the Court knows from the briefing in this case, the

MDLEA is a complex area of law. This case is a complex case due to the nature of the prosecution, and the existence of novel questions of fact and law to the parties and the Court. It is therefore unreasonable to expect adequate preparation for trial within the time limits of the Speedy Trial Act.

The case is complex even more so here, due to extensive amount of discovery. The investigation of Didani took several years. The discovery includes multiple cell phone forensic extractions, at least 14 iCloud extractions consisting of over 100,000 pages, thousands of pages of text messages, multiple recorded phone calls, hundreds of pages of investigative reports and documentary evidence, hundreds of pages of search warrant affidavits, hundreds of photographs, multiple videos, and multiple laboratory reports. The government's anticipated trial witnesses are located not just within this district, but in several states, Europe, and South America.

An adjournment is also necessary to ensure that the government's witnesses are available. The current trial schedule November 5, 2024, is scheduled on days that an essential government witness is not available. The Speedy Trial Act states that delay resulting from the unavailability of witnesses is excludable delay. 18 U.S.C. § 3161(h)(3)(A).

The ends of justice served by an additional 90-120 day delay outweighs the best interest of the public and Didani in a speedy trial. While the government

recognizes that Didani has been in custody for several years and that he wishes to proceed to trial right away, it is not in his best interest to proceed to trial when he has not had adequate time to effectively prepare. It is also not in the public's best interest to have this matter proceed to trial before Didani and the government have had an adequate opportunity to prepare. Furthermore, proceeding to trial before Didani has had an adequate opportunity to prepare could very well result in this case having to be retried.

The continuity of counsel, the large volume of discovery materials, the unavailability of at least one witness, including a foreign witness, the steps needed to secure international witnesses, and the time needed for Didani to review yet-to-be delivered, voluminous evidence are appropriate reasons to order an ends of justice continuance. *United States v. Stone,* 461 Fed. Appx. 461, 464-466 (6th Cir. 2012).

## III.   CONCLUSION

The government requests that the Court adjourn the November 5, 2024 trial date approximately 90-120 days and enter an order excluding the period of delay from November 5, 2024 to the new trial date set by the Court, in computing when trial must commence under the Speedy Trial Act and find that ends of justice served by the delay outweigh the best interest in the public and Didani in a speedy trial.

Respectfully submitted,

DAWN N. ISON
United States Attorney


<u>*s/Timothy P. McDonald*</u>
Timothy P. McDonald
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
Phone: (313) 226-0221
timothy.mcdonald@usdoj.gov

Dated: September 25, 2024

<u>*s/Mark Bilkovic*</u>
Mark Bilkovic
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
Phone: (313) 226-9623
mark.bilkovic@usdoj.gov