UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

          Plaintiff,          CASE NO. 21-cr-20264

vs.          HON. DENISE PAGE HOOD

YLLI DIDANI,

          Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S RENEWED MOTION FOR PRETRIAL RELEASE.**

The Defendant, Ylli Didani is scheduled for trial on February 11, 2025. On July 15, 2022, the Court denied Didani's oral motion for pretrial release finding that he was a serious risk of flight and danger to the community. (ECF No. 47, Page ID. 230, 237). Didani has again moved for pretrial release. However, he remains a serious flight risk and danger to the community. Pretrial Services concurs and believes that there is no condition or combination of conditions that will reasonably assure Didani's appearance as required and the safety of the community. Therefore, Didani's motion should be denied.

**I. BACKGROUND**

On March 31, 2021, Didani was arrested on a criminal complaint charging him with three counts: (1) conspiracy to distribute controlled substances in

1

violation 21 U.S.C. §§ 841 and 846; (2) conspiracy to distribute controlled substances on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. § 70503; and (3) money laundering in violation of 18 U.S.C. § 1956(a). (ECF No. 1, PageID.1). Didani was arrested at the Charlotte Douglas International Airport in Charlotte, North Carolina after arriving on a flight from the Dominican Republic.

Following his arrest, Didani was interviewed by Pretrial Services in North Carolina. Based on his risk of nonappearance and his risk of danger, Pretrial Services recommended that Didani be detained. On the same date, Didani appeared before a United States Magistrate in the Western District of North Carolina and waived his right to a removal hearing, agreeing to have his case transferred to this district.  (21-mj-30148, ECF No. 4-1, PageID.35).

On April 21, 2021, a grand jury in this district returned a one-count indictment charging Didani with conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841 and 846. (ECF No. 1, PageID.1-6). On the same day, Didani made his initial appearance in this district and was temporarily detained. Didani was interviewed by Pretrial Services in this district but midway through the interview, Didani requested that counsel be present, so the interview ended. Subsequently, Didani's counsel advised Pretrial Services that Didani declined to be interviewed further.

On April 28, 2021, Pretrial Services in this district prepared an addendum to the North Carolina report agreeing with Pretrial Services in North Carolina that Didani posed a risk of nonappearance, a risk of danger, and that he should be detained. On April 28, 2021, Didani was arraigned on the indictment and consented to detention. (ECF No. 13, PageID.24).

On March 16, 2022, a grand jury returned a three-count superseding indictment charging Didani with two additional counts – Count Two: conspiracy to possess with intent to distribute and distribute a controlled substance on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a) and 70506(b); and Count Three: conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). (ECF No. 38, PageID.153-174).

On March 29, 2022, Didani made an oral motion for pretrial release, which this Court denied. (ECF No. 47). During the course of the case, Didani has filed several motions, some of which required evidentiary hearings. (ECF No. 14, 52, 53, 54). Didani's attorneys have also filed several motions to withdraw as counsel. (ECF No. 21, 97, 106). The parties have also agreed to several continuances. (ECF No. 50, 84, 88, 92). At a status conference on October 9, 2024, Didani made an oral motion for pretrial release. Pretrial Services subsequently interviewed Didani and on November 15, 2022, provided an updated Pretrial Services Report to the government. A jury trial is scheduled for February 11, 2025.

## II. FACTS

The government incorporates by reference the factual background contained in its previously filed response to Didani's oral motion to revoke order of detention. (ECF No. 42, PageID.184-194). These facts are merely the tip of the iceberg when it comes to Didani's vast drug dealing and money laundering.

For example, in addition to the multiple conversations detailing payments of large amounts of cash utilizing international money laundering organizations and the "token" method as described in the government's prior response to Didani's motion for pretrial release (ECF No. 42, PageID.188-191), Didani's iCloud and cell phone contained many more photographs depicting large amounts of currency, including the following screenshot depicting a large amount of foreign currency with a note that read, "31/3/2020 PML Coronavirus CA$H":



During the investigation, agents learned that "PML" was a moniker that Didani and two of his coconspirators used. The "P" stands for "Pancho" or "Panco," which were nicknames Didani used. The "M" stands for "Mefi," which is a nickname of a known coconspirator. And the "L" stands for "Loma," which is a nickname of another known coconspirator. At times, members of the conspiracy would also have their kilos of cocaine individually "stamped" to identify whose cocaine was in the shipment, as evidence by the following photographs located in Didani's iCloud account:




In the above photographs, the cocaine was stamped with the initials "PMLN," which agents learned stood for Panco (Didani), Mefi, Loma, and "Naughty," another known coconspirator.[1]

## III. ARGUMENT

### A. Bail Reform Act of 1984

The Bail Reform Act governs release or detention determinations in federal criminal proceedings. 18 U.S.C. §§ 3141-3150. It allows courts to detain a defendant pending trial under two circumstances. First, if the government proves by a preponderance of the evidence that the defendant poses a risk of flight such that no condition or combination of conditions will reasonably assure the defendant's appearance at future court hearings. 18 U.S.C. § 3142(e); and second, if the government demonstrates by clear and convincing evidence that no set of conditions of release will reasonably ensure the safety of the community, 18 U.S.C. §§ 3142(e) and(f).

Additionally, there is a rebuttable presumption in favor of detention where a defendant has been indicted for an offense under the Controlled Substances Act if the maximum term of imprisonment is 10 years or more. (18 U.S.C. § 3142(e)(3)(A). "This presumption represents the belief of Congress that in the

---

[1] Agents have identified the government names for "Mefi," "Loma," and "Naughty." However, because these individuals have not yet been charged, the government is not referring to them by their government names in this pleading.

6

majority of Controlled Substance Act offenses, there is an increased risk of flight or danger to the community, and in particular, the danger that the defendant will resume drug trafficking activities while released." *United States v. Williams*, 948 F.Supp. 692, 693 (E.D. Mich. 1996).

Accordingly, because Count One and Two carry a maximum term of imprisonment of up to life, Didani is presumed to be a flight risk and a danger to the community. This presumption imposes on Didani the "burden of production" to show that he does not pose a risk of flight and that he is not a danger to the community. As was the case in 2022 when he moved for pretrial release, Didani has failed to rebut this presumption.

### B. 18 U.S.C. § 3142(g) Factors

Keeping the unrebutted presumption in mind, in deciding whether to detain a defendant, the Court is required to review the factors outlined in 18 U.S.C. § 3142(g). The factors are: (1) the nature and circumstances of the offense charged, including whether the offense involves a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). A review of those factors demonstrates by a preponderance of the evidence that Didani is a flight risk and by clear and convincing evidence that he is a danger to the community.

### 1. The nature and circumstances of Didani's offenses.

Didani led a vast cocaine distribution conspiracy that began in this District and expanded into a far-reaching maritime drug smuggling network. This conspiracy was responsible for the shipment of thousands, if not tens of thousands, of kilograms of cocaine worth hundreds of millions of dollars. This conspiracy generated millions of dollars in proceeds which Didani cleaned using a sophisticated Money Laundering Organization based in the United Arab Emirates. The quantity of drugs sold by Didani, combined with his criminal history, likely results in a guideline range of 360 months to life – which provides ample reason from him to flee if released. See *United States v. Townsend*, 892 F. 2d 989, 995 (9th Cir. 1990) (potential punishment that may be imposed if convicted is a consideration whether defendant is a risk of nonappearance if released on bond).

The nature and circumstances of the charged offenses have not changed since Didani's last motion for pretrial release, and they continue to weigh heavily in favor of continued detention.

### 2. The weight of the evidence against Didani.

The weight of the evidence against Didani likewise establishes that release is inappropriate. "Section 3142(g)(2) considers weight of the evidence of dangerousness, not the weight of the evidence of defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). The Sixth Circuit "routinely affirms,

8

on dangerousness grounds, the pretrial detention of run-of-the-mill drug dealers, even without any indication that the defendant is engaged in violence…To be sure, drug trafficking is a serious offense that, in itself poses a danger to the community." *Id.* at 955. Didani is not a 'run-of-the-mill' drug dealer. He led a vast international drug conspiracy that trafficked in thousands of kilograms of cocaine and that utilized armored vehicles and bulletproof jackets for their own protection.

Narcotics trafficking alone poses a danger to the community, but that danger is magnified by the scope of Didani's involvement in this conspiracy, the quantity of the drugs that he was distributing and his leadership role in the conspiracy. The dangerousness of his conduct cannot be overstated. An evaluation of dangerousness requires a comprehensive view of community safety—"a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam) (evaluating dangerousness of defendant in a drug case in connection with pretrial release).

### 3. Didani's history and characteristics.

Didani's history and characteristics, which includes a review of his past conduct, ties to the district, employment, history relating to drug or alcohol abuse, and criminal history, also favor continued detention.

*No ties to the Eastern District of Michigan.* According to the most recent Pretrial Services Report, Didani continues to have no ties to this district.

Furthermore, Didani told Pretrial Services that he resided with his parents in Illinois from 2016 until he was arrested in 2021, and that if released, he would continue to live in Illinois with his parents. This is demonstrably false. At the time of his arrest, Didani was living lavishly in the Dominican Republic and Ecuador.

Furthermore, travel records verify that prior to his arrest, Didani had not travelled to the United States since December 2019. And this wasn't because he couldn't travel. Between February 2019 to when he was arrested in March 2021, Didani travelled the globe to facilitate his drug trafficking business. During this time, he travelled to multiple countries, including Spain, Turkey, France, and the United Arab Emirates, the home base of the Money Laundering Organizations that funded Didani.

Didani's continued lack of ties to this district and his extensive history of international residence and travel, raise serious concerns that Didani will flee if released on bond. The government also has great concern that Didani would be able to secure the financial resources needed to flee the jurisdiction. Didani's drug trafficking made him millions of dollars, which he kept in foreign countries. The government has been unable to recover the great majority of Didani's drug proceeds. Furthermore, while incarcerated, Didani has attempted to contact foreign based coconspirators in an attempt to obtain some of the large amounts of cash he made distributing cocaine and have it delivered to the United States.

While Didani claims that he would reside with his parents in Illinois if released, the government reminds the Court that there is evidence that Didani's father was aware of some of Didani's criminal activities. For example, two days after the April 2020 seizure of 1000 kilograms in the Netherlands (described above), Didani sent a text message to his father that contained a screenshot of an online news article that described the cocaine seizure:



Didani has also sent his father several photographs depicting large amounts of cash including the following photograph Didani sent in September 2019 depicting Didani sitting next to a large amount of banded bulk currency:



Electronic monitoring of Didani would also not ensure his appearance at future court hearings is unpersuasive. Unlike most defendants, Didani has access to MLOs, large amounts of cash, and private aircraft. It would take seconds for Didani to remove a tether, access his extensive cash and private airplanes, and flee the United States.

*Employment*. When Didani was interviewed by Pretrial Services following his arrest in 2021, he declined to provide employment history. He now claims that at the time of his arrest, he was self-employed by U.S. Mineral based in Albania, and had been so since 2012 and that the business was seized. However, he was unable to provide any further information about the company to Pretrial Services. Didani was not able to provide further information about U.S. Mineral because he had no legitimate employment. Instead, he was a cocaine trafficker.

*Criminal History*. Didani's abysmal criminal history and a record of not appearing in court is thoroughly documented in the updated Pretrial Services Report.

Didani's history and characteristics, including his criminal record, his record of non-appearance, his history of substance abuse, as evidenced by his multiple convictions for drunk driving, and his lack of legal employment, combined with the other factors, weigh heavily in favor of continued detention.

4. **The nature and seriousness of the danger to any person or the community that would be posed by Didani's release**

Didani conspired with international drug traffickers to distribute cocaine and launder the proceeds. There is also substantial evidence in Didani's iCloud and cell phone download that he has ready access to and has repeatedly possessed firearms. Coupled with his criminal history, Didani's release poses a danger the community.

## IV. CONCLUSION

The above factors overwhelmingly demonstrate that Didani should remain detained because he is a flight risk and a danger to the community. If Didani is convicted, his guideline range is 360 months to life, with a mandatory minimum prison sentence of 10 years, making his incentive to flee substantial. There is no condition or combination of conditions that can reasonably assure Didani's future appearance. Nor is there a condition or combination of conditions that would protect the public from Didani. The Government requests that Didani remain detained, and his motion be denied.

Respectfully submitted,

DAWN N. ISON
United States Attorney


*s/Mark Bilkovic*
Mark Bilkovic
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9623
mark.bilkovic@usdoj.gov

*s/Timothy P. McDonald*
Timothy P. McDonald
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0221
timothy.mcdonald@usdoj.gov


Dated: November 22, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on Friday, November 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties. In addition, I caused a copy of this response to be mailed to:

Ylli Didani
Register No. 37630-509
FCI Milan
Federal Correctional Institution
P.O. Box 1000
Milan, MI 48160

s/Mark Bilkovic
Mark Bilkovic
Assistant United States Attorney
