# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

YLLI DIDANI,

     Defendant.

Case No. 21-20264

Hon. Denise Page Hood

---

| | |
|---|---|
| Mark Bilkovic (P48855)<br>Timothy P. McDonald<br>Assistant United States Attorneys<br>211 W. Fort St., Ste. 2001<br>Detroit, MI 48226<br>(313) 226-9623<br>mark.bilkovic@usdoj.gov<br>Timothy.mcdonald@usdoj.gov<br>*Attorneys for the United States* | Ylli Didani<br>PRO SE DEFENDANT<br>FDC Milan<br>4004 Arkona Road<br>Milan, MI 48160<br><br>Wade G. Fink (P78751)<br>WADE FINK LAW, P.C.<br>550 W. Merrill St Suite 100<br>Birmingham, MI 48009<br>(248) 712-1054<br>wade@wadefinklaw.com<br>*Standby Counsel Only* |

---

## DEFENDANT'S EXHIBIT TO MOTION

Article 5

Operations in International Waters

1.Authority to Board Suspect Vessels. Whenever the law enforcement officials of one Party ("the requesting Party") encounter a suspect vessel claiming the nationality of the other Party ("the requested Party") located in international waters, the requesting Party may request that the law enforcement authority of the requested Party:

(a) confirm the claim of nationality of the requested Party; and

-3-

(b)if such claim is confirmed:

(i)authorize the boarding and the search of the suspect vessel, cargo and the persons found on board by law enforcement officials of the requesting Party; and

(ii)if evidence of illicit traffic in narcotic drugs and psychotropic substances is found, authorize the law enforcement officials of the requesting Party to detain the vessel, cargo and persons on board pending instructions from the law enforcement

1

authorities of the requested Party as to the exercise of jurisdiction in accordance with the Article 6 of this Agreement.

2. Content of Requests. Each request should contain the name of the suspect vessel, the basis for the suspicion (including all facts and other information on which the suspicion is based), the geographic position of the vessel, the registration number if available, home port, the port of origin and destination, and any other identifying information. If a request is conveyed orally, the requesting Party shall confirm the request in writing as soon as possible.

3. Responding to Requests.

or

(a) if the nationality is verified, the requested Party may;

(i) decide to conduct the boarding and search with its own law enforcement officials;

(ii) authorize the boarding and search by the law enforcement officials of the requesting Party;

(iii) decide to conduct the boarding and search together with the requesting Party

(iv) deny permission to board and search

(b)The requested Party shall answer requests made for the verification of nationality within four (4) hours of the receipt of such requests.

(c) if the nationality is not verified within four (4) hours. the requested Party may:

(i) nevertheless authorize the boarding and the search by the law enforcement of requesting Party, or

(ii) refute the claim of the suspect vessel to its nationality

(d)if there is no acknowledgement or response to a written request pursuant to paragraph 2 from the requested Party within four (4) hours of its receipt of the request, the

-4-

requesting Party will be deemed to have been authorized to board the suspect vessel for the purpose of inspecting the vessels documents, questioning the persons on board, and searching the vessel to determine if it is engaged in illicit traffic.

4.Right to Visit. Notwithstanding the foregoing paragraphs of the Article, this Agreement authorizes the law enforcement officials of one Party ("the first Party") to board suspect vessels located in international waters claiming nationality in the other Party but that are not flying the flag of the other Party, are not displaying any

marks of its registration or nationality, and claiming to have no documentation. if documentation or other physical evidence of nationality is located, then the foregoing paragraphs of this Article apply.

5. Use of Force. The authorization to board, search and detain includes the authority to use such force as may be necessary in accordance with Article 10 of this Agreement.

6. Shipboarding Otherwise in accordance with International law. Except as expressly provided herein, this Agreement does not apply to or limit hoardings of vessels, conducted by either Party in accordance with international law in international waters, whether based, inter alia, on the right of visit, the rendering of assistance to persons, vessels, and property in distress or peril, the consent of the vessel master, or an authorization from the flag State to take law enforcement action.

Article 6

Jurisdiction over detained Vessels

1.Limitations. Neither Party shall undertake the exercise of jurisdiction and performance of functions in the territory of the other Party.

4

2.Waiver of Rights. In all cases arising pursuant to this agreement concerning vessels having the nationality of a Party in International Waters, that Party ("the first Party") shall have the right to exercise jurisdiction over a detained vessel, cargo and/or persons on board (including seizure, forfeiture, arrest, and prosecution), provided, however, the first Party may, subject to its Constitution and laws, waive its right to exercise jurisdictions and authorize the enforcement of the other Party's Law against the vessel, cargo and/or persons on board.

3. Contiguous Zone. In cases arising in the contiguous zone of a Party, not involving suspect vessels fleeing from the waters of that Party or suspect vessels having the nationality of that Party, in which both Parties have the authority to exercise jurisdiction to prosecute , the Party which conducts the boarding and search shall have the right to exercise jurisdiction.

4. Request to Waive Jurisdiction. If the evidence so warrants , the other Party my request that the first Party waive jurisdiction.

5. Instructions as to the exercise of jurisdiction pursuant to this Agreement shall be given without delay.

-5-

6. Form of Waiver. A waiver of jurisdiction may be granted verbally, but as soon as possible , it shall be recorded in a written note from the competent authority and be processed through the diplomatic authorities, without prejudice to the immediate exercise of jurisdiction over the suspect vessel by the other Part

Date: January 8, 2025                          Respectfully Submitted,

/s/ Ylli Didani (with permission WGF)

PRO SE DEFENDANT
FDC Milan
4004 Arkona Road
Milan, MI 48160

## **CERTIFICATE OF SERVICE**

On January 8, 2025, standby counsel, who signs below, filed the foregoing using the Court's e-filing system, which will send notice of same to all parties of record. Standby counsel filed this way at the direction of the Clerk's Office regarding Defendant's pro se status and its preference for future filings.

/s/ Wade G. Fink

6

C   615

**L-EWWEL SKEDA**
**(Artikolu 2)**

**AGREEMENT**
**BETWEEN**
**THE GOVERNMENT OF MALTA**
**AND**
**THE GOVERNMENT OF THE UNITED STATES OF AMERICA**
**CONCERNING COOPERATION TO SUPPRESS THE PROLIFERATION OF**
**WEAPONS OF MASS DESTRUCTION, THEIR DELIVERY SYSTEMS,**
**AND RELATED MATERIALS BY SEA**

The Government of Malta and the Government of the United States of America, (hereinafter, "the Parties");

**Deeply concerned** about the proliferation of weapons of mass destruction (WMD), their delivery systems, and related materials, particularly by sea, as well as the risk that these may fall into the hands of terrorists;

**Recalling** the 31 January 1992 United Nations Security Council Presidential statement that proliferation of all WMD constitutes a threat to international peace and security, and underlines the need for Member States of the UN to prevent proliferation;

**Also recalling** United Nations Security Council Resolution 1540 (2004), which calls on all States, in accordance with their national legal authorities and legislations and consistent with international law, to take cooperative action to prevent illicit trafficking in nuclear, chemical or biological weapons, their means of delivery, and related materials;

**Recalling further** the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on their Destruction, done at Paris 13 January 1993; the Treaty on Nonproliferation of Nuclear Weapons, done at Washington, London and Moscow 1 July

7

C   616

1968; and the Convention on the Prohibition of the Development, Production and Stockpiling of Bacteriological (Biological) and Toxin Weapons and on their Destruction, done at Washington, London and Moscow 10 April 1972;

**Further recalling** the International Ship and Port Facility Security Code, adopted by the International Maritime Organization (IMO) on 12 December 2002;

**Acknowledging** the widespread consensus that proliferation and terrorism seriously threaten international peace and security;
**Convinced** that trafficking in these items by States and non-state actors of proliferation concern must be stopped;

**Guided** by the Statement of Interdiction Principles for the Proliferation Security Initiative;

**Inspired** by the efforts of the IMO to improve the effectiveness of the Convention for the Suppression of Unlawful Acts against the Safety of Maritime Navigation, done at Rome 10 March 1988;

**Reaffirming the importance of** customary international law of the sea as reflected in the 1982 United Nations Convention on the Law of the Sea;

**Committed** to cooperation to stop the flow by sea of WMD, their delivery systems, and related materials to or from States or non-state actors of proliferation concern;

Have agreed as follows:

8

C   617

## Article 1
## Object, Purpose and Scope

1.    The object and purpose of this Agreement is to promote cooperation between the Parties to enable them to prevent the transportation by sea of items of proliferation concern.

2.    The Parties shall carry out their obligations and responsibilities under this Agreement in a manner consistent with the principles of international law pertaining to the sovereign equality and territorial integrity of States and freedom of navigation, on the basis of the principle of reciprocity.

3.    The Parties shall cooperate to the fullest extent possible, subject to the availability of resources and in compliance with their respective laws.

## Article 2
## Definitions

For the purposes of this Agreement, unless the context otherwise requires:

1.    "Proliferation by sea" means the transportation by ship of weapons of mass destruction, their delivery systems, and related materials to or from States or non-state actors of proliferation concern.

2.    "Weapons of mass destruction" (WMD) means nuclear, chemical, biological and radiological weapons.

3.    "Related materials" means materials, equipment and technology, of whatever nature or type, that are related to and destined for use in the development, production, utilization or delivery of WMD.

4.    "Items of proliferation concern" means WMD, their delivery systems, and related materials.

5.    "States or non-state actors of proliferation concern" means those countries or entities whose activities should be impeded or stopped because they are or are believed to be engaged in: (1) efforts to develop or acquire WMD or their delivery systems; or (2) trafficking (either selling, receiving, or facilitating) of WMD, their delivery systems, or related materials.

9

C   618

6.    "Security Force Officials" means for:

     a.    the United States, uniformed or otherwise clearly identifiable members of the United States Coast Guard and the United States Navy, who may be accompanied by clearly identifiable law enforcement officials of the Departments of Homeland Security and Justice, and other clearly identifiable officials duly authorized by the Government of the United States of America and notified to the Competent Authority of the Government of Malta; and

     b.    Malta, uniformed or otherwise clearly identifiable members of the Armed Forces of Malta, the Malta Police Force and the Department of Customs, and other clearly identifiable officials duly authorized by the Government of Malta and notified to the Competent Authority of the United States.

7.    "Security Force vessels" means warships and other vessels of the Parties, or of third States as may be authorized in accordance with Articles 5 and 9 of this Agreement, on which Security Force Officials of either or both Parties may be embarked, clearly marked and identifiable as being on government non-commercial service and authorized to that effect, including any vessel and aircraft embarked on or supporting such vessels.

8.    "Suspect vessel" means a vessel used for commercial or private purposes in respect  of which there are reasonable grounds to suspect it is engaged in proliferation by sea, as determined pursuant to Article 5 of this Agreement.

9.    "International waters" means all parts of the sea not included in the territorial sea, internal waters and archipelagic waters of a State, consistent with International law.

10.  "Competent Authority" means for the United States, the Commandant of the United States Coast Guard (including any officer designated by the Commandant to perform such functions), and for Malta, the Commander of the Armed Forces of Malta (including any officer designated by the Commander to perform such functions).

C  619

## Article 3
## Cases of Suspected Vessels

1.   Subject to paragraph 2 of this Article, operations to suppress proliferation by sea pursuant to  this Agreement shall be carried out only against suspect vessels:

   a.  having the nationality of one of the Parties and entitled to fly its flag, or

   b.   registered under the law of one of the Parties under a bareboat charter, notwithstanding an underlying registration in another State not Party to this Agreement, or

   c.  without nationality or assimilated to vessels without nationality.

2.   Such operations shall not be carried out under this Agreement against vessels registered under the law of one of the Parties while bareboat chartered in another State not party to this Agreement.

## Article 4
## Operations in and over National Waters

This Agreement does not authorize the conduct of operations to suppress proliferation by sea by one Party in and over the waters of  the other Party.

## Article 5
## Operations in International Waters

1.   Authority to Board Suspect Vessels. Whenever the Security Force Officials of one Party ("the requesting Party") encounter a suspect vessel claiming nationality in the other Party ("the requested Party") located in international waters, the requesting Party may request through the Competent Authority of the requested Party, that it:

   a.  confirm the claim of nationality of the suspect vessel; and

   b.  if nationality is confirmed:

C   620

    i.  authorise the boarding and search of the suspect vessel, cargo, and persons found on board by Security Force Officials of the requesting Party; and

    ii. if evidence of proliferation is found, authorize the Security Force Officials of the requesting Party to detain the vessel, as well as items and persons on board, pending instructions conveyed through the Competent Authority of the requested Party as to the actions the requesting Party is permitted to take concerning such items, persons and vessels.

Each authorization to act shall be in writing between the Competent Authorities. Nevertheless, in urgent circumstances, an authorization to act may be granted orally by the Competent Authority of the requested Party. An oral authorization to act shall be confirmed in writing forthwith by the Competent Authority.

2.    Contents of Requests. Each request should be in writing and contain the name of the suspect vessel, sufficiently reliable information forming the basis for the suspicion, the geographic position of the vessel, the IMO number if available, the homeport, the port of origin and destination, and any other identifying information. Nevertheless, in urgent circumstances, a request may be made orally, but shall be confirmed in writing forthwith.

The requested Party shall acknowledge to the Competent Authority of the requesting Party in writing, by e-mail or by facsimile, its receipt of any written or urgent oral request immediately upon receiving it.

3.    Responding to Requests

    a.  If the nationality is verified and the requested Party is satisfied with the basis for suspicion that the vessel is a suspect vessel, and that the information provided by the requesting Party is sufficiently reliable, the requested Party may:

        i.  decide to conduct the boarding and search with its own Security Force Officials;

C   621

ii. authorize the boarding and search by the Security Force Officials of the requesting Party, subject to conditions if deemed appropriate;

iii. decide to conduct the boarding and search together with the requesting Party; or

iv. nevertheless, deny permission to board and search.

b. The requested Party shall answer through its Competent Authority requests made for the verification of nationality and authorization to board within four hours of its acknowledgement of the receipt of such requests unless the requested Party requests additional time to answer.

c. If the nationality is not verified or verifiable within the four hours, the requested Party shall, through its Competent Authority:

i. nevertheless stipulate that it does not object to the boarding and search by the Security Force Officials of the requesting Party; or

ii. refute the claim of the suspect vessel to its nationality.

d. Either Party, consistent with the other provisions of this Agreement, may subject its authorization under this paragraph to conditions, including obtaining additional information from the requesting Party, and conditions relating to responsibility for and the extent of measures to be taken. Information to be provided in response to such a request shall be exchanged in a timely manner by the Competent Authorities; however, the requesting Party may notify the requested Party if it is providing additional information through established information sharing channels.

e. Notification to the Master. Prior to the boarding being conducted, the flag State may, in coordination with requesting Party, transmit to the Master of the suspect vessel notice that it has authorized the requesting Party to board the vessel.

4. Right of Visit. Notwithstanding the foregoing paragraphs of this Article, the Security Force Officials of one Party ("the first Party") are authorized to board suspect vessels claiming nationality in the other Party

13

C   622

that are not flying the flag of the other Party, not displaying any marks of its registration or nationality, and claiming to have no documentation on board the vessel, for the purpose of locating and examining the vessel's documentation.  If documentation or other physical evidence of nationality is located, the foregoing paragraphs of this Article apply.  If no documentation or other physical evidence of nationality is available, the other Party will not object to the first Party assimilating the vessel to a ship without nationality consistent with international law.

5.    Use of Force.  The authorization to board, search and detain includes the authority to use force in full compliance with the provisions of Article 11 of this Agreement.

6.    Shipboarding Otherwise in Accordance with International Law.  This Agreement does not limit the right of either Party to conduct boardings of vessels or other activities consistent with international law whether based, *inter alia*, on the right of visit, the rendering of assistance to persons, vessels, and property in distress or peril, or an authorization from the Flag or Coastal State, or other appropriate bases in international law.

### Article 6
### Jurisdiction over Detained Vessels

1.    Limitations. Neither Party shall undertake the exercise of jurisdiction and performance of functions in the territory of the other Party.

2.    Jurisdiction of the Parties. In all cases covered by Article 5 concerning the vessels of a Party ("the flag State") located in international waters, jurisdiction rests with the flag State over a detained vessel, cargo or other items and persons on board (including seizure, forfeiture, arrest, and prosecution). However, the flag State may, subject to its Constitution and laws, consent to the exercise of jurisdiction by the other Party in accordance with the provisions of this Agreement.

3.    Jurisdiction in the contiguous zone of a Party. In a zone contiguous to its territorial sea, described as the contiguous zone, a Party may exercise the control necessary, *inter alia*, to prevent the infringement of its customs, fiscal, immigration or sanitary laws and regulations within its territory or territorial sea. In all cases not covered by Article 5 involving the vessel of

one Party that arise in the contiguous zone of the other Party and in which both Parties have authority to board in accordance with their respective jurisdictions –

    a.   except as provided in subparagraph (b), the Party which conducts the boarding shall have the right to exercise its authorized jurisdiction;

    b.   in cases involving suspect vessels fleeing from the territorial sea of a Party in which that Party has the authority to board and to exercise jurisdiction, that Party shall have the right to exercise its authorized jurisdiction.

4.   Disposition Instruction. Consultations as to the exercise of jurisdiction pursuant to paragraphs 2 and 3 of this Article shall be undertaken between the Competent Authorities without delay.

5.   Form of waiver. Where permitted by its Constitution and laws, waiver of jurisdiction may be granted verbally, but as soon as possible it shall be recorded in a written note from the Competent Authority and be processed through the appropriate diplomatic channel, without prejudice to the immediate exercise of jurisdiction over the suspect vessel by the other Party.

### Article 7
### Points of Contact

Each Party shall identify to the other Party, and keep current, through its Competent Authority the points of contact for communicating with its national authorities competent to receive and act at any time to requests under Article 5 for verification of nationality and authority to board, search and detain suspect vessels, and for instructions as to the exercise of jurisdiction under Article 6, and to receive and act on notifications under Article 8, and to respond to requests for technical assistance under Article 18 in addition to any other communication necessary for the implementation of this Agreement.

C   624

## Article 8
## Exchange of Information, Notification of Results of Shipboardings and Actions Taken

1.    Model Forms. The Parties shall use the model forms appended to this Agreement for communications pursuant to this Agreement, except as otherwise provided in this Agreement. The Competent Authorities of the Parties may, by mutual agreement, amend or replace in accordance with their laws the model forms annexed to this Agreement.

2.    Exchange of Operational Information. The Competent Authorities of both Parties shall endeavor to exchange operational information on the detection and location of suspect vessels and shall maintain communication with each other as necessary to carry out the purpose of this Agreement.

3.    Protection of classified information and material. Each Party shall protect classified information and material from unauthorized disclosure at all times in accordance with such requirements as the requesting Party may specify or as otherwise agreed by the Parties.

4.    Notification of Results. A Party conducting a boarding and search pursuant to this Agreement shall promptly, and in any case not later than 48 hours, notify the other Party of the results thereof through their Competent Authorities, following the conclusion of the boarding and search. Such notification shall be effected through the Competent Authorities of the Parties.

5.    Status Reports. Each Party, in compliance with its laws, shall timely report at least every month to the other Party, through their Competent Authorities on the status of all investigations, prosecutions and judicial proceedings and other actions and processes, arising out of the application of this Agreement.

## Article 9
## Conduct of Security Force Officials

1.    Compliance with Law and Practices. Each Party shall ensure that its Security Force Officials, when conducting boardings and searches pursuant to this Agreement, act in accordance with its applicable national laws and

16

C   625

policies and consistent with its international law and accepted international practices.

2.   Boarding and Search Teams

   a.   Boardings and searches pursuant to this Agreement shall be carried out by Security Force Officials from Security Force vessels as may be authorized on a case-by-case basis.

   b.   Neither Party shall be required to authorize a boarding from a vessel or aircraft of a third State that it would consider adverse to its interests.

   c.   The boarding and search teams may carry personal weapons.

**Article 10**
**Safeguards**

1.   Where a Party takes measures against a vessel in accordance with this Agreement, it shall:

   a.   take due account of the need not to endanger the safety of life at sea;

   b.   take due account of the safety and security of the vessel and its cargo;

   c.   not prejudice the commercial or legal interests of the Flag State;

   d.   ensure, within available means, that any measure taken with regard to the vessel is environmentally sound under the circumstances;

   e.   ensure that persons on board are afforded the protections, rights and guarantees provided by international law and the boarding State's law and regulations;

   f.   ensure that the master of the vessel is, or has been, afforded at any time the opportunity to contact the vessel's Flag State, and, subject

C   626

to preserving the safety and security of operations, is, or has been, afforded the opportunity to contact the vessel's owner or manager.

2.   All reasonable efforts shall be taken to avoid a vessel being unduly detained or delayed.


### Article 11
### Use of Force

1.   All uses of force pursuant to this Agreement shall be in strict accordance with the applicable laws and policies of the Party conducting the boarding and with applicable international law.

2.   Each Party shall avoid the use of force except when and to the degree necessary to ensure the safety of Security Force vessels and officials, and where Security Force Officials are obstructed in the execution of their duties.

3.   Any use of force pursuant to this Article shall not exceed the minimum degree of force that is necessary, proportional and reasonable in the circumstances.

4.   Boarding and search teams and Security Force vessels have the inherent right to use all available means to apply that force reasonably necessary to defend themselves or others from physical harm.

5.   Any use of force by the Party conducting a boarding and search pursuant to this Agreement shall be immediately reported with all necessary details to the Competent Authority of the other Party.


### Article 12
### Exchange and Knowledge of Laws and Policies of Other Party

1.   Exchange of Information.   To facilitate implementation of this Agreement, each Party, shall endeavour to ensure the other Party is appropriately informed of its respective applicable laws and policies, particularly those pertaining to the use of force.

18

C   627

2.    Knowledge.  Each Party shall endeavour to ensure that its Security Force Officials are knowledgeable concerning the applicable laws and policies in accordance with this Agreement.


## Article 13
## Points of Contact

1.    Information.  Each Party shall inform the other Party through their Competent Authorities, and keep current, the points of contact for communication, decision and instructions under Articles 4 and 5, and notifications under Articles 6 and 8, of this Agreement.

2.    Availability.  The Parties shall ensure that the points of contact have the capability to receive process and respond to requests and reports at any time.


## Article 14
## Disposal of Seized Property

1.    Disposal of Property.  Assets seized in consequence of any operation undertaken pursuant to this Agreement shall be disposed of in accordance with the laws of that Party exercising jurisdiction in accordance with Article 6 of this Agreement.

2.    The seizing Party may transfer in accordance with its laws forfeited assets or proceeds of their sale to the flag State Party after deducting therefrom all expenses directly and reasonably connected with the seizure and disposal and any share thereof which any Party may in accordance with its legislation be entitled to.


## Article 15
## Disputes and Consultations

1.    Disputes.  Disputes arising from the interpretation or implementation of this Agreement shall be settled by mutual agreement of the Parties.  Where mutual agreement cannot be reached after a reasonable time, the Parties may, by mutual agreement, seek settlement of the dispute by another peaceful means of their own choice, including, but not limited to, arbitration.

C   628

2.    Evaluation of Implementation.   The Parties agree to consult as necessary to evaluate the implementation of this Agreement and to consider enhancing its effectiveness.  The evaluation shall be carried out at least once a year.

3.    Resolving Difficulties.  In case a difficulty arises concerning operations under this Agreement, either Party may request consultations with other Party to resolve the matter.

## Article 16
## Claims

1.    Injury or Loss of Life.  Any claim for injury to or loss of life of a Security Force Official of a Party while carrying out operations arising from this Agreement shall normally be resolved in accordance with the laws of that Party.

2.    Other Claims.  Any other claim submitted for damage, harm, injury, death or loss resulting from an operation carried out by a Party under this Agreement shall be resolved in accordance with the domestic law of the Party to which the claim is brought and international law.

3.    Consultation.  If any damage, harm, injury, death or loss is suffered as a result of any action asserted to have been taken by the Security Force Officials of one Party in contravention of this Agreement, including action taken on unfounded suspicions, or if any improper, disproportionate or unreasonable action is asserted to have been taken by a Party, the Parties shall, without prejudice to any other legal recourse which may be available, consult at the request of either Party with a view to resolving the matter and deciding any questions relating to compensation or payment.

4.    No Waiver of Other Rights. Neither Party thereby waives any rights it may have under international law to raise to claim with the other Party through diplomatic channels.

C   629

## Article 17
## Technical Assistance

The Competent Authority of one Party ("the Requesting Party") may request, and the Competent Authority of the other Party may authorize, Security Force Officials to provide technical assistance,  such as specialized assistance in the boarding and search of suspect vessels, including vessels of the Requesting Party wherever located (provided that any activity in a marine area under the sovereignty of a third State has been authorized by that State), and for the boarding and search of suspect vessels located in the territory or waters of the requesting Party.

## Article 18
## Miscellaneous Provisions

Nothing in this Agreement:

    (a) precludes the Parties from otherwise agreeing on operations or other forms of       cooperation to suppress proliferation;

    (b) alters the rights and privileges due any person in any administrative or judicial proceeding conducted under the jurisdiction of either Party;

    (c) shall be construed as creating any private right of action for any individual or entity;

    (d) prejudices in any manner the positions of either Party regarding the international law of the sea.

## Article 19
## Entry into Force

This Agreement shall enter into force upon an exchange of notes indicating that the necessary internal procedures of each Party have been completed.

C   630

**Article 20**
**Termination**

1.    Notification. This Agreement may be terminated at any time by either Party upon written notification to the other Party through the diplomatic channel.

2.    Effective Date. Such termination shall take effect 90 days from the date of notification.

**Article 21**
**Continuation of Actions Taken**

This Agreement shall continue to apply after termination with respect to any administrative or judicial proceedings arising out of actions taken pursuant to this Agreement.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

DONE AT Washington, this 15th day of March, 2007.

(Signatures)

C   631

# APPENDIX: MODEL FORMS

## Model Form: STEP 1

**Request for
Confirmation of Nationality
and
Request for Authorization to Board and Search Suspect Vessel
Pursuant to Article 5 of the Agreement**

----

Date/Time (GMT (Z)):          _____

Reference (Vessel Name):          _____

**To:**
_____
_____

   **(insert identification of the Competent Authority of Requested Party)**

   Telephone:   _____
   Fax:          _____
   e-mail:       _____

**From**_____
_____

   **(insert identification of the Competent Authority of Requesting Party)**

   Telephone:   _____
   Fax:          _____
   e-mail:       _____

œ If this box is checked, then this request confirms an urgent oral request made previously by [the United States of America directed to the Operations

23

C   632

Center                                    of                                    the
Armed Forces of Malta] [the Republic of Malta directed to the United States
Coast Guard National Command Center].

Pursuant to Article 5 of the Agreement between the Government of the
United States of America and the Government of the Republic of Malta
concerning Cooperation to Suppress the Proliferation of Weapons of Mass
Destruction, their Delivery Systems, and Related Materials by Sea
(hereinafter, the "Agreement"), the Security Force Officials of [name of
Requesting Party] have encountered a suspect vessel claiming nationality in
[name of the Requested Party] located in international waters. Accordingly,
[name of Requesting Party] invites [name of the Requested Party]'s attention
to following information and requests.

1.     Name/hull number/ flag of Security Force Vessel on
       scene:_____

2.     Available Description of Suspect Vessel:

       a.     Vessel's name:

              _____

       b.     Claimed flag:

              _____

       c.     Call Sign:

              _____

       d.     IMO number:

              _____

       e.     Port & year of registry:

              _____

       f.     Type of vessel:   **(Check one)**

24

C   633

   œ **Container**

   œ **Tanker**

   œ **Bulk carrier**

   œ **Pleasure craft**

   œ **Fishing vessel**

   œ **Cruise ship**

   œ **Other:**

   _____

g. Length of vessel:

  _____

h. Last port of call (LPOC):

_____

i. Date of LPOC:

  _____

j. Next port of call (NPOC):

_____

k. Date of NPOC:

  _____

l. Claimed cargo:

  _____

C    634

    m.    Purpose of voyage:

        _____

3.    Suspect vessel's position:

    a.    Latitude:

        _____

    b.    Longitude:

        _____

    c.    Geographic reference:

        _____

    d.    Course/ Speed:    \_\_\_\_\_ / \_\_\_\_

4.    Persons on board, if known:

    a.    Number:

        _____

    b.    Name of Master:

        _____

    c.    Nationality of Master:

        _____

    d.    Master's date of birth:

        _____

C   635

5.      Reasonable grounds to suspect that vessel is engaged in proliferation by sea: (include, if possible, a brief description of the suspect cargo, including any relationship to relevant multilateral or national export control lists, such as the Nuclear Suppliers Group Trigger List)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

œ If this box is checked, relevant information is being provided through established information sharing channels.

6.      Estimated duration indicated for the boarding based on current information (this is only an estimate and subject to substantial change depending on circumstances encountered; if this request is approved, the [name of Requesting Party] shall keep [name of Requested Party] apprised of developments and changed circumstances that may decrease or increase the duration of the boarding):

_____
_____

7.      Action Request: The [name of Requesting Party] requests [name of the Requested Party]:

a.  Confirm the claim of nationality of the suspect vessel; and

b.  If nationality is confirmed:

(1) Authorize the boarding and search of the suspect vessel, cargo and the persons found on board by [name of the Requesting Party] Security Force Officials; and

27

C   636

    (2) If evidence of proliferation is found, authorize the Security Force Officials of the [name the of Requesting Party] to detain the vessel, as well as items and persons on board, pending instructions conveyed through [name of the Competent Authority of the Requested Party] as to the actions the [name of the Requesting Party] is permitted to take concerning such items, persons and vessels.

Signature/Date/Time          (GMT          (Z)):

_____

C   637

## <u>Model Form:  STEPS 2-4</u>

### <u>Response to Requests for<br>Confirmation of Nationality<br>and<br>Authorization to Board and Search Suspect Vessel<br>Pursuant to Article 5 of the Agreement</u>

----

Date/Time (GMT (Z)):   _____

Reference (Vessel Name):      _____

**To:**   _____
_____

**(insert identification of the Competent Authority of Requested
Party)**

     Telephone:_____
     Fax: _____
     e-mail:_____

**From:_____(insert identification of the Competent Authority of
Requesting Party)**

     Telephone:_____
     Fax:_____
     e-mail_____

    If this box is checked, then this authorization confirms an urgent oral
authorization given previously by [<u>the United States of America directed to
the Operations Center of the Armed Forces of Malta</u>] [<u>the Republic of Malta
directed to the United States Coast Guard National Command Center</u>].

THIS SPACE INTENTIONALLY LEFT BLANK

29

C   638

## STEP 2:  CONFIRMATION OF NATIONALITY

In response to your request of [date/time GMT (Z) from request form] for confirmation of nationality of [name of suspect vessel] pursuant to article 5 of the Agreement between the Government of the United States America and the Government of the Republic of Malta Concerning Cooperation to Suppress the Proliferation of Weapons of Mass Destruction, their Delivery Systems, and Related Materials by Sea (hereinafter, the "Agreement"), the [name of Requested Party] hereby:

## CHECK ONLY ONE OF THE BOXES:

Confirms that the [name of the suspect vessel] is presently lawfully registered [in the American Register of Ships] [under the Merchant Shipping Act (CAP. 234) of the Laws of Malta] and is entitled to fly the flag of the [name of Requested Party] (see paragraph 2 of request).

Can neither confirm nor deny that [name of suspect vessel] is registered [in the American Register of Ships] [under the Merchant Shipping Act (CAP. 234) of the Laws of Malta], but nevertheless stipulates that it does not object to the boarding and search by the Security Force Officials of the Requesting Party (see paragraph 2 of request).

Denies that the [name of suspect vessel] is presently lawfully registered [in the American Register of Ships] [under the Merchant Shipping Act (CAP. 234) of the Laws of Malta] and therefore is NOT entitled to fly the flag of the [name of Requested Party].

C   639

**STEP 3:   IF NATIONALITY IS CONFIRMED or STIPULATED, THEN COMPLETE STEP 3- -**

Further to your request, the Government of the [name of Requested Party] hereby:

**CHECK ONLY ONE OF THE BOXES:**

Authorizes, **subject to completion of the procedures in Step 4 below**, the boarding and search of  [name of suspect vessels] by Security Force Officials of [name of boarding Party] from [name and nationality of boarding platform ] in international waters;  and if evidence is found on board that the [name of suspect vessel] is engaged in proliferation by sea, detain the vessel as well as items and persons on board, pending instructions from [name of Requested Party] regarding the actions the [name of Requesting Party] is permitted to take concerning the [name of suspect vessel], as well as items and persons on board.

Authorizes the boarding and search of [name of suspect vessel] by Security Force Officials of [name of boarding Party]from [name and nationality of boarding platform] in international waters;  and if evidence is found on board that the [name of suspect vessel] is engaged in proliferation by sea, detain the vessel as well as items and persons on board, pending instructions from  [name of the Requested Party] regarding the actions the [name of Requesting Party] is permitted to take concerning the [name of suspect vessel], as well as items and persons on board.  The Requested Party does not intend to transmit notice of authorization for the boarding to the Master.  Accordingly, the Requesting Party may execute this authorization forthwith.

Is prepared to authorize the boarding and search of [name of suspect vessel] by Security Force Officials of [name of boarding Party] in international waters, but not from [name and nationality of boarding platform].  Please identify to [name of Requested Party] an alternative platform, if available, and [name of Requested Party] will consider the request and respond accordingly.

Decides to conduct the boarding and search with its own Security Force Officials and proposes the following additional instructions:

C   640

_____
_____
_____
_____
_____
_____

Decides to conduct the boarding and search together with the Security Force Officials of the Requesting Party and proposes the following rendezvous instructions:

_____
_____
_____
_____
_____
_____

Denies authorization to stop, board, and search the [name of suspect vessel] on the following grounds:

**CHECK THE APPROPRIATE BOX OR BOXES:**

According to the information officially submitted by to the Government of the [name of the Requested Party] there are not reasonable grounds to suspect that the said vessel is engaged in proliferation by sea.

It was not possible for the Parties to mutually agree on certain additional conditions Relating to the Authorization required by the Government of the [name of Requested Party] in its capacity as the Requested Party.

The Government  of the [name of the Requested Party], in its capacity as the Requested Party, decided that under the present circumstances it is more appropriate and efficient to conduct the boarding and search of [name of suspect vessel] with its own Security Force Officials at a later date.

Other:

_____
_____

C   641

The present authorization is given to the [name of the Requested Party] subject, in addition to the terms and safeguards of the Agreement, to the following additional conditions mutually agreed between the Parties:

*None*

_____

_____

_____

_____

**STEP 4:   INSTRUCTIONS REGARDING TRANSMITTAL OF NOTIFICATION TO THE MASTER**

- The [name of the Requesting Party] shall notify the [name of the Requested Party] by [identify mode(s) of communication] of the time that it wishes to conduct the boarding and when notification to the Master should be given.

- Thereafter, [the name of the Requested Party] shall notify the [name of the Requesting Party] by [identify mode(s) of communication] when it has transmitted to the Master of the suspect vessel notice that it has authorized the boarding.

- [Name of the Requesting Party] may thereafter execute this authorization.

Signature/Date/Time (GMT (Z)):

_____

C   642

## Model Form:  STEP 5

**Arrangements for Transmittal of Notice to the Master of a Suspect Vessel that the Flag State has Authorized a Boarding Pursuant to the |Agreement**
-------

Date/Time (GMT (Z)):   _____

Reference (Vessel Name):   _____

**To:**

_____
_____
        **(insert identification of the Competent Authority of Requested Party)**

      Telephone: _____
      Fax:   _____
      e-mail:_____

**From:**
        **(insert identification of the competent Authority of Requesting Party)**

      Telephone: _____
      Fax:   _____
      e-mail:_____

## STEP 5:   INSTRUCTIONS REGARDING TRANSMITTAL OF NOTIFICATION TO THE MASTER:

- The [name of the Requesting Party] wishes to conduct the boarding at [date & time GMT (Z)].

- The [name of the Requesting Party] recommends notification of the boarding be transmitted to the Master be given [instructions on date & time GMT (Z)].

36

C   643

Absent urgent circumstances, where a request for Confirmation of Nationality and Authorization to Board and Search and relevant authorization may be respectively submitted or granted orally pursuant to Article 5 of the Agreement, the [name of the Requesting Party] shall await notification from [name of the Requested Party] by [identify mode(s) of communication described by the Requested Party in Step 4 above] that it has transmitted to the Master of the suspect vessel notice that it has authorized the boarding.

Signature/Date/Time (GMT (Z)):
_____

C   644

## **<u>Model Form:  STEP 6</u>**

**Confirmation of Transmittal of Notice to the Master of a Suspect Vessel
that the Flag State has Authorized a Boarding
Pursuant to the Agreement**

**------**

Date/Time (GMT (Z)):
_____

Reference (Vessel Name):
_____

**To:** _____
_____
    **(insert identification of the Competent Authority of Requested
Party)**

    Telephone:  _____
    Fax:  _____
    e-mail:_____

**From:**
    **(insert identification of the competent Authority of Requesting
Party)**

    Telephone:  _____
    Fax:  _____
    e-mail:_____

## **STEP 6:  CONFIRMATION OF TRANSMITTAL OF
NOTIFICATION TO THE MASTER:**

    The [<u>name of the Requested Party</u>] confirms that it has transmitted to
the Master of the suspect vessel notice that it has authorized the
boarding.  Consequently, the [<u>name of the Requesting Party</u>] may
exercise the previous authorization granted to board the suspect
vessel.

C   645

## <u>Model Form:  STEP 7</u>

**Report of Results of Boarding and Search of Suspect Vessel
Pursuant to Article 5 of the Agreement**

------

Date/Time (GMT (Z)):     _____

Reference (Vessel Name):        _____

**To:**

_____
_____
        **(insert identification of the Competent Authority of Requested
Party)**

        Telephone:_____
        Fax:_____
        e-mail:_____

**From:**
        **(insert identification of the Competent Authority of Requesting
Party)**

        Telephone:_____
        Fax:_____
        e-mail:_____

In accordance with authorization previously granted pursuant to article 5 of
the Agreement between the Government of the United States America and
the Government of the Republic of Malta Concerning Cooperation to
Suppress the Proliferation of Weapons of Mass Destruction, their Delivery
Systems, and Related Materials by Sea (hereinafter, the "Agreement"), the
Security Force Officials of [name of Requesting Party] boarded the suspect
vessel [name of suspect vessel].  Accordingly, [name of Requesting Party]
invites [name of the Requested Party]'s attention to following information
and requests:

40

C   646

1.     Boarding logistics:

    1.   Time boarding commenced (GMT (Z)):_____

    2.   Position at time of boarding:

    3.   Resistance or opposition to boarding:_____

    4.   Number of persons in boarding team:_____

2.     Evidence of proliferation by sea:

**CHECK ONLY ONE OF THE BOXES:**

œ The boarding yielded no evidence of proliferation by sea.

œ The boarding yielded the following evidence that the vessel is engaged in proliferation by sea:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

3.     Persons on board:

| Name & Position | Nationality | Date of Birth | Document Number |
|---|---|---|---|
|  |  |  |  |

41

C   647

|  |  |  |  |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

4.      Other evidence or issues:

_____
_____
_____
_____
_____
_____

5.      Intentions/request for disposition instructions:

   **CHECK ONLY ONE OF THE BOXES:**

   œ Due to the absence of evidence of proliferation by sea, the
   [name of Requesting Party] intends to conclude the boarding
   and release the vessel.

C   648

œ Based on the evidence described above, the [name of Requesting Party] requests from [name of Requested Party] authorization to divert and direct the suspect vessel to [name of place or port] to continue the boarding and space/cargo accountability dockside.   Pursuant to authority previously granted, the [Requesting Party] will detain the vessel as well as items and persons on board, pending instructions from the [name of the Requested Party] regarding the actions the [name of Requesting Party] is permitted to take concerning the [name of suspect vessel], as well as items and persons on board.

œ Based on the evidence that the vessel is engaged in proliferation by sea set forth above, the [name of Requesting Party] requests from [name of Requested Party] disposition instructions with respect to the vessel, cargo, and persons on board.   Pursuant to authority previously granted, the [Requesting Party] will detain the vessel as well as items and persons on board, pending instructions from the [name of the Requested Party] regarding the actions the [name of Requesting Party] is permitted to take concerning the [name of suspect vessel], as well as items and persons on board.


Signature/Date/Time (GMT (Z)):

_____

43

C   649

## Model Form

### Miscellaneous Communications Regarding Suspect Vessel Pursuant to the Agreement

------

Date/Time (GMT (Z)):    _____

Reference (Vessel Name):    _____

**To:**

_____
_____

**(insert identification of the Competent Authority of Requested Party)**

Telephone:_____
Fax:_____
e-mail:_____

**From:**
**(insert identification of the Competent Authority of Requesting Party)**

Telephone:_____
Fax:_____
e-mail:_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

44

C   650

_____
_____
_____
_____
_____

Signature/Date/Time (GMT (Z)):

_____

C  651

**IT-TIENI SKEDA**
**(Artikolu 2)**

**AGREEMENT BETWEEN**
**THE GOVERNMENT OF THE REPUBLIC OF MALTA**
**AND**
**THE GOVERNMENT OF THE UNITED SATES OF AMERICA**
**CONCERNING COOPERARION TO SUPPRESS ILLICIT**
**TRAFFIC IN NARCOTIC DRUGS AND PSYCHOTROPIC**
**SUBSTANCES BY SEA**

The Government of the Republic of Malta and the Government of the United States of America (hereinafter, "the Parties");

**Bearing in mind** the special nature of the problem of illicit maritime drug traffic;

**Having regard to** the urgent need for international cooperation in suppressing illicit maritime drug traffic, which is recognized in the 1961 Single Convention on Narcotic Drugs and its 1972 Protocol, in the 1971 Convention on Psychotropic Substances, in the 1988 United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances (hereafter, "the 1988 Convention"), and in the 1982 United Nations Convention on the Law of the Sea; and

**Recalling** that Article 17 of  the 1988 Convention provides, *inter alia*, that the Parties shall consider entering into bilateral and regional agreements to carry out, or to enhance the effectiveness of, the provisions of Articles 17;

**Desiring** to promote greater cooperation between the Parties, and thereby enhance their effectiveness, in combating illicit traffic in narcotic drugs and psychotropic substances by sea;

**Based on** the principles of international law, respect for the sovereign equality of States and in full respect of the freedom of navigation;

Have agreed as follows:

46

C   652

# Article 1
## Purpose and Scope

The Parties shall cooperate in combating illicit traffic by sea in narcotic drugs and psychotropic substances to the fullest extent possible, consistent with available law enforcement resources and priorities related thereto.

# Article 2
## Definitions

For the purposes of this Agreement, unless the context otherwise requires:

a) "illicit traffic" has the same meaning as in Article 1 (m) of the 1988 Convention.

b) "international waters" means waters seaward of any State's territorial sea, including the contiguous zone.

c) "contiguous zone" has the same meaning as in Article 33 of the Law of the Sea Convention.

d) "law enforcement authorities" means, for the Government of the Malta, the Armed Forces of Malta, and for the Government of the United States of America, the United States Coast Guard.

e) "law enforcement officials" means, for the Government of Malta, the Armed Forces of Malta, the Malta Police Force and the Department of Customs, and for the Government of the United States of America, uniformed members of the United States Coast Guard who may be accompanied by other authorized personnel.

f) "law enforcement vessels" means warships or other ships of the Parties, or of third States as may be agreed by the Parties, abroad which law enforcement officials are embarked, clearly marked and identifiable as being on government non-commercial service and authorized to that effect, including any boat or aircraft embarked on such ships.

C   653

g) "suspect vessel" means a vessel, claiming the nationality of one of the Parties, used for commercial or private purposes in respect of which there are reasonable grounds to suspect it is engaged in illicit traffic in narcotic drugs and psychotropic substances.

## Article 3
## Suspect Vessels

Operations to suppress illicit traffic in narcotic drugs and psychotropic substances pursuant to this Agreement shall be carried out only against suspect vessels and vessels without nationality.

## Article 4
## Operations in and over National Waters

This Agreement does not authorize the conduct of operations to suppress illicit traffic in narcotic drugs or psychotropic substances by one Party in and over the waters of the other Party.

## Article 5
## Operations in International Waters

1.   Authority to Board Suspect Vessels. Whenever the law enforcement officials of one Party ("the requesting Party") encounter a suspect vessel claiming the nationality of the other Party ("the requested Party") located in international waters, the requesting Party may request that the law enforcement authority of the requested Party:

   a)   confirm the claim of nationality of the requested Party; and

   b)   if such claim is confirmed:

      (i)   authorize the boarding and search of the suspect vessel, cargo and the persons found on board by law enforcement officials of the requesting Party; and

48

C   654

(ii) if evidence of illicit traffic in narcotic drugs and psychotropic substances is found, authorize the law enforcement officials of the requesting Party to detain the vessel, cargo and persons on board pending instructions from the law enforcement authorities of the requested Party as to the exercise of jurisdiction in accordance with Article 6 of this Agreement.

2.  Content of Requests. Each request should contain the name of the suspect vessel, the basis for the suspicion (including all facts and other information on which the suspicion is based), the geographic position of the vessel, the registration number if available, home port, the port of origin and destination, and any other identifying information. If a request is conveyed orally, the requesting Party shall confirm the request in writing as soon as possible.

3.  Responding to Requests

(a)  If the nationality is verified, the requested Party may:

(i)   decide to conduct the boarding and search with its own law enforcement officials;

(ii)  authorize the boarding and search by the law enforcement officials of the requesting Party;

(iii) decide to conduct the boarding and search together with the requesting Party; or

(iv) deny permission to board and search.

(b)  The requested Party shall answer requests made for the verification of nationality within four (4) hours of the receipt of such requests.

(c)  If the nationality is not verified within the four (4) hours, the requested Party may:

(i)   nevertheless authorize the boarding and search by the law enforcement officials of the requesting Party; or

C   655

(ii)  refute the claim of the suspect vessel to its nationality.

(d)  If there is no acknowledgement or response to a written request pursuant to paragraph 2 from the requested Party within four (4) hours of its receipt of the request, the requesting Party will be deemed to have been authorized to board the suspect vessel for the purpose of inspecting the vessel's documents, questioning the persons on board, and searching the vessel to determine if it is engaged in illicit traffic.

4. Right of Visit. Notwithstanding the foregoing paragraphs of this Article, this Agreement authorizes the law enforcement officials of one Party ("the first Party") to board suspect vessels located in international waters claiming nationality in the other Party but that are not flying the flag of the other Party, are not displaying any marks of its registration or nationality, and claiming to have no documentation on board the vessel, for the purpose of locating and examining the vessel's documentation. If documentation or other physical evidence of nationality is located, then the foregoing paragraphs of this Article apply.

5. Use of Force. The authorization to board, search and detain includes the authority to use such force as may be necessary in accordance with Article 10 of this Agreement.

6. Shipboarding Otherwise in accordance with International Law. Except as expressly provided herein, this Agreement does not apply to or limit boardings of vessels, conducted by either Party in accordance with international law in international waters, whether based, *inter alia,* on the right of visit, the rendering of assistance to persons, vessels, and property in distress or peril, the consent of the vessel master, or an authorization from the flag State to take law enforcement action.

## Article 6
### Jurisdiction over Detained Vessels

1.   Limitations. Neither Party shall undertake the exercise of jurisdiction and performance of functions in the territory of the other Party.

2.   Waiver of Right. In all cases arising pursuant to this Agreement concerning vessels having the nationality of a Party in international waters,

C   656

that Party ("the first Party") shall have the right to exercise jurisdiction over a detained vessel, cargo and/or persons on board (including seizure, forfeiture, arrest, and prosecution), provided, however, the first Party may, subject to its Constitution and laws, waive its right to exercise jurisdiction and authorize the enforcement of the other Party's law against the vessel, cargo and/or persons on board.

3.   Contiguous Zone. In cases arising in the contiguous zone of a Party, not involving suspect vessels fleeing from the waters of that Party or suspect vessels having the nationality of that Party, in which both Parties have the authority to exercise jurisdiction to prosecute, the Party which conducts the boarding and search shall have the right to exercise jurisdiction.

4.   Requests to Waive Jurisdiction. If the evidence so warrants, the other Party may request that the first Party waive jurisdiction.

5.   Instructions as to the exercise of jurisdiction pursuant to this Agreement shall be given without delay.

6.   Form of Waiver. A waiver of jurisdiction may be granted verbally, but as soon as possible, it shall be recorded in a written note from the competent authority and be processed through the diplomatic authorities, without prejudice to the immediate exercise of jurisdiction over the suspect vessel by the other Party.

**Article 7**
**Points of Contact**

Each Party shall identify to the other Party, and keep current, the points of contact for communicating with is national authorities competent to receive and act at any time on requests under Article 5 for verification of nationality and authority to board, search and detain suspect vessels, and for instructions as to the exercise of jurisdiction under Article 6, and to receive and act on notifications under Article 8, and to respond to requests for technical assistance under Article 13, in addition to any other communication necessary for the implementation of this Agreement.

C   657

## Article 8
### Notification of Results of Shipboardings and Actions Taken

1.   Notification of Results. Each Party shall promptly, and in any case not later than 48 hours, notify the other Party of the results of any boarding and search of the vessels of the other Party conducted pursuant to this Agreement.

2.   Status Reports. Each Party, consistent with its procedures, shall report in a timely manner at least every month to the other Party on the status of all investigations, prosecutions and judicial proceedings resulting from enforcement action taken pursuant to this Agreement where evidence of illicit traffic was found.

## Article 9
### Conduct of Law Enforcement Officials

1.   Compliance with Law and Practices. Each Party shall ensure that its law enforcement officials, when conducting boarding and search activities pursuant to this Agreement, act in accordance with its applicable national laws and policies and with international law and accepted international practices.

2.   Boarding and Search Teams

a.   Boardings and searches pursuant to this Agreement shall be carried out by law enforcement officials from law enforcement vessels or aircraft of the Parties and from such vessels and aircraft of other States, according to arrangements between the Party conducting the operation and the State providing the vessel or aircraft.

b.   When conducting boardings and searches law enforcement officials may carry standard law enforcement small arms.

c.   While carrying out boarding and search activities pursuant to this Agreement, the Parties shall take due account of the need not to endanger the safety of life at sea, the security of the suspect vessel and its cargo, or to prejudice the commercial and legal interests of the flag State or

C   658

any other interested State; and shall observe the norms of courtesy, respect and consideration for the persons on board the suspect vessel.

   d. Law enforcement vessels of   a Party operating with the authorization of the other Party pursuant to this Agreement shall, during such operations, also fly, in the case of Malta, the United States Coast Guard ensign, and in the case of the United States of America, the National Flag of Malta.

## Article 10
## Use of Force

1. Rules. All uses of force by a Party pursuant to this Agreement shall be in strict accordance with applicable laws and policies of that Party and shall in all cases be that force reasonably necessary under the circumstances.

2. Self-Defense. Nothing in this Agreement shall impair the exercise of the inherent right of self-defense by law enforcement or other officials of the Parties.

## Article 11
## Exchange and Knowledge of Laws and Policies of the Parties

1. Exchange of Information. To facilitate implementation of this Agreement, each Party shall ensure that the other Party is fully informed of its respective applicable laws and policies, particularly those pertaining to the use of force.

2. Ensuring Knowledge. Each Party shall ensure that all of its law enforcement officials acting pursuant to this Agreement are knowledgeable of the applicable laws and policies of both Parties.

## Article 12
## Disposal of Seized Property

1. Disposal of Property. Assets seized in consequence of any operation undertaken pursuant to this Agreement shall be disposed of in accordance

C   659

with the laws of the Party exercising jurisdiction in accordance with Article 6 of this Agreement.

2.    The seizing Party may transfer in accordance with its laws forfeited assets or proceeds of their sale to the flag State Party  after deducting therefrom all expenses directly and reasonably connected with the seizure and disposal and any share thereof which any Party may in accordance with its legislation be entitled to.

### Article 13
### Technical Assistance

The law enforcement authority of one Party (the "first Party") may request, and the law enforcement authority of the other Party may authorize, law enforcement officials of the other Party to provide technical assistance, such as specialized assistance in the conduct of search of suspect vessels, to law enforcement officials of the first Party for the boarding and search of suspect vessels located in the territory or waters of the first Party.

### Article 14
### Consultations and Dispute Settlement

1.    Consultations. In case a question arises in connection with implementation of this Agreement, either Party may request consultations with the other Party to resolve the matter.

2.    Dispute Settlement. The Parties undertake to settle by consultation any disputes that arise from the implementation of this Agreement.

### Article 15
### Claims

1.    Examination of Claims. Any claim for damages, injury or loss resulting from an operation carried out under this Agreement shall be examined by the Party whose authorities conducted the operation.

C   660

2.     Resolution of Claims. If responsibility is established, the claim shall be resolved in favor of the claimant by that Party, in accordance with the domestic law of that Party, and in a manner consistent with international law, including paragraph 3 of Article 110 of the Law of the Sea Convention.

3.     No Waiver of Other Rights. Neither Party thereby waives any rights it may have under international law to raise a claim with the other Party through diplomatic channels.

## Article 16
## Miscellaneous Provisions

Nothing in this Agreement:

      (a) precludes the Parties from otherwise agreeing on operations or other forms of cooperation to suppress illicit traffic;

      (b) is intended to alter the rights and privileges due any individual in any legal proceeding;

      (c) shall be construed as creating any private right of action for any individual or entity;

      (d) prejudices in any manner the positions of either Party regarding the international law of the sea.

## Article 17
## Entry Into Force

This Agreement shall enter into force upon exchange of notes indicating that the necessary internal procedures of each Party have been completed.

C   661

## Article 18
## Termination

1.     Notification. This Agreement may be terminated at any time by either Party upon written notification to the other Party through the diplomatic channel.

2.     Effective Date. Such termination shall take effect 90 days from the date of notification.

## Article 19
## Continuation of Actions Taken

This Agreement shall continue to apply after termination with respect to any administrative or judicial proceeding arising out of actions taken pursuant to this Arrangement.

**IN WITNESS WHEREOF**, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

**DONE AT** Valletta, this 16th day of June, TWO THOUSAND AND FOUR.

(Signatures)

_____

### Għanijiet u Raġunijiet

L-għan ewlieni ta' dan l-abbozz hu sabiex jiġu ratifikati żewġ Pattijiet ma' l-Istati Uniti ta' l-Amerika li jipprovdu għall-imbarkar ta' bastimenti fi-ċirkostanzi msemmija fil-Pattijiet.

56

C   662

**A BILL**
**entitled**

*AN ACT  to ratify Agreements between Malta and United States of America providing for the boarding of ships suspected of proliferation by sea of weapons of mass destruction or of illicit traffic in narcotic drugs or psychotropic substances.*

BE IT ENACTED by the President, by and with the advice and consent of the House of Representatives, in this present Parliament assembled, and by the authority of the same as follows:

Short title and commencement.

**1**.   The title of this Act is the Malta-USA Ship-Boarding Agreements (Ratification) Act , 2007.

Interpretation.

**2.**   In this Act, unless the contrary otherwise requires:

"Agreements" collectively means the WMD Agreement and the Drugs Agreement;

"WMD Agreement" means the Agreement between the Government of the United States of America and the Government of the Republic of Malta concerning cooperation to suppress the proliferation of weapons of mass destruction, their delivery systems, and related materials by sea signed in Washington on the 15th March, 2007 a copy of the English text of which is set out in the First Schedule to this Act;

"Drugs Agreement" means the Agreement between the Government of the United States of America and the Government of the Republic of Malta concerning cooperation to suppress the illicit traffic in narcotic drugs and psychotropic substances by sea signed in Washington on the 16th June, 2004 a copy of the English text of which is set out in the Second Schedule to this Act.

**3.**   The Agreements are hereby ratified and authority is hereby given for the exchange of notes relative to the said Agreement for the purposes of Article 19 of the WMD Agreement and of Article 17 of the Drugs Agreement.

*Ratification of Agreements.*

**4.**   The Agreements shall have force of law in Malta as from such date as the Prime Minister may by notice in the Gazette appoint.

*The Agreements to have force of law.*

**5.**   The Prime Minister may make regulations for carrying out the provisions of this Act and for doing anything that may be required for the purpose of satisfying the obligations of Malta under the Agreements.

*Power to make Regulations.*

**6.**   Immediately after article 314B of the Criminal Code there shall be inserted the following new sub-articles:

*Amendment of the Criminal Code, Cap. 9.*

*"Possession of lethal devices for unlawful object or for purpose of proliferation.*

314C.   (1)   Whosoever knowingly has in his possession or under his control any lethal device or nuclear material, under such circumstances as give rise to a reasonable suspicion that  he has it in his possession or under his control for an unlawful object or for the purpose of proliferation shall, on conviction, be liable to the punishment laid down in article 313.

(2)   For the purpose of this article:

"lethal device" shall have the same meaning assigned to it by sub-article (4) of article 314A and "lethal device" and "nuclear material" shall include their delivery systems, materials, equipment or technology, of whatever nature or type, that are related to and destined for use in the development, production, utilization or delivery of such lethal devices or nuclear material; and

"proliferation" means the transportation of nuclear, chemical, biological or radiological weapons, their delivery systems and related materials to or from states or entities engaged in efforts to develop, acquire, or traffick in, such weapons, systems or materials.

C   664

**314D.   (1)**   Where the commander of the Armed Forces of Malta receives, or is informed about, a request made by or on behalf of a judicial, prosecuting, law enforcement, administrative or other competent authority of any State or place other than or outside Malta (hereinafter in this article referred to as the "requesting authority") seeking authorisation for the competent authorities of that State or place to take appropriate measures in regard to a relevant vessel reasonably suspected to be engaged in the commission of a relevant offence the commander of the Armed Forces of Malta may, with the concurrence of the Prime Minister, authorise the taking of the said measures by the aforesaid competent authorities subject to such conditions as may have been agreed by Malta with that State or as may be agreed between the requesting authority and the commander of the Armed Forces of Malta with the concurrence of the Prime Minister.

*Co-operation in the suppression of relevant offences at sea.*

(2)   Where the authorisation has been given by the commander of the Armed Forces of Malta as aforesaid the competent authorities referred to in sub-article (1), subject to the conditions as may have been agreed upon as provided in the same sub-article, shall be authorised to take the appropriate measures and to exercise on board the vessel in regard to which appropriate measures have been authorised under this article all such powers of arrest, entry, search and seizure as are vested in the executive police of Malta.

(3)   For the purpose of this article:

"relevant offence" means any offence consisting in any act or omission which if committed in these islands, or in corresponding circumstances, would constitute any of the offences in articles 313, 314B and 314C;

"relevant vessel" means a vessel used for commercial or private purposes flying or entitled to fly the flag of Malta or registered in Malta and exercising freedom of navigation in accordance with international law.".

**7.**   For sub-article (1) of article 30D of the Dangerous Drugs Ordinance there shall be substitued the following:

*Amendment of the Dangerous Drugs Ordinance, Cap. 101.*

"(1)   Where the Attorney General receives, or is informed about, a request made by or on behalf of a judicial, prosecuting,

law enforcement, administrative or other competent authority of any State or place other than or outside Malta (hereinafter in this article referred to as the "requesting authority") seeking authorisation for the competent authorities of that State or place to take appropriate measures in regard to a relevant vessel reasonably suspected to be engaged in the commission of a relevant offence the Attorney General may, with the concurrence of the Prime Minister, authorise the taking of the said measures by the aforesaid competent authorities subject to such conditions as may have been agreed by Malta with that State or as may be agreed between the requesting authority and the Attorney General with the concurrence of the Prime Minister.".

**8.**   Article 121E. of the Medical and Kindred Professions Ordinance shall be amended as follows:

*Amendment of the Medical and Kindred Professions Ordinance Cap. 31.*

(a)   for sub-article (1) thereof there shall be substituted the following:

"(1)   Where the Attorney General receives, or is informed about, a request made by or on behalf of a judicial, prosecuting, law enforcement, administrative or other competent authority of any State or place other than or outside Malta (hereinafter in this article referred to as the "requesting authority") seeking authorisation for the competent authorities of that State or place to take appropriate measures in regard to a relevant vessel reasonably suspected to be engaged in the commission of a relevant offence the Attorney General may, with the concurrence of the Prime Minister, authorise the taking of the said measures by the aforesaid competent authorities subject to such conditions as may have been agreed by Malta with that State or as may be agreed between the requesting authority and the Attorney General with the concurrence of the Prime Minister.";

(b)   in sub-article (2) thereof for the words "the preceding sub-article" there shall be substituted the words "the same sub-article".

C   666

## FIRST SCHEDULE
### (Article 2)

### AGREEMENT
### BETWEEN
### THE GOVERNMENT OF MALTA
### AND
### THE GOVERNMENT OF THE UNITED STATES OF AMERICA
### CONCERNING COOPERATION TO SUPPRESS THE PROLIFERATION OF
### WEAPONS OF MASS DESTRUCTION, THEIR DELIVERY SYSTEMS,
### AND RELATED MATERIALS BY SEA

The Government of Malta and the Government of the United States of America, (hereinafter, "the Parties");

**Deeply concerned** about the proliferation of weapons of mass destruction (WMD), their delivery systems, and related materials, particularly by sea, as well as the risk that these may fall into the hands of terrorists;

**Recalling** the 31 January 1992 United Nations Security Council Presidential statement that proliferation of all WMD constitutes a threat to international peace and security, and underlines the need for Member States of the UN to prevent proliferation;

**Also recalling** United Nations Security Council Resolution 1540 (2004), which calls on all States, in accordance with their national legal authorities and legislations and consistent with international law, to take cooperative action to prevent illicit trafficking in nuclear, chemical or biological weapons, their means of delivery, and related materials;

**Recalling further** the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on their Destruction, done at Paris 13 January 1993; the Treaty on Nonproliferation of Nuclear Weapons, done at Washington, London and Moscow 1 July 1968; and the Convention on the Prohibition of the Development,

7

C   667

Production and Stockpiling of Bacteriological (Biological) and Toxin Weapons and on their Destruction, done at Washington, London and Moscow 10 April 1972;

**Further recalling** the International Ship and Port Facility Security Code, adopted by the International Maritime Organization (IMO) on 12 December 2002;

**Acknowledging** the widespread consensus that proliferation and terrorism seriously threaten international peace and security;
**Convinced** that trafficking in these items by States and non-state actors of proliferation concern must be stopped;

**Guided** by the Statement of Interdiction Principles for the Proliferation Security Initiative;

**Inspired** by the efforts of the IMO to improve the effectiveness of the Convention for the Suppression of Unlawful Acts against the Safety of Maritime Navigation, done at Rome 10 March 1988;

**Reaffirming the importance of** customary international law of the sea as reflected in the 1982 United Nations Convention on the Law of the Sea;

**Committed** to cooperation to stop the flow by sea of WMD, their delivery systems, and related materials to or from States or non-state actors of proliferation concern;

Have agreed as follows:

8

C   668

# Article 1
## Object, Purpose and Scope

1.    The object and purpose of this Agreement is to promote cooperation between the Parties to enable them to prevent the transportation by sea of items of proliferation concern.

2.    The Parties shall carry out their obligations and responsibilities under this Agreement in a manner consistent with the principles of international law pertaining to the sovereign equality and territorial integrity of States and freedom of navigation, on the basis of the principle of reciprocity.

3.    The Parties shall cooperate to the fullest extent possible, subject to the availability of resources and in compliance with their respective laws.

# Article 2
## Definitions

For the purposes of this Agreement, unless the context otherwise requires:

1.    "Proliferation by sea" means the transportation by ship of weapons of mass destruction, their delivery systems, and related materials to or from States or non-state actors of proliferation concern.

2.    "Weapons of mass destruction" (WMD) means nuclear, chemical, biological and radiological weapons.

3.    "Related materials" means materials, equipment and technology, of whatever nature or type, that are related to and destined for use in the development, production, utilization or delivery of WMD.

4.    "Items of proliferation concern" means WMD, their delivery systems, and related materials.

5.    "States or non-state actors of proliferation concern" means those countries or entities whose activities should be impeded or stopped because they are or are believed to be engaged in: (1) efforts to develop or acquire WMD or their delivery systems; or (2) trafficking (either selling, receiving, or facilitating) of WMD, their delivery systems, or related materials.

C   669

6.   "Security Force Officials" means for:

    a.   the United States, uniformed or otherwise clearly identifiable members of the United States Coast Guard and the United States Navy, who may be accompanied by clearly identifiable law enforcement officials of the Departments of Homeland Security and Justice, and other clearly identifiable officials duly authorized by the Government of the United States of America and notified to the Competent Authority of the Government of Malta; and

    b.   Malta, uniformed or otherwise clearly identifiable members of the Armed Forces of Malta, the Malta Police Force and the Department of Customs, and other clearly identifiable officials duly authorized by the Government of Malta and notified to the Competent Authority of the United States.

7.   "Security Force vessels" means warships and other vessels of the Parties, or of third States as may be authorized in accordance with Articles 5 and 9 of this Agreement, on which Security Force Officials of either or both Parties may be embarked, clearly marked and identifiable as being on government non-commercial service and authorized to that effect, including any vessel and aircraft embarked on or supporting such vessels.

8.   "Suspect vessel" means a vessel used for commercial or private purposes in respect  of which there are reasonable grounds to suspect it is engaged in proliferation by sea, as determined pursuant to Article 5 of this Agreement.

9.   "International waters" means all parts of the sea not included in the territorial sea, internal waters and archipelagic waters of a State, consistent with International law.

10.   "Competent Authority" means for the United States, the Commandant of the United States Coast Guard (including any officer designated by the Commandant to perform such functions), and for Malta, the Commander of the Armed Forces of Malta (including any officer designated by the Commander to perform such functions).

C   670

## Article 3
## Cases of Suspected Vessels

1.   Subject to paragraph 2 of this Article, operations to suppress proliferation by sea pursuant to  this Agreement shall be carried out only against suspect vessels:

> a.  having the nationality of one of the Parties and entitled to fly its flag, or

> b.   registered under the law of one of the Parties under a bareboat charter, notwithstanding an underlying registration in another State not Party to this Agreement, or

> c.  without nationality or assimilated to vessels without nationality.

2.   Such operations shall not be carried out under this Agreement against vessels registered under the law of one of the Parties while bareboat chartered in another State not party to this Agreement.

## Article 4
## Operations in and over National Waters

This Agreement does not authorize the conduct of operations to suppress proliferation by sea by one Party in and over the waters of  the other Party.

## Article 5
## Operations in International Waters

1.   Authority to Board Suspect Vessels. Whenever the Security Force Officials of one Party ("the requesting Party") encounter a suspect vessel claiming nationality in the other Party ("the requested Party") located in international waters, the requesting Party may request through the Competent Authority of the requested Party, that it:

> a.  confirm the claim of nationality of the suspect vessel; and

> b.  if nationality is confirmed:

11

C   671

    i.  authorise the boarding and search of the suspect vessel, cargo, and persons found on board by Security Force Officials of the requesting Party; and

    ii. if evidence of proliferation is found, authorize the Security Force Officials of the requesting Party to detain the vessel, as well as items and persons on board, pending instructions conveyed through the Competent Authority of the requested Party as to the actions the requesting Party is permitted to take concerning such items, persons and vessels.

Each authorization to act shall be in writing between the Competent Authorities. Nevertheless, in urgent circumstances, an authorization to act may be granted orally by the Competent Authority of the requested Party. An oral authorization to act shall be confirmed in writing forthwith by the Competent Authority.

2.   Contents of Requests. Each request should be in writing and contain the name of the suspect vessel, sufficiently reliable information forming the basis for the suspicion, the geographic position of the vessel, the IMO number if available, the homeport, the port of origin and destination, and any other identifying information. Nevertheless, in urgent circumstances, a request may be made orally, but shall be confirmed in writing forthwith.

The requested Party shall acknowledge to the Competent Authority of the requesting Party in writing, by e-mail or by facsimile, its receipt of any written or urgent oral request immediately upon receiving it.

3.   Responding to Requests

    a.  If the nationality is verified and the requested Party is satisfied with the basis for suspicion that the vessel is a suspect vessel, and that the information provided by the requesting Party is sufficiently reliable, the requested Party may:

        i.  decide to conduct the boarding and search with its own Security Force Officials;

12

C   672

ii. authorize the boarding and search by the Security Force Officials of the requesting Party, subject to conditions if deemed appropriate;

iii. decide to conduct the boarding and search together with the requesting Party; or

iv. nevertheless, deny permission to board and search.

b. The requested Party shall answer through its Competent Authority requests made for the verification of nationality and authorization to board within four hours of its acknowledgement of the receipt of such requests unless the requested Party requests additional time to answer.

c. If the nationality is not verified or verifiable within the four hours, the requested Party shall, through its Competent Authority:

i. nevertheless stipulate that it does not object to the boarding and search by the Security Force Officials of the requesting Party; or

ii. refute the claim of the suspect vessel to its nationality.

d. Either Party, consistent with the other provisions of this Agreement, may subject its authorization under this paragraph to conditions, including obtaining additional information from the requesting Party, and conditions relating to responsibility for and the extent of measures to be taken. Information to be provided in response to such a request shall be exchanged in a timely manner by the Competent Authorities; however, the requesting Party may notify the requested Party if it is providing additional information through established information sharing channels.

e.    Notification to the Master.  Prior to the boarding being conducted, the flag State may, in coordination with requesting Party, transmit to the Master of the suspect vessel notice that it has authorized the requesting Party to board the vessel.

4.    Right of Visit.   Notwithstanding the foregoing paragraphs of this Article, the Security Force Officials of one Party ("the first Party") are authorized to board suspect vessels claiming nationality in the other Party

C   673

that are not flying the flag of the other Party, not displaying any marks of its registration or nationality, and claiming to have no documentation on board the vessel, for the purpose of locating and examining the vessel's documentation.  If documentation or other physical evidence of nationality is located, the foregoing paragraphs of this Article apply.  If no documentation or other physical evidence of nationality is available, the other Party will not object to the first Party assimilating the vessel to a ship without nationality consistent with international law.

5.    Use of Force.  The authorization to board, search and detain includes the authority to use force in full compliance with the provisions of Article 11 of this Agreement.

6.    Shipboarding Otherwise in Accordance with International Law.  This Agreement does not limit the right of either Party to conduct boardings of vessels or other activities consistent with international law whether based, *inter alia*, on the right of visit, the rendering of assistance to persons, vessels, and property in distress or peril, or an authorization from the Flag or Coastal State, or other appropriate bases in international law.


## Article 6
## Jurisdiction over Detained Vessels

1.    Limitations. Neither Party shall undertake the exercise of jurisdiction and performance of functions in the territory of the other Party.

2.    Jurisdiction of the Parties. In all cases covered by Article 5 concerning the vessels of a Party ("the flag State") located in international waters, jurisdiction rests with the flag State over a detained vessel, cargo or other items and persons on board (including seizure, forfeiture, arrest, and prosecution). However, the flag State may, subject to its Constitution and laws, consent to the exercise of jurisdiction by the other Party in accordance with the provisions of this Agreement.

3.    Jurisdiction in the contiguous zone of a Party. In a zone contiguous to its territorial sea, described as the contiguous zone, a Party may exercise the control necessary, *inter alia*, to prevent the infringement of its customs, fiscal, immigration or sanitary laws and regulations within its territory or territorial sea. In all cases not covered by Article 5 involving the vessel of

14

C   674

one Party that arise in the contiguous zone of the other Party and in which both Parties have authority to board in accordance with their respective jurisdictions –

    a.   except as provided in subparagraph (b), the Party which conducts the boarding shall have the right to exercise its authorized jurisdiction;

    b.   in cases involving suspect vessels fleeing from the territorial sea of a Party in which that Party has the authority to board and to exercise jurisdiction, that Party shall have the right to exercise its authorized jurisdiction.

4.   Disposition Instruction. Consultations as to the exercise of jurisdiction pursuant to paragraphs 2 and 3 of this Article shall be undertaken between the Competent Authorities without delay.

5.   Form of waiver. Where permitted by its Constitution and laws, waiver of jurisdiction may be granted verbally, but as soon as possible it shall be recorded in a written note from the Competent Authority and be processed through the appropriate diplomatic channel, without prejudice to the immediate exercise of jurisdiction over the suspect vessel by the other Party.

### Article 7
### Points of Contact

Each Party shall identify to the other Party, and keep current, through its Competent Authority the points of contact for communicating with its national authorities competent to receive and act at any time to requests under Article 5 for verification of nationality and authority to board, search and detain suspect vessels, and for instructions as to the exercise of jurisdiction under Article 6, and to receive and act on notifications under Article 8, and to respond to requests for technical assistance under Article 18 in addition to any other communication necessary for the implementation of this Agreement.

### Article 8
### Exchange of Information, Notification of Results of Shipboardings and Actions Taken

1.    Model Forms. The Parties shall use the model forms appended to this Agreement for communications pursuant to this Agreement, except as otherwise provided in this Agreement. The Competent Authorities of the Parties may, by mutual agreement, amend or replace in accordance with their laws the model forms annexed to this Agreement.

2.    Exchange of Operational Information. The Competent Authorities of both Parties shall endeavor to exchange operational information on the detection and location of suspect vessels and shall maintain communication with each other as necessary to carry out the purpose of this Agreement.

3.    Protection of classified information and material. Each Party shall protect classified information and material from unauthorized disclosure at all times in accordance with such requirements as the requesting Party may specify or as otherwise agreed by the Parties.

4.    Notification of Results. A Party conducting a boarding and search pursuant to this Agreement shall promptly, and in any case not later than 48 hours, notify the other Party of the results thereof through their Competent Authorities, following the conclusion of the boarding and search. Such notification shall be effected through the Competent Authorities of the Parties.

5.    Status Reports. Each Party, in compliance with its laws, shall timely report at least every month to the other Party, through their Competent Authorities on the status of all investigations, prosecutions and judicial proceedings and other actions and processes, arising out of the application of this Agreement.

### Article 9
### Conduct of Security Force Officials

1.    Compliance with Law and Practices. Each Party shall ensure that its Security Force Officials, when conducting boardings and searches pursuant to this Agreement, act in accordance with its applicable national laws and

C   676

policies and consistent with its international law and accepted international practices.

2.   Boarding and Search Teams

a.   Boardings and searches pursuant to this Agreement shall be carried out by Security Force Officials from Security Force vessels as may be authorized on a case-by-case basis.

b.   Neither Party shall be required to authorize a boarding from a vessel or aircraft of a third State that it would consider adverse to its interests.

c.   The boarding and search teams may carry personal weapons.

**Article 10
Safeguards**

1.   Where a Party takes measures against a vessel in accordance with this Agreement, it shall:

a.   take due account of the need not to endanger the safety of life at sea;

b.   take due account of the safety and security of the vessel and its cargo;

c.   not prejudice the commercial or legal interests of the Flag State;

d.   ensure, within available means, that any measure taken with regard to the vessel is environmentally sound under the circumstances;

e.   ensure that persons on board are afforded the protections, rights and guarantees provided by international law and the boarding State's law and regulations;

f.   ensure that the master of the vessel is, or has been, afforded at any time the opportunity to contact the vessel's Flag State, and, subject

C   677

to preserving the safety and security of operations, is, or has been, afforded the opportunity to contact the vessel's owner or manager.

2.   All reasonable efforts shall be taken to avoid a vessel being unduly detained or delayed.

## Article 11
## Use of Force

1.   All uses of force pursuant to this Agreement shall be in strict accordance with the applicable laws and policies of the Party conducting the boarding and with applicable international law.

2.   Each Party shall avoid the use of force except when and to the degree necessary to ensure the safety of Security Force vessels and officials, and where Security Force Officials are obstructed in the execution of their duties.

3.   Any use of force pursuant to this Article shall not exceed the minimum degree of force that is necessary, proportional and reasonable in the circumstances.

4.   Boarding and search teams and Security Force vessels have the inherent right to use all available means to apply that force reasonably necessary to defend themselves or others from physical harm.

5.   Any use of force by the Party conducting a boarding and search pursuant to this Agreement shall be immediately reported with all necessary details to the Competent Authority of the other Party.

## Article 12
## Exchange and Knowledge of Laws and Policies of Other Party

1.   Exchange of Information.   To facilitate implementation of this Agreement, each Party, shall endeavour to ensure the other Party is appropriately informed of its respective applicable laws and policies, particularly those pertaining to the use of force.

C   678

2.    Knowledge.  Each Party shall endeavour to ensure that its Security Force Officials are knowledgeable concerning the applicable laws and policies in accordance with this Agreement.


## Article 13
## Points of Contact

1.    Information.  Each Party shall inform the other Party through their Competent Authorities, and keep current, the points of contact for communication, decision and instructions under Articles 4 and 5, and notifications under Articles 6 and 8, of this Agreement.

2.    Availability.  The Parties shall ensure that the points of contact have the capability to receive process and respond to requests and reports at any time.


## Article 14
## Disposal of Seized Property

1.    Disposal of Property.  Assets seized in consequence of any operation undertaken pursuant to this Agreement shall be disposed of in accordance with the laws of that Party exercising jurisdiction in accordance with Article 6 of this Agreement.

2.    The seizing Party may transfer in accordance with its laws forfeited assets or proceeds of their sale to the flag State Party after deducting therefrom all expenses directly and reasonably connected with the seizure and disposal and any share thereof which any Party may in accordance with its legislation be entitled to.


## Article 15
## Disputes and Consultations

1.    Disputes.  Disputes arising from the interpretation or implementation of this Agreement shall be settled by mutual agreement of the Parties.  Where mutual agreement cannot be reached after a reasonable time, the Parties may, by mutual agreement, seek settlement of the dispute by another peaceful means of their own choice, including, but not limited to, arbitration.

C   679

2.    Evaluation of Implementation.   The Parties agree to consult as necessary to evaluate the implementation of this Agreement and to consider enhancing its effectiveness.  The evaluation shall be carried out at least once a year.

3.    Resolving Difficulties.  In case a difficulty arises concerning operations under this Agreement, either Party may request consultations with other Party to resolve the matter.

## Article 16
## Claims

1.    Injury or Loss of Life.  Any claim for injury to or loss of life of a Security Force Official of a Party while carrying out operations arising from this Agreement shall normally be resolved in accordance with the laws of that Party.

2.    Other Claims.  Any other claim submitted for damage, harm, injury, death or loss resulting from an operation carried out by a Party under this Agreement shall be resolved in accordance with the domestic law of the Party to which the claim is brought and international law.

3.    Consultation.  If any damage, harm, injury, death or loss is suffered as a result of any action asserted to have been taken by the Security Force Officials of one Party in contravention of this Agreement, including action taken on unfounded suspicions, or if any improper, disproportionate or unreasonable action is asserted to have been taken by a Party, the Parties shall, without prejudice to any other legal recourse which may be available, consult at the request of either Party with a view to resolving the matter and deciding any questions relating to compensation or payment.

4.    No Waiver of Other Rights. Neither Party thereby waives any rights it may have under international law to raise to claim with the other Party through diplomatic channels.

20

C   680

## Article 17
## Technical Assistance

The Competent Authority of one Party ("the Requesting Party") may request, and the Competent Authority of the other Party may authorize, Security Force Officials to provide technical assistance,  such as specialized assistance in the boarding and search of suspect vessels, including vessels of the Requesting Party wherever located (provided that any activity in a marine area under the sovereignty of a third State has been authorized by that State), and for the boarding and search of suspect vessels located in the territory or waters of the requesting Party.

## Article 18
## Miscellaneous Provisions

Nothing in this Agreement:

    (a) precludes the Parties from otherwise agreeing on operations or other forms of      cooperation to suppress proliferation;

    (b) alters the rights and privileges due any person in any administrative or judicial proceeding conducted under the jurisdiction of either Party;

    (c) shall be construed as creating any private right of action for any individual or entity;

    (d) prejudices in any manner the positions of either Party regarding the international law of the sea.

## Article 19
## Entry into Force

This Agreement shall enter into force upon an exchange of notes indicating that the necessary internal procedures of each Party have been completed.

C   681

**Article 20**
**Termination**

1.    Notification. This Agreement may be terminated at any time by either Party upon written notification to the other Party through the diplomatic channel.

2.    Effective Date. Such termination shall take effect 90 days from the date of notification.

**Article 21**
**Continuation of Actions Taken**

This Agreement shall continue to apply after termination with respect to any administrative or judicial proceedings arising out of actions taken pursuant to this Agreement.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

DONE AT Washington, this 15th day of March, 2007.

(Signatures)

C   682

# APPENDIX: MODEL FORMS

## Model Form: STEP 1

**Request for
Confirmation of Nationality
and
Request for Authorization to Board and Search Suspect Vessel
Pursuant to Article 5 of the Agreement**

----

Date/Time (GMT (Z)):     _____

Reference (Vessel Name):     _____

**To:**
_____
_____

    **(insert identification of the Competent Authority of Requested Party)**

    Telephone:  _____
    Fax:          _____
    e-mail:      _____

**From**_____
_____

    **(insert identification of the Competent Authority of Requesting Party)**

    Telephone:  _____
    Fax:          _____
    e-mail:      _____

œ If this box is checked, then this request confirms an urgent oral request made previously by [the United States of America directed to the Operations

23

C   683

Center                                    of                                    the
Armed Forces of Malta] [the Republic of Malta directed to the United States
Coast Guard National Command Center].

Pursuant to Article 5 of the Agreement between the Government of the
United States of America and the Government of the Republic of Malta
concerning Cooperation to Suppress the Proliferation of Weapons of Mass
Destruction, their Delivery Systems, and Related Materials by Sea
(hereinafter, the "Agreement"), the Security Force Officials of [name of
Requesting Party] have encountered a suspect vessel claiming nationality in
[name of the Requested Party] located in international waters. Accordingly,
[name of Requesting Party] invites [name of the Requested Party]'s attention
to following information and requests.

1.      Name/hull number/ flag of Security Force Vessel on
        scene:_____

2.      Available Description of Suspect Vessel:

        a.      Vessel's name:

                _____

        b.      Claimed flag:

                _____

        c.      Call Sign:

                _____

        d.      IMO number:

                _____

        e.      Port & year of registry:

                _____

        f.      Type of vessel:   **(Check one)**

24

C   684

œ   **Container**

œ   **Tanker**

œ   **Bulk carrier**

œ   **Pleasure craft**

œ   **Fishing vessel**

œ   **Cruise ship**

œ   **Other:**

_____

g.   Length of vessel:

_____

h.   Last port of call (LPOC):

_____

i.   Date of LPOC:

_____

j.   Next port of call (NPOC):

_____

k.   Date of NPOC:

_____

l.   Claimed cargo:

_____

C   685

m.    Purpose of voyage:

_____

3.    Suspect vessel's position:

a.    Latitude:

_____

b.    Longitude:

_____

c.    Geographic reference:

_____

d.    Course/ Speed:      _____ / _____

4.    Persons on board, if known:

a.    Number:

_____

b.    Name of Master:

_____

c.    Nationality of Master:

_____

d.    Master's date of birth:

_____

C   686

5.    Reasonable grounds to suspect that vessel is engaged in proliferation
by sea: (include, if possible, a brief description of the suspect cargo,
including any relationship to relevant multilateral or national export
control lists, such as the Nuclear Suppliers Group Trigger List)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

œ If this box is checked, relevant information is being provided
through established information sharing channels.

6.    Estimated duration indicated for the boarding based on current
information (this is only an estimate and subject to substantial change
depending on circumstances encountered; if this request is approved,
the [name of Requesting Party] shall keep [name of Requested Party]
apprised of developments and changed circumstances that may
decrease or increase the duration of the boarding):

_____
_____

7.    Action Request: The [name of Requesting Party] requests [name of
the Requested Party]:

a.  Confirm the claim of nationality of the suspect vessel; and

b.  If nationality is confirmed:

(1) Authorize the boarding and search of the suspect vessel, cargo
and the persons found on board by [name of the Requesting Party]
Security Force Officials; and

C   687

(2) If evidence of proliferation is found, authorize the Security Force Officials of the [name the of Requesting Party] to detain the vessel, as well as items and persons on board, pending instructions conveyed through [name of the Competent Authority of the Requested Party] as to the actions the [name of the Requesting Party] is permitted to take concerning such items, persons and vessels.

Signature/Date/Time                                    (GMT                        (Z)):

_____

28

C   688

## **Model Form:  STEPS 2-4**

### **Response to Requests for
Confirmation of Nationality
and
Authorization to Board and Search Suspect Vessel
Pursuant to Article 5 of the Agreement**

----

Date/Time (GMT (Z)):  _____

Reference (Vessel Name):  _____

**To:**  _____
_____
**(insert identification of the Competent Authority of Requested Party)**

      Telephone:_____
      Fax: _____
      e-mail:_____

**From:_____(insert identification of the Competent Authority of Requesting Party)**

      Telephone:_____
      Fax:_____
      e-mail_____

    If this box is checked, then this authorization confirms an urgent oral authorization given previously by [the United States of America directed to the Operations Center of the Armed Forces of Malta] [the Republic of Malta directed to the United States Coast Guard National Command Center].

THIS SPACE INTENTIONALLY LEFT BLANK

29

C   689

## STEP 2:  CONFIRMATION OF NATIONALITY

In response to your request of [date/time GMT (Z) from request form] for confirmation of nationality of [name of suspect vessel] pursuant to article 5 of the Agreement between the Government of the United States America and the Government of the Republic of Malta Concerning Cooperation to Suppress the Proliferation of Weapons of Mass Destruction, their Delivery Systems, and Related Materials by Sea (hereinafter, the "Agreement"), the [name of Requested Party] hereby:

## CHECK ONLY ONE OF THE BOXES:

Confirms that the [name of the suspect vessel] is presently lawfully registered [in the American Register of Ships] [under the Merchant Shipping Act (CAP. 234) of the Laws of Malta] and is entitled to fly the flag of the [name of Requested Party] (see paragraph 2 of request).

Can neither confirm nor deny that [name of suspect vessel] is registered [in the American Register of Ships] [under the Merchant Shipping Act (CAP. 234) of the Laws of Malta], but nevertheless stipulates that it does not object to the boarding and search by the Security Force Officials of the Requesting Party (see paragraph 2 of request).

Denies that the [name of suspect vessel] is presently lawfully registered [in the American Register of Ships] [under the Merchant Shipping Act (CAP. 234) of the Laws of Malta] and therefore is NOT entitled to fly the flag of the [name of Requested Party].

31

C   690

**STEP 3:   IF NATIONALITY IS CONFIRMED or STIPULATED, THEN COMPLETE STEP 3- -**

Further to your request, the Government of the [name of Requested Party] hereby:

**CHECK ONLY ONE OF THE BOXES:**

Authorizes, **subject to completion of the procedures in Step 4 below**, the boarding and search of  [name of suspect vessels] by Security Force Officials of [name of boarding Party] from [name and nationality of boarding platform ] in international waters;  and if evidence is found on board that the [name of suspect vessel] is engaged in proliferation by sea, detain the vessel as well as items and persons on board, pending instructions from [name of Requested Party] regarding the actions the [name of Requesting Party] is permitted to take concerning the [name of suspect vessel], as well as items and persons on board.

Authorizes the boarding and search of [name of suspect vessel] by Security Force Officials of [name of boarding Party]from [name and nationality of boarding platform] in international waters;  and if evidence is found on board that the [name of suspect vessel] is engaged in proliferation by sea, detain the vessel as well as items and persons on board, pending instructions from [name of the Requested Party] regarding the actions the [name of Requesting Party] is permitted to take concerning the [name of suspect vessel], as well as items and persons on board.  The Requested Party does not intend to transmit notice of authorization for the boarding to the Master.  Accordingly, the Requesting Party may execute this authorization forthwith.

Is prepared to authorize the boarding and search of [name of suspect vessel] by Security Force Officials of [name of boarding Party] in international waters, but not from [name and nationality of boarding platform].  Please identify to [name of Requested Party] an alternative platform, if available, and [name of Requested Party] will consider the request and respond accordingly.

Decides to conduct the boarding and search with its own Security Force Officials and proposes the following additional instructions:

C   691

_____
_____
_____
_____
_____
_____

Decides to conduct the boarding and search together with the Security Force Officials of the Requesting Party and proposes the following rendezvous instructions:

_____
_____
_____
_____
_____
_____

Denies authorization to stop, board, and search the [name of suspect vessel] on the following grounds:

**CHECK THE APPROPRIATE BOX OR BOXES:**

According to the information officially submitted by to the Government of the [name of the Requested Party] there are not reasonable grounds to suspect that the said vessel is engaged in proliferation by sea.

It was not possible for the Parties to mutually agree on certain additional conditions Relating to the Authorization required by the Government of the [name of Requested Party] in its capacity as the Requested Party.

The Government  of the [name of the Requested Party], in its capacity as the Requested Party, decided that under the present circumstances it is more appropriate and efficient to conduct the boarding and search of [name of suspect vessel] with its own Security Force Officials at a later date.

Other:

_____
_____

C   692

The present authorization is given to the [name of the Requested Party] subject, in addition to the terms and safeguards of the Agreement, to the following additional conditions mutually agreed between the Parties:

*None*

_____

_____

_____

_____

## STEP 4:   INSTRUCTIONS REGARDING TRANSMITTAL OF NOTIFICATION TO THE MASTER

- The [name of the Requesting Party] shall notify the [name of the Requested Party] by [identify mode(s) of communication] of the time that it wishes to conduct the boarding and when notification to the Master should be given.

- Thereafter, [the name of the Requested Party] shall notify the [name of the Requesting Party] by [identify mode(s) of communication] when it has transmitted to the Master of the suspect vessel notice that it has authorized the boarding.

- [Name of the Requesting Party] may thereafter execute this authorization.

Signature/Date/Time (GMT (Z)):

_____

34

C   693

## **Model Form:  STEP 5**

**Arrangements for Transmittal of Notice to the Master of a Suspect Vessel that the Flag State has Authorized a Boarding Pursuant to the |Agreement**
**-------**

Date/Time (GMT (Z)):    _____

Reference (Vessel Name):       _____

**To:**

_____
_____
        **(insert identification of the Competent Authority of Requested Party)**

        Telephone: _____
        Fax:    _____
        e-mail:_____

**From:**
        **(insert identification of the competent Authority of Requesting Party)**

        Telephone: _____
        Fax:    _____
        e-mail:_____


## **STEP 5:   INSTRUCTIONS REGARDING TRANSMITTAL OF NOTIFICATION TO THE MASTER:**

- The [name of the Requesting Party] wishes to conduct the boarding at [date & time GMT (Z)].

- The [name of the Requesting Party] recommends notification of the boarding be transmitted to the Master be given [instructions on date & time GMT (Z)].

36

C   694

Absent urgent circumstances, where a request for Confirmation of Nationality and Authorization to Board and Search and relevant authorization may be respectively submitted or granted orally pursuant to Article 5 of the Agreement, the [name of the Requesting Party] shall await notification from [name of the Requested Party] by [identify mode(s) of communication described by the Requested Party in Step 4 above] that it has transmitted to the Master of the suspect vessel notice that it has authorized the boarding.

Signature/Date/Time (GMT (Z)):

_____

C   695

## **Model Form:  STEP 6**

### **Confirmation of Transmittal of Notice to the Master of a Suspect Vessel that the Flag State has Authorized a Boarding Pursuant to the Agreement**

------

Date/Time (GMT (Z)):

_____

Reference (Vessel Name):

_____

**To:**

_____
_____
      **(insert identification of the Competent Authority of Requested Party)**

      Telephone: _____
      Fax: _____
      e-mail:_____

**From:**
      **(insert identification of the competent Authority of Requesting Party)**

      Telephone: _____
      Fax: _____
      e-mail:_____

## **STEP 6:  CONFIRMATION OF TRANSMITTAL OF NOTIFICATION TO THE MASTER:**

The [name of the Requested Party] confirms that it has transmitted to the Master of the suspect vessel notice that it has authorized the boarding.  Consequently, the [name of the Requesting Party] may exercise the previous authorization granted to board the suspect vessel.

38

C   696

# <u>Model Form:  STEP 7</u>

## Report of Results of Boarding and Search of Suspect Vessel Pursuant to Article 5 of the Agreement

------

Date/Time (GMT (Z)):   _____

Reference (Vessel Name):      _____

**To:**

_____
_____
**(insert identification of the Competent Authority of Requested Party)**

     Telephone:_____
     Fax:_____
     e-mail:_____

**From:**
     **(insert identification of the Competent Authority of Requesting Party)**

     Telephone:_____
     Fax:_____
     e-mail:_____

In accordance with authorization previously granted pursuant to article 5 of the Agreement between the Government of the United States America and the Government of the Republic of Malta Concerning Cooperation to Suppress the Proliferation of Weapons of Mass Destruction, their Delivery Systems, and Related Materials by Sea (hereinafter, the "Agreement"), the Security Force Officials of [name of Requesting Party] boarded the suspect vessel [name of suspect vessel].  Accordingly, [name of Requesting Party] invites [name of the Requested Party]'s attention to following information and requests:

40

1.     Boarding logistics:

      1.    Time boarding commenced (GMT (Z)):_____

      2.    Position at time of boarding:

      3.    Resistance or opposition to boarding:_____

      4.    Number of persons in boarding team:_____

2.     Evidence of proliferation by sea:

**CHECK ONLY ONE OF THE BOXES:**

œ The boarding yielded no evidence of proliferation by sea.

œ The boarding yielded the following evidence that the vessel is engaged in proliferation by sea:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

3.    Persons on board:

| Name & Position | Nationality | Date of Birth | Document Number |
|---|---|---|---|
|  |  |  |  |

C   698

|  |  |  |  |
| --- | --- | --- | --- |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

4.      Other evidence or issues:

_____
_____
_____
_____
_____
_____

5.      Intentions/request for disposition instructions:

**CHECK ONLY ONE OF THE BOXES:**

œ Due to the absence of evidence of proliferation by sea, the [name of Requesting Party] intends to conclude the boarding and release the vessel.

C   699

œ Based on the evidence described above, the [name of Requesting Party] requests from [name of Requested Party] authorization to divert and direct the suspect vessel to [name of place or port] to continue the boarding and space/cargo accountability dockside.  Pursuant to authority previously granted, the [Requesting Party] will detain the vessel as well as items and persons on board, pending instructions from the [name of the Requested Party] regarding the actions the [name of Requesting Party] is permitted to take concerning the [name of suspect vessel], as well as items and persons on board.

œ Based on the evidence that the vessel is engaged in proliferation by sea set forth above, the [name of Requesting Party] requests from [name of Requested Party] disposition instructions with respect to the vessel, cargo, and persons on board.  Pursuant to authority previously granted, the [Requesting Party] will detain the vessel as well as items and persons on board, pending instructions from the [name of the Requested Party] regarding the actions the [name of Requesting Party] is permitted to take concerning the [name of suspect vessel], as well as items and persons on board.

Signature/Date/Time (GMT (Z)):

_____

43

C   700

## **Model Form**

### **Miscellaneous Communications Regarding Suspect Vessel Pursuant to the Agreement**

**------**

Date/Time (GMT (Z)):   _____

Reference (Vessel Name):      _____

**To:**

_____
_____
**(insert identification of the Competent Authority of Requested Party)**

Telephone:_____
Fax:_____
e-mail:_____

**From:**
**(insert identification of the Competent Authority of Requesting Party)**

Telephone:_____
Fax:_____
e-mail:_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

44

C   701

_____
_____
_____
_____
_____

Signature/Date/Time (GMT (Z)):
_____

C   702

## SECOND SCHEDULE
### (Article 2)

## AGREEMENT BETWEEN
## THE GOVERNMENT OF THE REPUBLIC OF MALTA
## AND
## THE GOVERNMENT OF THE UNITED SATES OF AMERICA
## CONCERNING COOPERARION TO SUPPRESS ILLICIT
## TRAFFIC IN NARCOTIC DRUGS AND PSYCHOTROPIC
## SUBSTANCES BY SEA

The Government of the Republic of Malta and the Government of the United States of America (hereinafter, "the Parties");

**Bearing in mind** the special nature of the problem of illicit maritime drug traffic;

**Having regard to** the urgent need for international cooperation in suppressing illicit maritime drug traffic, which is recognized in the 1961 Single Convention on Narcotic Drugs and its 1972 Protocol, in the 1971 Convention on Psychotropic Substances, in the 1988 United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances (hereafter, "the 1988 Convention"), and in the 1982 United Nations Convention on the Law of the Sea; and

**Recalling** that Article 17 of  the 1988 Convention provides, *inter alia*, that the Parties shall consider entering into bilateral and regional agreements to carry out, or to enhance the effectiveness of, the provisions of Articles 17;

**Desiring** to promote greater cooperation between the Parties, and thereby enhance their effectiveness, in combating illicit traffic in narcotic drugs and psychotropic substances by sea;

**Based on** the principles of international law, respect for the sovereign equality of States and in full respect of the freedom of navigation;

Have agreed as follows:

46

C   703

# Article 1
## Purpose and Scope

The Parties shall cooperate in combating illicit traffic by sea in narcotic drugs and psychotropic substances to the fullest extent possible, consistent with available law enforcement resources and priorities related thereto.

# Article 2
## Definitions

For the purposes of this Agreement, unless the context otherwise requires:

a) "illicit traffic" has the same meaning as in Article 1 (m) of the 1988 Convention.

b) "international waters" means waters seaward of any State's territorial sea, including the contiguous zone.

c) "contiguous zone" has the same meaning as in Article 33 of the Law of the Sea Convention.

d) "law enforcement authorities" means, for the Government of the Malta, the Armed Forces of Malta, and for the Government of the United States of America, the United States Coast Guard.

e) "law enforcement officials" means, for the Government of Malta, the Armed Forces of Malta, the Malta Police Force and the Department of Customs, and for the Government of the United States of America, uniformed members of the United States Coast Guard who may be accompanied by other authorized personnel.

f) "law enforcement vessels" means warships or other ships of the Parties, or of third States as may be agreed by the Parties, abroad which law enforcement officials are embarked, clearly marked and identifiable as being on government non-commercial service and authorized to that effect, including any boat or aircraft embarked on such ships.

C   704

g) "suspect vessel" means a vessel, claiming the nationality of one of the Parties, used for commercial or private purposes in respect of which there are reasonable grounds to suspect it is engaged in illicit traffic in narcotic drugs and psychotropic substances.

## Article 3
## Suspect Vessels

Operations to suppress illicit traffic in narcotic drugs and psychotropic substances pursuant to this Agreement shall be carried out only against suspect vessels and vessels without nationality.

## Article 4
## Operations in and over National Waters

This Agreement does not authorize the conduct of operations to suppress illicit traffic in narcotic drugs or psychotropic substances by one Party in and over the waters of the other Party.

## Article 5
## Operations in International Waters

1.   Authority to Board Suspect Vessels. Whenever the law enforcement officials of one Party ("the requesting Party") encounter a suspect vessel claiming the nationality of the other Party ("the requested Party") located in international waters, the requesting Party may request that the law enforcement authority of the requested Party:

a)    confirm the claim of nationality of the requested Party; and

b)    if such claim is confirmed:

(i)   authorize the boarding and search of the suspect vessel, cargo and the persons found on board by law enforcement officials of the requesting Party; and

C   705

(ii) if evidence of illicit traffic in narcotic drugs and psychotropic substances is found, authorize the law enforcement officials of the requesting Party to detain the vessel, cargo and persons on board pending instructions from the law enforcement authorities of the requested Party as to the exercise of jurisdiction in accordance with Article 6 of this Agreement.

2.  Content of Requests. Each request should contain the name of the suspect vessel, the basis for the suspicion (including all facts and other information on which the suspicion is based), the geographic position of the vessel, the registration number if available, home port, the port of origin and destination, and any other identifying information. If a request is conveyed orally, the requesting Party shall confirm the request in writing as soon as possible.

3.  Responding to Requests

(a)  If the nationality is verified, the requested Party may:

(i)   decide to conduct the boarding and search with its own law enforcement officials;

(ii)  authorize the boarding and search by the law enforcement officials of the requesting Party;

(iii) decide to conduct the boarding and search together with the requesting Party; or

(iv) deny permission to board and search.

(b)  The requested Party shall answer requests made for the verification of nationality within four (4) hours of the receipt of such requests.

(c)  If the nationality is not verified within the four (4) hours, the requested Party may:

(i)   nevertheless authorize the boarding and search by the law enforcement officials of the requesting Party; or

C   706

(ii)  refute the claim of the suspect vessel to its nationality.

(d)  If there is no acknowledgement or response to a written request pursuant to paragraph 2 from the requested Party within four (4) hours of its receipt of the request, the requesting Party will be deemed to have been authorized to board the suspect vessel for the purpose of inspecting the vessel's documents, questioning the persons on board, and searching the vessel to determine if it is engaged in illicit traffic.

4. Right of Visit. Notwithstanding the foregoing paragraphs of this Article, this Agreement authorizes the law enforcement officials of one Party ("the first Party") to board suspect vessels located in international waters claiming nationality in the other Party but that are not flying the flag of the other Party, are not displaying any marks of its registration or nationality, and claiming to have no documentation on board the vessel, for the purpose of locating and examining the vessel's documentation. If documentation or other physical evidence of nationality is located, then the foregoing paragraphs of this Article apply.

5. Use of Force. The authorization to board, search and detain includes the authority to use such force as may be necessary in accordance with Article 10 of this Agreement.

6. Shipboarding Otherwise in accordance with International Law. Except as expressly provided herein, this Agreement does not apply to or limit boardings of vessels, conducted by either Party in accordance with international law in international waters, whether based, *inter alia,* on the right of visit, the rendering of assistance to persons, vessels, and property in distress or peril, the consent of the vessel master, or an authorization from the flag State to take law enforcement action.

## Article 6
## Jurisdiction over Detained Vessels

1.   Limitations. Neither Party shall undertake the exercise of jurisdiction and performance of functions in the territory of the other Party.

2.   Waiver of Right. In all cases arising pursuant to this Agreement concerning vessels having the nationality of a Party in international waters,

C   707

that Party ("the first Party") shall have the right to exercise jurisdiction over a detained vessel, cargo and/or persons on board (including seizure, forfeiture, arrest, and prosecution), provided, however, the first Party may, subject to its Constitution and laws, waive its right to exercise jurisdiction and authorize the enforcement of the other Party's law against the vessel, cargo and/or persons on board.

3.    Contiguous Zone. In cases arising in the contiguous zone of a Party, not involving suspect vessels fleeing from the waters of that Party or suspect vessels having the nationality of that Party, in which both Parties have the authority to exercise jurisdiction to prosecute, the Party which conducts the boarding and search shall have the right to exercise jurisdiction.

4.    Requests to Waive Jurisdiction. If the evidence so warrants, the other Party may request that the first Party waive jurisdiction.

5.    Instructions as to the exercise of jurisdiction pursuant to this Agreement shall be given without delay.

6.    Form of Waiver. A waiver of jurisdiction may be granted verbally, but as soon as possible, it shall be recorded in a written note from the competent authority and be processed through the diplomatic authorities, without prejudice to the immediate exercise of jurisdiction over the suspect vessel by the other Party.

### Article 7
### Points of Contact

Each Party shall identify to the other Party, and keep current, the points of contact for communicating with is national authorities competent to receive and act at any time on requests under Article 5 for verification of nationality and authority to board, search and detain suspect vessels, and for instructions as to the exercise of jurisdiction under Article 6, and to receive and act on notifications under Article 8, and to respond to requests for technical assistance under Article 13, in addition to any other communication necessary for the implementation of this Agreement.

C   708

# Article 8
## Notification of Results of Shipboardings and Actions Taken

1.   Notification of Results. Each Party shall promptly, and in any case not later than 48 hours, notify the other Party of the results of any boarding and search of the vessels of the other Party conducted pursuant to this Agreement.

2.   Status Reports. Each Party, consistent with its procedures, shall report in a timely manner at least every month to the other Party on the status of all investigations, prosecutions and judicial proceedings resulting from enforcement action taken pursuant to this Agreement where evidence of illicit traffic was found.

# Article 9
## Conduct of Law Enforcement Officials

1.   Compliance with Law and Practices. Each Party shall ensure that its law enforcement officials, when conducting boarding and search activities pursuant to this Agreement, act in accordance with its applicable national laws and policies and with international law and accepted international practices.

2.   Boarding and Search Teams

   a.   Boardings and searches pursuant to this Agreement shall be carried out by law enforcement officials from law enforcement vessels or aircraft of the Parties and from such vessels and aircraft of other States, according to arrangements between the Party conducting the operation and the State providing the vessel or aircraft.

   b.   When conducting boardings and searches law enforcement officials may carry standard law enforcement small arms.

   c.   While carrying out boarding and search activities pursuant to this Agreement, the Parties shall take due account of the need not to endanger the safety of life at sea, the security of the suspect vessel and its cargo, or to prejudice the commercial and legal interests of the flag State or

any other interested State; and shall observe the norms of courtesy, respect and consideration for the persons on board the suspect vessel.

      d. Law enforcement vessels of   a Party operating with the authorization of the other Party pursuant to this Agreement shall, during such operations, also fly, in the case of Malta, the United States Coast Guard ensign, and in the case of the United States of America, the National Flag of Malta.

## Article 10
## Use of Force

1.    Rules. All uses of force by a Party pursuant to this Agreement shall be in strict accordance with applicable laws and policies of that Party and shall in all cases be that force reasonably necessary under the circumstances.

2.    Self-Defense. Nothing in this Agreement shall impair the exercise of the inherent right of self-defense by law enforcement or other officials of the Parties.

## Article 11
## Exchange and Knowledge of Laws and Policies of the Parties

1.    Exchange of Information. To facilitate implementation of this Agreement, each Party shall ensure that the other Party is fully informed of its respective applicable laws and policies, particularly those pertaining to the use of force.

2.    Ensuring Knowledge. Each Party shall ensure that all of its law enforcement officials acting pursuant to this Agreement are knowledgeable of the applicable laws and policies of both Parties.

## Article 12
## Disposal of Seized Property

1.    Disposal of Property. Assets seized in consequence of any operation undertaken pursuant to this Agreement shall be disposed of in accordance

C   710

with the laws of the Party exercising jurisdiction in accordance with Article 6 of this Agreement.

2.    The seizing Party may transfer in accordance with its laws forfeited assets or proceeds of their sale to the flag State Party  after deducting therefrom all expenses directly and reasonably connected with the seizure and disposal and any share thereof which any Party may in accordance with its legislation be entitled to.

## Article 13
## Technical Assistance

The law enforcement authority of one Party (the "first Party") may request, and the law enforcement authority of the other Party may authorize, law enforcement officials of the other Party to provide technical assistance, such as specialized assistance in the conduct of search of suspect vessels, to law enforcement officials of the first Party for the boarding and search of suspect vessels located in the territory or waters of the first Party.

## Article 14
## Consultations and Dispute Settlement

1.    Consultations. In case a question arises in connection with implementation of this Agreement, either Party may request consultations with the other Party to resolve the matter.

2.    Dispute Settlement. The Parties undertake to settle by consultation any disputes that arise from the implementation of this Agreement.

## Article 15
## Claims

1.    Examination of Claims. Any claim for damages, injury or loss resulting from an operation carried out under this Agreement shall be examined by the Party whose authorities conducted the operation.

C  711

2.     Resolution of Claims. If responsibility is established, the claim shall be resolved in favor of the claimant by that Party, in accordance with the domestic law of that Party, and in a manner consistent with international law, including paragraph 3 of Article 110 of the Law of the Sea Convention.

3.     No Waiver of Other Rights. Neither Party thereby waives any rights it may have under international law to raise a claim with the other Party through diplomatic channels.

## Article 16
## Miscellaneous Provisions

Nothing in this Agreement:

(a) precludes the Parties from otherwise agreeing on operations or other forms of cooperation to suppress illicit traffic;

(b) is intended to alter the rights and privileges due any individual in any legal proceeding;

(c) shall be construed as creating any private right of action for any individual or entity;

(d) prejudices in any manner the positions of either Party regarding the international law of the sea.

## Article 17
## Entry Into Force

This Agreement shall enter into force upon exchange of notes indicating that the necessary internal procedures of each Party have been completed.

C   712

## Article 18
## Termination

1.    Notification. This Agreement may be terminated at any time by either Party upon written notification to the other Party through the diplomatic channel.

2.    Effective Date. Such termination shall take effect 90 days from the date of notification.

## Article 19
## Continuation of Actions Taken

This Agreement shall continue to apply after termination with respect to any administrative or judicial proceeding arising out of actions taken pursuant to this Arrangement.

**IN WITNESS WHEREOF**, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

**DONE AT** Valletta, this 16th day of June, TWO THOUSAND AND FOUR.

(Signatures)

Objects and Reasons

The main object of this Bill is to ratify two Agreements with the United States of America making provision for the boarding of ships in the circumstances laid down in the agreements.

Ippubblikat mid-Dipartiment ta' l-Informazzjoni (doi.gov.mt) — Valletta — *Published by the Department of Information (doi.gov.mt) — Valletta*
Mitbugh fl-Istamperija tal-Gvern — *Printed at the Government Printing Press*

Prezz/*Price*
Lm2.08 (€4.85)