## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

YLLI DIDANI,

       Defendant.

_____/

CASE NO. 21-20264

HON. DENISE PAGE HOOD

## ORDER DENYING  MOTION TO DISMISS RE VALIDITY OF CERTIFICATES (ECF No. 118); DENYING MOTION FOR REASONABLE ACCESS TO DISCOVERY IN PRISON (ECF No. 120); DENYING MOTION FOR BOND (ECF No. 121); and 4) DENYING EMERGENCY MOTION FOR ORDER TO SUBPOENA USSG COMMANDER IAN M. STARR (ECF No. 127)

## I.    BACKGROUND

An Indictment was filed against Defendant Ylli Didani on April 21, 2021 alleging one count of Conspiracy to Distribute Controlled Substances of five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(6) and 846, and a Forfeiture Allegation.  (ECF No. 1) On March 16, 2022, a Superseding Indictment was filed charging Didani with:  Count One – Conspiracy to Distribute Controlled Substances, 21 U.S.C. §§ 841(a)(1) and 846; Count Two – Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance on Board a Vessel

Subject to the Jurisdiction of the United States, 46 U.S.C. §§ 70503(a) and 70506(b), 21 U.S.C. § 960(b)(1)(B); and Count Three – Conspiracy to Launder Monetary Instruments, 18 U.S.C. § 1956(h).  Didani remains in custody after the Court denied his oral motion for release pending trial.  (ECF No. 47)

Didani had four retained counsel who withdrew from representing him. Attorney Wade Fink, one of the retained counsel, was appointed under Criminal Justice Act as counsel for Didani, but later withdrew when Didani asserted his right to proceed pro se.  Stand by counsel was appointed by the Court and Attorney Fink agreed to be stand by counsel.  Didani has now filed the following pro se motions:  1) Motion to Dismiss re Validity of Certificates (ECF No. 118, 12/4/24); 2) Motion for Reasonable Access to Discovery in Prison (ECF No. 120, 12/12/24); 3) Motion for Bond (ECF No. 121, 12/16/24); and, 4) Emergency Motion for Order to Subpoena USSG Commander Ian M. Starr (ECF No. 127, 12/28/24). Responses have been filed.

The Superseding Indictment (ECF No. 38) alleges that no later than July 30, 2015 through 2020, in the Eastern District of Michigan and elsewhere, Didani and others known and unknown conspired to finance and distribute controlled substances.  They used residences in this District to plan their accumulation and distribution of controlled substance transactions.  Didani and others utilized

automobiles, aircraft, and other means of transportation for purposes of obtaining and distributing controlled substances.  As part of the conspiracy, Didani and others planned to have a container (torpedo) designed that was capable of holding large quantities of cocaine that would be used to transport cocaine across waterways.

Between June 2016 and December 2017, in this District, Conspirator One provided several checks to Conspirator Two for purpose of purchasing bulk cocaine.  Conspirator Two cashed these checks at banks, pawn shops, and gold exchange businesses located in this District.  On June 9, 2016, in this District, Didani met with Conspirator Two and received $100,000 in U.S. currency from Conspirator Two that was derived from the checks Conspirator One provided to Conspirator Two, for the purpose of purchasing bulk cocaine.

On November 16, 2017, while Conspirator One was in this District, Didani and Conspirator One exchanged text messages about a seizure of 140 kilograms of cocaine that occurred in the Netherlands.  Didani sent a test to Conspirator One stating, "We just fucked up," and Conspirator One responded to Didani with a text stating, "We will fix brother."

On December 18, 2017, Didani drove Conspirator One's Porsche SUV from this District to Washington D.C., where he checked into a hotel, the JW Marriott.

On December 19, 2017, while at the JW Marriott in D.C., Didani took a photograph with a cellular telephone of another photograph that was displayed on the screen of another cellular telephone that depicted over 190 rectangular-shaped packages, consistent with kilogram-size cocaine packages.  Conspirator Two flew from this District to D.C. in a private plane owned by Conspirator One to provide Didani with approximately $450,000 in U.S. currency derived from checks Conspirator One provided to Conspirator Two.  Conspirator Two met with Didani in D.C. on December 21, 2017 at which time Didani received approximately $450,000 in U.S. currency from Conspirator Two for the purpose of purchasing bulk cocaine.

The Superseding Indictment further alleges that from no later than October 2016 through March 2021, in this District, Ecuador, Columbia, the Netherlands, Spain, the high seas, in international waters and elsewhere, Didani and others conspired to intentionally possess with intent to distribute, five kilograms or more of a mixture or substance containing cocaine, on board vessels subject to the jurisdiction of the United States, on the MSC Anisha R, the Jean Gabriel, and the Cartagena Express.  Didani and others would arrange for the purchase, acquisition and delivery of luxury armored vehicles and bullet proof jackets to be used in the conspiracy.  The distribution of cocaine would utilize vessels traveling from South

America to Europe.  Didani and others caused cocaine to be loaded into shipping containers in South America, which were then placed on vessels in South America and transported on those vessels on the high seas and in international waters, from South America to Europe.  Didani and others caused cocaine to be loaded into shipping containers on vessels on the high seas and in international waters after the vessels had left South America en route to Europe.

In July and August 2019, Didani and others caused approximately 753 kilograms of cocaine to be shipped from South America to the Port of Rotterdam in the Netherlands.  A photograph from the Mediterranean Shipping Company website was sent to Didani depicting the booking information for a vessel, the MSC Anisha R, showing a direct transit departing Ecuador on July 23, 2019 with a scheduled arrival in Europe on August 9, 2019.  Upon arrival at the Port of Rotterdam in the Netherlands, law enforcement seized the cocaine in a shipping container.

On January 2020 and February 2020, Didani and others caused approximately 644 kilograms of cocaine to be shipped from Ecuador to the Port of Rotterdam in the Netherlands.  Conspirators hid the cocaine in a shipping container onboard the CMA GGM Gabriel.  When the CMA Jean Gabriel arrived at the Port of Rotterdam on February 22, 2020, law enforcement seized the cocaine.  In March

2020 to April 2020, Didani and others caused approximately 1000 kilograms of cocaine to be shipped from South America to the Netherlands.  On March 11, 2020, conspirators hid the cocaine on the Limari vessel, which was then transferred to the vessel, the Cartagena Express, which departed Columbia on March 26, 2020. Upon arrival at the Port of Rotterdam in the Netherlands, law enforcement seized the cocaine.

On March 2020 and April 2020, Didani and others caused approximately 1100 kilograms of cocaine to be shipped from South America to Spain. Conspirators hid the 1100 kilograms of cocaine in a shipping container that was placed on a vessel, the ArushiR., which departed Ecuador on March 20, 2020.  The shipping container was then transferred to a vessel, the Jenny, which departed Belgium on April 17, 2020, and arrived at the Port of Bilbao, Spain on April 20, 2020, where law enforcement seized the cocaine.

On September 2020, Didani and other conspirators caused approximately 1200 kilograms of cocaine to be shipped from Ecuador to the United Kingdom. Conspirators hid the 1200 grams of cocaine on a vessel, the Star Care, which departed Guayaquil, Ecuador on September 5, 2020.  Upon arrival at the Port of Dover in the United Kingdom on September 21, 2020, law enforcement seized the cocaine.  On September 23, 2020, Didani sent an internet link of the news article to

one of the individuals, followed by several text messages stating, "I lost millions yesterday."

## II.    ANALYSIS

### A.    Motion to Dismiss re Validity of Certificates (ECF No. 118, 12/4/24)

Didani asserts that if this motion delays trial, he wishes to withdraw the motion.  In the motion, Didani asserts he seeks to "revisit" the certificates executed in this case under the MDLEA.  The subject of Didani's motion are the three certificates issued by United States of America Department of State, prepared by Commander Ian M. Starr, U.S.C.G. and signed by Antony J. Blinken, Secretary of State which were executed on July 22, 2022.  Didani asserts that the certificates violate the MDLEA and that the Court has no jurisdiction under the MDLEA.

The Government responds that the Court ruled in an April 17, 2024 Order that the Court has jurisdiction "in light of the consent by Liberia, Malta, and Germany in 2022, prior to Didani's indictment and the Secretary's certifications in July 2022."  (ECF No. 93, PageID.1132) The Government claims that Didani's current motion is an untimely motion for reconsideration.  Didani replies that subject matter jurisdiction can be raised at any time.

Didani filed a Motion to Dismiss the MDLEA count asserting that the Government failed to obtain timely consent from the foreign nations where the

drugs were seized to prosecute the case in the United States.  Didani also argued that the MDLEA is unconstitutional on its face.  (ECF No. 52) Didani also filed a response to the Government's Motion for Pretrial Determination as to Jurisdiction. In its April 17, 2024 Order, the Court found that it had subject matter jurisdiction under the MDLEA as it relates to the instant Indictment and denied Didani's Motion to Dismiss and granted the Government's Motion for Pretrial Determination as to Jurisdiction.  (ECF No. 93)

The Local Rules of the Eastern District of Michigan provide that any motion for reconsideration of non-final orders must be filed within 14 days after entry of the order.  E.D. Mich. LR 7.1(h)(2).  No response to the motion and no oral argument are permitted unless the Court orders otherwise.  E.D. Mich. LR 7.1(h)(3).  Motions for reconsideration may be brought upon the following grounds:

(A)   The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;

(B)   An intervening change in controlling law warrants a different outcome; or

(C)   New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2). A motion for reconsideration is not a vehicle to re-hash old arguments, or to proffer new arguments or evidence that the movant could have brought up earlier. *Sault Ste. Marie Tribe v. Engler,* 146 F.3d 367, 374 (6th Cir. 1998)(motions under Fed.R.Civ.P. 59(e) "are aimed at *re* consideration, not initial consideration")(citing *FDIC v. World Universal Inc.,* 978 F.2d 10, 16 (1st Cir.1992)).

The Court's Order addressing Didani's Motion to Dismiss and the Government's Motion for Pretrial Determination as to Jurisdiction was entered on April 17, 2024. (ECF No. 93) Didani's current Motion to Dismiss was filed on December 4, 2024 (ECF No. 118), well beyond the 14 days for filing motions for reconsideration under Local Rule 7.1. Didani's status as a pro se litigant does not affect the deadline imposed under Local Rule 7.1(h)(2). *See Little v. Williams*, Case No. 22-12222, 2024 WL 950158, *1 (E.D. Mich. Mar. 5, 2024); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)("[P]ro se litigants are not to be accorded any special consideration when they fail to adhere to readily-comprehended court deadlines."). Even if the Court were to consider the merits of Didani's motion, Didani has not shown how the court made a mistake, that there was intervening change in controlling law, nor any new facts to warrant a different outcome. Didani is merely rehashing old arguments and also raised new arguments that

could have been brought up earlier.  The Court denies Didani's Motion to Dismiss as untimely.

**B.    Motion for Reasonable Access to Discovery in Prison (ECF No. 120)**

Didani seeks a Court order or otherwise recommend to the Bureau of Prisons that he be able to maintain his discovery materials in his cell, or otherwise have access to the materials at all times prior to trial.  The discovery includes more than 2 Terabytes of information, including, but not limited to, numerous cell phone extractions, multiple iCloud extractions, recorded phone calls, and a decade worth of investigative reports and documentary evidence. In all, there are well over 100,000 of pages of information, just in iCloud and cell phone data alone. This does not even include the thousands, if not tens of thousands, of pages of text messages, search warrant affidavits, photographs, laboratory reports, and other items.   Didani's cell recently was "turned over" and searched which left his discovery in disarray.  He claims he does not have access to all his materials.

The Government responds that according to personnel at Milan, Didani is permitted to maintain paper and electronic discovery in his cell.  Didani also has daily access to the computer room to review electronic discovery.  However, the Government states that his right to access is not unlimited, and must be balanced against security needs of the prison.  The Government spoke to Counselor Corey

Grimm who indicated that unlike most inmates, Didani is authorized to maintain his discovery materials in his cell, which required supervisory approval. He is also allowed daily access to the computer room where he can review the electronic discovery (other than Jencks). The computer room is available between 6 a.m. to 8 p.m., seven days a week, but that Didani does not take advantage of, or routinely utilize the computer room. Counselor Grimm indicated that as to searching Didani's cell, many cells were searched in November 2024 and that random cell searches are an integral security measure to fight against the proliferation of contraband. Counselor Grimm indicated that Didani's papers were not jostled or rearranged. He also indicated that Didani did not raise concerns to the prison staff about his access to discovery prior to filing the motion.

"A prison official may be held liable for the deprivation of th[e] First Amendment right [to access courts] only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of specific non-frivolous direct appeals, habeas corpus applications, or civil rights actions." *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999). Didani has not filed a civil action alleging a First Amendment Access to Court claim, therefore, the Court need not address his First Amendment claim. In any event, the Sixth Circuit has noted that the First Amendment does not protect a

criminal defendant in activities relating to defending a criminal case, including participation in pretrial proceedings, negotiating plea bargains, petition for redress of grievances in a criminal proceeding. *See, Peffer v. Thompson*, Case No. 18-1192, 754 F. App'x 316, 319 (6th Cir. Oct. 22, 2018). Also, based on the representations by Counselor Grimm, it appears that Milan staff has gone beyond normal prisoner access to materials in a cell and computer room availability as to Didani. In addition, Didani's stand by counsel, the United States Marshals Service, and the Milan staff have and continue to discuss the matter as to how Didani will be able to access the evidence during the weekend at this time. The Court denies Didani's motion.

### C.    Motion for Bond (ECF No. 121, 12/16/24)

Didani again seeks release pending trial. He cites his Celiac disease claiming that this condition was discovered during his incarceration and perhaps living in prison conditions contributed to the diagnosis. Didani asserts he suffered for over 11 months before finally seeing a doctor that gave him the diagnosis. He claims that the excessive lockdowns make it difficult to prepare for a trial and participate in a trial which may last for 10 weeks. Didani's parents live in Chicago who are battling cancer.

The Government responds that pursuant to the Court's previous findings that Didani poses a serious risk of flight and danger to the community, Didani remains a serious flight risk and danger to the community.  Pretrial Services concurs that there is no condition or combination of conditions that will reasonably assure Didani's appearance and the safety of the community.

Because the motion is not seeking review of a magistrate judge's order of detention, the standard is no longer a "de novo" review.  A district court may reopen a detention hearing at any time prior to trial.  18 U.S.C. § 3142(f). Reopening of a detention hearing is appropriate only if the court determines "that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person is required and the safety of any other person and the community."  18 U.S.C. § 3242(f).

On July 15, 2022, the Court denied Didani's oral motion for release pending trial.  (ECF No. 47) The Court found that Didani posed a serious danger to the community and a risk of flight.  *Id.* at PageID.235-.236.  In 2022, Pretrial Services submitted a report from the Western District of North Carolina where Didani was arrested, along with and Addendum submitted by Pretrial Services in this District. The recent Pretrial Services report dated October 25, 2024, essentially contains the

13

same information previously submitted to the Court.  The only new information raised by Didani in his current motion is that he has been diagnosed with Celiac disease since he was incarcerated.   Pretrial Services could not verify the medication Didani was taking.  Didani also asserts in his motion that his parents who lives in Chicago now have cancer.  No further information on this claim was submitted by Didani.

Other than the health issues by Didani and his parents, there is no new information raised.  The standard as to any new information presented must be "material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person is required and the safety of any other person and the community."  Didani's and his parents' health conditions are not material as to whether there are conditions of release that will reasonably assure the appearance of Didani and the safety of the community.   Although Didani complained for months about his stomach pains, it appears that he has now been diagnosed, is taking medication and is receiving the appropriate diet at Milan. Because no new information has been submitted which is material to whether there are conditions of release that will reasonably assure the appearance of Didani and the safety of the community, the Court denies Didani's motion for pretrial release pending trial.

14

**D.     Emergency Motion for Order to Subpoena USSG Commander Ian M. Starr (ECF No. 127, 12/28/24)**

Didani seeks a subpoena issued to Commander Ian M. Starr for the January 15, 2025 hearing to challenge the veracity of the certificates and whether they confer jurisdiction.  Didani asserts that he needs to question Starr to make sure the certificates are not "made-up."  Stand by counsel claims that he was not sure if he had the authority to issue the subpoena and seeks a subpoena issued by the Court.

The Government responds that the Court already issued its finding that this Court had jurisdiction over the case and that the affected countries had consented to the action to be tried here in the Eastern District of Michigan, Didani is not entitled to an evidentiary hearing regarding the issuance of the certificates.  As noted by the Government, the MDLEA prohibits Didani from challenging the Certifications.  Starr's testimony is not relevant.

As noted above, the Court has found that it has jurisdiction over the matter under the MDLEA. "Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. §70504(a).  The Court has done so and an evidentiary hearing is not required as to the Certifications.  The MDLEA provides, "[c]onsent or waiver of objection by a foreign nation to the enforcement of United States law

15

by the United States … is proved conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. §70502(c)(2)(B); *United States v. Brant-Epigmelio*, 429 F. App'x 860, 862 (11th Cir. 2011); *United States v. Campbell*, 743 F.3d 802 (11th Cir. 2014); *United States v. Cardales–Luna,* 632 F.3d 731 (1st Cir. 2011); *United States v. Bustos-Useche*, 273 F.3d 622, 627 & n.5 (5th Cir. 2001)). In light of Congress' instruction that the certification is conclusive, there is no authority for an evidentiary hearing as to the validity of the certification. Didani's Motion to issue a subpoena as to Starr to testify to the validity of the certifications is denied.

## III. CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that the Motion to Dismiss re Validity of Certificates **(ECF No. 118, 12/4/24)** is DENIED.

IT IS FURTHER ORDERED that the Motion for Reasonable Access to Discovery in Prison **(ECF No. 120, 12/12/24)** is DENIED.

IT IS FURTHER ORDERED that the Motion for Bond **(ECF No. 121, 12/16/24)** is DENIED.

IT IS FURTHER ORDERED that the Emergency Motion for Order to Subpoena USSG Commander Ian M. Starr **(ECF No. 127, 12/28/24)** is DENIED.


s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated:  February 5, 2025

17