## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

YLLI DIDANI,

      Defendant.

_____/

CASE NO. 21-20264

HON. DENISE PAGE HOOD

## ORDER REGARDING VARIOUS MOTIONS

### I.      BACKGROUND

This matter is before the Court on the parties' Motions in Limine to admit or exclude certain evidence at trial and other pretrial motions.  Briefs have been filed supporting and opposing the motions.

The Superseding Indictment charges Defendant Ylli Didani with:   Count One – Conspiracy to Distribute Controlled Substances, 21 U.S.C. §§ 841(a)(1) and 846; Count Two – Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance on Board a Vessel Subject to the Jurisdiction of the United States, 46 U.S.C. §§ 70503(a) and 70506(b), 21 U.S.C. § 960(b)(1)(B); and Count Three – Conspiracy to Launder Monetary Instruments, 18 U.S.C. § 1956(h).  (ECF No. 38)

II.    **ANALYSIS**

A.    **Motions in Limine**

The practice of ruling on motions in limine "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay and to allow parties to focus remaining time on issues that will in fact be considered by the jury. *See United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).  Rulings on motions in limine are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

B.    **Defendant's Motion in Limine to Exclude SkyECC Evidence (#138)**

1.    **Arguments**

Defendant Ylli Didani seeks exclusion of  evidence from Sky ECC, an encrypted messaging platform.   Sky Global, developer of Sky ECC, is headquartered in Vancouver, Canada.   French investigators, using Dutch technicians' decryption, started live interception and decryption of all Sky ECC messages.   France has these communications from SkyECC on whole servers

2

containing the private data of citizens across the world.

Didani asserts that in his case, the Government obtained access to Sky ECC communications without a valid, court-approved warrant from France but through a European Police hacking operation. Didani further asserts that the Government waited six months after he was detained before requesting the data from French authorities. Didani claims obtaining the SkyECC communications violates the Fourth Amendment and privacy laws. Didani also claims lack of authentication and chain of custody issues as to how the communications were obtained. Didani further claims that this evidence, if found relevant, should be excluded because its potential for unfair prejudice substantially outweighs the probative value. Didani argues that the evidence may confuse the jury because of the technical evidence related to encrypted communications, because the Government cannot fully explain how the messages were intercepted and decoded since the evidence was not intercepted and decoded by this Government. Didani further argues that allowing evidence from encrypted communication platforms could have chilling effects on digital privacy, violating the constitutional rights of many individuals where in this case mass interception of over 170,000 users occurred in blatant violation of those users' rights who were placed under surveillance without showing that all these individuals were guilty of a crime.

The Government responds that neither the Fourth Amendment nor the exclusionary rule apply to foreign searches by foreign governments. The Government asserts that it will be able to authenticate the messages Didani sent and received over SkyECC.

### 2.    Fourth Amendment as to Foreign Searches

The principle of the Fourth Amendment of the United States Constitution, or the Fourth Amendment exclusionary rule, generally does not apply to searches conducted by officials of foreign governments and to evidence derived therefrom. *U.S. v. Janis*, 428 U.S. 433 (1976). The Supreme Court has held that the Fourth Amendment does not extend to a search conducted outside the United States. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 261 (1990). Even if a defendant has sufficient connections to the United States a challenge to the foreign evidence fails as a result of the general rule that the exclusionary rule does not apply to operations conducted by foreign governments, even if the evidence gathered in such operations is used in United States legal proceedings. *Janis*, 428 U.S. at n. 31, 96 (1976) ("It is well established, of course, that the exclusionary rule, as a deterrent sanction, is not applicable where a private party or a foreign government commits the offending act.")). The exclusionary rule has no deterrent effect on a foreign law enforcement agency on how searches are conducted. *United States v.*

*Valdivia*, 680 F.3d 33, 51 (1st Cir. 2012).  There are two exceptions to this general rule:  where (1) the foreign government's conduct is "shocking to the conscience" or (2) where U.S. agents participated in the foreign search or the foreign government was acting as the agent of its U.S. counterpart. *United States v. Odeh,* 815 F.3d 968, 987 (6th Cir. 2016);  *United States v. Hensel*, 669 F.2d 18, 25 (1st Cir. 1983).

As outlined by Didani in his motion, the search of SkyECC's records was performed by French authorities outside the United States.  The Fourth Amendment is not implicated in the search and interception of SkyECC records. Didani has not asserted in his motion that the French officials' search and interception of SkyECC records was shocking to the judicial conscience.  In any event, the requirement of showing that conduct shocks the conscience stems not from the Fourth Amendment, but a federal court's authority to exercise its supervisory powers over the administration of federal justice.  *United States v. Getto,* 729 F.3d 221, 229 (2d Cir. 2013).  Didani has not shown that the search of SkyECC records shocks the conscience.

Didani also has not shown that the French acted as agents of the United States when the French conducted the search and interception of SkyECC's records. Didani specifically noted that the evidence was not intercepted nor

decoded by the United States.  The United States requested the SkyECC's records relating to Didani after the French conducted the search of SkyECC's records. Didani has not met his burden that the United States participated in the search or that the French acted as the United States' agent when the search was conducted. Didani's Motion in Limine to exclude SkyECC records based on the Fourth Amendment and exclusionary rule is denied.

### 3.    Authentication / Chain of Custody

Didani argues that the Government cannot establish a sufficient chain of custody for the SkyECC evidence since there is no clear documentation or verification of how the data was obtained, processed or transferred.  Didani claims that during the decryption of the data by the French and/or Dutch officials, the encrypted data could have been tampered with during the retrieval and subsequent handling.

The Government responds that it will have an agent testify as to what was requested from the French government and how Didani's SkyECC accounts were identified.   The Government claims it can satisfy the slight burden for authentication under Rule 901.

Federal Rule of Evidence 901(a) requires a proponent of evidence to produce proof "sufficient to support a finding that the item is what the proponent

claims it is." Rule 901(b) in turn provides a nonexhaustive list of means by which to authenticate evidence. *Lyngaas v. Curaden Ag*, 992 F.3d 412, 431 (6th Cir. 2021). Authenticating evidence "can be accomplished in a number of ways—with testimony from someone with knowledge of the evidence offered, for example, or by pointing to distinctive characteristics that establish authenticity." *United States v. Farrad*, 895 F.3d 859, 876 (6th Cir. 2018). "[T]he burden of proof for authentication is slight .... [T]here need be only a *prima facie* showing, to the court, of authenticity, not a full argument on admissibility." *Churches of Christ in Christian Union v. Evangelical Ben. Trust*, No. 2:07-cv-1186, 2009 WL 2146095, at * 5 (S.D. Ohio Jul. 15, 2009) (quoting *Lexington Ins. Co. v. W. Penn. Hosp.*, 423 F.3d 318, 328-29 (3d Cir. 2005)); *Peterson v. Kramer*, No. 3: 13-CV-187, 2016 WL 680828, at *6 (S.D. Ohio Feb. 18, 2016).

The Government asserts that an agent will testify as to how the records were obtained, in addition to pointing to distinctive characteristics within the text messages. The agent will testify as to the pins used to open the messages, pictures, names and birthdays which appear in the text messages. Based on the Government's proffer, it appears it can meet its slight burden to shown that the SkyECC records are authentic and what the Government claims the text messages are—text messages sent or received by Didani. The SkyECC records are not

excluded based on lack of authenticity if the Government is able to meet its slight burden at trial.

### 4.    Prejudice / Privacy

Didani claims he will be prejudiced if the SkyECC records are allowed at trial.  The Government responds that the records may put Didani in a negative light, but the evidence is relevant and the probative value is substantially outweighed by any danger of unfair prejudice.

Rule 401 of the Rules of evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence."  Fed. R. Evid. 402 states that "all relevant evidence is admissible, except as otherwise provided ..." and that "evidence which is not relevant is not admissible."  Rule 403 states that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Trial courts have broad discretion in determining whether to admit evidence based on considerations of relevance, materiality and prejudice. *United States v. Jackson-Randolph,* 282 F.3d 369, 376 (2002).

Based on the Government's proffer, it appears that the SkyECC evidence of text messages sent and received by Didani is relevant to the charged conduct in this case. Any evidence found in the SkyECC records may put Didani in a negative light. However, the probative value substantially outweighs the danger of unfair prejudice.

As to any claim that the jury will be confused because of how the documents were obtained, jurors are ordinarily presented with complicated facts and evidence and this Court, at this time, will not find that the evidence to be presented will confuse the jury.

Regarding the privacy issues that affected thousands of users when the data was obtained by the French, that issue is not before the Court, other than the evidentiary issues relating to Didani to be presented at trial.

For the reasons set forth above, the Court denies Didani's Motion in Limine to exclude the records obtained by the Government from French officials as to SkyECC records.

**C. Government's Motion in Limine to Admit Self-Authenticating Records (#140)**

**1.  Certification**

The Government seeks to admit certain records which it claims are self-

authenticating under Rules 803(6), 902(1) and 902(13) of the Rules of Evidence. The Government has provided notice to Didani of its intent to introduce the self-authenticating records.  Didani opposes the motion claiming that he has not had sufficient time to challenge the authenticity of the records, improper foundation, potential prejudice to Didani, lack of relevance and the need for live testimony to cross-examine the records custodians.

Self-authentication has been extended by reform measures which confer self-authenticating effect on records of regularly conducted activities.  *United States v. Foster*, No. 1:20-CR-186, 2024 WL 184003, at \*1–4 (N.D. Ohio Jan. 17, 2024).   These principles are now fully integrated into the Federal Rule 902. Subsections (11) and (12) provide for self-authentication based on a written certification that the record conforms to the terms of the hearsay exception for records of activities that are "regularly conducted," typically by businesses. This exception previously required testimony in court from the custodian of records or other qualified person. The rules now provide that the certification, notice to the adverse party of a party's intent to use Federal Rules 902(11) or (12), together with the records themselves, can suffice if provided to the opponent for verification and potential challenge. *U.S. v. Osuagwu*, 858 Fed. Appx. 137, 145, 116 Fed. R. Evid. Serv. 758 (5th Cir. 2021) (admitting certified domestic records that were part of

regularly conducted activity within J.P. Morgan Chase Bank); *U.S. v. Ayelotan*, 917 F.3d 394, 108 Fed. R. Evid. Serv. 1190 (5th Cir. 2019) (email records from conspiracy to launder money using victim's stolen personal information were admissible as self-authenticating under Rule 902(11) as all records included certificates stating that email custodian recorded the transmittal data automatically as regular practice of a regularly conducted business activity); *U.S. v. Hassan*, 742 F.3d 104, 133-34, 93 Fed. R. Evid. Serv. 758 (4th Cir. 2014) (certifications provided by Facebook and Google of defendant's Facebook pages and YouTube videos as "business records" maintained in the course of regularly conducted business activities).  The person making the written declaration must specifically state familiarity with the creation and maintenance of the proffered records.  *U.S. v. Petroff-Kline*, 557 F.3d 285, 291–92 (6th Cir. 2009).  The certification must state factual bases that pursuant to Federal Rule 803(6)(A) to (C), the business records exception has been satisfied by the proffered records. *See Wi-LAN Inc. v. Sharp Electronics Corporation*, 362 F. Supp. 3d 226, 232, 108 Fed. R. Evid. Serv. 1016 (D. Del. 2019), aff'd, 992 F.3d 1366, 115 Fed. R. Evid. Serv. 50 (Fed. Cir. 2021) (declarations merely providing conclusory statements that the code is a business record without providing any factual basis for those statements are insufficient under the requirements of Rule 803(6)).

11

The relevant portion of Rule 803, commonly referred to as the business records exception, requires the evidence to meet three conditions. Fed. R. Evid. 803(6). First, the record must be "made at or near the time by—or from information transmitted by—someone with knowledge[.]" *Id.* Second, the record must be "kept in the course of a regularly conducted activity of a business[.]" *Id.* Third, making the record must be "a regular practice of that activity[.]" *Id.* Each of these requirements must be met "as shown by a certification of the custodian" for Rule 902(11) to apply. Fed. R. Evid. 902(11). *United States v. Hamaed*, No. 20-CR-20162, 2024 WL 3771426, at *4 (E.D. Mich. Aug. 13, 2024).

The Government seeks to self-authenticate the records from the following:

(1) Comerica Bank;
(2) Inkas Bulletproof;
(3) Peregrine 360;
(4) JP Morgan Chase Bank;
(5) Maritime Shipping Company;
(6) Hapag Lloyd America LC;
(7) CMA CGM (America) LLC;
(8) Seatrade;
(9) Bulletproof Zone;
(10) Upwork;
(11) MoneyGram;
(12) Citibank

The Government asserts that for the relevant records, the records custodians from each business or organization above, certified, under penalty of perjury, the following:

12

a. He/she was familiar with the records maintained by the business/organization, and was the custodian of those records or otherwise qualified to identify them and certify their authenticity;

b. The records are originals or true and accurate duplicates thereof;

c. The records were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

d. The records were kept in the course of regularly conducted business activity; and

e. The records were made by the business as part of its regular practice.

(ECF No. 140, PageID.1670)

If each of the custodians from each of the entity cited by the Government submits such certifications, after reviewing the specific certifications prior to the presentation of the records at trial, the Court will allow the documents as self-authenticated.  The Government must provide the certifications to the Court and the defense, if possible, a few days before it anticipates presenting the documents at trial.

## 2. Confrontation Clause

Didani asserts he should have the opportunity to cross examine the custodians of record.

The Confrontation Clause prohibits the use of *testimonial evidence* against a defendant unless the witness appears at trial or, if the witness was unavailable, the defendant had a prior opportunity for cross examination. *Crawford v. Washington*,

541 U.S. 36, 54 (2004). Evidence is testimonial where a reasonable person would believe that it is made for use at trial. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (citing *Crawford*, 541 U.S. at 51-52). In *Melendez-Diaz*, the court held that affidavits from laboratory analysts identifying a substance as cocaine were testimonial evidence and, thus, inadmissible unless the defendant was allowed to cross examine the declarants. *Id.* at 310-11. "Although *Crawford* did not involve records of a regularly conducted activity, the Court remarked that 'business records' covered by the traditional hearsay exception are 'by their nature' not testimonial." *United States v. Smith-Kilpatrick*, 942 F.3d 734, 740 (6th Cir. 2019) (quoting *Crawford*, 541 U.S. at 56); *see also id.* (citing *Michigan v. Bryant*, 562 U.S. 344, 392 (2011)(noting that the Sixth Amendment generally admits business records into evidence "not because the records are reliable or because hearsay law says so" but " 'because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not' weaker substitutes for live testimony."). The Sixth Circuit has found that self-authentication of records under Rule 902 does not violate the Confrontation Clause. *United States v. Anderson*, No. 22-1237, 2023 WL 3413905, at *3 (6th Cir. May 12, 2023); *see United States v. Foster*, Case No. 1:20-cr-186, 2024 WL 184003 *4 (Jan. 17, 2024)(Self-authentication under Rule 902(11) and

(13) does not violate the Confrontation Clause because it does not certify any factual assertions.).

The custodian of records' certifications that the documents were kept in the ordinary course of business are not testimonial in that the documents were not prepared in anticipation for trial against Didani.  The certifications will not provide testimony as to whether Didani participated in a crime as charged in the Indictment, but only attest that the documents are actual records kept by the entity in the ordinary course of business.  If the certifications satisfy the requirements above, then there is no requirement for Didani to examine the custodians of records.  The Government's is preliminary granted pending the Court's review of the certifications.

## D.   Defendant's Motion in Limine to Exclude Hearsay Testimony (ECF No. 141)

Didani seeks to exclude statements by the Government's potential witness, Donald Larson.  Didani asserts that Larson's statements were made with a desire to curry favor with the Government.  He claims that Larson's testimony changed from having little to or no information about Didani and his alleged dealings with Marty Tibbits, to all of a sudden having knowledge.  Didani further claims that Larson is an unindicated co-conspirator which raises serious questions about any

testimony given.  Didani asserts that Larson's testimony is made based on self-interest and self-preservation because Larson does not want to be in prison until his 80s.

The Government responds that Didani's motion brushes with a broad stroke Larson's potential testimony.  The Government claims Didani has not identified particular statements he believes are inadmissible hearsay.  The Government argues that Larson's statements are not hearsay or are subject to hearsay exception.  Larson's statements at trial are not hearsay to the extent he is not testifying to statements previously made out of court.  To the extent that Larson testifies to statements made by Didani, the Government asserts those out of court statements made by Didani are not hearsay under Rule 801(d)(2) as admissions by a party-opponent.  Also, Larson's testimony related to statements made by co-conspirators are also not hearsay under rule 801(d)(2)(E) which allows co-conspirator statements made during and in furtherance of a conspiracy.

Rule 801(c) of the Rules of Evidence defines "hearsay" as a statement that:

> (1) the declarant does not make while testifying at the current trial or hearing; and
> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Fed. R. Evid. 801(c).  Statements which are not hearsay are set forth in Rule 801(d)(1) and (2).  Rule 803 provides exceptions to the rule against hearsay.

16

There are three foundational prerequisites which must be established to admit a co-conspirator's statements under Rule 801(d)(2)(E): that a conspiracy existed; that the declarant was a member of the conspiracy; and that the declarant's statement was made during the course and in furtherance of the conspiracy. These preliminary matters are findings of fact to be made by the district court pursuant to Fed. R. Evid. 104(a). They must be established by a preponderance of the evidence and are reviewed only for clear error. *United States v. Maliszewski,* 161 F.3d 992, 1007 (6th Cir.1998). The district court can consider the contents of the hearsay statement in making this preliminary determination. *Bourjaily v. United States,* 483 U.S. 171, 181 (1987); *United States v. Young,* 553 F.3d 1035, 1047 (6th Cir. 2009).

The Court denies Didani's motion to exclude Larson's testimony at this time. No specific testimony by Larson has been identified which may be considered as hearsay. If at trial Didani believes any potential testimony could be considered as hearsay, Didani may raise such objections at trial and the Government will have the opportunity to argue otherwise. The Court will rule at that time if any proposed testimony by Larson is hearsay.

As to Didani's argument that Larson's testimony is biased, Didani is able to cross-examine Larson regarding any bias which may go to Larson's credibility.

"Bias is always relevant in assessing a witness's credibility." *United States v. Sumlin*, 956 F.3d 879, 890 (6th Cir. 2020) (quoting *Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir. 1999)).  A defendant may inquire into any immunity or plea deals between the witness and the government, *see, Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986), and other "prejudices, or ulterior motives" from which "jurors ... could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska*, 415 U.S. 308, 316, 318 (1974).  If Didani is able to present any evidence of bias with proper foundation and questions in proper form, Didani may use such evidence to impeach Larson's credibility at trial.

### E.     Motion in Limine to Recall Witness (ECF No. 142)

The Government states that the Court designated this case as a complex case.  (ECF No. 103)  The volume and variety of evidence the Government asserts will require a presentation of witnesses during this 8-10 week trial which spanned over five years of investigation.   The Government will present evidence in a rational and chronological order which will require the witness to testify at various points at trial.   The Government asserts that recalling the witness to testify at different parts of the Government's presentation would be the most efficient way to present the evidence to the jury.  If the witness were to testify only one time would lead to confusion, especially if the witness testifies to all events which

spanned over five years, without the jurors hearing any testimony about those events from other witnesses. The Government seeks to have Farmington Hills Police Detective Brandon Leach, who from 2016 to 2022, was assigned to the Detroit DEA as a Task Force Officer, to testify at three different times during trial.

The first time, Det. Leach would testify about background information such as the background of the investigation, the identity of coconspirators and witnesses, telephone numbers, email addresses, types of evidence that was obtained and how that evidence was obtained.

The second time, Det. Leach would testify about the evidence related to the conspiracy charged in Count One of the Superseding Indictment. This would include testifying about the large volume of electronic evidence from 2016 to 2018, ending with the death of a co-conspirator who was living in this district.

The third time, Det. Leach would testify about the evidence related to the MDLEA conspiracy charged in Count Two of the Superseding Indictment. This would include testimony that following a co-conspirator's death in 2018, Didani began utilizing additional European-based co-conspirators. Det. Leach would testify about how he began obtaining Didani's iCloud data and that when reviewing that data, he was able to identify bulk cocaine shipments that Didani was sending from South America to Europe. Det. Leach would testify about how in

19

some of these instances, he received the iCloud data when the containerships transporting the cocaine were still at sea. He would testify that in these instances, he worked with DEA agents assigned to the Netherlands to alert Netherlands law enforcement about the incoming shipments of cocaine. As a result, the cocaine was seized upon arrival in port. During this part of Det. Leach's testimony, he would also testify about the dozens of text message chats Didani engaged in where Didani discussed the planning, shipment, and ultimate seizures of these cocaine loads.

In response, Didani understands why the Government would call Det. Leach to the stand multiple times with the absence of other actual witnesses. However, Didani asserts that allowing Det. Leach to testify multiple times risks prejudicing Didani by creating undue emphasis on Det. Leach's testimony, fostering jury confusion and unfairly bolstering the credibility of the witness. Didani contends that the Government's proposed procedure is neither required nor appropriate and would undermine the fairness of the trial.

Rule 611(a) of the Rules of Evidence allows courts to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a)(1)–(3); *United States v. Tawfik*, Case No. 17-20183, 2022 WL

866395, at *7–8 (E.D. Mich. Mar. 23, 2022).  Ultimately, "[d]istrict courts have wide latitude over the order of testimony at trial." *United States v. Bailey*, 973 F.3d 548, 564 (6th Cir. 2020); *see also United States v. Butera*, 677 F.2d 1376, 1381 (11th Cir. 1982) (noting that the government's case agent "took the stand on four separate occasions to describe the underlying events in the case in chronological order" and holding that the district court did not abuse its discretion under Rule 611(a) in permitting the "sequential presentation" of the case agent's testimony).

As this Court has noted, this case was designated as a complex case involving numerous witnesses and an alleged conspiracy spanning several countries and it is anticipated that the trial will last 8-10 weeks.  Although Didani's claim that recalling Det. Leach would appear to make him more credible to the jury and may waste the jury's time if testimony is repeated, these considerations do not require a court to preclude the Government from recalling witnesses—especially its case agent—during a long, complex trial.  *United States v. Hamilton*, Case No. 16-cr-20062, 2017 WL 11469632 (E.D. Mich. Apr. 18, 2017).  The Court agrees that there is some risk that allowing a particular witness to frequent the witness stand could make the witness appear credible merely by virtue of his repeated appearances.  However, the parties in this case are well aware that the information involves multi-conspiracies, numerous witnesses, several countries, and terabytes

of data over several years.

Courts have permitted the Government to recall its case agent or other witnesses to help present the events in an orderly, chronological manner.  *See United States v. Dimora*, 843 F. Supp. 2d 799, 822–823 (N.D. Ohio 2012) ("Other courts have approved of the practice of recalling witnesses to testify to discrete incidents in cases involving complex conspiracies or activities occurring over a long period.") (citing *United States v. Edelin*, 128 F. Supp. 2d 23, 47 (D.D.C. 2001) (permitting government to present case in chronological order by recalling witnesses.  Because Rule 611(a) authorizes the Court to control the order of interrogation and the presentation of evidence, the Court finds that in order to "facilitate an orderly and comprehensible presentation of this complex case, avoid inefficient use of court time, and avoid jury confusion (which also prevents prejudice to the defendant)," the Court will permit the Government to allow Det. Leach to testify in segments during its case-in-chief.  *Dimora*, 843 F. Supp. 2d at 823.  The Government should be careful not to elicit from Det. Leach repetitive, overlapping and cumulative testimony.  Didani is of course allowed to object to any cumulative testimony and to cross-examine Det. Leach "after each appearance with respect to the testimony covered on direct during that appearance and as to issues of credibility." *Id*.

### F.    Defendant's Motion for Special Jury Instruction

Didani seeks a jury instruction which requires the Government to prove that Didani had conspired to either possess or distribute the alleged cocaine in the United States.  Didani cites *United States v. Lopez-Vanegas*, 493 F .3d 1305 (11th Cir. 2007) to support its request for a jury instruction.  Didani claims that if the object of the conspiracy is not a violation of the substantive offense due to the lack of domestic conduct or extraterritorial application of the statute at issue, there can be no criminal conspiracy. In *Lopez-Vanegas*, the defendants argued on appeal that their conduct did not violate 21 U.S.C. § 846 because the object of the conspiracy-- the possession and distribution of cocaine on foreign soil-- is not a violation of 21 U.S.C. § 841(a)(1). The court agreed that where the object of the conspiracy was to possess controlled substances outside the United States with the intent to distribute outside the United States, there is no violation of § 841(a)(1) or § 846.

The Government opposes the motion that a jury instruction as to the underlying crime is not required because in a conspiracy charge, the criminal agreement is the crime and not the underlying drug offense itself.  The Sixth Circuit pattern jury instructions provide the appropriate instructions to be used. The Government claims that the out of circuit case cited by Didani, *Lopez-Vanegas*, is inapplicable because the defendants in that case had almost no ties to

23

the United States and there was no nexus to the United States.  In this case, the
Government asserts that almost the entire agreement occurred in the United States
and this District and the drug proceeds were sent to the United States and through
the United States banking system.  The Eleventh Circuit Pattern Instructions do not
require an additional element to allow jurors to determine the jurisdictional reach.
The Government argues that the *Lopez-Vanegas* case does not implicate the
required jury instructions both in the Eleventh and Sixth Circuits.

The elements of a conspiracy are:  1) an object to be accomplished; 2) a plan
or scheme embodying the means to accomplish that object; 3) an agreement or
understanding between two or more individuals whereby they become definitely
committed to cooperate for the accomplishment of the object by the means
embodied in the agreement, or by any effectual means.  *United States v. Caver,*
470 F.3d 220, 232 (6th Cir. 2006).  In relation to a drug conspiracy under federal
law, the essential elements are:  an agreement to violate the drug laws; knowledge
of an intent to join the conspiracy; and participation in the conspiracy.  *United
States v. Gardner,* 488 F.3d 700, 710 (6th Cir. 2007).  The jury instructions as
found in the Sixth Circuit's longstanding pattern jury instructions, Sixth Circuit
Pattern Criminal Jury Instruction 14.05(2) (Jan. 1, 2019)—identified two elements:
(1) that two or more persons conspired or agreed to distribute the drugs and (2)

"that the defendant knowingly and voluntarily joined the conspiracy." "[P]roof of an overt act is not required to establish a violation of 21 U.S.C. § 846." *United States v. Shabani*, 513 U.S. 10, 17 (1994). "Participation" is synonymous with "joinder." So whether phrased as two elements or three, a conviction under § 846 requires an agreement to violate the drug laws, the defendant's knowledge of the agreement, and the defendant's decision to voluntarily join (or "participate in") it. "An agreement to violate the drug laws need not be express or formal. A tacit or mutual understanding among the parties is sufficient." *United States v. Caver*, 470 F.3d 220, 233 (6th Cir. 2006) (internal quotation marks omitted). And such an agreement "can be inferred from repeated purchases of large quantities of drugs." *United States v. Sills*, 662 F.3d 415, 417 (6th Cir. 2011); *United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019).

Based on a review of the elements required to prove a conspiracy under the drug laws of the United States, there are no requirements that a "nexus" as to the drugs to the United States is an element. As required by the statute and the jury instructions, the defendant must have intended to join the conspiracy. There is no requirement to commit an overt act to the underlying drug law. The Court has ruled on the jurisdictional issue in this case, and the Court will not give an instruction as to the jurisdictional issue in this case.

25

**G.    Defendant's Motion to Exclude Evidence Obtained through MLAT (ECF No. 145)**

Didani seeks to suppress the evidence the Government obtained from the countries of France, the United Kingdom, Spain and the Netherlands (Holland) pursuant to the Mutual Legal Assistance Treaties (MLAT).  Didani asserts his Due Process rights are violated because the delayed evidence is unreliable, and the late timing of the requests hampered Didani's ability to adequately prepare for trial. Didani also asserts that the delayed requests are inconsistent with the principles of MLAT in that the discovery should have been requested prior to the Indictment.

The Government responds that the motion should be denied because Didani has had much of the discovery for three years and there are sanctions available less than suppression, if there was a violation of the discovery rules.  The Government asserts that Didani has not shown a violation of the discovery rules.   The Government also asserts that contrary to Didani's claim, there is no temporal restriction on a request under MLAT or that a court suppress information collected under MLAT made post-Indictment.

The Government indicated the following timeline as to information obtained under MLAT:

- The first request went out to the Netherlands in April of 2020. The information was received in December of 2020. Didani

received the information on August 2, 2024.

- The second request went to France in August of 2021. The information was received in two parts, in January and May of 2022. Productions were provided to Didani in February of 2022 and March of 2023, respectively.

- The third request was made to the United Kingdom in July of 2024. The information was received in October of 2024. The United Kingdom delayed the production of the information because of an ongoing trial related to Didani's case. The government was prepared to produce the information to Didani in October of 2024, pending Didani's signature on a protective order, which he signed on December 4, 2024. The Court entered the protective order on December 9, 2024. The information was then hand-delivered to Milan FDC on December 27, 2024.

- The final request went to Spain in June of 2024. The information was received on August 22, 2024, and produced it to Didani on September 6, 2024.

(ECF No. 158, PageID.1840-1831) Didani has been provided with an exhibit list, which indicates that the Government intends to use only photographs acquired from the Netherlands, United Kingdom, and Spain MLATs. The Government intends to present electronic chats, photographs and videos from the France MLAT.

It is well settled that a district court has considerable discretion under Rule 16, and that its imposition of a remedy or sanction for a discovery violation will be reviewed under an abuse of discretion standard. *United States v. Maples*, 60 F.3d 244, 246 (6th Cir. 1995). Rule 16(d)(2) sets forth the actions a court may take for discovery violations in criminal cases. It provides:

27

> If at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

Fed. R. Crim. P. 16(d)(2).  It is an abuse of discretion to impose the most severe sanction, suppression, instead of granting a continuance, if necessary, or ordering less stringent sanctions under Federal Rule of Criminal Procedure 16(d)(2). *Maples*, 60 F.3d at 246.  The goal of discovery in criminal trials is to insure a fair and thorough determination of defendant's guilt or innocence. In order to reach this goal, suppression of evidence must be viewed as an undesirable remedy reserved for cases of incurable prejudice or bad faith conduct demanding punishment by the court. *Id*. at 247. Several factors which should be considered in deciding whether suppression of evidence is an appropriate remedy to be imposed for a discovery violation. These include: (1) the reasons for the government's delay in producing the materials, including whether it acted intentionally or in bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether the prejudice to the defendant can be cured with a less severe course of action, such as granting a continuance or a recess. *Id.*

It appears that once the Government obtained the documents, most was reasonably thereafter produced to Didani.  Didani has not submitted any evidence

that any delay in producing the materials were done intentionally or bad faith. Didani does not complaint he has not received the materials. Other than not having time to review the materials, even though it appears Didani has had some of the materials for years, Didani has not shown he is prejudiced by any delay. It is noted that Didani has expressly stated on the record that he wanted to proceed to trial and that he did not seek any further continuances and complained about the various delays in this case. In addition, he has chosen to proceed to trial while representing himself, despite the Court's warning that this would impede his ability to review discovery by himself while in custody. Didani cannot now seek suppression of evidence without first seeking a continuance so that he can have more time to review the materials. Rule 16 contemplates a continuance for any delays in producing materials, rather than suppression of evidence. The Court will not suppress the materials obtained through the MLAT. Because Didani did not seek a continuance of the trial, the Court will not further delay the trial. The Court denies Didani's Motion to Suppress the materials obtained through MLAT.

### H.     Motion to Exclude iCloud Pictures and Video (ECF No. 148)

Didani seeks to suppress photos and videos found in Didani's iCloud account to support the Government's case. Didani asserts the materials are being used to connect Didani to the drug seizures made outside the United States and to

bolster the Government's narrative.  Didani argues that the photos and videos are inherently unreliable and lack sufficient context without proper authentication. Didani further asserts that emails and photographs between Carl Chaumont and Zaid Lattouf should not be introduced into evidence because Didani did not take these photos and introducing the photos would prejudice Didani.

Records must be properly authenticated to be introduced as evidence at trial. Fed. R. Evid. 901. Authentication requires the proponent of the record to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "The burden of proof for authentication is slight." *United States v. Pancholi*, No. CR 19-20639, 2023 WL 5706197, at *1–2 (E.D. Mich. Sept. 5, 2023); *Gregg v. Ohio Dep't of Youth Servs.*, 661 F. Supp. 2d 842, 852 (S.D. Ohio 2009) (citing *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 328 (3d Cir. 2005)).  A record's authenticity can be established through direct or circumstantial evidence. *See United States v. Cosgrove*, 637 F.3d 646, 658 (6th Cir. 2011).  The Sixth Circuit has held that "[i]t is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated." *United States v. Puttick*, 288 F. App'x 242, 246 (6th Cir. 2008).  "[T]he ultimate resolution of authenticity is a question for the

jury." *Id.* at 247.

Rule 901 offers a non-exhaustive list of ways to authenticate a record, such as "testimony of a witness with knowledge ... that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). With respect to emails and electronic records, courts have noted that when it comes to email authentication Rule 901(b)(4) is applicable. *Pancholi*, 2023 WL 5706197, at *2.  That provision explains that records may be authenticated by the introduction of testimony regarding their unique characteristics: i.e., the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4); *United States v. Kilpatrick*, No. 10-cv-20403, 2012 WL 3236727 (E.D. Mich. Aug. 7, 2012)). "[T]he key consideration ... is not simply whether the witness on the stand was a sender or recipient of the email, but whether the testifying witness can speak to the email's unique characteristics, contents, and appearance." *Pancholi*, 2023 WL 5706197, at *2 (citation omitted).

The Court is unable to determine whether the emails and other items found on Didani's iCloud account should be excluded since the witness who may testify to the authenticity of the iCloud materials has yet to testify.  The Court cannot properly review the authenticity of the materials as required under Rule 901.  The Court denies without prejudice Didani's motion to exclude Didani's iCloud

materials.

As to prejudice, Rule 901(b)(4) allows introduction of testimony regarding the unique characteristics of the emails, including whether Didani is a recipient of the emails and photographs even though he may have not taken the pictures. Again, because the Court has not heard from the witness who will testify the iCloud materials' authenticity, the Court cannot determine whether Didani is prejudiced if the emails and photographs would be prejudicial to Didani.

## III.   CONCLUSION/ORDER

The Court, having reviewed the briefs filed as to the various matters noted and for the reasons set forth above,

IT IS ORDERED that the Motion in Limine to Exclude SkyECC Evidence **(ECF No. 138)** is DENIED.

IT IS FURTHER ORDERED that the Motion in Limine to Admit Self-Authenticating Records **(ECF No. 140, 1/20/25)** is CONDITIONALLY GRANTED.

IT IS FURTHER ORDERED that the Motion in Limine to Exclude Hearsay Testimony **(ECF No. 141, 1/23/25)** is DENIED.

IT IS FURTHER ORDERED that the Motion in Limine to Recall Witness **(ECF No. 142, 1/24/25)** is GRANTED.

IT IS FURTHER ORDERED that the Motion for Special Jury Instruction **(ECF No. 143, 1/27/25)** is DENIED.

IT IS FURTHER ORDERED that the Motion to Exclude Evidence Obtained through MLAT **(ECF No. 145, 1/27/25**) is DENIED.

IT IS FURTHER ORDERED that the Motion to Exclude iCloud Pictures and Video **(ECF No. 148, 1/31/25)** is DENIED without prejudice.


s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED:  February 10, 2025