1              **UNITED STATES DISTRICT COURT**
               **EASTERN DISTRICT OF MICHIGAN**
2                    **SOUTHERN DIVISION**

3                       —   —   —

   UNITED STATES OF AMERICA,
4
                Plaintiff,
5
      v.                              Case No. 21-20264
6
   YLLI DIDANI,
7
                Defendant.
8    _____/

9              **JURY TRIAL - VOLUME 6 - EXCERPT**
           **BEFORE THE HONORABLE DENISE PAGE HOOD**
10                **UNITED STATES DISTRICT JUDGE**

11         Theodore Levin United States Courthouse
                231 West Lafayette Boulevard
12                    Detroit, Michigan
                Friday, February 21, 2025
13

     **APPEARANCES:**
14

      **For the Plaintiff:**      Mark Bilkovic
15                                Timothy McDonald
                                  UNITED STATES ATTORNEY'S OFFICE
16                                211 W. Fort Street, Suite 2001
                                  Detroit, Michigan  48226
17                                (313) 226-9623

18    **For the Defendant:**      Ylli Didani
                                  (Appearing in Pro Se)
19
                                  Wade Fink
20                                WADE FINK LAW, P.C.
                                  550 W. Merrill Street, Suite 100
21                                Birmingham, Michigan  48009
                                  (248) 712-1054
22                                (Appearing as Standby Counsel.)

23    **Also Present:**           Special Agent Chad Hermans
                                  Maria DiCarlo, Paralegal
24

         *To obtain a copy of this official transcript, contact:*
25           *Sheila D. Rice  Official Court Reporter*
           *(313) 234-2610 • sheila_rice@mied.uscourts.gov*

1 | **TABLE OF CONTENTS**

2 | MATTER_____PAGE

3 | **JURY TRIAL - VOLUME 6 - EXCERPT**

4 | **Government's Case in Chief (Continued)**

5 | **DEREK NEWSOME (Continued)**

Cross-examination by Defendant Didani cont'd........  3
6 | Redirect examination by Mr. Bilkovic................ 18

7 | Certificate of Court Reporter...................... 21

8 |

9 |

10 |

11 |

12 |

13 |

14 | E X H I B I T   I N D E X

15 |

| Exhibit No. | Description | Identified | Admitted |
|---|---|---|---|
| Defense F | Video | 4 | |

```
 1     Detroit, Michigan
 2     Friday, February 21, 2025
 3     9:53 a.m.
 4                             —   —   —
 5              (Beginning of Excerpt.)
 6              THE COURT:  You may proceed.
 7                     CROSS-EXAMINATION (Continued)
 8     BY DEFENDANT DIDANI:
 9     Q.   Good morning.  Good morning, Agent Newsome.
10     A.   Good morning.
11     Q.   So we go continue where we left yesterday.  And the
12     question was whether in Sterling Heights was -- it was a
13     interview between you and other agents and Donald Larson.  And
14     the question when I asked you yesterday if Donald Larson
15     admitted what the money was there for.  And you said, yes, it
16     was for drugs.
17              Are we on the same page there to continue or -- are
18     we?
19     A.   I'm ready to continue.
20              DEFENDANT DIDANI:  All right.  Your Honor, I would
21     like for the jury -- it will be two parts, because the part --
22     it's one video.  It's about four minutes.  And one video, VS2,
23     at the end, and it starts six minutes, and VS3 from zero to
24     six.
25              THE COURT:  Okay.  And these are proposed exhibits?
```

1           DEFENDANT DIDANI:  Yes, your Honor.

2           THE COURT:  Okay.  Well, let's mark them proposed.

3    They may or may not be exhibits.  You're using them either to

4    refresh or impeach?

5           DEFENDANT DIDANI:  Yes.

6           THE COURT:  Are you using them to refresh or impeach?

7           DEFENDANT DIDANI:  Yes, your Honor.

8           THE COURT:  All right.  What are they?

9           DEFENDANT DIDANI:  There's --

10          THE COURT:  It's two different videos; right?

11          DEFENDANT DIDANI:  There is a connection -- the

12   video -- one it was -- the first video -- they connect with

13   each other.  They stop.  One is the $450,000 that Agent --

14          THE COURT:  No, that's not what I'm asking, no

15   offense.  But really what I want to know is are they from the

16   same session?

17          DEFENDANT DIDANI:  Yes, your Honor, it's from --

18          THE COURT:  One video?

19          DEFENDANT DIDANI:  Yes, they're the same session, but

20   it was part on five videos, 30 minutes.

21          THE COURT:  Do you know the time that we're going to

22   start the first part?

23          DEFENDANT DIDANI:  Yes, your Honor.

24          THE COURT:  And what is it?

25          DEFENDANT DIDANI:  It's --

```
 1            MR. FINK:  Do you want me to answer?

 2            DEFENDANT DIDANI:  Yes.

 3            MR. FINK:  Judge, if you're marking this as proposed

 4   Defendant's F, it would be from V2 starting at 20:30 and V3

 5   starting at zero to 6:30.  That would be Defendant's proposed

 6   F.

 7            THE COURT:  Okay.  All right.  And you're going to

 8   play them now?

 9            MR. FINK:  With your permission, Judge, I'd be happy

10   to.

11            DEFENDANT DIDANI:  With your permission, Judge.

12            THE COURT:  Okay.

13            DEFENDANT DIDANI:  Thank you very much.

14            MR. BILKOVIC:  Could I pose an objection?

15            THE COURT:  What's your objection?

16            MR. BILKOVIC:  My objection is I don't know it's

17   appropriate to play ten minutes of video when there's not ten

18   minutes of video that address the question that he asked the

19   agent.

20            THE COURT:  Do you want to respond to that?

21            It's 20 to 30?  It's 20 minutes to 30 minutes?

22            MR. FINK:  It's -- is that okay if I answer,

23   Mr. Didani?

24            DEFENDANT DIDANI:  Yes.

25            MR. FINK:  The 20:30 to the end of the video is about
```

```
 1     six minutes, seven minutes.
 2           THE COURT:  Okay.
 3           MR. FINK:  So it's basically 20:30 to the end of that
 4     clip, and then beginning the next clip, which we're identifying
 5     as V3 from zero minutes to six minutes and actually 20 seconds.
 6     I said 6:30, but six minutes and 20 seconds.
 7           THE COURT:  Okay.  This is six minutes each.  That's
 8     not that long, Mr. Bilkovic.
 9           Now, tell me this, do you object to either one of
10     those six minutes being used to refresh or to impeach?
11           MR. BILKOVIC:  No, your Honor.
12           THE COURT:  Very well.  Let's proceed.
13           DEFENDANT DIDANI:  Thank you, your Honor.
14           (Video played.)
15           DEFENDANT DIDANI:  Can you stop for a second.
16     BY DEFENDANT DIDANI:
17     Q.  Agent Newsome, can you identify yourself?
18     A.  Yes, sir.  I am located in the middle with the black shirt
19     and black hat.
20     Q.  And the agent with the hat?
21     A.  Sitting next to me is Task Force Officer Brandon Leach.
22           THE COURT:  On what side of you?
23           THE WITNESS:  Well, in the video on the left side of
24     me.  On the screen on the right-hand side.
25
```

1    BY DEFENDANT DIDANI:

2    Q.   And then the other agent with -- you can say white hair?

3    A.   It's Task Force Officer George Tsouroullis.

4    Q.   And the gentleman sitting there?

5    A.   That is Donald Larson.

6    Q.   Is Donald Larson one of the unindicted co-conspirators in

7    this case?

8    A.   Donald Larson, yes, he's a co-conspirator.

9    Q.   Unindicted or co-conspirator?

10   A.   He is -- yeah, unindicted.

11   Q.   Thank you very much, sir.

12           DEFENDANT DIDANI:  Can we proceed, your Honor?

13           THE COURT:  Yes.

14           DEFENDANT DIDANI:  Thank you, your Honor.

15           (Video played.)

16           THE COURT:  Let's stop.  When are you going to get to

17   something related to the question at hand?

18           DEFENDANT DIDANI:  Because --

19           THE COURT:  Because this is not related.

20           DEFENDANT DIDANI:  It is related, your Honor, because

21   that's the 450 -- it will get there.

22           THE COURT:  This is related to the question that you

23   posed to this witness?

24           DEFENDANT DIDANI:  Your Honor, the whole thing, the

25   450, how he got in Washington --

```
 1              THE COURT:  It doesn't say anything about the 450.

 2              The jury may step down.

 3              (The jury left the courtroom at 10:01 a.m.)

 4              THE COURT:  You may all be seated.

 5         I don't have any problem with the testimony that he's

 6    staying in the house or that he has a key or whether or not the

 7    house is being sold, but all these comments about women and

 8    looking in a hot tub and circulating cameras, it doesn't have

 9    anything to do with your question.

10         And I want you to know that I think that it's an

11    attempt to take advantage of the Court to get things in that

12    have nothing to do with the case, and I'm not going to permit

13    it.

14         If you want to go through that tape and find where

15    there is a discussion of something pertinent to this case, I

16    will permit you to have it, okay, but I haven't heard it yet.

17    The only thing I've heard that might be pertinent is that he's

18    staying there, that he thinks he picks up the checks there and

19    that he had a key, okay.  The other stuff has nothing to do

20    with this.

21         And, I'm sorry, it's a video.  You all know how to

22    stop and start it.  And, if you don't, I am happy to have the

23    Court's IT people come up and assist you.  But I'm going to

24    bring the jury out and tell them that all of that they heard

25    about the women and the men is totally unrelated to this case
```

1    and that it's stricken and they may not disregard it.

2          And I'm considering whether I should tell them that

3    I've admonished you that you should not bring things into this

4    case that don't have any place in the case, unless you're going

5    to tell me that is in some way relevant to the question that

6    you asked him about the $450,000.  Because the question that

7    you asked him was whether or not Mr. Larson had said that you

8    were using it to buy drugs.

9          Is that correct?

10         DEFENDANT DIDANI:  Yes, your Honor.

11         THE COURT:  Yeah.  And the conversation about those

12   women has nothing to do with that; right?

13         DEFENDANT DIDANI:  Right, your Honor.

14         THE COURT:  Okay.  So, if you would like the

15   assistance of Mr. Fink in determining what part of these videos

16   that you're going to show, I'm happy for you to do that, okay.

17         And yesterday I might have been happy to take a break

18   to give you an opportunity to do that.  And I'm not trying to

19   belittle in any way, Mr. Fink, that you stayed up until the

20   middle of the night trying to get these clips together, but

21   it's inappropriate, okay.  And I don't know whether or not that

22   is your responsibility as standby counsel to tell him that it's

23   inappropriate and improper to have before the jury.

24         Okay.  I'm just -- I'm not admonishing you, because I

25   don't know that I'm going to cause you to have that

1    responsibility, but, Mr. Didani, I do think you've gone too

2    far.

3              MR. FINK:  Judge, for the record, I do think I do have

4    that responsibility, but I did not know what the clips were

5    until this morning.  I only --

6              THE COURT:  Well, you all need to look at them.

7              DEFENDANT DIDANI:  Your Honor --

8              THE COURT:  And I have given you a chance to look at

9    them.  And this morning you will have to go to another question

10   with this witness, because you may not show the rest of those

11   videos until you have gone through them and make sure that

12   stuff like that that has nothing to do with the case and serves

13   only to prejudice the jury is brought in, okay.  So you can

14   present them at another time.

15             And are you local?

16             THE WITNESS:  Yes, ma'am.

17             THE COURT:  Okay.  You can come any time.

18             DEFENDANT DIDANI:  Your Honor, can we can go to --

19   because --

20             THE COURT:  No, you cannot use the video, and I --

21             DEFENDANT DIDANI:  But it's a --

22             THE COURT:  Excuse me.  I don't mean to raise my

23   voice, but I really do think that I have extended myself to

24   allow you to do this.  And I can't relative to these videos,

25   because, I'm sorry, I think you've have abused the Court's

1    letting you leave early yesterday to have that time to talk to

2    your standby counsel and to get these videos ready.  And I

3    think you abused it, Mr. Didani.  I'm sorry.

4              DEFENDANT DIDANI:  Your Honor --

5              THE COURT:  And you may sit down, please.  And here's

6    how we're going to --

7              Mr. McDonald -- I'm sorry.  Mr. Bilkovic, do you want

8    to be heard on this?

9              MR. BILKOVIC:  No, your Honor.

10             THE COURT:  And I'm trying very hard to reserve my

11    reputation as a temperate judge in light of these

12    circumstances.

13             MR. BILKOVIC:  The Court now has a little more detail

14    as to why I was objecting.  I didn't know exactly the content,

15    but I knew it wasn't 12 minutes.

16             There is a portion of the video that he could simply

17    ask the agent isn't it true that in this video Mr. Didani -- or

18    Mr. Larson did not mention that.  And I believe that the agent,

19    after reviewing, will say -- because he is aware of this will

20    say, yes, that is not in there.

21             THE COURT:  That's fine.  I'm happy for you to even

22    show it, but you may not show that part of it and you can't

23    show it now, and I'm not going to take the jury's time right

24    now to do that.

25             So do you have other questions other than that for

 1   Mr. Newsome?

 2            DEFENDANT DIDANI:  Your Honor, how can it be a fair

 3   trial when you depriving me from asking my questions right now,

 4   your Honor?  How can it be a fair trial when these two

 5   conversations --

 6            THE COURT:  Tell me what about a fair trial is that --

 7            DEFENDANT DIDANI:  They impacting, your Honor.

 8            THE COURT:  Excuse me.  What does it have to do with a

 9   fair trial that Mr. Larson is in a hot tub and there's a

10   security camera, or the amount of times they did things with

11   women?  What does that relate to, Mr. Didani?

12            DEFENDANT DIDANI:  Your Honor --

13            THE COURT:  Wait, wait.  Answer my question, please.

14            DEFENDANT DIDANI:  I have to answer you?

15            THE COURT:  No, you don't.

16            Court's in recess.

17            LAW CLERK:  All rise.  Court's in recess.

18            (At 10:07 a.m., a brief recess was taken.

19            Back on the record at 10:14 a.m.)

20            LAW CLERK:  All rise.  Court is back in session.

21            THE COURT:  Okay.  The witness may come back up to the

22   stand.

23            All right.  So we're going to continue.  The videos

24   won't be able to be shown.  Mr. Bilkovic has offered to work

25   out how we might handle that.  I'm going to bring the jury in.

1    I'm going to instruct them that anything that they heard after

2    Mr. Larson being in the hot tub is stricken and they should

3    entirely disregard it because it has nothing to do with the

4    case.  The prior amount I'm going to allow them to hear.

5           When you have the videos ready to show something

6    that's appropriate to the trial, I'm happy to have this witness

7    back and have that happen.  But, until then, you'll have to ask

8    him any additional questions, if you have any.  And, if not, if

9    there's additional redirect, I'll allow that.

10          But you'll have to return at the Court's request;

11   okay?

12          THE WITNESS:  Yes, your Honor.

13          THE COURT:  Okay.

14          DEFENDANT DIDANI:  Your Honor, may I speak?

15          THE COURT:  Yes, if you'd like to.

16          DEFENDANT DIDANI:  Your Honor, let me be clear over

17   here, your Honor.  I'm not trying to upset the Court over here.

18          THE COURT:  I'm not upset.  I'm just surprised.

19          DEFENDANT DIDANI:  Your Honor, yesterday I got in

20   Milan 7:30 p.m., for the Court to know.  And it's a three-hour

21   video.  I didn't do nothing purposely like you suggested, your

22   Honor, with all due respect.  I was going through, because I

23   didn't remember, and I was going through fast forward, fast

24   forward, fast forward, fast forward.

25          So not even one second from last night or today in the

Jury Trial, Volume 6 - Excerpt - February 21, 2025

1   morning that I woke up four o'clock in the morning trying to

2   mislead the Court.  The reason those videos -- the whole issue

3   here, your Honor, on this conspiracy is that $450,000.  And --

4          THE COURT:  We've heard nothing about it in these

5   videos.  All we've heard, and I'm allowing what we've heard,

6   was that he had a key to the house, that he thought he picked

7   up some checks there.  We don't even yet know what the checks

8   were about.  And then we heard a host of things we really

9   didn't need to hear.

10          Now, are you objecting to the way that I want to

11  proceed?

12          DEFENDANT DIDANI:  Your Honor, can I please -- as a

13  matter of fact, when I hear that, I approached Mr. Fink and I

14  said, "Wade, this" -- because I was surprised, too, because I

15  was going fast.  I'm not trying to --

16          But I do object, your Honor, because we need to hear

17  part of those videos to continue the impeachment against this

18  witness.

19          THE COURT:  I didn't say that you couldn't show them.

20  You just can't show them today until they're ready.

21          DEFENDANT DIDANI:  But, your Honor --

22          THE COURT:  And you can have this afternoon to get

23  them ready.  We aren't having trial this afternoon.  But I'm

24  not going to let you play them as-is.

25          And, you know what, Mr. Didani, I have the complete

1    authority to order how the case will go forward.  And I know

2    you don't like that either, but I do have that authority, and

3    so we are going to proceed as I indicated.

4            And the opposing counsel has offered to help you find

5    the places where -- it's my understanding this video is not

6    going to show that he did not say that you were selling drugs;

7    right?  That's what it's going to show; right?

8            DEFENDANT DIDANI:  Yes, your Honor.

9            THE COURT:  Okay.  And so we'll get to that, but that

10   doesn't have anything to do with what we've heard so far.

11           DEFENDANT DIDANI:  But, your Honor, I was forwarding

12   too fast.  Now, in 25 -- in 25 you will hear --

13           THE COURT:  No, I won't today.  We can --

14           DEFENDANT DIDANI:  Your Honor, we can pass on the

15   witness then.  I'm not going to proceed on impeaching the

16   witness --

17           THE COURT:  You don't.  If you want him to come back

18   when you're ready, I'll allow that, too.

19           DEFENDANT DIDANI:  Okay.  He can come back, your

20   Honor.

21           THE COURT:  Okay.  Fine.

22           DEFENDANT DIDANI:  Whenever we have that ready for

23   that --

24           THE COURT:  Do you have your next witness ready?

25           MR. BILKOVIC:  We do, your Honor, but I would like to

1    be clear that I don't think it's fair that we send this witness

2    home and then he comes back and then he starts his

3    cross-examination all over because he doesn't feel like doing

4    the rest of it today.

5            I would ask the Court to instruct him do the rest of

6    his cross-examination today so we don't have to come back and

7    have this witness on the stand for two more hours.

8            THE COURT:  Do you have anything other than impeaching

9    this witness to ask him?

10           DEFENDANT DIDANI:  Your Honor, it's very important --

11           THE COURT:  No, no.  It's a question that you need to

12   answer so that we will have a good record.

13           DEFENDANT DIDANI:  Your Honor --

14           THE COURT:  Do you have anything else to ask this

15   witness besides impeaching him about the 400,000?

16           DEFENDANT DIDANI:  There's a lot of other things.

17   Yes, your Honor.

18           THE COURT:  Okay.  Can you --

19           DEFENDANT DIDANI:  But that is connected to --

20           THE COURT:  Excuse me.  Can you go to those today?

21           DEFENDANT DIDANI:  Your Honor, they are --

22           THE COURT:  Can you go to those today?

23           DEFENDANT DIDANI:  No, your Honor.

24           THE COURT:  Okay.  Bring out the jury, please.

25           Your next witness is here?

```
 1              MR. BILKOVIC:  Yes, but I would ask an opportunity for
 2    a brief redirect.
 3              THE COURT:  Okay.
 4              LAW CLERK:  All rise for the jury.
 5              (The jury entered the courtroom at 10:20 a.m.)
 6              THE COURT:  You may all be seated.
 7              Are you satisfied the jurors are present and properly
 8    seated, Mr. Bilkovic?
 9              MR. BILKOVIC:  Yes, your Honor.
10              THE COURT:  What about you, Mr. Didani?
11              DEFENDANT DIDANI:  Yes, your Honor.
12              THE COURT:  Okay.  Very good.
13              We heard some videotape earlier.  You may consider
14    for, as part of the impeachment by Mr. Didani, all of the
15    videotape up until the part where Mr. Larson says he was in a
16    hot tub.  Everything after that you should entirely disregard.
17    It has no place in the Court, is of no impeachment value, and
18    you may not consider it for any purpose.  If anybody was
19    offended by hearing it, I apologize for that.
20              We are going to -- I am going to permit Mr. Didani to
21    later continue with his impeachment of this witness if he
22    chooses to at a later time, but right now we're going to go to
23    the redirect, and then the witness will return for the rest of
24    Mr. Didani's cross-examination.
25              You're still under oath, sir.  Redirect.
```

1        MR. BILKOVIC:  Thank you, your Honor.

2                REDIRECT EXAMINATION

3   BY MR. BILKOVIC:

4   Q.   Agent Newsome, yesterday Mr. Didani asked you some

5   questions about whether you reviewed the computers belonging to

6   Martin Tibbitts, and you indicated that you did not.  Do you

7   remember that?

8   A.   Yes.

9   Q.   How many other agents were working on this case?

10  A.   There were two additional primary agents with the DEA.

11  Q.   And do you know if there were any secondary agents that

12  were also assisting?

13  A.   Yes.

14  Q.   And was the responsibility of other agents to review

15  electronic information?

16  A.   Yes.

17  Q.   If any of those agents found anything that they believed

18  that was in your bailiwick, would they be able to give that to

19  you?

20  A.   Yes, they would.

21  Q.   Is that generally how the procedure would work?

22  A.   Yes, that is common.

23  Q.   Now, you were also asked yesterday about the interviews

24  with Mr. Larson; correct?

25  A.   Yes.

1    Q.   How many interviews were there?

2    A.   I participated personally in two interviews.

3    Q.   And was one of them the day that he was arrested?

4    A.   Yes.

5    Q.   Is that the one that we saw in the video?

6    A.   It is.

7    Q.   Was he in custody at that time?

8    A.   He was.

9    Q.   And during that video I believe you said -- or during that

10   interview I believe that you said yesterday that he told you

11   that the money was given to Ylli Didani for cocaine; correct?

12   You had testified to that yesterday?

13   A.   Yes, I did.

14   Q.   Is that correct?

15   A.   No, it's not.

16   Q.   Why is that not correct?

17   A.   I got the interviews confused.  It was during the second

18   interview where Mr. Larson made those statements.

19   Q.   So what did he say about that in this interview, the

20   $450,000?

21   A.   In the first interview, Mr. Larson --

22   Q.   When you say the first interview, the interview we saw the

23   video clip the day he was arrested?

24   A.   Correct.  The in-custody interview at Sterling Heights

25   Police Department that was just on the screen, Mr. Larson told

1    me that he had delivered $450,000 in cash to an unknown

2    individual in Washington, D.C.

3    Q.   And did you and other agents at that time know that that

4    was not true?

5    A.   Yes.

6    Q.   And at the time that he made those statements did you and

7    other agents have information as to who he met in Washington,

8    D.C.?

9    A.   Yes, we did.

10   Q.   And so was a later interview done with Mr. Larson?

11   A.   It was, yes.

12   Q.   And was that addressed?

13   A.   It was.

14   Q.   And Mr. Larson, was he forthright in that interview and

15   admit actually what had occurred?

16   A.   That is correct, in the second interview.

17   Q.   And the second interview who did he indicate he met with?

18   A.   Ylli Didani.

19        MR. BILKOVIC:  Nothing further, your Honor.

20        THE COURT:  Well, you may step down, sir, but you may

21   have to return, all right.

22        THE WITNESS:  Yes, your Honor.

23        THE COURT:  Okay.  Thank you.

24        (End of Excerpt at 10:25 a.m.)

25                         —    —    —

```
1
2
3                    CERTIFICATE OF COURT REPORTER
4
5          I, Sheila D. Rice, Official Court Reporter of the
6     United States District Court, Eastern District of Michigan,
7     appointed pursuant to the provisions of Title 28, United States
8     Code, Section 753, do hereby certify that the foregoing pages
9     is a correct transcript from the record of proceedings in the
10    above-entitled matter.
11
12
13                         s/Sheila D. Rice
                           Sheila D. Rice, CSR-4163, RPR, RMR, FCRR
14                         Federal Official Court Reporter
                           United States District Court
15                         Eastern District of Michigan
16
      Date:  03/02/2025
17    Detroit, Michigan.
18
19
20
21
22
23
24
25
```