```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3                           _   _   _

     UNITED STATES OF AMERICA,
 4
                  Plaintiff,
 5
       v.                                Case No. 21-20264
 6
     YLLI DIDANI,
 7
                  Defendant.
 8   _____/

 9               JURY TRIAL - VOLUME 18 - EXCERPT
                Continued Testimony of Brandon Leach
10           BEFORE THE HONORABLE DENISE PAGE HOOD
                  UNITED STATES DISTRICT JUDGE
11
                Theodore Levin United States Courthouse
12                 231 West Lafayette Boulevard
                        Detroit, Michigan
13                 Wednesday, March 19, 2025

14
     APPEARANCES:
15
       For the Plaintiff:      Mark Bilkovic
16                             Timothy McDonald
                               UNITED STATES ATTORNEY'S OFFICE
17                             211 W. Fort Street, Suite 2001
                               Detroit, Michigan  48226
18                             (313) 226-9623

19     For the Defendant:      Wade Fink
                               WADE FINK LAW, P.C.
20                             550 W. Merrill Street, Suite 100
                               Birmingham, Michigan  48009
21                             (248) 712-1054

22     Also present:          Special Agent Chad Hermans
                               Maria DiCarlo, Paralegal
23

24
            To obtain a copy of this official transcript, contact:
25               Sheila D. Rice  Official Court Reporter
                (313) 234-2610 • sheila_rice@mied.uscourts.gov
```

1            **TABLE OF CONTENTS**

2    MATTER                                                    PAGE

3    **JURY TRIAL - VOLUME 18 - EXCERPT**

4    **BRANDON LEACH**
     Continued direct examination by Mr. Bilkovic........   5
5    Voir Dire examination by Mr. Fink..................   20
     Direct examination continued by Mr. Bilkovic........  21
6
     Certificate of Court Reporter...................... 146
7

8

9

10
                  E X H I B I T   I N D E X
11

12
     Exhibit No.        Description              Identified    Admitted

13   GX 35.0-35.6  Bulletproof Zone records       139          140
     GX 64         WhatsApp message thread      (Under advisement)
14   GX 65.0       WhatsApp message thread        52           55
     GX 65.1       Photograph                     56           57
15   GX 65.2       Photograph                     57           58
     GX 65.13      Photograph                     58           61
16   GX 65.14      Photo of article               73           74
     GX 65.14-A    Translated version of 65.14    73           74
17   GX 66.0       Excerpts WhatsApp chat         86           89
     GX 66.0-A     Translation of 66.0            87           89
18   GX 66.2       Photo, Mr. Didani selfie       89           89
     GX 66.7       Photo of news article          92           92
19   GX 66.7-A     Translation of 66.7            93           94
     GX 78.19      Video                          77           81
20   GX 80.12      Video                          84           84
     GX 115.0      Photograph                    115
21   GX 115.7      Photo MoneyGram instructions   22           23
     GX 115.9      Photo Didani E-mail inbox      19           21
22   GX 115.11     Photo of texts                127           63
     GX 115.11-A   Image identifier to 115.11    128          128
23

24

25

1    (Continued)

2                        E X H I B I T   I N D E X

3

     Exhibit No.        Description              Identified    Admitted
4
     GX 115.12          Photo BlackBerry Sky texts    110          63
5    GX 115.12-A        Image identifiers to 115.12   111         111
     GX 115.13          Photo BlackBerry Sky texts    113          63
6    GX 115.13-A        Image identifiers to 115.13   114         114
     GX 115.14          Photo BlackBerry Sky texts    116          63
7    GX 115.14-A        Image identifiers to 115.14   116         117
     GX 115.15          Photo BlackBerry Sky texts                 63
8    and 115.16
     GX 115.17          Photo BlackBerry Sky texts    118          63
9    GX 115.17-A        Image identifiers to 115.17   118         118
     GX 115.18          Photo BlackBerry Sky texts    120          63
10   GX 115.18-A        Image identifiers to 115.18   120         121
     GX 115.19          Photo BlackBerry Sky texts    122          63
11   GX 115.19-A        Image identifiers to 115.19   122         122
     GX 115.21          Photo BlackBerry Sky texts    123          63
12   GX 115.21-A        Image identifiers to 115.21   123         124
     GX 115.29          Video                          84          84
13   GX 115.30          Video                          84          84
     GX 115.31          Photograph                     24          27
14   GX 115.31-A        Photograph                     25          27
     GX 115.32          WhatsApp message thread        30          31
15   GX 116.1           Photograph of phone             6           7
     GX 116.3           Photo of Mr. Didani and         8           9
16                      Mr. Tibbitts
     GX 116.4           Photo of Mr. Didani,            9           9
17                      Mr. Tibbitts and unknown male
     GX 116.20          Photo, texts with Toni Stark  137          63
18   GX 116.24          Photo BlackBerry Sky texts    125          63
     GX 116.24-A        Image identifiers to 116.24   125         126
19   GX 116.26          Video                          10          11
     GX 116.27          Photograph                     12          13

20

21

22

23

24

25

 1    Detroit, Michigan

 2    Wednesday, March 19, 2025

 3    9:44 a.m.

 4                            —   —   —

 5              (Beginning of excerpt.)

 6              (The jury entered the courtroom at 9:44 a.m.)

 7              THE COURT:  Good morning.  How are you?

 8              JURORS:  (Collectively) Good morning.

 9              THE COURT:  Good.  Are you satisfied the jurors are

10    present and in their proper seats?

11              MR. BILKOVIC:  Yes, your Honor.

12              MR. FINK:  Yes, your Honor.

13              THE COURT:  Okay.  Very good.

14              Mr. Leach is still under oath.

15              THE WITNESS:  Yes, your Honor.

16              THE COURT:  And I don't think you need to state your

17    name again since we have the same court reporter.

18              And, Mr. Bilkovic, are the series we're talking about,

19    is that 115 series; right?

20              MR. BILKOVIC:  Yeah.  There might be a couple in the

21    112 and one in the 116, but that is generally what we're

22    discussing is 115.

23              THE COURT:  Okay.

24              MR. BILKOVIC:  So I will go out of order and I'll do

25    those after the break depending on what the Court rules.

```
 1              THE COURT:  If you would, that would really be helpful
 2    to me.
 3              MR. BILKOVIC:  That would be fine.  It might be a
 4    little choppy, but I think the jury is used to that by now,
 5    so ...
 6              May I proceed?
 7              THE COURT:  Yes.
 8                   DIRECT EXAMINATION (Continued)
 9    BY MR. BILKOVIC:
10    Q.  Agent Leach, we touched on it a little bit yesterday, but
11    you have obviously the iCloud, the iCloud downloads as well as
12    phones that were in Mr. Didani's possession; correct?
13    A.  That is correct.
14    Q.  And is that evidence of who possesses or whose data is in
15    those devices and in the iCloud?
16    A.  Yes.
17    Q.  Did you also go through -- you and other agents go through
18    the iCloud and the phone to see if there was other evidence of
19    user attribution?
20    A.  Yes, we did.
21    Q.  And we talked a little about this yesterday, but did you
22    find photographs and videos in those devices?
23    A.  Yes.
24    Q.  And did you find chats in those devices?
25    A.  Correct.
```

1   Q.  And from those chats did that confirm or did that dissuade

2   your belief that the material that you had in those devices was

3   Mr. Didani's?

4   A.  It provided confirmation.

5   Q.  I want to go through some of those starting with the rose

6   iPhone that was recovered when Mr. Didani was arrested in March

7   of 2021.

8           THE COURT:  And that has an exhibit number; right?

9           MR. BILKOVIC:  That phone, I believe, is Exhibit

10  number 60.0.

11          THE COURT:  Okay.

12  BY MR. BILKOVIC:

13  Q.  Could you turn to your book and go to Government's proposed

14  Exhibit 116.1.

15  A.  Yes, I have it here.

16  Q.  And we did these last night, and I'm hoping that they're

17  all there, but if there's an exhibit that I ask you about

18  that's not in there just let me know; okay?

19  A.  We'll do.

20  Q.  Do you recognize Government's proposed Exhibit 116.1?

21  A.  Yes, I do.

22  Q.  And what his that?

23  A.  This is a photograph of another phone displaying like a

24  phone number contact.

25  Q.  And do you see a reflection of an individual in the

1    background of that photograph?

2    A.   Yes, I do.

3    Q.   And do you recognize that individual?

4    A.   It appears to be Mr. Didani.

5    Q.   And this was in the 2021 rose iPhone; correct?

6    A.   Yes, it was.

7         MR. BILKOVIC:  Your Honor, at this time I move for

8    admission into evidence of Government's proposed Exhibit 116.1.

9         THE COURT:  Any objection?

10        MR. FINK:  No objection.

11        THE COURT:  Very well.  It's admitted.

12        (Government's Exhibit 116.1 received into evidence.)

13        MR. BILKOVIC:  And can we publish it to the jury?

14        THE COURT:  Yes, you may.  It's 116.1.

15        MR. BILKOVIC:  Can we zoom in on the top half going

16   down to where the phone number is.

17   BY MR. BILKOVIC:

18   Q.   Do you see the word "P" there?

19   A.   Yes, I do.

20   Q.   And did that have any significance in the investigation?

21   A.   Yes.

22   Q.   In what way?

23   A.   We often seen Mr. Didani referenced or reference himself as

24   "P" or -- short for Panco.

25   Q.   And then is there a phone number attached here?

1    A.   Yes, there is.

2    Q.   And the -- you indicated that there's a reflection in the

3    background that you believe is Mr. Didani?

4    A.   Yes.

5    Q.   So would this be an example of the user taking a photograph

6    of what is on another phone?

7    A.   Yes, it would be.

8    Q.   Have you seen chats in the iCloud in Mr. Didani's phone

9    where one of the parties is referenced as "P"?

10   A.   Yes.

11   Q.   Can you turn to Government's proposed Exhibit 116.3, and

12   tell me if you recognize that?

13   A.   Yes, I do.

14   Q.   And what is that?

15   A.   This is a photograph taken from that rose phone.

16   Q.   Let me ask you this question.  All of the exhibits that

17   start with 116, are those all exhibits or proposed exhibits

18   that were from the rose iPhone download?

19   A.   Yes, they are.

20   Q.   And you indicated that this is a photograph of who?

21   A.   This is a photograph of Mr. Didani and Mr. Martin Tibbitts.

22        MR. BILKOVIC:  Your Honor, at this time I would move

23   for admission into evidence of Government's proposed Exhibit

24   116.3.

25        MR. FINK:  No objection.

```
 1                    THE COURT:  Very well.  It's admitted as 116.3.
 2                    (Government's Exhibit 116.3 received into evidence.)
 3    BY MR. BILKOVIC:
 4    Q.   And can you look at Government's proposed Exhibit 116.4.
 5    Do you recognize that?
 6    A.   Yes, I do.
 7    Q.   And what is that?
 8    A.   This is another photograph depicting Mr. Martin Tibbitts,
 9    Mr. Didani and an unknown male.
10                    THE COURT:  And who?
11                    THE WITNESS:  An unknown male.
12                    THE COURT:  Okay.
13                    MR. BILKOVIC:  Your Honor, at this time I would move
14     into admission for evidence of Government's proposed Exhibit
15     116.4.
16                    MR. FINK:  No objection, your Honor.
17                    THE COURT:  Very well.  It's admitted as 116.4.
18                    (Government's Exhibit 116.4 received into evidence.)
19    BY MR. BILKOVIC:
20    Q.   Did you review any videos on the phone?
21    A.   Yes.
22    Q.   Did you find a video that was basically, for lack of a
23    better phrase, a tribute video to Mr. Tibbitts after he passed
24    away?
25    A.   Yes.
```

Jury Trial, Volume 18 - Excerpt - March 19, 2025

1    Q.   And do you know -- did you look through that video?

2    A.   Yes, I did.

3    Q.   And are there photographs in that video of individuals?

4    A.   Yes, there are.

5    Q.   Who are the photographs of?

6    A.   Mr. Martin Tibbitts.

7    Q.   Anybody else, if you recall?

8    A.   Mr. Didani.

9            MR. BILKOVIC:  Okay.  Your Honor, at this time I would

10   move for admission into evidence of Government's proposed

11   Exhibit 116.26, which is the video that Detective Leach just

12   referenced.

13           THE COURT:  You've seen it?  Counsel, have you seen

14   it?

15           MR. FINK:  I have, Judge.  I'm scrolling through it

16   again right now.

17           THE COURT:  Wait a minute.  I was really asking

18   Mr. Bilkovic.

19           MR. BILKOVIC:  Oh.  Yes, I have, your Honor.

20           THE COURT:  You're next.

21           MR. BILKOVIC:  I have.

22           THE COURT:  You have, okay.

23           And have you seen it as well?

24           MR. FINK:  I have seen this in the past, Judge.  I'm

25   just scrolling through it to make sure I remember all of its

1    contents.  I have no objection.

2            THE COURT:  All right.  It's admitted as 116.26.

3            (Government's Exhibit 116.26 received into evidence.)

4            MR. BILKOVIC:  And may I publish it to the jury?

5            THE COURT:  Yes.

6            MR. BILKOVIC:  And, your Honor, if I could just

7    indicate to the Court, whenever we have technical snafus and

8    things take time, I want the Court to know that that's my fault

9    and Mr. McDonald's fault.  Ms. DiCarlo has been very patient.

10   There's times that we are -- our numbers we give her are wrong

11   and things like that.

12           THE COURT:  I wouldn't think of blaming her.

13           MR. BILKOVIC:  Okay.

14           THE COURT:  Or any of you, given my level of technical

15   expertise.

16           MR. BILKOVIC:  Thank you.

17           THE COURT:  I can also say you could call our tech

18   support.

19           MR. BILKOVIC:  Thank you.

20           (Video played.)

21   BY MR. BILKOVIC:

22   Q.  Can you look at Government's proposed Exhibit 120 --

23   116.27.

24           THE COURT:  Is that the entire video?

25           MR. BILKOVIC:  That's the entire video, your Honor.

```
 1              THE COURT:  And we're looking at 116.27?
 2              MR. BILKOVIC:  116.27 now I'm moving to.
 3              THE COURT:  Okay.
 4              THE WITNESS:  Yes, I have it here.
 5   BY MR. BILKOVIC:
 6   Q.   Do you recognize that?
 7   A.   I do.
 8   Q.   And what is that?
 9   A.   A photograph of Mr. Didani and a female on a beach.
10              THE COURT:  It's what?
11              THE WITNESS:  A photograph of Mr. Didani and a female
12   standing on the beach, or jumping on the beach.
13              MR. BILKOVIC:  Your Honor, at this time I would move
14   for admission into evidence of Government's proposed Exhibit
15   116.27.
16              MR. FINK:  Objection to relevance.
17              THE COURT:  How is it relevant?
18              MR. BILKOVIC:  It's relevant because the next exhibit
19   I'm going to have is going to show the same photograph as the
20   cover photo of an iPhone, along with four other devices,
21   including a BlackBerry device.  And so the relevance is it ties
22   all of those phones to Mr. Didani because of this photograph.
23   The same photograph is the screensaver on another iPhone that
24   he had that is in a picture with multiple other phones.  And
25   part of the allegations in this case is that Mr. Didani
```

1   possessed multiple phones, including encrypted BlackBerrys.

2           MR. FINK:  I would just ask that, Judge, if you are

3   going to overrule my objection just conditionally, and as long

4   as that foundation is laid.

5           THE COURT:  Yeah.  I think that I'm only going to

6   admit it on the condition that you tie it up to these other

7   photos.

8           MR. BILKOVIC:  I was going to tie it up.  That was

9   going to be my next series of questions.

10          THE COURT:  All right.  Then it's admitted.

11          (Government's Exhibit 116.27 received into evidence.)

12  BY MR. BILKOVIC:

13  Q.  Can you look at -- one of the things you found in this case

14  was -- let me ask you this:

15          During the investigation, did you determine whether or

16  not Mr. Didani was the user of one device or multiple devices?

17  A.  Multiple devices.

18  Q.  And were some of those devices encrypted?

19  A.  Yes, they were.

20  Q.  What type of devices were encrypted?

21  A.  Numerous different devices from android phones, BlackBerry

22  phones.

23  Q.  And did you also in the investigation in the video

24  determine whether Mr. Didani frequently wore jewelry?

25  A.  Yes.

1    Q.   What about watches?

2    A.   Yes.

3    Q.   Was there a watch that you observed in several photographs

4    and videos?

5    A.   Yes.  There's a very unique rainbow-faced gold Rolex.

6              THE COURT:  A very unique what?

7              THE WITNESS:  Rainbow colored faced gold Rolex.

8    BY MR. BILKOVIC:

9    Q.   Can you look at Government's proposed Exhibit 115.0.

10             THE COURT:  Before you go on, I have another question.

11   You said he was the user of multiple devices and some of them

12   were encrypted.  Was anything encrypted besides the cell

13   phones?

14             THE WITNESS:  The software platform on the device

15   created the --

16             THE COURT:  On what device?

17             THE WITNESS:  The actual phone would be encrypted.

18             THE COURT:  But the only things encrypted were the

19   phones?

20             THE WITNESS:  Yes.

21             THE COURT:  Okay.

22             MR. BILKOVIC:  May I proceed your Honor?

23             THE COURT:  No.  I'm sorry.

24             MR. BILKOVIC:  That's okay.

25             THE COURT:  He said numerous, and I want to know what

```
 1    you mean by that.  How many are you talking about?
 2            THE WITNESS:  Throughout our investigation, there was
 3    a few at the airport that were seized that were verified as
 4    encrypted devices.  There was photographs of the PGP secure
 5    phones that were encrypted devices.  The Sky ECC was also a
 6    device -- devices that were encrypted.
 7            THE COURT:  So we're talking five?
 8            THE WITNESS:  At least.
 9            THE COURT:  All right.  We're on 116 what?
10            MR. BILKOVIC:  115.0.
11            THE COURT:  Okay.
12    BY MR. BILKOVIC:
13    Q.  Do you recognize 115.0?
14    A.  Yes, I do.
15    Q.  And what is 115.0?
16    A.  This is a photograph located in Mr. Didani's iCloud.
17    Q.  And does that photograph depict several devices?
18    A.  Yes.  They're at least four cell phones laying on a table
19    it appears.
20    Q.  And on the photograph does one of the phones have a
21    screensaver that you can see?
22    A.  Yes.  There's what appears to be a white iPhone on the far
23    left depicting the same image of Mr. Didani and the female
24    jumping on the beach.
25    Q.  And the same photograph that you had looked at in
```

1    Government's proposed Exhibit 116.27?

2    A.   That's correct.

3    Q.   And is there any jewelry in the photograph?

4    A.   Yes.  There's also the rainbow colored faced gold Rolex

5    laying next to it.

6         MR. BILKOVIC:  Your Honor, at this time I would move

7    for admission into evidence of Government's proposed Exhibit

8    115.0.

9         THE COURT:  Any objection?

10        MR. FINK:  I have the same relevance objection and ask

11   that it be conditional.  I haven't heard why this picture

12   couldn't have been uploaded to the iCloud just from that phone.

13   So I would just ask that you do the same conditional admission,

14   Judge.

15        THE COURT:  Relative to 116.27?

16        MR. FINK:  Thank you for clarifying.  I should have

17   been more precise, yes.  That objection is relevant to 116.27.

18   That's correct.

19        THE COURT:  I'm going to do that.  Are you going to

20   tie it up more, Mr. Bilkovic?

21        MR. BILKOVIC:  Judge, I don't know that there's

22   anything more I can tie it up to.  Part of the reason that I'm

23   showing this is to show that this is Mr. Didani's iCloud and

24   his device, and what I'm doing is admitting or seeking to admit

25   photographs that prove that, photographs that the user takes

 1    that are in his iCloud in his phone, photographs --

 2              THE COURT:  You don't get to testify about the

 3    objection.

 4              MR. BILKOVIC:  Okay.  I believe --

 5              THE COURT:  So I'm going to conditionally admit it,

 6    and I'm going to let Mr. Fink cross-examine and then I'll rule

 7    on it.

 8              MR. BILKOVIC:  Okay.  All right.  Can I publish it to

 9    the jury then?

10              THE COURT:  No.  You can publish it when we come back

11    to it; okay?

12              MR. BILKOVIC:  Okay.

13              MR. FINK:  Thank you, your Honor.

14              MR. BILKOVIC:  I want to go to -- we talked about

15    Peregrine 360 yesterday.  We talked a little bit about it

16    yesterday, and there was the one exhibit, if we could bring it

17    back up, 112.4.

18              THE COURT:  112.4 is already admitted?

19              MR. BILKOVIC:  Correct.

20              MR. FINK:  Yes, your Honor.

21    BY MR. BILKOVIC:

22    Q.  Do you remember talking about this yesterday?

23    A.  Yes, I do.

24    Q.  Was this the only exhibit that you located in either the

25    iPhone or the iCloud belonging to Mr. Didani relating to

 1    Peregrine 360?

 2    A.   No, it is not.

 3    Q.   Can you look at Government's proposed Exhibit --

 4          THE COURT:  I'm sorry.  Tell me that question again.

 5    BY MR. BILKOVIC:

 6    Q.   Was this the only item that you found in either

 7    Mr. Didani's iCloud account or in his download of his cell

 8    phone, the rose colored -- the rose iPhone, that referenced

 9    Peregrine 360?

10    A.   This is not the only exhibit.

11          THE COURT:  Okay.  All right.  Thank you.

12    BY MR. BILKOVIC:

13    Q.   Can you look at Government's proposed Exhibit 115.9.

14          Actually, before you do that, I want to go back.  You

15    don't have to publish it, but if we could just go back.  I have

16    one question to ask you about 112.4 that I forgot to ask you.

17    A.   112.4?

18    Q.   Yes, the one that we just looked at.  Do you have that

19    there?

20          Actually, I guess we  --

21          MR. BILKOVIC:  Put it back up on the board.  It will

22    be easier.  Thank you.

23    BY MR. BILKOVIC:

24    Q.   Can you look at it up here?

25    A.   Yes.

1    Q.   What does the top line indicate?  Under the inbox and above

2    the "From Dale Johnson" what does that indicate?

3    A.   It states it's an invoice for engineering services.

4    Q.   Okay.  Now, can you take a look at Government's proposed

5    Exhibit 115.9.

6              MR. FINK:  What was that, Mark?

7              THE COURT:  115.9.

8              MR. BILKOVIC:  115.9.

9              MR. FINK:  Thank you.

10   BY MR. BILKOVIC:

11   Q.   Do you recognize that?

12   A.   Yes.

13   Q.   And where was this located?

14   A.   That was also located in Mr. Didani's iCloud.

15   Q.   And was is this that we're looking at?

16   A.   This appears to be a screenshot of an E-mail inbox showing

17   several E-mail titles.

18   Q.   And the initials of Mr. Didani's first and last name are

19   what?

20   A.   YD.

21   Q.   And do those appear in this screenshot?

22   A.   Yes, they do.

23   Q.   Is there also a E-mail headline invoice for engineering

24   services from Dale Johnson?

25   A.   Yes, there is.

1          MR. BILKOVIC:  Your Honor, at this time I would move

2     for admission into evidence of Government's proposed Exhibit

3     115.9.

4          THE COURT:  Any objection?

5          MR. FINK:  Can I have void dire with one question on

6      it?

7          THE COURT:  Relative to 115.9?

8          MR. FINK:  Yes.

9          THE COURT:  Yes.

10                         VOIR DIRE EXAMINATION

11     BY MR. FINK:

12     Q.  Detective Leach, the top left corner of that exhibit, do

13     you see a service provider?

14     A.  Yes, I do.

15     Q.  What is the service provider?

16     A.  Vodafone.

17     Q.  And followed by what two letters?

18     A.  AL.

19     Q.  Do you know if that is an American service provider?

20     A.  That stands for Albania.

21     Q.  So likely the service at the time that picture was taken

22     was from Albania?

23     A.  The phone that the screenshot is taken from most likely was

24     on a phone, yes.

25     Q.  From Albanian?

```
 1   A.   With the Vodafone, yes.

 2   Q.   Present in Albania at the time it was taken?

 3            THE COURT:  Wait a minute.  I didn't hear your answer.

 4    Probably what?

 5            THE WITNESS:  I can't verify that he was in Albania at

 6    that time, but the Vodafone service is originated from Albania

 7    on this device.

 8            MR. FINK:  Thank you, Detective Leach.

 9            No objection.

10            THE COURT:  Very well.  115.9 is admitted.

11            (Government's Exhibit 115.9 received into evidence.)

12            MR. BILKOVIC:  And may I publish it to the jury?

13            THE COURT:  Yes.

14            MR. BILKOVIC:  And can we zoom in on the top half.

15                    DIRECT EXAMINATION (Continued)

16   BY MR. BILKOVIC:

17   Q.   And you indicated that there was an E-mail with invoice for

18   engineering services?

19   A.   Correct.

20   Q.   Do you see several headings there?

21   A.   Yes, I do.

22   Q.   Which one?  It appears there's five from the top.  Which

23   one is it?

24   A.   The second heading in the gray box down states, "Invoice

25   for engineering services."
```

1    Q.  And who is it from?

2    A.  Dale Johnson.

3    Q.  And is there a date?  I know the year is not there, but is

4    there a date with a month and a date?

5    A.  Yes.  Abbreviation for April followed by 23.

6    Q.  Thank you.

7           MR. BILKOVIC:  We can take that down.

8    BY MR. BILKOVIC:

9    Q.  Can you turn to Government's proposed Exhibit 115.7, and

10   tell me if you recognize that.

11   A.  Yes, I do.

12   Q.  And what is that?

13   A.  Another screenshot located in Mr. Didani's iCloud.

14   Q.  And generally what does the screenshot pertain to?

15   A.  Money transfer utilizing MoneyGram.

16   Q.  Money transfer to who?

17   A.  Peregrine 360.

18   Q.  And do you see in there -- is there a logo with MoneyGram

19   with a red ball?

20   A.  Yes, there is.

21   Q.  Do you see above that a date?

22   A.  I do.

23   Q.  And what is the date?

24   A.  April 13, 2017.

25          MR. BILKOVIC:  Your Honor, at this time I would move

1    for admission into evidence of Government's proposed Exhibit

2    115.7.

3              THE COURT:  Any objection?

4              MR. FINK:  No objection.

5              THE COURT:  Very well, it's admitted.

6              (Government's Exhibit 115.7 received into evidence.)

7              MR. BILKOVIC:  May I publish it to the jury?

8              THE COURT:  Yes, you may.

9              MR. BILKOVIC:  Can we zoom in right there going down

10   until -- right there, not too much.  Go back up a little bit.

11   Right there.

12   BY MR. BILKOVIC:

13   Q.  And just to acclimate the jury to where the date is, do you

14   see the "MoneyGram" on the left-hand side with the red ball and

15   the arrow?

16   A.  Yes, I do.

17   Q.  Where is the date in relation to that?

18   A.  Directly above the red ball.

19             MR. BILKOVIC:  And can we go back out.

20   BY MR. BILKOVIC:

21   Q.  What is the top -- the very top heading at the top of the

22   screen under the time of 1:23?

23   A.  It states, "Transfer money to a bank account."

24   Q.  Is there a word next to "Transfer," on the left-hand side

25   of "Transfer"?

1    A.   On the main heading?  Yes.

2    Q.   What is that?

3    A.   "Done."

4         MR. BILKOVIC:  And could we go now to the middle

5    portion right there going down.

6    BY MR. BILKOVIC:

7    Q.   And do you see the reference to a bank name?

8    A.   BMO.

9    Q.   Do you have the mouse up there?  Don't click, but scroll.

10   A.   Sure.

11   Q.   And then do you see the name on the account?

12   A.   Peregrine 360, Incorporated.

13   Q.   And is that also detailed down at the bottom under the full

14   account details?

15   A.   Yes, it is.

16   Q.   Look in your book and see if you have Government's proposed

17   Exhibit 115.31.

18   A.   Yes, I do.

19        MR. BILKOVIC:  Your Honor, may I have a moment?

20        (Briefly off the record.)

21   BY MR. BILKOVIC:

22   Q.   And what is that?

23   A.   This is a photograph taken with another device of a

24   BlackBerry encrypted device.

25   Q.   And is that the same type of mechanism or technique that

1    you observed in the BlackBerry photos that we talked about

2    yesterday that discussed the torpedo and things of that nature?

3    A.   Yes, it is.

4    Q.   In this one is there a reflection in the background of the

5    person taking the photograph?

6    A.   Yes, there is.

7    Q.   And do you recognize the person?

8    A.   It appears to be Mr. Didani.

9    Q.   And what type of phone does it appear that he's using to

10   take the photograph?

11   A.   It appears he's holding an iPhone.

12   Q.   If you could look at 115.31-A, do you recognize that?

13   A.   Yes, I do.

14   Q.   And what is that?

15   A.   This is the same photograph, but with the image number and

16   metadata.

17   Q.   And does the metadata show when the photograph was

18   captured?

19   A.   Yes, it does.

20   Q.   Does it show what type of device was used to capture the

21   photograph?

22   A.   Yes, it does.

23           MR. BILKOVIC:  Your Honor, at this time I would move

24   for admission into evidence of Government's proposed Exhibit

25   115.31 as well as 115.31-A.

1          THE COURT:  Any objection?

2          MR. FINK:  Your Honor, I don't think -- there's no

3     indication of who sent these, who received these and whether

4     they're involved in any sort of conspiracy.  So first I would

5     say the lack of foundation and because of that it's hearsay.

6          MR. BILKOVIC:  Judge, my response is that's exactly

7     the point.  Mr. Didani took this photograph.  He took a

8     photograph of a BlackBerry text message that was sent to him

9     that talks about Holland and trucks, and it ties into the other

10    text messages that the Court is going to rule on later.  But in

11    this photograph we know Mr. Didani took the photograph because

12    you can see his photograph in the image.

13         THE COURT:  Do you want to respond to that?

14         MR. FINK:  Your Honor, the same objection, because we

15    don't know who wrote it, we don't know if it's tied to this

16    conspiracy.  I don't think the foundation has been laid for

17    that to be able to meet the hearsay exception, because the fact

18    of having it doesn't necessarily have relevance unless we know

19    that it's tied in some way.  And then they're also going to use

20    it for the truth of the matter, which is that this is somehow

21    related to those -- to the conspiracy at issue here.

22         MR. BILKOVIC:  May I respond briefly?

23         THE COURT:  Yes.

24         MR. BILKOVIC:  Your Honor, we don't have to show who

25    sent it.  We don't have to show unnamed co-conspirators or

1    unknown co-conspirators.  What we do know, and I can ask

2    additional questions, is that this is a Sky phone.  This

3    message is set to self-destruct.  And, as Mr. Didani did in

4    other photographs, discussing the torpedo and discussing

5    shipments and picking up items from shore, he took a photograph

6    of this to memorialize it so he would have it after it

7    self-destructed.

8           I believe there's clearly a link there that makes this

9    relevant when you look at all the other evidence in this case.

10   Mr. Fink wants to make a point on cross-examination, he can

11   certainly do that, but this photograph is relevant.

12          THE COURT:  I do think it is relevant, and I do think

13   there's a sufficient foundation laid for the jury to make

14   inferences from it.  And you may take up those other questions

15   on cross-examination, and your objection is overruled.

16          MR. FINK:  Thank you, your Honor.

17          THE COURT:  You're welcome.

18          MR. BILKOVIC:  Can we publish 115.31?

19          THE COURT:  Yes.

20          MR. BILKOVIC:  And can we just zoom in on the top

21   half, not the BlackBerry numbers.

22          THE COURT:  This is 115.31.

23          MR. BILKOVIC:  31, yes.

24          Can you go down further.  Okay.  Right there.

25

1   BY MR. BILKOVIC:

2   Q.   Do you see the logo in the bottom right-hand corner?

3   A.   Yes, I do.

4   Q.   And what is that?

5   A.   That is the Sky logo.

6   Q.   And do you see the bottom three lines under the text

7   message at 4:31 p.m. starting with --

8   A.   Yes, I do.

9   Q.   -- "Or via"?

10  A.   Yes.

11  Q.   Could you read those to the jury.

12  A.   "Or via Holland, then you put on truck and go by road."

13  Q.   Was there other discussions that you saw throughout

14  Mr. Didani's iCloud and phone discussing Holland and discussing

15  distributing cocaine in Holland?

16  A.   Yes, there was.

17          MR. BILKOVIC:  Can we go to the next photograph --

18  115.31-A.  And can we go to the bottom where it indicates

19  "Metadata."

20          THE COURT:  We're looking at 115 --

21          MR. BILKOVIC:  31-A.

22  BY MR. BILKOVIC:

23  Q.   And is there a capture time of this image?

24  A.   Yes, there is.

25  Q.   And the capture time is when?

```
 1    A.    September 29, 2016 at 4:39 p.m.
 2              THE COURT:  Year '16?
 3              THE WITNESS:  Correct.
 4              THE COURT:  At what time?
 5              THE WITNESS:  4:39 p.m.
 6              MR. BILKOVIC:  We can take it down, please.
 7    BY MR. BILKOVIC:
 8    Q.    The BlackBerry images that we talked about yesterday that
 9    you said were taken -- the photographs were taken, were any of
10    those also taken in September of 2016?
11    A.    Yes.
12    Q.    Did any of those photographs where they show the people
13    talking, were any of the PINs in those photographs consistent
14    throughout several of the photographs?
15    A.    Yes.
16              THE COURT:  Were any of the what?
17    BY MR. BILKOVIC:
18    Q.    The PINs.  I'm sorry.  The identification number of the
19    person speaking.
20    A.    Yes.
21    Q.    Is it fair to say that in some of those the person was not
22    identified by name or even a nickname, but a number?
23    A.    A specific PIN number, yes.
24    Q.    Are you aware of whether or not Sky or other types of
25    encrypted applications use basically PIN numbers,
```

 1   identification numbers, that people can use instead of their

 2   names?

 3   A.   Yes, they do.

 4   Q.   Was one of the numbers, I guess misnomer number and/or

 5   letter, was one of them 6F35C7?

 6   A.   Yes.

 7   Q.   Can you look at Government's proposed Exhibit 115.32, and

 8   do you recognize that?

 9   A.   Yes, I do.

10   Q.   And what is that?

11   A.   This is an extraction of a WhatsApp message thread out of

12   Mr. Didani's iCloud.

13           THE COURT:  Tell me that again.

14           THE WITNESS:  It's a WhatsApp communication platform

15    extraction taken from Mr. Didani's iCloud.

16   BY MR. BILKOVIC:

17   Q.   And does it basically contain chat messages between the

18   participants?

19   A.   Yes, it does.

20   Q.   And does it identify at the top who the participants are?

21   A.   Yes, it does.

22   Q.   Is one of them an individual by the name of Enri Peshkut?

23   First name E-N-R-I, last name P-E-S-H-K-U-T.

24   A.   Yes.

25           THE COURT:  Spell it again, P ...

1          MR. BILKOVIC:  First name is E-N-R-I, last name is

2    P-E-S-H-K-U-T.

3    BY MR. BILKOVIC:

4    Q.   Is that one of the names in the chat?

5    A.   Yes, it is.

6    Q.   And who is the other individual involved in the chat?

7    A.   Mr. Didani.

8    Q.   On Page 3 of this chat does Mr. Didani send something?

9    A.   Yes, he does.

10   Q.   And what is it that he sends?

11   A.   He sends that Sky PIN number.

12   Q.   And would that be the 6F35C7?

13   A.   That's correct.

14   Q.   Is there a date on that?

15   A.   There is.

16   Q.   And what is the date?

17   A.   May 22, 2016.

18          MR. BILKOVIC:  Your Honor, at this time I would move

19   for admission into evidence of Government's proposed Exhibit

20   115.32.

21          THE COURT:  Any objection?

22          It's 115.32, Page 3.

23          MR. FINK:  No objection.

24          THE COURT:  Very well 115.32 is admitted.

25          (Government's Exhibit 115.32 received into evidence.)

1        MR. BILKOVIC:  And may I publish that to the jury?

2        THE COURT:  You may.

3        MR. BILKOVIC:  And can you just go to the 115.32-3 --

4   or Page 3.  And can we go to the green box in the middle.

5   BY MR. BILKOVIC:

6   Q.  Is that the message that Mr. Didani sent?

7   A.  Yes, it is.

8   Q.  And can you use the mouse and just scroll to where the date

9   is that this was sent?

10  A.  The date it was delivered is May 22, 2016.

11  Q.  And where is the content of the message?

12  A.  The content is right here, the entire body.

13  Q.  Where we see the 6F35C7?

14  A.  Correct.

15  Q.  And is that the only thing that is there?

16  A.  That is all.

17  Q.  Now, the chat itself is in Albanian; is that correct?

18  A.  Yes, it is.

19  Q.  Do you know who Enri Peshkut is?

20  A.  I do not.

21  Q.  But, in any event, Mr. Didani sent that PIN number?

22  A.  Yes, he did.

23        MR. BILKOVIC:  May I have one moment, your Honor?

24        THE COURT:  Yes.

25        (Briefly off the record.)

| | |
|---|---|
| 1 | MR. BILKOVIC:  May I approach the witness, your Honor? |
| 2 | THE COURT:  Yes. |
| 3 | BY MR. BILKOVIC: |
| 4 | Q.  I'm handing you what has been marked as previously admitted |
| 5 | Government's Exhibit 6.  Do you recognize those? |
| 6 | A.  Yes, I do. |
| 7 | Q.  And what are they again? |
| 8 | A.  These are two handwritten ledgers received in Pleasanton, |
| 9 | California on April 9, 2019 from the home of Belinda Tibbitts. |
| 10 | THE COURT:  Tell me the date again? |
| 11 | THE WITNESS:  April 9, 2019. |
| 12 | THE COURT:  And what exhibit number again, Counsel? |
| 13 | MR. BILKOVIC:  Exhibit 6. |
| 14 | BY MR. BILKOVIC: |
| 15 | Q.  Can you turn to -- did you find anything in that notebook |
| 16 | that attracted your attention? |
| 17 | A.  Yes, I did. |
| 18 | Q.  Did you find anything in that notebook that related to |
| 19 | Peregrine 360? |
| 20 | A.  Yes, I did. |
| 21 | Q.  Could you turn to Page 45 of the black book. |
| 22 | A.  Black book? |
| 23 | Q.  Yes. |
| 24 | THE COURT:  Page what again? |
| 25 | MR. BILKOVIC:  45. |

1          THE WITNESS:  Yes.

2    BY MR. BILKOVIC:

3    Q.   Are the pages of the book numbered?

4    A.   They are.

5    Q.   And can you describe what is on Page 45 of that book?

6          MR. BILKOVIC:  Your Honor, I don't have them in the

7    trial directory.  I guess I can do that later.  But I'm just

8    going to have the witness go through and describe some of the

9    pages of the exhibits that have already been admitted.

10          THE COURT:  Okay.

11          THE WITNESS:  This appears to be a rough sketch of the

12    bottom of a boat with a --

13          MR. FINK:  Your Honor, I object to Detective Leach

14    interpreting Mr. Tibbitts' notebook as if he has any special

15    training that we don't to look at it and decide what it is.

16    Describing what his opinion is simply isn't relevant.  The book

17    is in evidence.  And Mr. Bilkovic can use this in argument, but

18    the special expertise as to the mind of Marty Tibbitts in

19    interpreting this for the jury I think is inappropriate.

20          MR. BILKOVIC:  Judge, maybe what I'll do this way.  I

21    might need a minute, but I believe there's an Elmo here.  I

22    could actually publish these to the jury using the Elmo if the

23    Court would give me two minutes.

24          THE COURT:  Maybe you want to ask a more broad

25    question like what is it, it's a rough sketch, and not have him

1    describe what his impression of it is.

2              MR. BILKOVIC:  That's fair.

3    BY MR. BILKOVIC:

4    Q.  What is it?  Without giving your impression of what it is,

5    what do you see there?

6    A.  There's a rough sketch that was drawn, and then there's

7    also questions written down on the page surrounding the sketch.

8    Q.  Okay.  What's one of the questions?

9    A.  "Inspect ship first to look for right attach spot?"

10   Q.  Okay.  Is there a question down at the bottom?

11   A.  "Send one in case this one fails, should I put it in the

12   wake?"

13   Q.  Over on the right-hand side is there additional writing?

14   A.  Yes, there is.

15   Q.  Can you just kind of read that.

16   A.  "Antenna rises at intervals or stay still.  Put spikes so

17   no birds."

18   Q.  And is there any writing down on the bottom right-hand

19   corner?

20   A.  Yes.  "GPS, Wi-Fi, cell, radio, FM," question mark in

21   brackets, followed by "Why not a sat phone," question mark.

22   Q.  Why not a what?

23   A.  Sat phone.

24   Q.  "Why not a sat phone?"

25   A.  Yes.

```
 1                 THE COURT:  S-E-T?

 2                 THE WITNESS:  S-A-T, your Honor.

 3                 THE COURT:  Okay.

 4    BY MR. BILKOVIC:

 5    Q.   Can you go to Page 46.

 6                 THE COURT:  Was that Page 45?

 7                 THE WITNESS:  Yes, it was.

 8                 THE COURT:  Okay.

 9    BY MR. BILKOVIC:

10    Q.   Is there additional writing on Page 46?

11    A.   Yes, there is.

12    Q.   Can you see any writing or sentence that starts with the

13    word "Sink"?

14    A.   I do.

15    Q.   And can you read that to the jury.

16    A.   "Sink it at pickup and build new in B," as in the capital

17    letter B, "or use $ transfer if can get $."

18                 THE COURT:  Sink, S-I-N-K?

19                 THE WITNESS:  Yes.

20                 THE COURT:  Okay.

21    BY MR. BILKOVIC:

22    Q.   If you can go to 47.

23    A.   Yes.

24    Q.   And on the left-hand side is there additional references to

25    GPS?
```

1   A.   Yes, there are.

2   Q.   And what does that say?

3   A.   The heading states, "Signals sat," like previously.  And

4   then underneath that it lists, "GPS sat link, Wi-Fi,

5   location/time, disconnect, dive surface."

6   Q.   That's fine.  And could you go to Page 49.  And is there

7   writing on that page?

8   A.   Yes, there is.

9   Q.   And what does that writing say?

10  A.   The top says, "20-25 feet long."  Under that it says, "19.5

11  X4 X1 feet."  Under that it says, "1,040 capacity."

12  Q.   Is there additional writing on that?

13  A.   There is.

14  Q.   What does that say?

15  A.   There's a question that states, "How much drag is caused by

16  the props?"

17  Q.   Is there additional writing?

18  A.   Yes.  It states, "Should I have two rows of magnets or

19  one?"  Followed by, "Two rows allows overlapping strength ..."

20  Q.   Do you see anything in the writing about a scrubber?

21  A.   I do not.

22  Q.   Have you gone through the entire book?

23  A.   Yes, I have.

24  Q.   And is there anything in the entire book about a scrubber?

25  A.   Not that I observed.

1    Q.   Okay.  Can you put that down.

2           MR. BILKOVIC:  Your Honor, may I retrieve those

3    exhibits from Detective Leach?

4           THE COURT:  Yes, you may.

5    BY MR. BILKOVIC:

6    Q.   Can you turn to Government's proposed Exhibit 65.A.

7           THE COURT:  65 ...

8    BY MR. BILKOVIC:

9    Q.   I'm sorry.  65.0.

10   A.   Yes.

11   Q.   Do you recognize that?

12   A.   Yes, I do.

13          MR. BILKOVIC:  Your Honor, I think I'm going to -- in

14   light of the Court's waiting on the other thing, I think I'm

15   going to hold off on this and I'm going to go to a separate

16   section.  If I can withdraw that question and just move on to

17   another one.

18          THE COURT:  You can.

19   BY MR. BILKOVIC:

20   Q.   I'm sorry, Detective Leach, for jumping around and bouncing

21   out of order.  We're going to talk to you about the arrest of

22   Don Larson in September of 2019.

23          THE COURT:  You're going to ask about what?

24          MR. BILKOVIC:  The arrest of Donald Larson in

25   September of 2019.

```
 1                THE WITNESS:  Yes.
 2   BY MR. BILKOVIC:
 3   Q.  And I'm not going to go through all of the interview, but
 4   did there come a point in time where you interviewed him?
 5   A.  Yes.
 6   Q.  Is that something that you wanted to do?
 7   A.  Yes.
 8   Q.  Did you have a goal of going into that interview, or did
 9   you have goals going into that interview as to what you hoped
10   to accomplish?
11   A.  Yes, we do.
12   Q.  And what was it you were hoping to accomplish?
13   A.  We had multiple goals set out.  One was to establish
14   historical elements, corroborate historical elements in the
15   investigation that we had already discovered, identify
16   Mr. Larson's current role in the organization, his potential
17   communication with other members of the organization and to
18   attempt to get him to cooperate with the Government to help
19   identify other integral parts of the organization.
20   Q.  And where did you view as to where Mr. Larson fit in this?
21   A.  He was lower on the organizational pyramid.
22   Q.  And during the interview with him was it hostile at all?
23   A.  No.
24   Q.  Was it cordial?
25   A.  Yes.
```

1   Q.   Were there times that you were joking?

2   A.   Yes.

3   Q.   Were there times that Mr. Larson was joking?

4   A.   Yes.

5   Q.   Were there times that other agents were joking?

6   A.   Yes.

7   Q.   Was Mr. Larson handcuffed during the interview?

8   A.   No, he was not.

9   Q.   Now, do you recall during the interview a discussion with

10  Mr. Larson about checks that he and an individual, last name of

11  Tocco, had cashed?

12  A.   Yes.

13  Q.   And do you recall the discussion about back taxes?

14  A.   I do.

15  Q.   Who first brought up back taxes?

16  A.   Mr. Larson brought it up.

17  Q.   And then do you recall telling him technically you owe like

18  $270,000?

19  A.   Yes.  He stated Mr. Tocco was worried about having to pay

20  back taxes on having to cash the checks.  And I basically

21  stated, well, if that's the case you owe a large amount of back

22  taxes yourself.

23  Q.   And did you then say, "I'm just spit-balling you, I don't

24  work for the IRS, he does"?

25  A.   Yes.

1    Q.   Were you joking when you said that?

2    A.   Yes, I was.

3            THE COURT:  When you said what?

4            THE WITNESS:  I think I said, well, technically you

5    owe $270,000 in back taxes then off of the amount of money that

6    he had cashed from Mr. Tibbitts.

7            THE COURT:  And that is what you were joking about?

8            THE WITNESS:  Yes.

9    BY MR. BILKOVIC:

10   Q.   At the time you said that did you know that Mr. Larson owed

11   any back taxes?

12   A.   No, I did not.

13   Q.   Did Agent Newsome tell you that he owed any back taxes?

14   A.   No.

15   Q.   Was there any type of promise to him during that interview

16   or later that would forgive any back taxes he owed if he were

17   to talk to you?

18   A.   No.

19   Q.   Was there any further discussion after that small section

20   about the taxes in that interview with Mr. Larson?

21   A.   There was not.

22   Q.   Or in any other interviews with Mr. Larson?

23   A.   No.

24   Q.   Now, you arrested him on a criminal complaint?

25   A.   That's correct.

1  Q.  And do you know if that criminal complaint was sealed or

2  unsealed?

3  A.  It was sealed.

4  Q.  Can you explain to the jury what that means to have

5  something sealed?

6  A.  So when an order is filed under seal it's kept private and

7  out of public eye.  It's not available for the Freedom of

8  Information Act or any media to obtain it.

9  Q.  Are you aware of whether there's a computer program where

10  the general public can gain access to any type of federal

11  documents out of this District Court that are not under seal?

12  A.  Correct.

13  Q.  And so if a document is sealed can the general public get

14  ahold of that?

15  A.  No, they cannot.

16  Q.  Was there a reason that the document, the criminal

17  complaint, when you arrested Mr. Larson was sealed?

18  A.  Yes.

19       MR. FINK:  Objection, your Honor.  Detective Leach

20  doesn't make those decisions on sealing and not.  I think he's

21  trying to get through -- a legal strategy through a witness

22  that has nothing to do with that process.

23       MR. BILKOVIC:  I'll rephrase the question.

24       THE COURT:  Okay.  Because that's sustained.

25       MR. BILKOVIC:  Okay.  I'll rephrase the question.

1    BY MR. BILKOVIC:

2    Q.   When you are trying to get somebody to cooperate, are there

3    pitfalls in that as to information that could be bad for that

4    person?

5    A.   Yes.

6    Q.   Like what?

7    A.   If we need somebody to cooperate, if word gets out that

8    they are cooperating, one, that could shut down your

9    investigation due to other members identifying that they're

10   involved in cooperation with the Government.  It also can bode,

11   you know, potential harm to that cooperator because of the

12   organization finding out that they are cooperating.

13   Q.   Does having a complaint sealed reduce somewhat that risk?

14   A.   Yes, it does.

15          MR. FINK:  Objection, your Honor.  Can we approach

16   real quick?

17          THE COURT:  Sure.

18          (At 10:31 a.m., sidebar on the record, out of the

19          hearing of the jury, as follows:)

20          MR. FINK:  Did I hear correctly that he suggested

21   physical harm to the individual, possibly some harm?  Is that

22   what he said?

23          MR. BILKOVIC:  Not to Mr. Larson, in general.  I'm

24   asking him in general, investigations in general.

25          MR. FINK:  I'm going to object to the suggestion of

 1  physical harm, because there's none of that in the evidence

 2  here.

 3          THE COURT:  It was a general question.  It wasn't

 4  related to Mr. Larson, and you can clarify that.

 5          MR. FINK:  Okay.  Thank you, Judge.  I wanted to make

 6  sure that was clear.  Thanks.

 7          (End of sidebar.)

 8  BY MR. BILKOVIC:

 9  Q.  When you mentioned, you know, the potential of harm, you're

10  talking in general investigations; correct?

11  A.  Yes, in general.

12  Q.  There's no evidence in this case that you uncovered that

13  Mr. Didani or anybody related to Mr. Didani had threatened

14  Mr. Larson --

15  A.  No.

16  Q.  Is that fair to say?

17  A.  Yes.

18  Q.  But is that a general concern you have when you are

19  attempting to work with a cooperator?

20  A.  Yes.  Our concern is always for the safety of the

21  cooperator.

22  Q.  So in your experience is it fairly common then to have

23  documents related to cooperators sealed so they're not

24  available to the general public, or attempt to have them sealed

25  so they're not available to the general public?

1    A.   Yes.

2    Q.   Now, in this case, a few days after Mr. Larson met with the

3    Government, are you aware of what happened to the complaint?

4    A.   Yes.

5    Q.   What was done with the complaint?

6    A.   The complaint was dismissed.

7    Q.   Was it dismissed with or without prejudice?

8    A.   Without prejudice.

9    Q.   Do you know the difference between with or without

10   prejudice?

11   A.   Yes.

12   Q.   What is without prejudice?

13   A.   Without prejudice means that we may again obtain that

14   complaint for his arrest.

15   Q.   And with prejudice means what?

16   A.   That it's just dismissed.

17   Q.   And you can't re-raise it?

18   A.   Correct.

19   Q.   So in this case when it was dismissed without prejudice did

20   that leave open the door to potentially recharging Mr. Larson?

21   A.   Yes, it did.

22   Q.   Now, if the complaint had not been dismissed, what would

23   have had to have been done with Mr. Larson?

24   A.   The complaint would have went through.  It would have had

25   to have been unsealed to go through the --

1      MR. FINK:  Objection, Judge.  It's talking about legal

2   conclusions and the process.  I don't know foundation of this

3   witness to know the process, because certainly you can keep a

4   complaint sealed.

5      MR. BILKOVIC:  Judge, I mean I can establish a

6   foundation, but I think that this is something that's basically

7   common knowledge from anybody in law enforcement, but I can

8   establish a foundation if the Court wants me to.

9      MR. FINK:  Well, the testimony was it can be unsealed.

10  It can also be sealed for lengthy periods of time.  So I just

11  don't -- if we're going to talk about his expertise, there

12  should be a foundation as to what it is and also, you know,

13  eliciting testimony that's simply not true.

14      THE COURT:  Well, you can lay a foundation, but I

15  think probably you all could resolve this in a different way

16  also, but you can lay a foundation if you like.

17      MR. BILKOVIC:  Then maybe we will try and resolve this

18  in a different way on the break, Judge.  Does that make sense?

19      THE COURT:  Yes.

20  BY MR. BILKOVIC:

21  Q.   Okay.  In any event, was Mr. Larson brought to court?

22  A.   No, he was not.

23  Q.   If Mr. Larson was brought to court, is -- the courtroom

24  here, are proceedings open to the public?

25  A.   Yes, they are.

1   Q.   Can anybody attend them?

2   A.   Yes.

3   Q.   And did you make a determination as to whether you wanted

4   to do that?

5   A.   Yes.

6   Q.   And what was that determination?

7   A.   That we wanted Mr. Larson to be able to cooperate as part

8   of the organization without it becoming knowledge, possible

9   knowledge, leaked out to the public.

10  Q.   And did that reasoning have anything to do with wanting the

11  complaint dismissed?

12  A.   Yes, it was.

13  Q.   Now, you know an individual by the name of David Pedrini;

14  correct?

15  A.   Yes.

16  Q.   And who is David Pedrini?

17  A.   Mr. Pedrini is a special agent with the Drug Enforcement

18  Administration.

19  Q.   And have you had contact with him in this case?

20  A.   Yes, I have.

21  Q.   Did you know him prior to this investigation?

22  A.   No, I did not.

23  Q.   In November of 2019, did you receive iCloud account data

24  for Mr. Didani's iCloud account?

25  A.   Yes, I did.

1   Q.   What did you do once you received that data?

2   A.   As we did with all the iCloud data received, I started

3   reviewing it piece by piece trying to identify shipments or

4   other members of the organization.

5   Q.   And did you come across anything that attracted your

6   attention?

7   A.   Yes.

8   Q.   And can you go into that briefly?

9   A.   I came across several videos and photographs, appeared to

10  be what's called a farm that had rectangular-shaped

11  kilogram-sized quantities of cocaine packages out in what

12  appeared to be a jungle basically in a covered open-aired

13  warehouse, if you will.  And it showed multiple packages being

14  videotaped and then pictures of those kilos being placed into

15  boxes, cardboard boxes, and then covered with bananas.

16  Q.   Did you notice anything else?

17  A.   Yes.  I noticed the company name on the boxes.  And we also

18  noticed the boxes being loaded onto a truck in several of the

19  photographs as well by the pallet.

20  Q.   And what was done after that?

21  A.   This information was -- in addition to that, there was

22  E-mail messages, photographs of E-mail messages between two

23  companies, one of the companies being the same company as on

24  the box of bananas that were being packaged with the cocaine.

25  Q.   Do you know what the name of the company was?

1   A.   Bioexpor.

2   Q.   Bioexpor?

3   A.   Bioexpor, E-X-P-O-R.

4   Q.   And did you see any of these items put into a container, a

5   shipping container?

6   A.   Yes.

7   Q.   Do you recall the shipping container number?  Do you know

8   what it starts with?  If not, would your report maybe refresh

9   your recollection?

10  A.   My report would definitely refresh my memory.

11  Q.   Do you have your report handy or do you need me to grab it?

12  A.   It's in the other room.

13           MR. BILKOVIC:  Your Honor, can I have a minute to --

14           THE COURT:  Yes.  But is the question did he see it

15   being loaded onto a shipping container?

16           MR. BILKOVIC:  Yes.

17           THE COURT:  And your answer was what?

18           THE WITNESS:  Yes.  We were able to identify the

19   container number in the photos.

20           THE COURT:  Okay.

21           THE WITNESS:  I can't specifically remember the

22   container number by memory.

23           THE COURT:  You saw it on the iCloud information?

24           THE WITNESS:  Yes, ma'am.

25

1    BY MR. BILKOVIC:

2    Q.   You actually saw it on a photograph or on a video the

3    container itself; correct?

4    A.   Yes.

5    Q.   And in that image or video was there a container number?

6    A.   Yes, there was.

7    Q.   We can get back to the specific container number later, but

8    what did you do with that information?

9    A.   I took that information and passed it to Special Agent

10   Pedrini who was stationed in The Hague, Netherlands country at

11   that time.

12   Q.   Do you recall when it was approximately when you did that?

13   A.   In November of 2019.

14   Q.   And did you receive any information back from Agent

15   Pedrini?

16   A.   Yes.  Mr. Pedrini ran the intelligence by his counterparts

17   in The Hague, and they identified that the information that was

18   presented to him matched that of a previous seizure that had

19   taken place in August of 2019 in Rotterdam.

20   Q.   And do you recall the name of the ship?

21   A.   Anisha R.

22   Q.   Anisha R?

23   A.   Yes.

24   Q.   And do you recall approximately what was recovered?

25   A.   Approximately 752 kilograms of cocaine.

1   Q.   And did you ultimately review law enforcement photographs

2   from the Netherlands with respect to that seizure?

3   A.   Yes.

4   Q.   The items that you saw, the cocaine packaging, was that the

5   same as the items that you saw when you had gone through

6   Mr. Didani's iCloud account information?

7   A.   Yes.  The exterior boxes of the bananas were identical,

8   along with the kilo insignia, the colors of the packaging and

9   the insignias on top of the kilogram quantity packages.

10  Q.   And did any of the images show the container number?

11  A.   Yes.

12  Q.   And was that the same container number that you had seen or

13  a different container number?

14  A.   Same container number.

15  Q.   During your investigation, did you uncover any evidence

16  that Mr. Didani, through either the iCloud or his cell phone,

17  discuss that seizure with anybody.

18  A.   Yes, I had.

19  Q.   Can you look at Government's proposed Exhibit 65.0.

20  A.   I don't appear to have 65.0 in my binder.

21          MR. BILKOVIC:  May I approach, your Honor?

22          THE COURT:  Yes, you may.

23  BY MR. BILKOVIC:

24  Q.   Do you recognize that?

25  A.   Yes, I do.

1    Q.   And what is that?

2    A.   This is a WhatsApp message thread extract from Mr. Didani's

3    iPhone that was seized March 31st of 2021.

4    Q.   And do you know who that conversation is between?

5    A.   It is between Mr. Didani and an individual listed as Toni

6    Chicago, which was identified as Fatjon Bajrami.

7              THE COURT:  Which was identified as what?

8              THE WITNESS:  Fatjon Bajrami.

9              MR. BILKOVIC:  May I have one moment, your Honor?

10             THE COURT:  Yes.

11             (Briefly off the record.)

12             MR. BILKOVIC:  May I have a moment, your Honor, to

13    discuss it with Mr. Fink?

14             THE COURT:  Yes.

15             (Briefly off the record.)

16   BY MR. BILKOVIC:

17   Q.   And can you look at the dates on the -- and this is an

18   excerpt of an larger chat; correct?

19   A.   Yes, it is.

20   Q.   And has portions of this been redacted as well?

21   A.   Yes.

22   Q.   Can you look at the first -- date of the first message in

23   the chat on Page 1 of 65.0 as well as the last message on the

24   exhibit, which would be Page 65.0-33, and tell the jury what

25   the date of the first message and what the date of the last

1   message is?

2   A.   The date of the first message in the thread is January 15,

3   2019.

4   Q.   And the date of the last message?

5   A.   The date of the last message is November 11, 2019.

6   Q.   So basically January to November of 2019?

7   A.   Correct.

8   Q.   And would this chat then have covered the timeframe of when

9   the seizure of the 752 kilos was done in the Netherlands in

10  August 11, 2019?

11  A.   Yes, it would have.

12  Q.   And are there photographs in this exhibit as well?

13  A.   Yes, there are.

14  Q.   And are they contained -- similar to yesterday, are there

15  small versions of them in the chat and then larger versions

16  that are separate exhibits?

17  A.   Yes.

18  Q.   And those were obtained again by just clicking on the link

19  and going to the photograph of the video?

20  A.   That's correct.

21          MR. BILKOVIC:  Your Honor, at this time I would move

22   for admission into evidence of Government's proposed Exhibit

23   65.0.

24          THE COURT:  Any objection?

25          MR. FINK:  Objection, hearsay as to the non-defendant

 1     statements.

 2              MR. BILKOVIC:  Judge, we addressed this in pretrial

 3     briefing.  In order to put the defendant's statements in

 4     context, it's important to know what the individual was saying

 5     to him that prompted his responses.  So to that extent I'm not

 6     offering those for the truth of the matter asserted.  However,

 7     I would also submit to the jury that it's going to be clear

 8     from this conversation and other ones that Mr. Didani was

 9     talking to a co-conspirator here.

10              MR. FINK:  As to the first point, I would withdraw my

11     objection if it's not being used for its truth, but if it's

12     being asked for the co-conspirator exception to the hearsay

13     rule then I have an objection to the foundation was not laid

14     for that.

15              THE COURT:  Okay.  Then if you're not offering it for

16     the truth of the matter asserted what is it being offered for?

17              MR. BILKOVIC:  I'm offering it to show -- so basically

18     there's a conversation where this individual is saying things

19     to Mr. Didani.  Mr. Didani starts off by sending him something

20     about the seizure.  This individual then starts saying things

21     to Mr. Didani, and Mr. Didani responds to those inquiries that

22     this individual makes.

23              THE COURT:  And so you're offering it for Mr. Didani's

24     statement?

25              MR. BILKOVIC:  Mr. Didani's statements to put them

1    into context.  And I guess I would later move that they are

2    co-conspirator statements as well.  And I know the Court

3    indicated that it would reserve ruling on those until the end.

4              For now, if the Court wants -- I would ask the Court

5    to instruct the jury that Mr. Bajrami's statements cannot be

6    used for the truth of the matter asserted, only to put into

7    context Mr. Didani's statements.  The Government would be fine

8    with that.  And then at a later time I can move for them to be

9    considered as truthful.

10             THE COURT:  Okay.

11             MR. FINK:  I'm okay with that.

12             THE COURT:  Okay.  You're okay with that, Mr. Fink?

13   He's offering Mr. Didani's statements, but not Mr. Bajrami's

14   statements for the truth of the matter asserted.

15             MR. FINK:  I think you've already ruled on

16   contextualizing comments.  So I'm okay with that procedure,

17   Judge, and then withholding -- reserving my objection on the

18   truth later.

19             MR. McDONALD:  Okay.  All right.  Very well.  It's

20   admitted.

21             (Government's Exhibit 65.0 received into evidence.)

22             MR. BILKOVIC:  I apologize.  If I would have thought

23   that through, I could have responded in about ten seconds.  So

24   I apologize for that.

25             THE COURT:  All right.  That's fine.  Okay.  Admitted.

```
 1              Now, in it are these photos as well, Mr. Fink.  I
 2  assume you have no objection to those either?
 3              MR. FINK:  No objection.
 4              THE COURT:  Okay.
 5  BY MR. BILKOVIC:
 6  Q.  And again, similar as we did in other indications, did you
 7  go through this chat and identify basically items that
 8  Mr. Didani, or the person that you believe is Mr. Didani, was
 9  sending?
10  A.  Yes.
11  Q.  And was part of that done to verify that he was actually
12  the person in control of the device?
13  A.  Yes, it was.
14  Q.  Can you look at Government's Exhibit -- Government's
15  proposed Exhibit 65.1.  Do you recognize that?
16  A.  I do.
17  Q.  And is that one of the photographs that Mr. Didani sent to
18  Mr. Bajrami?
19  A.  That's correct.
20              MR. BILKOVIC:  Your Honor, at this time I would move
21  for admission into evidence of Government's proposed Exhibit
22  65.1.
23              THE COURT:  Any objection?
24              MR. FINK:  I mean, I don't see the relevance, Judge,
25  but, you know what, no objection.  It's all right.
```

1           MR. BILKOVIC:  Judge, I guess my response would be if

2    Mr. Fink will stipulate that this was Mr. Didani talking then I

3    don't have to go through this.  Part of the reason I'm showing

4    this is to ward off any later arguments that we don't know if

5    this was Mr. Didani involved in this chat.  So that's part of

6    the reason that I'm introducing these multiple photographs and

7    videos of Mr. Didani.

8           MR. FINK:  I'm just not sure that that does that,

9    Judge, but again I'm going to withdraw my objection.

10          THE COURT:  All right.  65.1 is admitted.

11          (Government's Exhibit 65.1 received into evidence.)

12          MR. BILKOVIC:  And may we publish it to the jury?

13          THE COURT:  Yes.

14   BY MR. BILKOVIC:

15   Q.   Do you recognize the person in that photograph?

16   A.   Yes, I do.

17   Q.   And who is that?

18   A.   Mr. Didani.

19   Q.   And can you look at 65.2.

20   A.   Yes.

21   Q.   Proposed 2.  And do you recognize that?

22   A.   That is a photograph of Mr. Didani.

23   Q.   And do you recall or do you see anything that he's wearing

24   that you had seen in other photographs?

25   A.   Yes.  His rainbow-colored faced gold Rolex.

```
 1            MR. BILKOVIC:  Your Honor, at this time I would move
 2    for admission into evidence of Government's proposed Exhibit
 3    65.2.
 4            THE COURT:  Any objection?
 5            MR. FINK:  No objection.
 6            THE COURT:  It's also admitted as 65.2.
 7            (Government's Exhibit 65.2 received into evidence.)
 8            MR. BILKOVIC:  Thank you, your Honor.  Can we publish
 9    it to the jury, please?
10            THE COURT:  Yes.
11    BY MR. BILKOVIC:
12    Q.  This is the photograph that you just referenced?
13    A.  Yes, it is.
14    Q.  Can you look at Government's proposed Exhibit 65.13.
15            THE COURT:  65 what?
16            MR. BILKOVIC:  13.
17            THE COURT:  13, okay.
18    BY MR. BILKOVIC:
19    Q.  Do you recognize that?
20    A.  Yes.
21    Q.  And what is that?
22    A.  This is a grainy photo, but I observed it was displaying --
23            Do you want me to describe what it was displaying?
24    Q.  Just where was it that you saw this?
25    A.  In Mr. Didani's iCloud.
```

```
 1            THE COURT:  This is a grainy photo?  Is that what you
 2   said?
 3            THE WITNESS:  Grainy, yes, your Honor.
 4   BY MR. BILKOVIC:
 5   Q.  Meaning it's very blurry?
 6   A.  Yes.
 7   Q.  Can you go to Government's --
 8            THE COURT:  Is that 65.13?
 9            MR. BILKOVIC:  Yes, your Honor.
10   BY MR. BILKOVIC:
11   Q.  Can you go to Government's Exhibit 65.0, Page 16.
12   A.  Yes.
13   Q.  Do you see that same image there?
14   A.  Yes, I do.
15   Q.  And is that -- do you see something underneath the image
16   that says "Thumb"?
17   A.  Yes.
18            THE COURT:  Says what?
19            MR. BILKOVIC:  Thumb, T-H-U-M-B.
20   BY MR. BILKOVIC:
21   Q.  Do you know what "Thumb" signifies?
22   A.  Yes.  This is the end of the photo extension, which means
23   it's just a small version of a photo.
24   Q.  And is -- what was done with that photograph, in looking at
25   Exhibit 65.0, Page 16?
```

1            MR. BILKOVIC:  Actually, this was admitted, correct,

2    your Honor, 65.0?

3            THE COURT:  Yes.

4            MR. BILKOVIC:  Can we just publish 65.0, Page 16?

5            THE COURT:  Yes.

6            MR. BILKOVIC:  Thank you.  And can we zoom in on the

7    top third.  Right there.

8    BY MR. BILKOVIC:

9    Q.  Do you see a timestamp as to when this message was sent?

10   A.  Yes, I do.

11   Q.  And what is the date and time?

12   A.  August 13, 2019, 8:26 a.m.

13   Q.  And is this an incoming or outgoing message?

14   A.  This is an outgoing message.

15   Q.  So that would be Mr. Didani sending this message?

16   A.  That's correct.

17   Q.  And under "Attachment" do you see that?

18   A.  I do.

19   Q.  Is that the grainy -- is that the thumb image that you

20   talked about?

21   A.  Yes.

22   Q.  And is 65.13 basically the actual image when you click on

23   the thumb?

24   A.  Yes.

25            MR. BILKOVIC:  Your Honor, at this time I would move

 1    for admission into evidence of Government's proposed Exhibit

 2    65.13.

 3              THE COURT:  Any objection?

 4              MR. FINK:  No objection, your Honor.

 5              THE COURT:  All right.  It's admitted.

 6              (Government's Exhibit 65.13 received into evidence.)

 7    BY MR. BILKOVIC:

 8    Q.   Following Mr. Didani sending Mr. Bajrami that photograph,

 9    did the two of them have a further discussion on August 13,

10    2019, in this chat?

11    A.   Yes, they did.

12    Q.   If you could go to --

13              MR. BILKOVIC:  If we could publish Government's

14    Exhibit 65.0, Page 17.  And can we just zoom in on the top

15    message.

16              I'm sorry.  Can you go back up and include the message

17    number also.

18    BY MR. BILKOVIC:

19    Q.   And starting with the message number on the left, what is

20    the message number?

21    A.   2889.

22    Q.   Can you see this better up here, or no, or next to you?

23    A.   2889.

24    Q.   And what is the date of this message?

25    A.   This message is August 13, 2019.

1   Q.   And is this an incoming or outgoing message?

2   A.   This would be an incoming message to Mr. Didani.

3   Q.   And what is the body of the message?

4   A.   "Yeah, I seen this on the news."

5   Q.   Now, Detective Larson (sic), at the end of Government's

6   Exhibit 65.0-A -- or I'm sorry, 65.0.  At the end of that, at

7   the end of those 33 pages, can you tell me if you see an

8   exhibit marked Government's proposed Exhibit 65.0-B?

9           THE COURT:  B like in boy?

10          MR. BILKOVIC:  B, yes.

11          THE WITNESS:  Yes, I do.

12          MR. BILKOVIC:  Your Honor, would it be possible to

13   take a break at this point?  We're going to get into

14   translations.  Mr. Fink and I want to talk a few minutes to see

15   if we can maybe make this a little quicker.

16          THE COURT:  Very well.  I'll have the jury step down.

17          Remember you're not permitted to talk about the case

18   amongst yourselves or with anyone else during the break, and

19   you may step down.

20          Please rise for the jury.

21          (The jury left the courtroom at 10:55 a.m.)

22          THE COURT:  Okay.  How long do you need, about ten

23   minutes?

24          MR. BILKOVIC:  That would be fine.

25          THE COURT:  Okay.

1          You may step down, Mr. Leach.  Please don't discuss

2    your testimony with anyone.

3          THE WITNESS:  Thank you, your Honor.

4          (At 10:56 a.m., a brief recess was taken.

5          Back on the record at 11:15 a.m.)

6          LAW CLERK:  All rise.  Court is back in session.

7          THE COURT:  Okay.  You may all -- well, let's bring

8    out the jury.

9          LAW CLERK:  All rise for the jury.

10          (The jury entered the courtroom at 11:17 a.m.)

11          THE COURT:  Okay.  You may all be seated.

12          I have reviewed and I have some notes on the following

13    exhibits, which are 115.2 -- 115.12, 13, 14, 15, 16, 17, 18, 19

14    and 21 and 115.11 and 116.20 and 116.24, and I'm going to admit

15    those into evidence.  Your objection is noted and preserved for

16    the record, and I'll make a further record of it later, all

17    right.

18          (Government Exhibits 115.11 - 115.19, 115.21, 116.20

19          and 116.24 received into evidence.)

20          MR. FINK:  Thank you, your Honor.

21          MR. BILKOVIC:  May I proceed, your Honor?

22          THE COURT:  You may.

23          And you're still under oath.

24          Are you satisfied the jurors are present, though?  I

25    am, but ...

1          MR. BILKOVIC:  Yes, your Honor.

2          MR. FINK:  Yes, your Honor.

3          THE COURT:  Okay.  Very good.  You may proceed.

4          You're still under oath.

5          THE WITNESS:  Yes, your Honor.

6          MR. BILKOVIC:  Your Honor, just for the record, the

7     parties had previously stipulated, and it's in Government's

8     Exhibit 128.0, the parties had stipulated that Government's

9     proposed Exhibit 65.0-B is a true and accurate translation from

10    Albanian to English.

11         THE COURT:  Of ...

12         MR. BILKOVIC:  It is a true and accurate translation

13    of Government's Exhibit 65.0.

14         THE COURT:  The entire 65.0?

15         MR. BILKOVIC:  No.  Only portions of it that I will

16    question the witness about.

17         THE COURT:  Okay.

18         MR. BILKOVIC:  And I don't know that I'm going to do

19    that now.  I don't know that I need to do that now.  I just

20    want to let the Court know that when we get to that the defense

21    agrees to admit 65.0-B.

22         THE COURT:  65.0-B is the actual translation?

23         MR. BILKOVIC:  Yes.

24         THE COURT:  Of portions of 65.0?

25         MR. BILKOVIC:  Correct.

```
 1            THE COURT:  And it's noted so we can see what's been
 2    translated?
 3            MR. BILKOVIC:  The way that we are going to do it, and
 4    if we have to revise the exhibit later we will, it is noted
 5    basically the way that they did it is, if the Court remembers,
 6    you know, each message has a message number.
 7            THE COURT:  Okay.
 8            MR. BILKOVIC:  The translation lists the message
 9    number, and then it lists the Albanian words and then it lists
10    the English translation.  What we were going to do is when I
11    get to an area like that I will bring up that message on the
12    chat, and then I will have Agent Leach read the translation
13    into the record.
14            THE COURT:  Okay.  Is that your stipulation, Mr. Fink?
15            MR. FINK:  Your Honor, Mr. Didani, when he was
16    representing himself, entered into the stipulation.  He speaks
17    Albanian, and we stand by that stipulation.
18            THE COURT:  All right.  Very well.  That means he
19    reviewed it himself; is that correct?
20            MR. FINK:  That's correct, your Honor, and was
21    comfortable with the translation.  And we are not seeking to
22    withdraw from that stipulation.  We stand by it.
23            THE COURT:  Okay.  All right.  Very well.  So
24    stipulated and noted for the record relative to 65.0-B.
25            MR. BILKOVIC:  Thank you, your Honor.
```

 1            THE COURT:  And you're going to come back to that you
 2    said?
 3            MR. BILKOVIC:  Yeah, I went through this.  I jumped
 4    the gun.  I think that I can do the portion that I want to do
 5    right now without even getting into that, but we are going to
 6    revisit it at some point.
 7            THE COURT:  Okay.
 8    BY MR. BILKOVIC:
 9    Q.  If I can just find my place ...
10            THE COURT:  You were finishing up with 65.0, Page 17.
11    BY MR. BILKOVIC:
12    Q.  Okay.  If we could go to 65.0, and if we could go to Page
13    18 -- I'm sorry, Page 17.
14            MR. BILKOVIC:  Judge, can I show one chat again?  I
15    can't remember if I did this before the break or not.
16            THE COURT:  Showing a chat?
17            MR. BILKOVIC:  Just one entry to see if I did this
18    before the break.  I can't remember if I did or not.
19            THE COURT:  Okay.  And this is from 65 --
20            MR. BILKOVIC:  Point zero, Page 17.
21            THE COURT:  17?
22            MR. BILKOVIC:  Yes.
23            THE COURT:  I think you did show it.
24            MR. BILKOVIC:  I did do this?  Okay.  Then we'll pull
25    it down then.

```
 1              THE COURT:  This is the one that is, yes, I've seen it
 2   on the news?
 3              MR. BILKOVIC:  Yes.
 4              THE COURT:  I think you showed it.
 5              MR. BILKOVIC:  All right.  Thank you.
 6         If you could go to 65 -- bring up 65, Page 18, and go
 7   to the bottom two messages, 65.0, 18.  Go to the bottom two
 8   messages.
 9              THE COURT:  Okay.  Give me that again, 65.0, Page 18?
10              MR. BILKOVIC:  Correct.
11              THE COURT:  Okay.
12   BY MR. BILKOVIC:
13   Q.  And can you see these, Agent Leach?
14   A.  Yes.
15   Q.  And the message number for the top one, the message number
16   is what?
17   A.  2907.
18   Q.  And what is the timestamp?
19   A.  The timestamp is 2:38.
20   Q.  2:38?
21   A.  2:39.  I'm sorry.
22   Q.  The date?  I'm sorry.
23   A.  Oh, the date.
24   Q.  I'm looking for the date.  I'm not necessarily --
25   A.  The date is August 14, 2019.
```

1   Q.   Okay.  And is this an incoming or outgoing message?

2   A.   This is an incoming message.

3   Q.   From Mr. Bajrami?

4   A.   Yes.

5   Q.   And can you read the body of the message.

6   A.   "But don't worry, my G, everything will work out soon."

7   Q.   And message 2908, do you see that?

8   A.   I do.

9   Q.   Same date?

10  A.   Same date, August 14, 2019.

11  Q.   Is that also an incoming message?

12  A.   Yes, it is.

13  Q.   And could you read that.

14  A.   "Just stay positive.  I believe in you, my G?

15  Q.   Could we go to the next page, which would be Page 65.0-19.

16  And can we go to the top message.  And what is the message

17  number?

18  A.   2909.

19  Q.   And what is the date?

20  A.   August 14, 2019.

21  Q.   And is this an incoming or outgoing?

22  A.   This is an outgoing message.

23  Q.   So this would be going out to Mr. Bajrami?

24  A.   That is correct.

25  Q.   And what is the body of the message?

1    A.   "I'm hurt, brother."

2    Q.   Can we go to the next message on the same page, 2910.  And

3    what is the date?

4    A.   August 14, 2019.

5    Q.   And is this an incoming or outgoing?

6    A.   This is an incoming message.

7    Q.   And could you read the body of the message.

8    A.   "No.  I hear via it was not your control, but you'll be

9    back and stronger in no time."

10   Q.   If we go to the next message, 29 -- on the same page, 2911.

11   And what is the date?

12   A.   August 14, 2019.

13   Q.   And is this incoming or outgoing?

14   A.   Outgoing message.

15   Q.   Could you read it and spell the third word instead of

16   saying it.

17   A.   "I'm really F-U-C-K-E-T up."

18   Q.   Can we go to Page 65.0, Page 21, and go to message 2921 at

19   the top.  And the date?

20   A.   August 14, 2019.

21   Q.   So we're still on the same day?

22   A.   Yes.

23   Q.   And is this incoming or outgoing?

24   A.   Incoming message.

25   Q.   Part of this message is in Albanian, but most of it is in

1   English; is that correct?

2   A.   Yes.

3   Q.   If you can just read the English portion.

4   A.   "You're absolutely correct.  I as well lost 130,000, not as

5   much as my G, but this has definitely been a complete shitty

6   month for both of us."

7   Q.   Can you go down to message -- the same page, message 2924.

8   A.   Yes.

9        THE COURT:  This is also on Page 21?

10        MR. BILKOVIC:  Correct.

11  BY MR. BILKOVIC:

12  Q.   And same date, August 14, 2019?

13  A.   Yes, it is.

14  Q.   Is this an outgoing message from Mr. Didani?

15  A.   Yes, it is.

16  Q.   And what does it say?  Just spell the middle word, but just

17  -- say what it says and spell the middle word.

18  A.   "We F-U-C-K-I-N-G lost."

19  Q.   And can we go to the bottom message on that page.  That

20  would be message 2925.  Same day, August 14, 2019?

21  A.   Yes, it is.

22  Q.   And is this an incoming or outgoing?

23  A.   Incoming message.

24  Q.   And can you -- so is this from Mr. Bajrami to Mr. Didani?

25  A.   Correct.

1    Q.  And what does Mr. Didani say?

2    A.  "Yes, we did, but we'll be back way stronger.  We just need

3    some patience and time, but we will succeed.  If not us, who

4    the F will succeed.  Part of the game, my G."

5                MR. BILKOVIC:  Ms. DiCarlo, can you go to 65.0, Page

6    22, the next page and the top message, 2926.

7    BY MR. BILKOVIC:

8    Q.  Detective Leach -- and I believe I referred to you as

9    "Detective Larson" earlier.  I apologize for that.

10               Detective Leach, are we still on August 14?

11   A.  Apology accepted.  Yes, we are.

12   Q.  And is this August 14th, is this an incoming or an outgoing

13   message?

14   A.  This is an outgoing message.

15   Q.  So from Mr. Didani?

16   A.  Yes.

17   Q.  And what is the message?

18   A.  "My brother, it's been bad for long time."

19   Q.  Can we go to the next message, 2927.  Same date, August 14?

20   A.  Yes.

21   Q.  Incoming or outgoing?

22   A.  Outgoing message.

23   Q.  And what is the message?

24   A.  "I'm not sure what I'm doing wrong."

25   Q.  And can you go to the next message on the same page, which

1    would be 2928, or Section 5.0, Page 22.  And the date?

2    A.   August 14, 2019.

3    Q.   And is this incoming or outgoing?

4    A.   Outgoing message.

5    Q.   And the body of the message?

6    A.   "We the strongest people there with bad luck."

7             MR. BILKOVIC:  If you could go to -- Ms. DiCarlo, can

8    you go to Page 65.0-23.  And if you could zoom in on that.

9    That's good.

10   BY MR. BILKOVIC:

11   Q.   And what do we have here?  This is message 2930?

12   A.   Yes.  This is an outgoing message from Mr. Didani to

13   Mr. Bajrami on August 14, 2019, where he sends him a link to a

14   news article.

15   Q.   And do you know what the news article was about?

16   A.   Yes, I do.

17   Q.   What was the news article about?

18   A.   Approximately 1,200 kilograms of cocaine seizure in the

19   Netherlands.

20   Q.   And you've heard of that article contained the seizure

21   involving the Anisha R?

22   A.   Yes, it did.

23   Q.   Can you go to 65.14.

24             MR. FINK:  14?

25             MR. BILKOVIC:  Yes.  This is Exhibit 65.14.

1             THE COURT:  This is 65.14?

2             MR. BILKOVIC:  14.

3             THE COURT:  Okay.

4             THE WITNESS:  I have it.

5    BY MR. BILKOVIC:

6    Q.   Do you have it?  And do you recognize what 65.14 is?

7    A.   Yes.  This is the news article referenced in that text

8    thread to Mr. Bajrami.

9    Q.   And is it in another language?  It's in Dutch?

10   A.   Yes, it is.

11   Q.   Can you look at 65.14-A.

12   A.   Yes.

13   Q.   And what is 65.14-A?

14   A.   This is an English transcribed version of that news article

15   heading.

16           MR. BILKOVIC:  And, your Honor, I believe, as with the

17   previous stipulation, the stipulation of the parties in Exhibit

18   128 is that Government's proposed Exhibit 65.14-A is a true and

19   accurate translation from Dutch to English of the article

20   contained in 65.14.

21           THE COURT:  Any objection?

22           MR. FINK:  No objection to the translation, Judge.

23   Same thing as I said before.  This was stipulated to by

24   Mr. Didani, and we stand by it.

25           THE COURT:  And is there any other objection to the

1    exhibit itself?

2            MR. FINK:  As long as it's not being used for its

3    truth, Judge.

4            THE COURT:  Okay.  What are you using it for?

5            MR. BILKOVIC:  I'm using it to show that Mr. Didani --

6            THE COURT:  So you may consider it as something that

7    was sent, but you may not consider it for the truth of the

8    information in the article, okay.

9            It's admitted.

10           (Government's Exhibits 65.14 and 65.14-A received into

11           evidence.)

12           MR. BILKOVIC:  And can we publish -- I'm sorry.  It is

13   -- they are both admitted, 65.14 and 14-A?

14           THE COURT:  Yes.

15           MR. BILKOVIC:  And can I publish 65.14-A?

16           THE COURT:  Yes.

17           MR. BILKOVIC:  Can we just zoom in onto the

18   translation, the top translation.

19   BY MR. BILKOVIC:

20   Q.  And can you just read that into the record, Detective

21   Leach.

22   A.  Yes.  It states, "Over 1,200 kilograms of cocaine seized at

23   Maasvlakte one day ago.  The police and Customs authorities

24   have intercepted over 1,200 kilograms of cocaine at Maasvlakte

25   within a few days.  In connection with the bust, five suspects

1    have been arrested according to police reports on Tuesday."

2    Q.   And is Maasvlakte part of the Port of Netherlands?

3    A.   Yes, it is.

4          MR. BILKOVIC:  We can take that down.

5    BY MR. BILKOVIC:

6    Q.   So basically is it fair to say that through your

7    investigation you recovered evidence related to the August

8    seizure, but you did not get that evidence until after the

9    August seizure; is that correct?

10   A.   That's correct.

11   Q.   After the August 2019 seizure?

12   A.   Yes.

13   Q.   Did that prompt law enforcement to try and do anything

14   different as far as getting information from Apple?

15   A.   Yes.  From the information that we identified within the

16   iCloud, we believed if we could get the information in more

17   expedited fashion we could become proactive in our

18   investigation.

19   Q.   And is that where the date-bound material that you talked

20   about yesterday comes into play?

21   A.   Yes, it is.

22   Q.   And on February 6, 2020, did you obtain another search

23   warrant from Apple for Mr. Didani's iCloud data?

24   A.   Yes, I did.

25          THE COURT:  Just a second.  February 6 of what year?

1              MR. BILKOVIC:  2020.

2              THE COURT:  Okay.  You may answer.

3              THE WITNESS:  Yes, I did.

4    BY MR. BILKOVIC:

5    Q.   And when did you receive that information?

6    A.   On February 12, 2020.

7    Q.   And what did you do once you received that information?

8    A.   The information was extracted utilizing Cellebrite, and

9    then the -- I went through the identifiers in the iCloud tried

10   to get ahead of any potential shipments of cocaine.

11   Q.   And did you notice anything that attracted your attention

12   while going through those materials?

13   A.   Yes, I did.

14   Q.   And what generally was it that you noticed?

15   A.   I located a sequence of videos showing individuals loading

16   large duffle bags into a container.  And I also observed that

17   container number in one of the videos.  And a open search of

18   that container showed that it was aboard a certain ship that

19   was currently on the water.

20   Q.   And by saying "on the water" that means it had not arrived

21   at its destination port?

22   A.   That's correct.

23   Q.   And do you know what the destination port was?

24   A.   The Port of Rotterdam.

25   Q.   So what did you do with that information?

1  A.   I took that information and I passed it along to Special

2  Agent David Pedrini over in The Hague, Netherlands responsible

3  for the Port of Rotterdam area.

4  Q.   And did you later receive information that the container

5  was searched and seized?

6  A.   Yes, I did.

7  Q.   And was that done at the request of the United States law

8  enforcement?

9  A.   Yes, it was.

10  Q.   And is that based on the intelligence that you had sent

11  Agent Pedrini?

12  A.   Yes.

13         MR. BILKOVIC:  Judge, may I have a moment?

14         THE COURT:  You may.

15         (Briefly off the record.)

16         MR. BILKOVIC:  Your Honor, at this time I'm seeking to

17  admit Government's proposed Exhibit 78.19, which is one of the

18  three videos that Agent Leach sent.  I believe that Mr. Fink

19  had asked the Government to admit different versions of these

20  -- different exhibit numbers of these, but the same videos.

21  I'm only moving to -- and the jury saw all three.  I'm only

22  moving right now to admit one of them and to just play one of

23  them for the jury.

24         THE COURT:  Okay.  Now, these videos are already in

25  evidence; right?

1           MR. BILKOVIC:  Under different exhibit numbers --

2           THE COURT:  And they're under what exhibit numbers?

3           Mr. Fink, are these the defense exhibits?

4           MR. FINK:  Your Honor, I believe they are.

5           THE COURT:  I think so, too.  And what are they?  I

6      don't want them to overlap.

7           MR. BILKOVIC:  I know two of them were 80.4 and 80.5.

8           THE COURT:  Is this a different one?

9           MR. BILKOVIC:  No.  This is just the first one of the

10     three, and I only want to play the first one.  I don't want to

11     play the other two.

12          THE COURT:  Okay.  So the second one is 80.4 and the

13     third one is 80.5, and those are already played; is that right?

14          MR. BILKOVIC:  Yes.

15          THE COURT:  And 78.19 is a different one?

16          MR. BILKOVIC:  It is from a different area of the

17     iCloud downloads, but it is the same video that the jury has

18     seen previously.  If I could just play --

19          THE COURT:  The same as what?

20          MR. BILKOVIC:  It's what I'm trying to find, Judge.

21          Mr. Fink, did you use our exhibit numbers or did you

22     use your own?

23          THE COURT:  I think we used your exhibit numbers,

24     because they were already marked then.  I think that you showed

25     them, if I'm not mistaken.  I could be mistaken about that.

1          MR. BILKOVIC:  I think you're right, Judge, and I

2     could find it in a second.  I think I know where it's at.

3          MR. FINK:  Your Honor, 78.17, the Government

4     Government's 78.17, as well as Government's 80.4 and 80.5 were

5     admitted by defendant, but because they were marked as

6     Government exhibits and those numbers -- and Ms. DiCarlo helped

7     me play them.  That's why we admitted them that way.

8          THE COURT:  So 78.17, 80.4 and 80.5 were already

9     shown; right?

10          MR. FINK:  That is correct.

11          THE COURT:  Okay.  And they were already admitted?

12          MR. FINK:  That is correct.

13          THE COURT:  And now we want to show 78.19?

14          MR. BILKOVIC:  Yes, your Honor.

15          THE COURT:  Which is a video from a different place.

16          MR. BILKOVIC:  It's a video from a different place in

17     the iCloud, but it is the same video as 80.5.  And I only want

18     to play the first 30 seconds just so I can ask Agent Leach a

19     question about it.

20          THE COURT:  Okay.  Now, do these videos completely

21     overlap?

22          MR. BILKOVIC:  Yes.

23          THE COURT:  80.5 is the same as 78.19?

24          MR. BILKOVIC:  Correct.

25          THE COURT:  Why do you have them marked differently,

 1    because --

 2           MR. BILKOVIC:  Because they were in different

 3    locations in the iCloud in different chats.

 4           THE COURT:  Okay.  All right.  You may play it.  Does

 5    the --

 6           Do you have any objection to its admission or the

 7    playing of it?

 8           MR. FINK:  I don't, and I trust the representation

 9    that they're saying.  The only thing I would ask, and if

10    Detective Leach doesn't know right at this moment that's fine,

11    is we identify which iCloud each exhibit came from given some

12    of the pretrial matters.

13           THE COURT:  Okay.  So can you ask him about the other

14    three that were already shown later?

15           MR. FINK:  Yeah, we can do that later.  I just wanted

16    to make the record, Judge.  But I have no problem playing the

17    video, and I trust the representation that it's the same as the

18    one already admitted.

19           THE COURT:  Okay.  And just so I will be corrected,

20    it's the same as 80.5?

21           MR. BILKOVIC:  Correct.

22           THE COURT:  Okay.  All right.  Very well.

23           MR. BILKOVIC:  Actually, Judge, if it makes it easier,

24    and I should have thought of this earlier, if I could just play

25    the first 30 seconds of 80.5 instead.  I'm sorry.

```
 1              THE COURT:  Now that we've gone through all this and
 2      I've said it's admitted as 78.19 --
 3              MR. BILKOVIC:  All right.  Thank you.
 4              THE COURT:  It's admitted as 78.19, and you may play
 5      it.
 6              (Government's Exhibit 78.19 received into evidence.)
 7              MR. FINK:  I agree with you, Judge.
 8              MR. BILKOVIC:  I do, too, Judge.
 9              THE COURT:  Good.  It's good to agree with the judge
10      now and then.  Okay.
11              (Video played.)
12      BY MR. BILKOVIC:
13      Q.  Is that one of the videos that you sent Agent Pedrini?
14      A.  Yes, it is.
15      Q.  And, if we were to continue to watch that video, does it
16      show the container number as well?
17      A.  Yes, it does.
18              THE COURT:  Now, just for the record, these were
19      previously shown during Agent Pedrini's testimony; is that
20      right?
21              MR. BILKOVIC:  That's correct.
22              THE COURT:  Yeah, okay.
23              MR. FINK:  Yes, your Honor.
24              THE COURT:  All right.
25
```

```
 1    BY MR. BILKOVIC:
 2    Q.   I want to move forward to the April 7th seizure of 1,000
 3    kilograms of cocaine in the Port of Rotterdam.
 4              THE COURT:   April 7th of what year?
 5    BY MR. BILKOVIC:
 6    Q.   April 7th of 2020.  On March 30th of 2020, did you obtain
 7    another iCloud search warrant for Mr. Didani's iCloud account?
 8    A.   Yes, I did.
 9    Q.   And did that search warrant -- did you receive information
10    back?
11    A.   Yes.
12    Q.   And did that contain information from the last date of the
13    last search warrant February 6, 2020, up to the date of the
14    current warrant March 30, 2020?
15    A.   Correct.
16    Q.   And did you -- do you know when it was that you received
17    that information?  Not an exact date, but when --
18    A.   April.
19    Q.   I'm sorry?
20    A.   In April of 2020.
21    Q.   Would it have been prior to the April 7th seizure that you
22    received that information?
23    A.   Yes.
24    Q.   And so what did you do when you saw that or when you got
25    that information?
```

1    A.   Same format as last time.  Once I observed the videos

2    showing the container number and I was able to identify that

3    that container was currently abroad a ship in open water, I

4    sent that information to Special Agent David Pedrini as the end

5    destination for that ship was in his area of responsibility.

6    Q.   And are you aware of whether law enforcement in the

7    Netherlands ended up seizing that container?

8    A.   Yes, they did.

9    Q.   And are you aware that they later found 1,000 kilos of

10   cocaine in that container?

11   A.   Yes.

12   Q.   And you said -- I believe you indicated that you saw

13   videos?

14   A.   Yes, I did.

15   Q.   Can you recall approximately how many videos there were?

16   A.   Two to three.

17            THE COURT:  And you saw these videos --

18            THE WITNESS:  Located -- I'm sorry, your Honor.  Go

19    ahead.

20            THE COURT:  Where did you see them?

21            THE WITNESS:  Located within Mr. Didani's iCloud

22    return.

23            MR. BILKOVIC:  Your Honor, at this time I would move

24    for admission into evidence of Government's proposed Exhibits

25    80.12, Government's proposed Exhibit 115.29 and Government's

1    proposed Exhibit 115.30.

2              THE COURT:  Okay.  115.30, 115.29 and 80.5?

3              MR. BILKOVIC:  80.12.

4              THE COURT:  12.  Any objection?  Are these videos?

5              MR. BILKOVIC:  Yes.

6              MR. FINK:  No objection, your Honor.

7              THE COURT:  Very well.  They're admitted as 80.12,

8    115.29 and 115.30.

9              (Government's Exhibits 80.12, 115.29 and 115.30

10             received into evidence.)

11             MR. BILKOVIC:  And may I publish them to the jury,

12   your Honor?

13             THE COURT:  Yes.

14             MR. BILKOVIC:  May I publish 80.12?

15             (Video played.)

16             THE COURT:  That's 80.12?

17             MR. BILKOVIC:  Yes, your Honor.

18   BY MR. BILKOVIC:

19   Q.  In that video, near the end did you see them pan up to the

20   container number?

21   A.  Yes.

22   Q.  Is that how you were able to obtain it?

23   A.  Yes, it is.

24             THE COURT:  And, your Honor, can we move now to play

25   115.29?  The next videos are shorter.

1            MR. BILKOVIC:  Yes.

2               (Video played.)

3            MR. BILKOVIC:  And can we play 115.30.

4               (Video played.)

5    BY MR. BILKOVIC:

6    Q.  And that last video, 115.30, were they sealing the

7    container at that point?

8    A.  Yes, they were.

9            MR. BILKOVIC:  Can you bring up previously admitted

10    Government's Exhibit 55.0.

11   BY MR. BILKOVIC:

12   Q.  Agent Leach, this was a photograph that was previously

13   admitted that law enforcement in the Netherlands took of the

14   container where they seized the cocaine from on April 7.  Do

15   you recognize that container?

16   A.  Yes.

17   Q.  How do you recognize that container?

18   A.  By the container number in the upper right-hand corner.

19   Q.  And is that container the same container number that was in

20   the video we reviewed?

21   A.  Yes, it is.

22           MR. BILKOVIC:  Can we bring up 55.1 that has been

23   previously admitted.

24   BY MR. BILKOVIC:

25   Q.  Agent Leach, this was previously admitted as a photograph

1   taken by law enforcement in the Netherlands during the seizure.

2   Do you recognize this?

3   A.   Yes.

4   Q.   And how is it that you recognize this?

5   A.   By the green barrels that say "Quicornac" in the identical

6   bags that were in the video being placed in the container.

7   Q.   When you say you recognize this, do these appear to be the

8   same as what you had observed in the videos that we have just

9   seen?

10  A.   That's correct.

11  Q.   Agent Leach, do you have in your book Government's proposed

12  Exhibit 66.0?

13          THE COURT:  60?

14          MR. BILKOVIC:  66.0.

15          THE COURT:  Okay.

16          THE WITNESS:  Yes, I do.

17  BY DEFENDANT DIDANI:

18  Q.   And do you recognize what this is?

19  A.   This is again an excerpt taken out of Mr. Didani's phone

20  from when it was seized on March 31, 2021.

21  Q.   This is an excerpt of the chat?

22  A.   Of a chat, yes, WhatsApp chat.

23  Q.   Under the "To" column at the very bottom do you see one of

24  the participants?

25  A.   Yes.

1   Q.  And the number to the participant, do you recognize that

2   number?

3   A.  Yes, I do.

4   Q.  And whose number does that belong to?

5   A.  Mr. Didani.

6   Q.  And is there also an initial of "YD" next to a WhatsApp

7   address as well?

8   A.  Yes, there is.

9   Q.  Do you see the phone number, the (312) 826-2131 number?

10  A.  Yes, I do.

11  Q.  Do you recall whose number that belongs to?

12  A.  Mr. Bajrami.

13  Q.  And, if you could look at Page 1, when does this chat

14  start?

15  A.  On November 15, 2019.

16  Q.  And, if you could go Page 66.0-53, Page 53, can you tell

17  the jury when this chat ends?

18  A.  October 10, 2020.

19  Q.  So this encompassed the timeframe of the April 7, 2020

20  seizure?

21  A.  Yes, it would.

22  Q.  Do you see an exhibit after the chat marked 66.0-A?

23  A.  Yes, I do.

24  Q.  And what is that?

25  A.  These are translations from messages within that chat

1    thread.

2    Q.   Is it fair to say not all of the messages have been

3    transcribed?

4    A.   That's correct.

5    Q.   Now, is the chat in Albanian and English?

6    A.   Yes, it is.

7    Q.   And in 66.0-A is there basically a way to determine what

8    translation goes to what chat message?

9    A.   Yes.

10   Q.   And how is that?

11   A.   The number directly to the left in the heading references

12   the line number in the message thread.

13   Q.   What's the message number?

14   A.   The message number.

15        MR. BILKOVIC:  Your Honor, at this time I would move

16   for admission into evidence of Government's proposed Exhibit

17   66.0.  And I believe the previous stipulation with respect to

18   the transcripts also applies that the parties have agreed to

19   stipulate that Government's Exhibit 66.0-A is a true and

20   accurate translation of the relevant portions from Albanian to

21   English in 66.0.

22        THE COURT:  Any objection?

23        MR. FINK:  Again, your Honor, this is the stipulation

24   that was entered into when Mr. Didani was representing himself.

25   We stand by that stipulation.  He was able to translate himself

1    and agreed to the translation.

2            THE COURT:  Okay.  So 66.0 and 66.0-A are admitted.

3            (Government's Exhibits 66.0 and 66.0-A received into

4            evidence.)

5            MR. BILKOVIC:  Thank you, your Honor.

6    BY MR. BILKOVIC:

7    Q.   And do you see Government's Exhibit 66.2?

8    A.   Yes.

9    Q.   And is that one of the photographs that Mr. Didani sent

10   during this chat?

11   A.   Yes, it was.

12   Q.   And is that basically a selfie photograph of himself?

13   A.   Yes, it is.

14           MR. BILKOVIC:  Your Honor, at this time I would move

15   for admission into evidence of Government's proposed Exhibit

16   66.2.

17           THE COURT:  And this is from ...

18           MR. BILKOVIC:  This is from -- I'm sorry.  This is

19   from 66.0.  This is one of the photographs within the chat.

20           THE COURT:  Any objection?

21           MR. FINK:  No objection.

22           THE COURT:  It's admitted as 66.2.

23           (Government's Exhibit 66.2 received into evidence.)

24   BY MR. BILKOVIC:

25   Q.   Detective Leach, did you find any evidence within this chat

1    of Mr. Didani sending information to Mr. Bajrami about this

2    seizure?

3              THE COURT:  Evidence in what chat?

4    BY MR. BILKOVIC:

5    Q.   Evidence in 66.0.  Did you find any evidence that

6    Mr. Didani had sent Mr. Bajrami information about this seizure?

7    A.   Yes, I did.

8    Q.   Would you look at Government's Exhibit 66.0, Page 26.

9              THE COURT:  So the record will be clear, the seizure

10    date that you're talking about is ...

11             MR. BILKOVIC:  April 7 of 2020.

12             THE COURT:  And your answer was yes?

13             THE WITNESS:  Yes, your Honor.

14             THE COURT:  Okay.

15             MR. FINK:  66 what?

16             MR. BILKOVIC:  66.0, Page 26.

17             MR. FINK:  Thank you.

18             MR. BILKOVIC:  And can we publish that to the jury,

19    the top third, Page 26.  Actually, can we just do the top third

20    so the writing is a little bigger.

21    BY MR. BILKOVIC:

22    Q.   And do you see the message number on the left?

23    A.   Yes, I do.

24    Q.   And the message number is what?

25    A.   1513.

1    Q.   And what type of a chat is this?

2    A.   This is a WhatsApp messenger chat.

3    Q.   And you know that how?

4    A.   By parsing it out there in the next column next to the

5    message number.

6    Q.   Where it says "WhatsApp"?

7    A.   Correct.

8    Q.   And what is the date that this message was sent?

9    A.   April 9, 2020.

10   Q.   And that would be two days -- approximately two days after

11   the seizure?

12   A.   That's correct.

13   Q.   And is this an outgoing message from Mr. Didani's phone?

14   A.   Yes, it is.

15          MR. BILKOVIC:  Can we go to the bottom half of that.

16   No.  Go up higher.  I'm sorry.  At the bottom go up higher.  I

17   just want to click the image and then the area below the image.

18   BY MR. BILKOVIC:

19   Q.   And was this -- what is this that we're looking at here?

20   A.   This is a screenshot that was sent from Mr. Didani to

21   Mr. Bajrami of a news article associated with the seizure on

22   April 7, 2020.

23   Q.   And can you go to Government's proposed Exhibit 66.7 and

24   tell -- or proposed Exhibit 66.7 and tell me if you recognize

25   that?

1    A.   Yes.  This is a larger image of that news article, photo.

2    Q.   The news article that Mr. Didani sent to Mr. Bajrami on

3    April 9, 2020?

4    A.   Yes.

5            MR. BILKOVIC:  Your Honor, at this time I would move

6    for admission into evidence of Government's proposed Exhibit

7    66.7.

8            THE COURT:  Any objection?

9            MR. FINK:  No objection, your Honor.

10           THE COURT:  Very well.  It's admitted as 66.7.

11           (Government's Exhibit 66.7 received into evidence.)

12           MR. BILKOVIC:  And may I publish it briefly to the

13    jury?

14           THE COURT:  Yes.

15    BY MR. BILKOVIC:

16    Q.   Now, this is in -- again, this is in Dutch?

17    A.   Yes, it appears to be.

18           MR. BILKOVIC:  Can you zoom in on the photograph.  Can

19    you go into the photograph.

20    BY MR. BILKOVIC:

21    Q.   The image in that article, does that look familiar to you?

22    A.   Yes, it does.

23    Q.   How does that look familiar to you?

24    A.   The photograph received from Dutch intelligence through

25    Special Agent Pedrini following the seizure.

1    Q.   And is that consistent with what you had seen -- some of

2    what you had seen in the videos that you sent to Agent Pedrini?

3    A.   Yes, it is.

4    Q.   Can you turn to Government's proposed Exhibit 66.7-A.

5    A.   Yes.

6    Q.   And do you recognize that?

7    A.   This is an English translation of the news article heading.

8            MR. BILKOVIC:  Your Honor, at this time I believe

9    there's a stipulation that we entered into earlier from the

10   parties that still holds true that Government's proposed

11   Exhibit 66.7-A is a true and accurate translation from Dutch to

12   English of Government's Exhibit 66.7.

13           THE COURT:  And so you're moving for admission of the

14   translation and 66.7?

15           MR. BILKOVIC:  I'm moving for admission of 66.7 as

16   well as 66.7-A.

17           THE COURT:  Any objection?

18           MR. FINK:  As to the translations, no objection,

19   Judge.  This is the same stipulation that Mr. Didani entered

20   into and we stand by.  As to the admission of the exhibits, my

21   only objection is that it should not be used for its truth.

22           THE COURT:  Okay.  You're not offering it for the

23   truth, just that it was sent?

24           MR. BILKOVIC:  Just that Mr. Didani sent it.

25           THE COURT:  So the truth of the news article may not

 1    be considered by the jury.  And they're admitted, 66.7 and

 2    66.7-A.

 3              (Government's Exhibits 66.7 and 66.7-A received into

 4              evidence.)

 5              MR. BILKOVIC:  And, your Honor, can I publish 66.7-A

 6    to the jury?

 7              THE COURT:  Yes, you may.

 8              MR. BILKOVIC:  Thank you.

 9              Can we just zoom in on the top half.

10    BY MR. BILKOVIC:

11    Q.   And, Detective Leach, can you read the English translation

12    to the jury.

13    A.   Yes.  It states, "Major cocaine bust at Rotterdam port

14    today.  16:21.  Customs officials intercepted 1,018 kilograms

15    of cocaine yesterday during routine inspections at the Port of

16    the Rotterdam.  The majority of the shipment, 1,000 kilograms,

17    was concealed inside a refrigerated container filled with

18    barrels of fruit concentrate.  The estimated street value of

19    the drugs is 75 million euro.  The shipment originated in Peru

20    and was transported to Rotterdam aboard a Colombian vessel.

21    Although the listed recipient was a company in Rotterdam,

22    authorities confirmed that the business had no involvement in

23    the smuggling operation."

24              MR. BILKOVIC:  Can you take it down.

25              Your Honor -- well, actually can we go to 66.0, Page

```
 1      27.  And can we just go to the top.
 2    BY MR. BILKOVIC:
 3    Q.   So, Agent, can you indicate the date -- or the message
 4    number here?
 5    A.   The message number is 1517.
 6    Q.   And is this an incoming or outgoing?
 7    A.   This is an incoming message.
 8    Q.   So this is coming in to Mr. Didani from Mr. Bajrami?
 9    A.   That's correct.
10           MR. BILKOVIC:  Your Honor, I believe what the parties
11    have agreed to do here is have Agent Leach -- he has a copy of
12    66.0-A.  I believe when we're going through this -- I believe
13    the procedure that the parties agreed to is I will bring up the
14    specific message number.  Once I ask questions about the
15    message number, the date and whether it was incoming or
16    outgoing, Agent Leach will read the English translation from
17    66.0-A for that specific message number.
18           THE COURT:  Is that your agreement?
19           MR. FINK:  It is our agreement.  And I had mentioned
20    to Mr. Bilkovic we'd work something out to the extent jurors
21    wanted exhibits later, but for the time being I'm comfortable
22    with that.
23           THE COURT:  Okay.  You may.
24    BY MR. BILKOVIC:
25    Q.   And could you go to the translation for 1517 and read the
```

1    English translation of that message.

2    A.   Yes.  It states, "How is it going, beast?"

3    Q.   "How is it going, beast?"

4    A.   Beast, correct.

5    Q.   Can we go to the next message, 1518.  And again, the

6    message number?

7    A.   1518.

8    Q.   Is it what date?

9    A.   August -- I'm sorry, April 13, 2020.

10   Q.   So this is a few days after the seizure, approximately six

11   days after the seizure?

12   A.   Correct.

13   Q.   And is this an incoming or outgoing?

14   A.   Incoming message.

15   Q.   Can you read the translation for the English translation

16   for message 1518.

17   A.   "How is it going, brother?  And don't get upset.  Don't

18   worry, beast.  You'll make money again.  It's just a matter of

19   time."

20   Q.   Can we go to Government's Exhibit 66.0, Page 28, and go to

21   the top message, 1519.  Okay.  So we're looking at 1519.  Does

22   that continue on April 13 of 2020?

23   A.   Yes, it does.

24   Q.   And is this an incoming or outgoing message?

25   A.   This is an outgoing message.

1    Q.    So this would be going from Mr. Didani back to Mr. Bajrami?

2    A.    Correct.

3    Q.    Can you read the English translation of that message.

4    A.    "I lost the other one, too, the day before yesterday."

5    Q.    Can we go to Government's Exhibit 66.0, Page 29.  And is

6    this the next message?

7    A.    Yes, it is.

8    Q.    And message number?

9    A.    1520.

10   Q.    And what is the date?

11   A.    April 13, 2020.

12   Q.    So we're staying on the same date then?

13   A.    Yes.

14   Q.    Is this an outgoing message?

15   A.    Outgoing message.

16   Q.    Can you read the translation of message 1520.

17   A.    "Which means three, one after the other."

18   Q.    Can we go to Page 66 -- I'm sorry, Exhibit 66.0, Page 30.

19         Did we already do that?  No, that's all right.

20         What message number is this?

21   A.    This is message 1521.

22   Q.    And what is the date?

23   A.    April 13, 2020.

24   Q.    And again, this an outgoing message from Mr. Didani?

25   A.    Yes.

1   Q.   And what is the English translation?

2   A.   "I'm very upset."

3   Q.   Can we go to 1522, which is on Page 66.0 -- I'm sorry.

4   It's Exhibit 66.0, Page 31.  And what message number is this?

5   A.   1522.

6   Q.   And same date, April 13, 2020?

7   A.   Yes.

8   Q.   Is this an incoming or outgoing?

9   A.   Incoming.

10  Q.   Now, this one is in English?

11  A.   Yes, it is.

12  Q.   What is it that Mr. Bajrami texts?

13  A.   "That sucks big time.  You'll be all right in no time,

14  bro."

15  Q.   And can we go to the next page, 66.0, Page 32.  And what

16  message number is this?

17  A.   1523.

18  Q.   And same date, April 13, 2020?

19  A.   Yes.

20  Q.   Is this an incoming or outgoing?

21  A.   Outgoing message.

22  Q.   Can you read the English translation for message 1523.

23  A.   "I'm very upset."

24  Q.   Can we go to the next message, which is on Page -- Exhibit

25  66.0, Page 33.  And what is the message number?

1    A.   1524.

2    Q.   And the same date, April 13, 2020?

3    A.   Yes.

4    Q.   And incoming or outgoing?

5    A.   Outgoing message.

6    Q.   So another outgoing message from Mr. Didani?

7    A.   Yes.

8    Q.   Can you read the English translation for 1524.

9    A.   "Two, the same in one week."

10   Q.   Detective Leach, can you look at Government's proposed

11   Exhibit 64.0, and tell me if you recognize that -- I'm sorry,

12   64.0?

13   A.   Yes, I do.

14   Q.   And what is that?

15   A.   This is another message -- WhatsApp message thread

16   extraction out of Mr. Didani's seized iPhone from March 31,

17   2021.

18   Q.   And do you recognize the numbers for one of the

19   participants?

20   A.   Yes.

21   Q.   And who is that participant?

22   A.   Mr. Didani.

23   Q.   Is that the number (708) 400-1315?

24   A.   Correct.

25   Q.   And is there a number for the other participant?

1    A.   Yes, there is.

2    Q.   And what is that number?

3    A.   1 (708) 655-9228.

4    Q.   And is there a name attached with that individual in this

5    message?

6    A.   Yeah, there is.

7    Q.   And what is the name?

8    A.   Dino.

9           THE COURT:  I'm sorry?

10          THE WITNESS:  Dino.

11   BY MR. BILKOVIC:

12   Q.   Dino, D-I-N-O?

13   A.   Correct.

14   Q.   And did you review this chat?

15   A.   Yes, I have.

16   Q.   Did you review images in the chat?

17   A.   Yes.

18   Q.   Are there images that were sent to Mr. Didani in this chat

19   depicting some of Mr. Didani's family members?

20   A.   Yes.

21   Q.   And other images in this chat that were sent by Mr. Didani

22   depicting himself?

23   A.   Yes.

24   Q.   If you could look at Page 1 of 64.0 and tell me what day

25   that first message is?

1    A.   January 17, 2019.

2    Q.   And, if you could look at the last page, 64.0-15, and tell

3    me when the last message would be?

4    A.   August 10, 2020.

5    Q.   And so would that timeframe encompass some of the seizures

6    that you've testified about?

7    A.   Yes, it would.

8    Q.   Can you look at Government's proposed Exhibit 64.0-A.

9    A.   Yes.

10   Q.   And do you recognize that?

11   A.   Yes.  These are English translations for certain messages

12   within this thread extraction.

13        MR. BILKOVIC:  Your Honor, at this time I believe that

14   there is again a stipulation that was previously reached

15   between the parties that Government's proposed Exhibit 64.0-A

16   is a accurate translation from Albanian to English of portions

17   of Government's Exhibit 64.0.

18        THE COURT:  Is that accurate?

19        MR. FINK:  As to the translations, that's accurate,

20   Judge, same thing as before with the stipulation and the

21   translations being accurate.

22        THE COURT:  Okay.  And are you offering these?

23        MR. BILKOVIC:  I would offer them into evidence, your

24   Honor.

25        THE COURT:  As well as 64.0?

```
 1              MR. BILKOVIC:  64.0 as well as 64.0-A.
 2              THE COURT:  Do you object?
 3              MR. FINK:  I do object, your Honor.  The offer of
 4    proof for foundation is lacking that Mr. Didani's father is a
 5    co-conspirator such that this wouldn't be hearsay.  Also, these
 6    translations of encouragement from father to son to be used in
 7    this regard I think is exactly what 403 would be for.  I don't
 8    think this is an appropriate use of this evidence.  I'd like to
 9    hear an offer of proof of its relevance under 403, its
10    probative value under 403.
11              THE COURT:  Do you want that in front of the jury?
12              MR. FINK:  Either sidebar, or I appreciate --
13              MR. BILKOVIC:  I would ask that we take it outside the
14    presence of the jury.
15              THE COURT:  All right.  The jury may step down for a
16    moment.
17              (The jury left the courtroom at 12:15 p.m.)
18              THE COURT:  You may all be seated.
19              Counsel, whenever you're ready.
20              MR. BILKOVIC:  Your Honor, some of the chat -- I don't
21    know that this is what Mr. Fink's objection is.  I think it
22    comes with areas related to the translations.
23              Some of the exhibits I'm going to offer are again
24    articles that Mr. Didani was sending regarding these seizures
25    shortly after the seizures took place.  I don't believe that
```

1    that's the objection that he has.  I believe the objection he

2    has is to the portions of the translations that his father

3    responds to him after Mr. Didani sends photographs of currency,

4    photographs of expensive jewelry, and tells him things like --

5    Mr. Didani's dad responds -- and now I lost it.  Mr. Didani's

6    dad responds in one of them, "Sometime ago in Detroit, there

7    were times you didn't even have money for bread."

8             THE COURT:  There were what?

9             MR. BILKOVIC:  There were times -- "Sometime ago in

10   Detroit, there were times you didn't even have money for bread.

11   Don't forget."  And another one of the translations indicates,

12   "Take every step being 100 percent sure.  You can't get

13   forgiven even 0001 percent error."

14            THE COURT:  But what is this being offered to show?

15            MR. BILKOVIC:  It's being offered to show --

16            THE COURT:  What is the entire 64.0 being offered to

17   show?

18            MR. BILKOVIC:  In part, it's being offered to show

19   again Mr. Didani, after these items got seized, was sending

20   articles about the seizures to his family members.

21            THE COURT:  And to show what?

22            MR. BILKOVIC:  To show that he was aware of these

23   seizures.

24            THE COURT:  Okay.

25            MR. BILKOVIC:  And there's also additional -- for

1    example, there's a photograph in here of Mr. Didani sitting in

2    front of -- or sitting behind bulk U.S. currency, which the

3    Court has heard testimony, the jury has heard

4    multiple testimony --

5             THE COURT:  Is that a picture that's already in

6    evidence?

7             MR. BILKOVIC:  It is not, but it's in other chats as

8    well that I'm going to be admitting it, through other people as

9    well.

10            THE COURT:  Through other people as well as the

11   photograph?

12            MR. BILKOVIC:  It was the same photograph that

13   Mr. Didani had sent other individuals as well.

14            THE COURT:  Okay.

15            MR. FINK:  As to that latter point, your Honor, I mean

16   it's cumulative.  And it's unnecessary under 403 on balance to

17   be dragging his family into this, like this is some criminal

18   conspiracy with his elderly parents.  I mean, the two text

19   messages above says from Mr. Didani's father --

20            Ylli, this is from your dad; right?

21            DEFENDANT:  It is.

22            MR. FINK:  "The simple life is the most beautiful, the

23   most serene and the most secure."  It's a father and son

24   talking.  And to make an offer of proof here that somehow, you

25   know, this is something to do with his involvement with

1    narcotics I think is an unfair impression to create.  And I

2    don't think it's necessary for the purpose that was purported,

3    which is that he sent these articles around.  He has that

4    already in several places.

5              THE COURT:  Okay.  You have the articles being sent to

6    at least two people; right?

7              MR. BILKOVIC:  So far -- the one article, I believe,

8    is only to Mr. Bajrami and his father.

9              And, Judge, if it makes it easier, what I would do is

10   I will withdraw the moving of the translation in.  I don't need

11   that.  What I want -- what I'm more interested in is getting in

12   the photographs of the newspaper articles that he sends him

13   about two seizures.

14             THE COURT:  But those are already in; right?

15             MR. BILKOVIC:  Pardon me?

16             THE COURT:  Those are already in?

17             MR. BILKOVIC:  Yes, they are.

18             THE COURT:  Okay.

19             MR. FINK:  And proven, you know, that they came from

20   his iCloud as well, so his possession of them as well.

21             MR. BILKOVIC:  There's also a photograph that I wanted

22   to send that Mr. Didani sent showing a female in front of large

23   amounts of bulk currency.

24             THE COURT:  Can I see that one?

25             MR. BILKOVIC:  Yes.

```
 1              THE COURT:  Pass that up, please, so I don't have to
 2   dig it out.
 3              MR. BILKOVIC:  Yes.  There's just one -- I'm trying to
 4   find the other one, too, Judge.
 5              THE COURT:  Are you going to argue that Dino is his
 6   father; is that accurate?
 7              MR. FINK:  Mr. Bilkovic has established --
 8              THE COURT:  No.  I just want to make sure that I
 9   remember that correctly.
10              MR. FINK:  Dino is his father, correct.
11              THE COURT:  Okay.  So are you trying to establish that
12   he is also involved in this conspiracy?
13              MR. BILKOVIC:  No, I'm not.  What I'm trying to do is
14   offer this to show that Mr. Didani is sharing these items with
15   multiple people.  I'm not the one that sent these to family
16   members.  Mr. Didani did.  And the fact that he sent it to
17   family members as well as associates is consciousness of guilt
18   that he was responsible for those loads.  He's not sending all
19   types of other articles to these people.  He is sending
20   articles specific to these seizures, both through
21   co-conspirators, associates of his and family members.  I think
22   that that's clearly relevant.
23              MR. FINK:  What we don't know, we don't know what
24   other stuff he was sending.  So there's no foundation or
25   discussion of what he has, did or did not send on other
```

1    occasions to his family members over the years.  But,

2    nevertheless, this information has been gotten through other

3    witnesses, as has his very possession of the articles

4    themselves, which is relevant to the point he's making.  And

5    sending your parents pictures of bulk currency is not a crime

6    in and of itself, and that's why it's far less probative.

7         I mean, I have a very nice picture of myself when I

8    won $500,000 at the casino.  I'm pretty sure I sent that to my

9    mom.  In and of itself is designed just to elicit that this

10   must be from that, he must be showing his dad that he's a drug

11   dealer and dragging his dad and family into it.  It's

12   inappropriate.

13        MR. BILKOVIC:  Judge --

14        THE COURT:  Can I see the photos?

15        MR. BILKOVIC:  Yes.

16        THE COURT:  And I don't know that they're clearly

17   relevant, especially since it doesn't seem to me that they have

18   anything to do with --

19        MR. BILKOVIC:  Judge, and my response would be those

20   are points that Mr. Fink can make on cross-examination.  The

21   allegations in this case are that Mr. Didani was involved in a

22   large drug conspiracy that dealt in bulk currency, that

23   involved multiple seizures.  And evidence on his phone of

24   photographs with him with bulk currency and sending articles to

25   people, including family members, about those seizures is

     1     relevant.

     2            MR. FINK:  What I think we're missing in this bridge

     3     here, Judge, is those pictures are on his iCloud themselves.

     4     Just the fact of having them makes the point that Mr. Bilkovic

     5     wants to make.  What I'm not hearing is why he needs to bring

     6     his father into this and the suggestion that the family is

     7     involved.  I don't think that's appropriate.

     8            THE COURT:  You're not going to argue that the

     9     family --

    10            MR. BILKOVIC:  No, I'm not.  But again, I'm not the

    11     one that sent these pictures to --

    12            THE COURT:  I'm aware of that.  I don't think that's

    13     part of --

    14            MR. BILKOVIC:  I'm sorry, Judge.

    15            THE COURT:  -- the argument whether or not you're the

    16     person, that's clearly not the person.  I don't know that it's

    17     clearly relevant that he sent them to his family that shows

    18     anything other than what you've already shown so far, which

    19     would go to whether or not it's cumulative.  And I don't know

    20     whether or not it should come in under 403.  And so it's under

    21     advisement and you can go to a new area.

    22            MR. BILKOVIC:  Okay.

    23            MR. FINK:  Thank you, your Honor.

    24            MR. BILKOVIC:  Judge, could we take five minutes?

    25            THE COURT:  Okay.

```
 1              MR. FINK:  That way we won't have to ask for another
 2   one.
 3              THE COURT:  Well, you've only got about what --
 4              MR. FINK:  I'll take four minutes.
 5              THE COURT:  -- an hour left?
 6              MR. BILKOVIC:  I don't need to use the restroom.  I
 7   just need to sit for a few minutes.
 8              THE COURT:  Okay.  That's okay.  We can take a break.
 9   You can take a break.
10              MR. BILKOVIC:  Thank you, Judge.
11              THE COURT:  You can step down during the break.
12              THE WITNESS:  Thank you, your Honor.
13              THE COURT:  All right.  Everyone may take a break.
14   Let's take ten minutes, okay.
15              MR. FINK:  Yes, your Honor.  Thank you.
16              (At 12:24 p.m., a brief recess was taken.
17              Back on the record at 12:38 p.m.)
18              LAW CLERK:  All rise.  Court is back in session.
19              THE COURT:  Are you all ready?
20              MR. BILKOVIC:  Yes, your Honor.
21              THE COURT:  Let's bring the jury back out.
22              LAW CLERK:  All rise for the jury.
23              (The jury entered the courtroom at 12:39 p.m.)
24              THE COURT:  I'm satisfied the jury is present.  Are
25   you satisfied for the Government?
```

1           MR. BILKOVIC:  Yes, your Honor.

2           THE COURT:  What about defense?

3           MR. FINK:  Yes, I am, your Honor.

4           THE COURT:  Okay.  Exhibit number -- you may all be

5    seated.

6           Exhibit number 64 is under advisement until tomorrow,

7    okay.  And, Mr. Bilkovic, I understand you can go to another

8    area and come back to that; right?

9           MR. BILKOVIC:  That's correct, Judge.

10          THE COURT:  Okay.  You're still under oath.

11          THE WITNESS:  Yes, your Honor.

12   BY MR. BILKOVIC:

13   Q.  Agent Leach, yesterday we were talking about some of the

14   BlackBerry messages that there were photographs of that you

15   found that were taken from another device.  Do you remember

16   that?

17   A.  I do.

18   Q.  And we stopped yesterday and moved on to another area.  I'd

19   like to go back to that area if we could.

20          Can you turn to Page -- Exhibit 115 -- Government's

21   proposed Exhibit 115.12 and tell me if you recognize that?

22   A.  Yes, I do.

23   Q.  And what is that?

24   A.  This is an image located within Mr. Didani's iCloud of a

25   photograph of another device with a message thread located on

1    the face.

2    Q.   And can you look at Government's proposed Exhibit 115.12-A.

3    A.   Yes.

4    Q.   And do you recognize that?

5    A.   I do.

6    Q.   And what is that?

7    A.   This is the same photograph, but with the image identifiers

8    and the metadata attached.

9         MR. BILKOVIC:  Your Honor, at this time I would move

10   for admission into evidence Government's proposed Exhibit

11   115.12 and 115.12-A.

12        THE COURT:  These are the ones we had a discussion

13   earlier; is that correct?

14        MR. BILKOVIC:  Correct.

15        THE COURT:  Okay.  And your objection is noted and

16   preserved for the record and overruled, Mr. Fink.

17        Do you need to argue anymore about it?

18        MR. FINK:  I do not.  And, just for the record, now

19   that you've made your ruling, no objection to the additional

20   that I don't know that was proposed before A, 115.12-A.

21        THE COURT:  All right.  Very well.  So noted for the

22   record, and it's admitted as 115.12 and 115.12-A.

23        (Government's Exhibit 115.12 and 115.12-A received

24         into evidence.)

25        MR. BILKOVIC:  And can we publish 115.12-A?

```
 1                THE COURT:  You may.
 2    BY MR. BILKOVIC:
 3    Q.  And what are we looking at here?
 4    A.  This is the image of the BlackBerry phone with a message
 5    thread on it, including the image identifiers and the metadata
 6    below.
 7                MR. BILKOVIC:  Can we go down to the bottom half and
 8    just -- from the metadata down.  And, Ms. DiCarlo, for all of
 9    the A series I'm going to ask you to do that.
10    BY MR. BILKOVIC:
11    Q.  And does it show what the capture time was of this?
12    A.  Yes, it does.
13    Q.  And what was the capture time?
14    A.  September 10, 2016, 5:33 p.m.
15    Q.  And does it show what type of device took the photograph?
16    A.  Apple iPhone 6 Plus.
17                MR. BILKOVIC:  Can we go back to -- can we publish
18    115.12.  And can we zoom in on -- again, yeah.  Can we zoom in
19    on going all the way down to the screen, at the bottom of the
20    screen.
21    BY MR. BILKOVIC:
22    Q.  And again, we see the "Sky" on the bottom right?
23    A.  Yes.
24    Q.  Now, can you tell the -- is there the identifier for the
25    person that sends the top message?
```

1   A.   No.  It is cut off.

2   Q.   Can you read what that individual -- the text that the

3   individual sent?

4   A.   Yes.  It says, "I told my partner," and then it's cut off.

5   And then it continues with "about that torpedo project that

6   going under ship and he like it very much.  What is the status

7   on that?  How soon will it be operational?"

8   Q.   Now, the person that responds, do you see the identifier

9   for that person?

10  A.   I do.

11  Q.   And what is the identifier?

12  A.   6F35C7.

13  Q.   And is that the same -- that 6F35C7, is that the same

14  number that Mr. Didani texted another individual in Exhibit

15  115.32?

16  A.   Yes, it is.

17  Q.   And will we see that number in several of these exhibits

18  that we're going to go through?

19  A.   Yes.

20  Q.   Okay.  Can we go to Government's proposed Exhibit 115.13.

21  Can you look at that and see if you recognize that?

22  A.   Yes, I do.

23  Q.   And what is that?

24  A.   Again, this is another photo captured of the BlackBerry

25  device showing the message thread.

1    Q.   And can you look at 115.13-A.

2    A.   Yes.

3    Q.   And what is 115.13-A?

4    A.   Same image with the image identifier and the metadata.

5              MR. BILKOVIC:  Your Honor, at this time I would move

6    for admission into evidence of Government's proposed Exhibit

7    115.13 and 115.13-A.

8              THE COURT:  All right.  Your objection is overruled

9    and it's admitted, unless you want to add to it, Mr. Fink.

10             (Government's Exhibit 115.13 and 115.13-A received

11             into evidence.)

12             MR. FINK:  No, Judge.  And you can assume that for the

13   balance of these BlackBerry exhibits.  Thank you, your Honor.

14   If that's okay with you.

15             THE COURT:  That's okay with me.

16             Is it okay with you, Mr. Bilkovic?

17             MR. BILKOVIC:  It's fine.  There's a standing

18   objection.  That's fine.  Thank you, your Honor.

19             Can we publish 115.13-A.

20             THE COURT:  Yes.

21   BY MR. BILKOVIC:

22   Q.   And again, what are we looking at here?

23   A.   This is the same image as previously shown, but with the

24   image identifier and the metadata below.

25   Q.   Detective Leach, on all of the exhibits that we're going to

1   go through that end in "A," will they be similar to this where

2   they show the image and then all of the numbers underneath as

3   well as the metadata?

4   A.   That's correct.

5   Q.   Okay.  So maybe going forward to save some time when we get

6   to this I'll just zoom in on the metadata.

7   A.   Fair.

8            MR. BILKOVIC:  Can we zoom in on the metadata on this

9   one, please.

10  BY MR. BILKOVIC:

11  Q.   And does it show the capture time?

12  A.   September 10, 2016, 7:13 p.m.

13  Q.   And what type of a device took the photograph?

14  A.   Apple iPhone 6 Plus.

15           MR. BILKOVIC:  And can we publish 115.13.

16  BY MR. BILKOVIC:

17  Q.   Again, the top portion of the message is the identifier of

18  the person sending that message cut off?

19  A.   Yes, it is.

20  Q.   Can you read the text message that the person sent.

21  A.   "When your guy will have that fix, we will use that torpedo

22  for sure."

23  Q.   And again, is this a Sky message?

24  A.   Yes, it is.

25  Q.   And what is the identifier of the person that responds?

1   A.   6F35C7.

2   Q.   And that's the same number that was in the previous exhibit

3   as well as 115.32?

4   A.   Yes, it is.

5   Q.   And can you please read how that person responds.

6   A.   "His doing that, but we planning to build few of them and

7   little bigger up to 200 unit.  We see how is gone go, but the

8   prototype will come soon."

9   Q.   Can you go to 115.14 and tell me if you recognize that?

10   A.   Yes, I do.

11   Q.   What is that?

12   A.   Another photograph of the BlackBerry encrypted device with

13   a message thread on it located in Mr. Didani's iCloud.

14   Q.   And again, in this photograph can you actually see the

15   hands of somebody holding the BlackBerry as the photograph of

16   it is being taken?

17   A.   Yes, you can.

18   Q.   And can you go to 115.14-A.

19   A.   Yes.

20   Q.   Do you recognize that?

21   A.   Same photograph with the image identifiers and the metadata

22   attached.

23        MR. BILKOVIC:  Your Honor, at this time I would move

24   for admission into evidence of Government's proposed Exhibit

25   115.14 and 115.14-A.

1          THE COURT:  Okay.  It's admitted.

2          (Government's Exhibit 115.14 and 115.14-A received

3          into evidence.)

4          MR. BILKOVIC:  Can we publish 115.14-A and just zoom

5     in on the metadata.

6          THE COURT:  Yes.

7     BY MR. BILKOVIC:

8     Q.  And when was this image captured?

9     A.  September 25, 2016, at 3:44 p.m.

10    Q.  And what was the type of device?

11    A.  Apple iPhone 6 Plus.

12         MR. BILKOVIC:  Can you go to 115.14 and publish that.

13    BY MR. BILKOVIC:

14    Q.  And again, this is a Sky message?

15    A.  Yes, it is.

16    Q.  No identifiers here; correct?

17    A.  Correct.

18    Q.  And can you read the text message.

19    A.  "I will prepare the ground for that project.  Right.  That

20    is important.  And if magnets let go we should have the torpedo

21    tracking so we can find it."

22    Q.  And I believe we previously admitted the first time you

23    testified.  You see 115.15 and 115.16?

24    A.  Yes.

25    Q.  I believe that you have previously testified to those;

1    correct?

2    A.   Yes, I have.

3    Q.   So then we'll move on to 115.17.  Do you recognize that?

4    A.   Yes.

5    Q.   And what is that?

6    A.   The other photograph of a BlackBerry encrypted Sky device

7    with a message thread on the face.

8    Q.   And similar to one of the other exhibits, does it appear

9    that a hand of somebody holding the BlackBerry as the

10   photograph is being taken?

11   A.   Yes, it does.

12   Q.   And can you look at 115.17-A.  Tell me if you recognize

13   that?

14   A.   Yes.  It's the same photograph with the image identifier in

15   the metadata attached.

16          MR. BILKOVIC:  Your Honor, at this time I would move

17   for admission into evidence of Government's proposed Exhibit

18   115.17 and 115.17-A and request permission to publish them.

19          THE COURT:  Okay.  They're admitted as previously

20    ruled, and you may publish.

21          (Government's Exhibits 115.17 and 115.17-A received

22          into evidence.)

23          MR. FINK:  Your Honor, can I just clarify.  We're

24   talking 115.17, not -- was there any mention of 115.15?

25          MR. BILKOVIC:  15 and 16 were previously admitted the

1    last -- were previously admitted when Agent Leach testified the

2    first time.

3              MR. FINK:  Understood.  And now we're talking about

4    115.17?

5              THE COURT:  That's right.

6              MR. FINK:  Thank you, your Honor.  The only objection

7    I would have is to the other code in here and not knowing who

8    that is and any hearsay associated with the other code that

9    hasn't had a foundation or tie to it.

10             THE COURT:  Okay.  So noted and preserved for the

11   record.

12             MR. FINK:  Thank you, Judge.

13             MR. BILKOVIC:  Can you publish 115.17-A and go to the

14   metadata.

15   BY MR. BILKOVIC:

16   Q.   And what is the capture time?

17   A.   November 9, 2016, 1:27 p.m.

18   Q.   And what type of device took this photograph?

19   A.   Apple iPhone 6 Plus.

20             MR. BILKOVIC:  And can we publish 115.17.  Can we just

21   zoom in.

22   BY MR. BILKOVIC:

23   Q.   The top identifier of the person -- first of all, it's a

24   Sky message?

25   A.   Yes, it is.

1    Q.   And the person that's sending the first series of messages,

2    is there an identifier?

3    A.   Yes, there is.

4    Q.   And what is the identifier?

5    A.   6F35C7.

6    Q.   And that's the one that we saw in 115.32?

7    A.   Yes, it is.

8    Q.   And what are the text messages that follow?

9    A.   "Yes.  Yes, that's the torpedo.  Prototype soon my guy

10   devoting time and money on that."

11   Q.   And what is the identifier of the individual responding?

12   A.   D4C99E.

13   Q.   And how does that person respond?

14   A.   "Looking good.  When will that be ready?"

15   Q.   Can you go to 115 -- proposed 115.18 and tell me if you

16   recognize that?

17   A.   Yes, I do.

18   Q.   And what is that?

19   A.   This is another photograph of the BlackBerry encrypted Sky

20   device with a message thread on the face.

21   Q.   Can you look at 115.18-A.  Tell me if you recognize that?

22   A.   Same photograph with the image identifiers and the

23   metadata.

24          MR. BILKOVIC:  Your Honor, at this time I would move

25   for admission into evidence of 115.18 and 115.18-A.

```
 1              THE COURT:  Is that your same objection, Counsel?
 2              MR. FINK:  Yes, your Honor.  And the additional not
 3      identifying, but I think it's all tethered into the same
 4      objection that you've already ruled on.  Thank you.
 5              THE COURT:  Okay.  Very well.  It's admitted.
 6              (Government's Exhibits 115.18 and 115.18-A received
 7              into evidence.)
 8              MR. BILKOVIC:  And may I publish it, Judge?
 9              THE COURT:  Yes, you may.
10      BY MR. BILKOVIC:
11      Q.   Can we go to 115.18-A and just go to the metadata.  And
12      when was this image taken?
13      A.   December 3, 2016, 2:59 p.m.
14      Q.   And what is the device type that took that image?
15      A.   Apple iPhone 6 Plus.
16      Q.   And can you go to 115.18.  And again, is this the Sky
17      message?
18      A.   Yes, it is.
19      Q.   The person that sent the text, is that not identified here
20      because it's cut off?
21      A.   Correct.
22      Q.   Can you read the text messages.
23      A.   "If yes, then we take from that point and we will do this
24      together.  I will need a captain with fishing boat to pick up.
25      Product at place where your captain will prefer.  We start with
```

1   2 to 300 units.  I need good deal."

2   Q.   Can you go to Government's proposed Exhibit 115.19, and

3   tell me if you recognize that?

4   A.   I do.

5   Q.   What is that?

6   A.   Another photograph taken of the BlackBerry encrypted device

7   with Sky showing a message thread on the face.

8   Q.   And can you look at Government's proposed Exhibit 115.19-A.

9   A.   Same photograph with the attached image identifiers and

10  metadata.

11          MR. BILKOVIC:  Your Honor, at this time I would move

12  for admission into evidence of Government's proposed Exhibit

13  115.19 as well as 115.19-A.

14          THE COURT:  Subject to the overruled objection, it's

15  admitted.

16          (Government's Exhibits 115.19 and 115.19-A received

17          into evidence.)

18          MR. BILKOVIC:  And may I publish it to the jury?

19          THE COURT:  Yes.

20          MR. BILKOVIC:  Can we start with the metadata on

21  115.19-A.

22  BY MR. BILKOVIC:

23  Q.   And what was the date of this?

24  A.   December 3, 2016 at 3:10 p.m.

25  Q.   And the type of device that took the photograph of the

1    BlackBerry?

2    A.   Apple iPhone 6 Plus.

3              THE COURT:   What's the time again?

4              THE WITNESS:   3:10 p.m.

5              THE COURT:   Okay.   Thank you.

6    BY MR. BILKOVIC:

7    Q.   And can we go to Government's Exhibit 115.9.   And again, I

8    believe you said this was a Sky message?

9    A.   Yes, it is.

10   Q.   And again, there's no identifier?

11   A.   No, there is not.

12   Q.   Can you read that text message.

13   A.   "Okay.   Find out.   How big is he's fishing boat and where

14   is he working fishing?   Which area?   I like to know that.   How

15   far he can go, how many nautical miles offshore."

16   Q.   Can you turn to Government's proposed Exhibit 115.21.

17   A.   Yes.

18   Q.   And do you recognize that?

19   A.   I do.   Another photograph located in Mr. Didani's iCloud

20   showing a BlackBerry encrypted device with Sky and a text

21   message thread on the face.

22   Q.   And can you look at 115.21-A.

23   A.   Yes.

24   Q.   And what is 115.21-A?

25   A.   The same image with the image identifiers and the metadata

```
 1    attached.
 2            MR. BILKOVIC:  Your Honor, at this time I would move
 3    for admission into evidence of Government's proposed Exhibit
 4    115.21 as well as 115.21-A.
 5            THE COURT:  They are also admitted.
 6            (Government's Exhibits 115.21 and 115.21-A received
 7            into evidence.)
 8            MR. BILKOVIC:  And may I publish them to the jury?
 9            THE COURT:  Yes.
10            MR. BILKOVIC:  Can we start with 115.21-A.  And can we
11     just go to the metadata.
12    BY MR. BILKOVIC:
13    Q.  And what was the capture time?
14    A.  December 9, 2016, 11:38 a.m.
15    Q.  And what was the device type that took the photograph of
16    the BlackBerry?
17    A.  Apple iPhone 6 Plus.
18            MR. BILKOVIC:  And can we publish 115.21.
19    BY MR. BILKOVIC:
20    Q.  And again, this is a Sky message?
21    A.  Yes, it is.
22    Q.  The top of -- the moniker of the top person speaking, what
23    is that?
24    A.  "Goodfella."
25    Q.  And what is the text message?
```

1  A.   "Bro, I have taking out of water in front of Barcelona.

2  Fishing boats and yachts.  Best people."

3  Q.   And the identifier of the next person?

4  A.   6F35C7.

5  Q.   Again, that's the same number that Mr. Didani sent in

6  Government's Exhibit 132?

7  A.   Yes, it is.

8  Q.   And how does that moniker respond?

9  A.   "That's what we looking for."

10  Q.   And how does Goodfella respond?

11  A.   "Find out all details, what kind of ships they have, how

12  frequent, where the line is passing, et cetera."

13  Q.   And do you have in front of you Government's proposed

14  Exhibit 116.24?

15  A.   Yes, I do.

16  Q.   And what is that?

17  A.   This is a photograph taken out of Mr. Didani's iPhone of a

18  BlackBerry secured Sky phone showing a text message thread on

19  the face.

20        MR. FINK:  What number, Mark?

21        MR. BILKOVIC:  116.24.

22        MR. FINK:  Thank you.

23  BY MR. BILKOVIC:

24  Q.   Again, do you recognize 116.24-A?

25  A.   Yes.  It's the same photograph with the attached image

1    identifier and metadata.

2            MR. BILKOVIC:  Your Honor, at this time I would move

3    for admission into evidence of Government's proposed Exhibit

4    116.24 and 116.24-A.

5            THE COURT:  Okay.  With the objection noted, it's

6    admitted.

7            (Government's Exhibits 116.24 and 116.24-A received

8            into evidence.)

9            MR. BILKOVIC:  May I publish them to the jury?

10           THE COURT:  You may.

11   BY MR. BILKOVIC:

12   Q.  Can we start with the metadata on 116.24-A.  And what is

13   the capture time?

14   A.  December 5, 2016.

15   Q.  And what type of device?

16   A.  Apple iPhone 6 Plus.

17   Q.  And could we go to 116.24.  And again, this is a Sky

18   message?

19   A.  Yes, it is.

20   Q.  The moniker of the top individual texting is what?

21   A.  Marco Cdn.

22   Q.  And what are the text messages?

23   A.  "Is your captain willing to work?  I like to stick to my

24   projects."

25   Q.  And what is the moniker of the individual responding?

1  A.   6F35C7.

2  Q.   And what does the person text?

3  A.   "I'm waiting on his answer."

4  Q.   Can you turn to -- now, those were all in the fall of 2016;

5  correct?

6  A.   That's correct.

7  Q.   And just to acclimate the jury, I believe that the

8  Peregrine evidence with Dale Johnson began in May of 2016?

9  A.   Yes, it did.

10 Q.   Can you look at Government's Exhibit -- proposed Exhibit

11 115.11.

12 A.   Yes.

13 Q.   And do you recognize that?

14 A.   I do.

15 Q.   And what is that?

16 A.   This is another image located in Mr. Didani's iCloud of a

17 photograph taken of another device with a message thread on it.

18 Q.   And do you see a reflection in the background of the person

19 taking that photograph?

20 A.   I do.

21 Q.   And are there dates in here with respect to these text

22 messages?

23 A.   Yes, there are.

24 Q.   And what are the dates?

25 A.   June 3, 2018.

1    Q.   So we're not in 2016 anymore, we're now in 2018?

2    A.   That's correct.

3    Q.   And can you look at 115.11-A.  And can you tell me if you

4    recognize that?

5    A.   Yes, I do.

6    Q.   What is that?

7    A.   The same photograph with the image identifier and the

8    metadata attached.

9            MR. BILKOVIC:  Your Honor, at this time I would move

10   for admission into evidence of Government's proposed Exhibit

11   115.11 and 115.11-A.

12           THE COURT:  And they're also admitted over objection.

13           (Government's Exhibits 115.11 and 115.11-A received

14           into evidence.)

15           MR. BILKOVIC:  Can we start with 115.11-A.

16           May I publish them, Judge?

17           THE COURT:  Yes.

18           MR. FINK:  Your Honor, can we approach?

19           THE COURT:  Yes.

20           (At 1:03 p.m., sidebar on the record, out of the

21           hearing of the jury, as follows:)

22           MR. FINK:  Can we crop this picture, the picture of --

23   the bottom picture?  It appears that Mr. Didani may have taken

24   this picture while he was going to the bathroom.

25           MR. BILKOVIC:  I did not -- honestly, I did not --

```
 1              MR. FINK:  Could we crop the bottom?
 2              MR. BILKOVIC:  I can see if she can --
 3              THE COURT:  Which one is this?  The one with the
 4     (Indiscernible).
 5              MR. BILKOVIC:  Yeah.
 6              MR. FINK:  But, if you see the whole picture, you can
 7     see he's probably on a toilet.
 8              THE COURT:  Well, I couldn't tell.
 9              MR. BILKOVIC:  I couldn't.  Yeah.  It's just a foot.
10              THE COURT:  Yeah.
11              MR. FINK:  In mine, I see a leg.  Maybe I'm crazy.
12              MR. BILKOVIC:  Maybe I'll ask her if she can do it in
13     like a minute.
14              MR. FINK:  I'm sorry.  He pointed it out to me, so ...
15              MR. BILKOVIC:  How does he even know that --
16              THE COURT:  Well, how would he know that?
17              MR. FINK:  I'm laughing at it, because it was --
18              THE COURT:  It's not clear what's in the picture.
19              MR. FINK:  I agree with you.  I agree with you.
20              (Indiscernible)
21              MS. DICARLO:  I'm very happy to have it cropped.
22              MR. BILKOVIC:  That's fine obviously, Judge.
23              THE COURT:  How would we know?
24              MR. FINK:  I agree with you.  I only brought it at
25     sidebar, and I'm smiling as I say it because it might be
```

 1   embarrassing, so ...

 2           MR. BILKOVIC:  And, Judge, I've seen that picture

 3   probably a hundred times and I never noticed.

 4           MR. FINK:  I have no doubts that --

 5           MR. BILKOVIC:  So I apologize --

 6           MR. FINK:  -- do that on purpose, no doubt about that.

 7           MR. BILKOVIC:  We'll see if we can crop it before we

 8   put it up there.

 9           THE COURT:  Yeah, let's do that.

10           MR. BILKOVIC:  And I'll just ask him about the

11   metadata without --

12           MR. FINK:  That's totally fine.

13           THE COURT:  Okay.  All right.

14           MR. FINK:  Thank you.

15           (End of sidebar.)

16           MR. BILKOVIC:  Judge, may I have one moment?

17           THE COURT:  Yes.

18           (Briefly off the record.)

19           MR. BILKOVIC:  Judge, I agree with what Mr. Fink

20   raised at sidebar.  What I will do, because I think it might

21   take Ms. DiCarlo a couple minutes to just get into the

22   photograph, what I will do -- with the Court's permission I

23   would ask that I be allowed to ask Agent Leach some questions

24   about the exhibit, and then if we can get it in the format

25   that's necessary before we finish today then I'll do it at that

1    point.

2                THE COURT:  Yeah.  Reformat it, based on our sidebar,

3    and then it can be admitted later.

4                MR. BILKOVIC:  Thank you, your Honor.

5                THE COURT:  You can ask about -- you can ask questions

6    about it, but don't show it.

7    BY MR. BILKOVIC:

8    Q.   115.11-A, does that show metadata?

9    A.   Yes, it does.

10   Q.   And what is the capture time?

11   A.   June 3, 2018 at 3:11 p.m.

12   Q.   And now we're moving into 2018, right, so we're a couple

13   years ahead of other ones?

14   A.   Yes.

15               THE COURT:  3:11 p.m.?

16               THE WITNESS:  Yes, your Honor.

17               THE COURT:  Okay.  I'm sorry for interrupting.

18   BY MR. BILKOVIC:

19   Q.   Is there a device -- what is the type of device that took

20   the photograph?

21   A.   Apple iPhone X.

22   Q.   So iPhone 10 X?

23   A.   X.

24   Q.   Okay.  Can you look at 115.11.  And is there a message on

25   the application at the bottom of 115.11?

1   A.   Yes.

2   Q.   On the application itself?

3   A.   Yes.

4   Q.   Do you see an emoji to the left?

5   A.   Yes.

6   Q.   What is the emoji?

7   A.   A match with fire started.

8   Q.   And then what is the text that's contained there?

9   A.   "Secure burn in seven days."

10  Q.   If you could start with the text messages from the top,

11  could you read the first one.

12  A.   "For1 T.  It is almost 20 feet long."

13  Q.   And what is the date?

14  A.   June 3, 2018.

15  Q.   And what is the time?

16  A.   3:06 p.m.

17  Q.   Is there any writing next to -- anything next to the time?

18  A.   Yes.  There's a number 7 with a lower case D and then a

19  fire emoji.

20  Q.   And then is there a response?

21  A.   The response is, "No, brother."

22  Q.   Is that the same day?

23  A.   Yes, it is.

24  Q.   And does the person that sent the first text respond to

25  "No, brother"?

1    A.   Yes, they do.

2    Q.   And what is the text?

3    A.   "Ok, brother.  Then I'm not gonna worry about that part.

4    Whole thing gonna be 20X5X2 feet.  Huge."

5    Q.   And then does the person send another text?

6    A.   "Like a boat."

7    Q.   "Like a boat"?

8    A.   "Like a boat."

9         MR. BILKOVIC:  Judge, could I just -- I think we've

10   got it where I can put it up real quick.

11        THE COURT:  Well, have Mr. Fink walk over and look at

12    it, please.

13        MR. BILKOVIC:  Okay.

14        THE COURT:  Let's wait and you guys can --

15        MR. BILKOVIC:  We're going to wait.

16        THE COURT:  Yeah, let's wait, and you can show it to

17    me first, okay.

18        MR. BILKOVIC:  That's fine.  We'll wait.

19        THE COURT:  All right.  It's nothing we could have

20    anticipated.

21   BY MR. BILKOVIC:

22   Q.   Can you turn to 116 point -- I'm sorry, 116.20.  Tell me if

23   you recognize that?

24   A.   Yes, I do.

25   Q.   And what is that?

 1   A.  This is a photograph from Mr. Didani's seized iPhone from

 2   March 31, 2021, depicting a message thread on another encrypted

 3   device.

 4   Q.  And are there dates on this?

 5   A.  Yes, there are.

 6   Q.  And what are the dates?

 7   A.  June 19, 2018.

 8   Q.  Are there several messages on here?

 9   A.  Yes, there are.

10   Q.  And are they all dated June 19, 2018?

11   A.  Yes.

12           MR. FINK:  Your Honor, I'm going to object to some of

13   this foundation.  I'm not -- there was a mention -- part of the

14   foundation that this is another encrypted device or what have

15   you.  I'm not -- my objection is foundation to testify to that

16   when this appears to be something different than we've seen

17   before.

18           THE COURT:  Okay.  Do you want to respond to that?

19           MR. FINK:  Mr. Bilkovic pointed out to me the similar

20   emojis.  I think still based on that, what the service is or

21   how he knows that, I think is appropriate.

22           THE COURT:  I think so, too.

23           Go ahead and ask him those underlying questions, if

24   you would.

25           MR. BILKOVIC:  May I just have one moment to pull the

1    last exhibit?

2             THE COURT:  Yes.  You said it was a photo from an

3    iPhone or iCloud?

4             THE WITNESS:  This is a photograph from his seized

5    iPhone.

6             THE COURT:  IPhone, okay.

7    BY MR. BILKOVIC:

8    Q.  Can you look at 116.20.

9    A.  Yes, I have it.

10   Q.  And next to the times, similar to what was on 115.11, is

11   there any display next to the time of each message?

12   A.  Yes.  Next to the display it says "7d" followed by a fire

13   emoji.

14   Q.  And then at the very bottom, although it's partially

15   cropped off at the very bottom of 116.20, do you see anything

16   at the bottom of the phone?

17   A.  It appears to be the tip of a fire emoji.

18   Q.  And could you look at 115.11 and compare that.

19   A.  Yes, they're the same.

20   Q.  Does it appear to be the top of the flame that is depicted

21   also in 115.11?

22   A.  Yes.  And also the top of the camera emoji next to it.

23   Q.  And in 115.11 next to those is the words that is already

24   imprinted, this is not a text message, but it's on the device,

25   "Secure burn in seven days"?

1   A.   That's correct.

2   Q.   During your investigation, did you investigate this device

3   that had this type of messages on it?

4   A.   Yes.

5   Q.   And do you know what type of devices these are?

6   A.   EncroChat.

7        THE COURT:  They're what?

8        THE WITNESS:  EncroChat, E-N-C-R-O.

9   BY MR. BILKOVIC:

10  Q.   And how is it that you know they're EncroChat?

11  A.   By the messages with the burn and also the blue "E"

12  insignia at the top left.

13  Q.   Now, we're talking -- that we're talking on 116.20?

14  A.   Correct.

15  Q.   Can you see basically on 116.20 at the top left-hand side

16  there's a blue emoji with a white symbol inside?

17  A.   Yes.

18  Q.   Are you aware of what that symbol is for?

19  A.   That is a symbol of EncroChat.

20  Q.   And what is EncroChat?  I believe you testified to this the

21  first time, but just as a reminder to the jury what is

22  EncroChat?

23  A.   Yeah.  It's an encrypted software that is based out of

24  Europe and put onto these devices.

25       MR. BILKOVIC:  Your Honor, at this time I would again

1    move for admission into evidence of Government's proposed

2    Exhibit 116.20.

3             MR. FINK:  Withdraw the most recent objection, just

4     subject to the prior one.

5             THE COURT:  Okay.  Very well.  It's admitted.

6             (Government's Exhibit 116.20 received into evidence.)

7             MR. BILKOVIC:  And can we publish it to the jury.  If

8     you can just publish the top half.

9             THE COURT:  Yes.  Of 116.20?

10            MR. BILKOVIC:  Yes.

11   BY MR. BILKOVIC:

12   Q.  And the EncroChat symbol you're talking about, where is it

13   here?

14   A.  This blue "E" -- or this blue circle with the white "E"

15   inside of it.

16   Q.  Okay.  And the person that is one of the people involved in

17   this message, what is the name of that individual according to

18   this?

19   A.  Toni Stark.

20   Q.  And have you seen the name "Toni Stark" in other places

21   during your investigation?

22   A.  Yes, we have.

23   Q.  And is that a nickname associated with anybody in an

24   investigation?

25   A.  Yes, it is.

1    Q.   And who is that?

2    A.   Mr. Martin Tibbitts.

3    Q.   Can you go down to the bottom third of this.  You see the

4    line on June 19, 2018 at 1528 it says "Yes"?

5    A.   Yes, I do.

6    Q.   And then underneath is there a text message?

7    A.   Yes, there is.

8    Q.   What does it say?

9    A.   "Found out more info foe my drone."

10   Q.   I'm going to have you turn back to Government's Exhibit --

11   I'm going to switch gears here, Government's Exhibit 65.0 that

12   was previously admitted.

13   A.   Yes.

14   Q.   Again, just to remind the jury, what is that again?

15   A.   This is an extraction of a WhatsApp thread from

16   Mr. Didani's cell phone that was seized March 31st of 2021.

17   Q.   Are you familiar -- during your investigation, did you

18   become familiar with a company by the name of Bulletproof Zone?

19   A.   Yes, I did.

20   Q.   And can you briefly describe what Bulletproof Zone is?

21   A.   Bulletproof Zone is an American-based company that deals in

22   the production and sale of Kevlar reinforced clothing items.

23   Q.   Kevlar reinforced clothing items?

24   A.   Yes.

25   Q.   What is Kevlar?

1    A.   Kevlar is a material that helps stop bullets or ballistic

2    projectiles.

3    Q.   Can we take a look at Government's Exhibit 35.0.  Tell me

4    if you recognize that?

5    A.   Yes, I do.

6    Q.   What is that?

7    A.   This is a Certificate of Authenticity for records that were

8    previously provided to the Government by Bulletproof Zone.

9    Q.   And the records that were provided, how was it that those

10   records were obtained?

11   A.   Through administrative subpoenas to Bulletproof Zone.

12   Q.   Can you look at Government's proposed Exhibit 35.1 through

13   35.6.  So it would be basically 35.1, Government's proposed

14   Exhibit 35.2, proposed 35.3, proposed 35.4, proposed 35.5 and

15   proposed 35.6.  Tell me if you recognize those?

16   A.   Yes, I do.

17   Q.   And are those records that were provided by Bulletproof

18   Zone in response to the subpoena?

19   A.   Yes, they are.

20   Q.   And do those records -- are they covered under the

21   Certificate of Authenticity that Bulletproof Zone provided for

22   records?

23   A.   Yes.

24        MR. BILKOVIC:  Your Honor, at this time the Government

25   would move for admission into evidence of Government's proposed

 1    Exhibits 35.0 through 35.6.

 2              THE COURT:  Any objection?

 3              MR. FINK:  Your Honor, I believe the Government raised

 4    this in a pretrial motion, and I think you ruled that it's

 5    conditionally admissible as long as they laid the foundation in

 6    a prior order under 902, federal evidence 902.  I believe they

 7    have, so I have no objection.

 8              THE COURT:  Very well.  It's admitted.

 9              (Government's Exhibit 35.0 through 35.6 received into

10              evidence.)

11              MR. BILKOVIC:  Your Honor, can I publish some of the

12    pages from some of these to the jury?

13              THE COURT:  Yes, you may.

14              MR. BILKOVIC:  Thank you.

15              MR. BILKOVIC:  Can we start with Government's Exhibit

16    35.1.  And then divide this up by thirds for each one of these.

17    So if you could go to the top third.

18    BY MR. BILKOVIC:

19    Q.  And what are we looking at?

20              Now, again these are records provided by Bulletproof

21    Zone; right?

22    A.  That's correct.

23    Q.  Okay.  Can you kind of walk us through and use the mouse,

24    kind of walk us through what we're looking at here.

25    A.  So at the very top here you'll have the order number

1    specific to this order, the date.

2    Q.   What's the date?

3    A.   February 13, 2019, at 8:12 p.m.  And it was purchased

4    through their online store.  Next it states that this order has

5    been fulfilled and it gives the tracking number.  It gives the

6    delivery date and the product itemized below.  It was delivered

7    on March 18, 2019.

8    Q.   And what are the products that were part of this order?

9    A.   The products that were delivered on that date were a

10   BulletBlocker Level IIIA lightweight bulletproof flight jacket,

11   medium in size.  And, if you look over to the right, there were

12   three of those in quantity.  Below that is a BulletBlocker

13   Level IIA lightweight bulletproof flight jacket, size medium,

14   standard, and there was one purchased for that.

15   Q.   And is there customer information in here?

16   A.   There is.

17   Q.   What is the customer information?

18   A.   Customer is listed as -- I'm going to mispronounce this,

19   but I'll try my best.  Evgeni Haralanov.

20   Q.   Can you spell that for the record.

21   A.   E-V-G-E-N-I.  Last is H-A-R-A-L-A-N-O-V.

22   Q.   And is there a shipping address?  And I don't need the

23   whole address.  If you could give the city and state?

24   A.   Bartlett, Illinois.

25            THE COURT:  Bartlett?

```
 1              THE WITNESS:  Bartlett, Illinois.
 2              MR. BILKOVIC:  Can we go to 35.2.  And again, can we
 3     just zoom in on the top half of 35 -- or top third of 35.2.
 4     BY MR. BILKOVIC:
 5     Q.  And what are we looking at here?
 6     A.  This is an additional order number from Bulletproof Zone.
 7     BPZ-8336 is the order number.  And this was placed
 8     September 26, 2019, at 6:49 p.m. through the online store.
 9     Q.  And does it show whether the order was fulfilled?
10     A.  Yes.  It was delivered on Monday, October 28, 2019.  And
11     the order was for one BulletBlocker Level IIIA lightweight
12     bulletproof flight jacket, navy in color, size extra large.
13     Q.  And what is the amount that was paid?
14     A.  Total amount made by customer was $800.40.
15              MR. BILKOVIC:  And if we could go back up -- scroll
16     back up a little bit.
17     BY MR. BILKOVIC:
18     Q.  Do you see the customer name?
19     A.  Yes.
20     Q.  And what is the customer?
21     A.  Fatjon Bajrami.
22     Q.  Is there writing underneath that?
23     A.  There's two orders placed.
24     Q.  And is there a shipping address?
25     A.  There is.
```

1  Q.   Could you indicate the name of the shipping address where

2  it was being shipped to, the city and the phone number?

3  A.   1921 Songsparrow Court, Schaumburg, Illinois.

4  Q.   And the phone number?

5  A.   The phone number attached is 1 (312) 826-2131.

6           MR. BILKOVIC:  Your Honor, may we approach briefly?

7           THE COURT:  Yes.

8           (At 1:24 p.m. sidebar on the record, out of the

9           hearing of the jury, as follows:)

10           MR. BILKOVIC:  Is it possible to break at this point?

11  I've noticed that I did something out of order here, and it's

12  going to take me a few minutes to fix it.

13           THE COURT:  That's fine.  (Indiscernible)

14           MR. FINK:  Of course, sure.

15           MR. BILKOVIC:  I'm going to have another half hour or

16  so.  This is our longest witness, and we are actually -- we're

17  making progress.  We think we have a target day of when we're

18  going to finish.  So we're getting there.

19           THE COURT:  And are you going to finish with this

20  witness tomorrow?

21           MR. FINK:  Yeah.  We have all day tomorrow.

22           MR. BILKOVIC:  We have all day.

23           MR. FINK:  I can't see how this -- I wouldn't --

24           THE COURT:  You all are going to go to, I think, 3:30,

25  3:45?

```
 1          MR. BILKOVIC:  I have another witness lined up
 2   tomorrow in case we finish with Agent Leach tomorrow.
 3          THE COURT:  I'm just letting you know that I'm going
 4   to -- I know it says four o'clock, but we're --
 5          MR. BILKOVIC:  Our goal this week to stay on track is
 6   if we got further this round with Agent Leach we were making
 7   good progress.  And we have another witness ready to go
 8   tomorrow if we do finish.
 9          MR. FINK:  On this topic, since we're on the record
10   anyway, Mr. Bilkovic told me, just so you're aware, Judge, that
11   given I took this over five weeks in if I need to blend some of
12   my cross from this and the third he's going to give me some
13   latitude so the Court knows --
14          MR. BILKOVIC:  Some of the exhibits we're giving him
15   based on questions.  So he has not had time to fully look at
16   those.  So we're not --
17          MR. FINK:  So I appreciate that very much.
18          THE COURT:  Okay.  That's fine.
19          MR. FINK:  Thank you.  Thank you.
20          (End of sidebar.)
21          THE COURT:  I'm going to send the jury home today.
22   Remember that you're not permitted to talk about the case among
23   yourselves or with anyone else.  And don't use the internet or
24   any social media to find out anything about the case, anyone
25   involved in the case or anyplace involved in the case.  And
```

 1   leave your tablets in the manner you've been leaving them

 2   before.

 3           And we're coming back tomorrow at 9:30; is that right?

 4           MR. BILKOVIC:  Yes, your Honor.

 5           MR. FINK:  Yes, your Honor.

 6           THE COURT:  And we're going to be here tomorrow until

 7   close to -- well, it looks like 3:30, okay.

 8           All right.  So you may step down.  Thank you.

 9           (The jury left the courtroom at 1:26 p.m.)

10           THE COURT:  You may step down, but please don't

11   discuss your testimony with anybody; okay?

12           THE WITNESS:  Yes, your Honor.

13           THE COURT:  Okay.  Thank you.

14           (End of excerpt at 1:27 p.m.)

15                               _   _   _

16

17

18

19

20

21

22

23

24

25

```
1
2
3                    CERTIFICATE OF COURT REPORTER
4
5          I, Sheila D. Rice, Official Court Reporter of the
6    United States District Court, Eastern District of Michigan,
7    appointed pursuant to the provisions of Title 28, United States
8    Code, Section 753, do hereby certify that the foregoing pages
9    is a correct transcript from the record of proceedings in the
10   above-entitled matter.
11
12
13                         s/Sheila D. Rice
                           Sheila D. Rice, CSR-4163, RPR, RMR, FCRR
14                         Federal Official Court Reporter
                           United States District Court
15                         Eastern District of Michigan
16
     Date:  04/11/2025
17   Detroit, Michigan.
18
19
20
21
22
23
24
25
```