UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | : | 21 Cr. 20264 |
| v. | : | Hon. Denise Page Hood |
| YLLI DIDANI | : | |
| Defendant. | : | |

**DEFENDANT'S SUPPLENTAL MOTION TO DISMISS
COUNT TWO OF THE SUPERSEDING INDICTMENT**

Defendant Ylli Didani, through undersigned counsel respectfully moves this Court to Dismiss Count Two of the Superseding Indictment because as explained herein, the Court lacked subject matter jurisdiction over the drug seizures related to the Anisha R., M/V Cartagena, and Jean Gabriel. In addition, Counts One and Three must also be dismissed because of the unfair prejudice resulting from the introduction at trial of inadmissible evidence as to Count Two.

Pursuant to Local Rule 7.1 undersigned defense counsel consulted with the Government, which did not concur in the relief requested.

Respectfully submitted,

*Robert Feitel*

_____

Robert Feitel, Esquire
Counsel for Defendant Ylli Didani

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | : | 21 Cr. 20264 |
| v. | : | Hon. Denise Page Hood |
| YLLI DIDANI | : | |
| Defendant. | : | |

**BRIEF IN SUPPORT OF
DEFENDANT'S SUPPLENTAL MOTION TO DISMISS
COUNT TWO OF THE SUPERSEDING INDICTMENT**

**INTRODUCTION**

This case apparently marks the first occasion in the history of American jurisprudence that a defendant was charged with drug trafficking on the high seas under the Maritime Drug Law Enforcement Act (MDLEA) when the only seizures took place in the domestic waters of other countries. The lack of any similar prior prosecutions is not surprising. The entire structure of the MDLEA – from its title to the mechanisms for boarding "covered vessels" – points to the inexorable conclusion that the statute requires an actual drug seizure on the high seas.

In this case, drugs that were allegedly part of the charged conspiracy were in the custody of foreign law enforcement officials in the ports of Panama and Rotterdam when the United States learned of their existence and attempted to connect them to defendant Ylli Didani. This court previously denied a motion to

2

dismiss for lack of subject matter jurisdiction based upon the United States' failure to obtain timely consent from the flag nations of Liberia, Malta and Germany to board the vessels, ruling that the "MDLEA jurisdictional element may be satisfied by consent of a foreign nation provided at any time before trial." See DE 93 at p. 12. That decision will be appealed.[1]

In this case, however, the Court also lacked subject matter jurisdiction based upon a totally independent reason: the State Department Certifications relied upon by the Court in this case to establish jurisdiction under the MDLEA came from the wrong countries: Liberia, Malta, and Germany could not have consented to the enforcement of United States law on the Anisha R., M/V Cartagena, and Jean Gabriel because the drugs were no longer on board the vessels at the time consent was given, but rather were in the sole and exclusive custody of law enforcement agents from Panama and Rotterdam. Not even Panama or Rotterdam could have given consent, but the United States did not even attempt to obtain certifications from those countries. [2]

No provision in the MDLEA – and no principle of American constitutional or international law - authorizes Liberia, Malta and/or Germany to consent to the

---

[1] The defendant also has a pending Motion For Judgement Of Acquittal filed by defense counsel Wade Fink. See DE 204.

[2] This issue was tangentially raised in a *pro se* Motion To Dismiss Hearing Regarding Validity of Certificates, filed as ECF 118, but does not appear to have been decided by this Court.

retroactive enforcement of the United States law under the MDLEA in the territory of a foreign nation. This error was made exponentially worse by the admission of evidence of alleged "overt acts" pertaining to searches of two other vessels – the MV Jenny and MV Star Care - that were likewise not boarded in international waters and for which no formal State Department Certificates were obtained.

As a result, Count Two of the Superseding Indictment must be dismissed for lack of subject matter jurisdiction. Moreover, the defendant's convictions on Counts One and Three must also be dismissed because of the unfair prejudice that resulted from the admission of the evidence concerning the seizures from the vessels.

### SUMMARY OF THE RELEVANT FACTS

As this Court knows from prior pleadings and the trial of this case, Count Two of the Superseding Indictment charges the defendant with a violation of the MDLEA, in violation of 46 United States Code Sections 70503(a) and 70506(b). The prosecution alleged the following with respect to three vessels where drugs were seized in the ports of Rotterdam and Panama.

**MV MSC Anisha R** is a vessel registered in the Republic of Liberia. On August 19, 2019, Dutch law enforcement authorities in the port of Rotterdam, the Netherlands located approximately seven hundred and fifty-three (753) kilograms of cocaine on the vessel, which were removed from the ship. According to the

4

Certification prepared by the United States Department of State, on October 27, 2021, the Government of Liberia advised that it had "no objections . . . to yielding jurisdiction" to the United States.

**MV MSC Anisha R** was searched again in the Port of Panama on October 30, 2019, at which time seven hundred and seventy-six (776) kilograms of cocaine were located and removed from the ship. According to the Certification prepared by the United States Department of State, on August 16, 2021, the Government of Liberia advised that it did not object "to the enforcement of the laws of the United States" on the vessel.

**MV Jean Gabriel** is a vessel registered in the Republic of Malta. On February 22, 2020, law enforcement officials in the Port of Rotterdam, Netherlands located six hundred and sixty-four (664) kilograms of cocaine, which were removed from the vessel. According to the Certification prepared by the United States Department of State, on December 21, 2021, the Republic of Malta "waived their jurisdiction for the purposes of the enforcement of United States law" with respect to the vessel.

**MV Cartagena Express** is a vessel registered in the Republic of Germany. On April 7, 2021, law enforcement authorities in the Port of Rotterdam, Netherlands located one thousand (1,000) kilograms of cocaine, which were removed from the vessel. According to the Certification prepared by the United

5

States Department of State, on January 31, 2022, the Government of Germany "raised no objections to the enforcement of the law of the United States of America" with respect to the vessel.

The State Department certifications for these vessels are attached hereto as an Exhibit 1.

The Government also alleged as an "overt act" in the Superseding Indictment, the seizure of eleven hundred (1100) kilograms on the MV Jenny in the Port of Bilboa, Spain by law enforcement on April 20, 2020. Evidence concerning the MV Jenny was introduced at the trial of the case, but the Government never produced any Certification by the State Department attesting that the flag vessel nation authorized the enforcement of United State law with respect to the vessel. Similarly, the Government alleged that the seizure of eleven hundred (1100) kilograms aboard the MV Star Care on September 21, 2020 in the Port of Dover in the United Kingdom, was also an overt act in furtherance of the conspiracy. The prosecution did not obtain a State Department Certification for this vessel (and evidence concerning the shipment was introduced at the trial of this case).

## LEGAL ANALYSIS

### I.
### This Challenge To Subject Matter Jurisdiction Is Timely

The defendant is making a "factual challenge" to the Court's jurisdiction in

this case with respect to Count Two of the Superseding Indictment because the evidence adduced at trial did not establish that there was jurisdiction in this tribunal to bring the MDLEA charge. See United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)(a "factual attack" to subject matter jurisdiction challenges the factual existence of subject matter jurisdiction"). The defendant's challenge to this Court's subject matter jurisdiction is properly before the Court, even after his conviction at trial.

Federal Rule of Criminal Procedure 12(b)(2) specifically provides that a "[a] motion that the court lacks jurisdiction may be raised at any time while the case is pending." The Sixth Circuit has unambiguously concluded that:

> if an indictment does not charge a cognizable federal offense, then a federal court lacks jurisdiction to try a defendant for violation of the offense. . . . . Lack of subject matter jurisdiction may be raised at any time in the course of a proceeding and is never waived. Matters of jurisdiction may be raised at any time, because if a court lacks subject matter jurisdiction, it does not have power to hear the case.

United States v. Adesida, 129 F.3d 846, 850 (6th Cir. 1997). This rule applies to challenges to subject matter jurisdiction under the MDLEA, which cannot be waived, as noted in the following decision:

> One of [the defense] arguments, however, goes to the district court's subject-matter jurisdiction and cannot be waived: the argument that the vessels in question are not "subject to the jurisdiction of the United States" within the meaning of the MDLEA. 46 U.S.C. § 70502(c).

United States v. Miranda, 780 F.3d 1185, 1189 (D.C. Cir. 2015). Accord United

States v. Prado, 933 F.3d 121, 153 (2d Cir. 2019) (defendants could challenge jurisdiction on appeal after entering guilty pleas where "the government was unable to demonstrate" the requisite proof of statelessness to establish jurisdiction under the MDLEA and "there was no mention of . . . statelessness during the plea proceedings").[3]

Thus, the instant motion to dismiss for lack of subject jurisdiction is properly before this Court.

## II.
## The Certificates Presented To The Court Do
## Not Establish Jurisdiction Under the MDLEA

The fundamental question posed by this motion to dismiss is not whether the MDLEA criminalizes drug trafficking on the high seas, but whether it can criminalize the possession of drugs located in the territory of a foreign nation when consent is not obtained from that country. The answer is an emphatic no.

### 1. *The United States Does Not Have Jurisdiction Over Crimes Committed In The Territory Of Foreign Nations*

As an initial matter, international law has long recognized that a nation exercises exclusive sovereignty over its own territory. As the Supreme Court noted

---

[3] Moreover, the Court must be independently satisfied that jurisdiction exits because it cannot be stipulated to. Bush v. United States, 703 F.2d 491, 494 (11th Cir.1983) ("The mere fact that the parties stipulated to jurisdiction does not automatically vest authority in the district court to adjudicate all the issues presented, for subject matter jurisdiction cannot be assumed by the court nor can it be waived by the parties."). See also United States v. Iguaran, 821 F.3d 1335, 1337 (11th Cir. 2016)(whether a vessel is subject to the jurisdiction of the United States cannot be stipulated or admitted to).

more than two hundred years ago:

> **The jurisdiction of the nation within its own territory is necessarily exclusive and absolute**. It is susceptible of no limitation not imposed by itself. Any restriction upon it, deriving validity from an external source, would imply a diminution of its sovereignty to the extent of the restriction, and an investment of that sovereignty to the same extent in that power which could impose such restriction.
>
> **All exceptions, therefore, to the full and complete power of a nation within its own territories, must be traced up to the consent of the nation itself.** They can flow from no other legitimate source.

The Schooner Exch. v. McFaddon, 11 U.S. 116, 136 (1812)(emphasis added). The rule of exclusive sovereignty extends past the physical territory of a nation into its territorial waters -originally defined as the distance that artillery could fire from its shore – known as the "cannon shot" rule. See Church v. Hubbart, 6 U.S. (2 Cranch) 187, 234 (1804) ("The authority of a nation within its own territory is absolute and exclusive. The seizure of a vessel within the range of its cannon by a foreign force is an invasion of that territory, and is a hostile act which it is its duty to repel").

The MDLEA does not alter these fundamental principles in a manner which would allow this Court to exercise jurisdiction over the drugs seized in foreign ports of call based solely upon the consent of the flag nation of the vessel that transported the shipment.

**2. *The MDLEA Does Not Reach Criminal Conduct Committed In The Territory Of Foreign Nations And No Nation Can Consent To The Enforcement Of United States Law Under Such Circumstances***

The MDLEA makes it a crime to:

knowingly or intentionally ... possess with intent to manufacture or distribute, a controlled substance" on board "a [covered] vessel subject to the jurisdiction of the United States (or conspire to do so)

46 United States Code Sections 70503(a)(1) and (e)(1). A "covered vessel" in turn (and for all relevant purposes for this criminal case, includes a "vessel subject to the jurisdiction of the United States." 46 U.S.C. Section 70503(E)(1).

The MDLEA finds it authorization under the Define and Punish Clause, U.S. Const. art. I, § 8, cl. 10. That clause grants Congress the authority "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations." See United States v. Ballestas, 795 F.3d 138, 146 (D.C. Cir. 2015). Accord United States v. McLeal, 726 F. Supp. 3d 519, 531 (E.D. Va. 2023)(the "parties agree that Congress's authority to define substantive offenses under the MDLEA derives from the Define and Punish Clause of the Constitution").

Despite its expansive reach on the high seas, however, the MDLEA does not reach into the territory of foreign nations with respect to seizures on foreign flag registered vessels, such as the ones identified by the Government in this case – even when the flag vessel nation consents. In United States v. Bellaizac-Hurtado,

700 F.3d 1245 (11th Cir. 2012), the United States coast guard observed a Panamanian flag vessel sailing without lights in the coastal waters of Panama. The coast guard alerted the Panamanian navy which pursued the vessel until the crew abandoned the ship and fled into the adjacent jungle. The Panamanian authorities recovered seven hundred and sixty (760) kilograms of cocaine and arrested four suspects. A federal grand jury in Miami indicted the defendants under the MDLEA and "the Foreign Ministry of the Republic of Panama consented to the prosecution of the four suspects in the United States." Bellaizac-Hurtado, 700 F.3d at 1248.

The Court of Appeals conducted an extensive review of the relationship between customary international law and the "offenses clause" in the United States Constitution and concluded that as a matter of constitutional jurisprudence, the MDLEA did not reach alleged "criminal activity on board a flag registered vessel in the territorial waters of a foreign nation." Id.

Under the clear meaning of *Bellaizac-Hurtado*, even consent from the flag vessel nation does not create jurisdiction in the federal courts in the United States for a seizure in the territorial waters of a foreign nation.

This limitation on the exercise of federal court subject matter jurisdiction was expanded upon in United States v. Davila-Mendoza, 972 F.3d 1264, 1269 (11th Cir. 2020). In *Davila- Mendoza*, the United States coast guard located a stalled "fast boat" in the territorial waters of Jamaica and with the consent of the

Jamaican Government searched the vessel and found more than three thousand bales of marijuana. With the permission of the Jamaican government, the coast guard arrested the crew, who claimed that the boat was registered in Costa Rica. 972 F.3d at 1267.

The United States charged the crew members under a specific subsection of the MDLEA that applies to vessels located in the territorial waters of another country. It states that a covered vessel includes:

> A vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States.

42 United States Code Section 70502(c)(1)(E). Jamaica consented to the enforcement of United States law against the crew members. Id. at fn. 1.

The defendants moved to dismiss the Indictment, claiming that the MDLEA did not reach this conduct, despite Jamaica's consent to enforcement of United States law. The Eleventh Circuit agreed. It ruled that Congress did not have the power under the "foreign commerce clause" and/or "necessary and proper clause" to criminalize drug trafficking onboard a flag vessel registered to another country when located in the territorial waters of a foreign nation.

The Court reasoned that:

> the question in this case, which again presents an as applied challenge, is whether there is a rational basis for concluding that the drug-trafficking conduct here in the territorial waters of a foreign nation, by foreign nationals using a foreign-registered vessel, of drugs not bound for the United States, substantially affects United States commerce with foreign nations. The

record contains no evidence to support this conclusion. And the government's attenuated argument that wholly foreign drug trafficking impacts the international drug trade, which could impact United States commerce with foreign nations, requires a chain of inferences like that rejected by the [a different] court.

United States v. Davila-Mendoza, 972 F.3d at 1276.

In the final analysis, the Court noted that the Government's theory would open the door to the prosecution of criminal cases – like this one – that had no relationship to the United States, which risked "potentially intruding on the sovereignty of other Nations, and bringing foreign nationals into the United States for prosecution based solely on extra-territorial conduct when the United States was neither a party to, nor a target of, the commerce." 972 F.3d at 1276–77.

### *The Government's Certifications Did Not Establish Jurisdiction In This Case*

Under the MDLEA, the determination of jurisdiction is "not an element of an offense," but rather is a "preliminary question" of law to be determined solely by the trial judge." 46 United States Code Section 70504(a). The Government has the burden of proving that the vessel was subject to the jurisdiction of the United States." See, e.g., United States v. Perlaza, 439 F.3d 1149, 1160 (9th Cir. 2006) (for the Government to prosecute someone under the MDLEA, the Government must satisfy ... [the] 'statutory jurisdiction' requirement."). Although the MDLEA states that the certification "conclusively" establishes jurisdiction, a defendant can nonetheless challenge the certificate's compliance with United States law. See,

e.g., United States v. Martinez, 640 Fed. Appx 18, 23-24 (1st Cir. 2018).

In this case, prior to the trial, the prosecution moved the Court for a pretrial determination that the vessels MV Anisha R, CGM Jean Gabriel, and the Cartagena Express were "subject to the jurisdiction of the United States." In support of the request, the prosecution presented State Department Certifications attesting that the Government of Liberia, Malta and Germany had consented to the exercise of United States jurisdiction over the seized drugs. See DE 57. The Government argued that:

> the Secretary of State's certifications prove conclusively that the three vessels in this criminal case are vessels subject to the jurisdiction of the United States. Because the Secretary of States' Certifications make clear that the Government of the Republic of Liberia (MSC Anisha R), the Government of the Republic of Malta (CMA CGM Jean Gabriel), and the Government of Germany (Cartegena Express), waived their right to exercise primary jurisdiction over the respective vessels, 46 U.S.C. § 70502(c)(1)(C), and because the waivers by the Government of the Republic of Liberia, the Government of the Republic of Malta, and the Government of Germany are proved conclusively by the respective Certifications, 46 U.S.C. § 70502(c)(2)(B), as it relates to count two of the superseding indictment, the MSC Anisha R, the CMA CGM Jean Gabriel, and the Cartegena Express are vessels subject to the jurisdiction of the United States.

In an Order issued on April 17, 2024 the Court granted the Government's motion. The Court concluded that the Certificates were sufficient.

> The Government asserts that the United States obtained consent from the flagged nations alleged in Count Two of the superseding indictment (Liberia, Malta and Germany) by January 2022, prior to the March 2022 indictment by the grand jury. In addition, the Government asserts the Secretary of State has certified such on July 21, 2022. Based on the Government's submissions, it has shown that the foreign flagged nations

14

have consented to the United States' enforcement of the statute and that the Secretary of State has so certified.

See DE 93; *Order Granting Motion For Pretrial Determination Of Jurisdiction* at pp. 16-17.

Even assuming *arguendo*, however, that the Certifications accurately reflect the information provided to these nations and that consent was actually obtained, this Court still lacks jurisdiction over the MDLEA charge in Count Two of the Superseding Indictment because Liberia, Malta, and Germany did not have control, custody, or authority over the drugs after they were seized in the ports of Panama or Rotterdam.

Moreover, under the reasoning of *Davila-Mendoza,* not even the consent of Panama and/or Rotterdam would have created subject jurisdiction in the United States for those shipments because they were located in the territory of a foreign nation when seized – or outside the effective jurisdiction of the MDLEA. This Court's ratification of the Certificates constituted a wholly *ultra vires* judicial recognition that Liberia, Malta, and Germany had the power to authorize the application of United States law to drugs located in the territory – and under the custody and control - of Panama and Rotterdam. This is precisely the type of interference with the sovereignty of other nations that should be avoided at all costs, particularly by the judicial branch, which has no role in United States foreign policy.

15

### 3. *The Evidence Of Drug Seizures Without Any State Department Certifications Was Inadmissible And Reversible Error*

Even if this Court were to conclude that evidence concerning the seizures of drugs removed from MV Anisha R, CGM Jean Gabriel, and the Cartagena Express were somehow "subject to the jurisdiction of the United States," the jury verdict would still need to be overturned, and a mistrial declared.  The admission of substantive evidence concerning drug seizures from the vessels the Jenny and the Star Care were not authorized by the provisions of the MDLEA because there were no accompanying State Department certifications.

Count Two of the Superseding Indictment alleges as over acts the seizures from the: (1) *Anisha R* - paragraphs 2-13; (2) *Jean Gabriel* - paragraphs 14-18; (3) *Cartagena Express* - paragraphs 19-26; (4) *Jenny* - paragraphs 27-30; and (5) *Star Care* – paragraphs 31-37.

The United States did not present any State Department certifications concerning the seizures from the Jenny and Star Care to this Court and no pre-trial ruling was made that that the seizures were subject to the application of United States law. The failure precludes the introduction of any evidence concerning these seizures because this Court has no legal authority over the events:

> The 'on board a vessel subject to the jurisdiction of the United States' portion of the MDLEA as a congressionally imposed limit on courts' subject matter jurisdiction, akin to the amount-in-controversy requirement contained in 28 U.S.C. § 1332." . . . . **Thus, "for a district court to have adjudicatory authority over a charge that a defendant conspired to**

**violate the substantive crime defined in [the MDLEA], the Government must preliminarily show that the conspiracy's vessel was, when apprehended, subject to the jurisdiction of the United States."**

United States v. Iguaran, 821 F.3d 1335, 1336 (11ᵗʰ Cir. 2016)(internal quotations omitted)(emphasis added).

There was no evidence before this Court that with respect to the Jenny and/or the Star Care that the State Department even attempted to obtain consent from either the flag nation or the country where the drugs were located. The admission of this substantive evidence against the defendant was thus reversible error because there was no determination by the Court that the seizures were subject to domestic United States law. This error was exponentially worse because the jury was never told – and could not have discerned – that there were State Department certificates for some of the seizures but not for others.

The verdict form in this case asked the jury to determine whether the defendant was "guilty" or "not guilty" of the Conspiracy charged in Count Two and to make a determination as to drug quantity. See DE 202 (Jury Verdict form). The jury was not asked to make any specific findings and so it is possible that the guilty verdict was based entirely on inadmissible evidence relating to the Jenny and the Star Care – seizures for which there was no evidence that jurisdiction under the laws of the United States existed.

The possibility that the verdict was based upon tainted evidence is sufficient

17

grounds to declare a mistrial as to Count Two and the unfair prejudice would render the verdicts for Counts One and Three likewise void.

## CONCLUSION

For all of these reasons, the defense respectfully requests that this Motion To Dismiss be granted. It would constitute error of the gravest sort to permit the verdict as to Count Two to stand in light of the numerous legal errors that infected the trial proceedings. As a result, the remaining counts must also be dismissed because of the unfair prejudicial spillover effect at trial.

Respectfully submitted,

*Robert Feitel*

_____
Robert Feitel, Esquire
Law Office of Robert Feitel
1300 Pennsylvania Avenue, N.W.
#190-515
Washington, D.C.  20008
D.C. Bar No. 366673
202-450-6133 (office)
202-255-6637 (cellular)
RF@RFeitelLaw.com

Counsel for defendant Ylli Didani

18

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF to the prosecutors assigned to this case, Mark Bilkovic and Timothy McDonald, this 23rd day of September, 2025.

*Robert Feitel*

_____

Robert Feitel