**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA

        Plaintiff,

v.

                                                 Case No. 21-cr-20264

YLLI DIDANI,
                                            Honorable Denise Page Hood

        Defendant.

_____/

**ORDER DENYING DEFENDANT YLLI DIDANI'S
MOTION FOR JUDGMENT OF ACQUITTAL (ECF No. 204)
AND MOTION TO DISMISS COUNT TWO OF SUPERSEDING
INDICTMENT (ECF No. 214)**

This matter is before the Court on Defendant Ylli Didani's Motion for

Judgment of Acquittal and a post-trial Motion to Dismiss Count Two of the

Superseding Indictment. (ECF Nos. 204, 214). Briefs have been filed. For the

reasons set forth below, the Motions are denied.

**I.      BACKGROUND**

Didani was indicted on April 21, 2021 of one count of Conspiracy to

Distribute Controlled Substances of five kilograms or more of cocaine in violation

of 21 U.S.C. §§ 841(a)(6) and 846, and a Forfeiture Allegation. (ECF No. 1) On

March 16, 2022, a Superseding Indictment was filed charging Didani with: Count

One – Conspiracy to Distribute Controlled Substances, 21 U.S.C. §§ 841(a)(1) and

846; Count Two – Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance on Board a Vessel Subject to the Jurisdiction of the United States under the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 70503(a) and 70506(b), 21 U.S.C. § 960(b)(1)(B); and Count Three – Conspiracy to Launder Monetary Instruments, 18 U.S.C. § 1956(h).

On April 17, 2024, an Order denying Didani's Motions to Dismiss Counts One, Two, and Three of the Superseding Indictment was entered.  (ECF No. 93)  An Order denying Didani's Motion to Suppress cell phone evidence was also entered on May 8, 2024.  (ECF No. 95)

The jury trial began on February 11, 2025.  On May 16, 2025, the jury rendered its verdict finding Didani guilty on all the charged counts.  (ECF No. 202) In his Motion for Judgment of Acquittal, Didani asserts that the convictions on Counts One and Three cannot stand because there was no sufficient evidence at trial to support the finding of guilt.  As to Count Two, Didani asserts that there was not sufficient evidence to show:  that the relevant foreign nation consented to jurisdiction over the vessels at the time of the offense; there was sufficient nexus to the United States; that Didani conspired with someone on the vessel; and, that Didani directed the cocaine shipments.  Didani again argues that the MDLEA is unconstitutional.  In

2

a separate motion filed by new counsel[1], Didani once more seeks to dismiss Count II of the Superseding Indictment.  (ECF No. 214)

## II.   ANALYSIS

### A.   Motion for Judgment of Acquittal

#### 1.   Rule 29 Standard of Review

Rule 29 of the Federal Rules of Criminal Procedure provides that a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). To support a motion for judgment of acquittal the court must consider, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Caseer*, 399 F.3d 828, 839-40 (6th Cir. 2005); *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).  A defendant claiming insufficiency of the evidence bears a heavy burden.  *United States v. Jackson*, 473 F.33d 660, 669 (6th Cir. 2007).  The court is bound to make all reasonable inferences and credibility choices in support of the jury's verdict.  *Id*. at 669-70.  The question is merely one of legal sufficiency; the court does not substitute its judgment for that of the jury, independently weighs the evidence, or judge the credibility of trial witnesses.  *United States v. Ramirez,*

---

[1] Didani proceeded *pro se* at the beginning of trial.  During trial, at Didani's request, stand-by counsel, Wade Fink, was appointed to represent Didani for the remainder of trial.  On August 19, 2025, Robert A. Feitel filed an appearance to represent Didani as retained counsel.  (ECF No. 213)

635 F.3d 249, 255-56 (6th Cir. 2011). There is a strong presumption in favor of sustaining a jury conviction. *United States v. Peters,* 15 F.3d 540, 544 (6th Cir. 1994).

### 2. Counts One (Conspiracy to Distribute Controlled Substances) and Three (Conspiracy to Launder Monetary Instruments)

Didani argues as to Counts One (Conspiracy to Distribute Controlled Substances) and Three (Conspiracy to Launder Monetary Instruments), that based on the evidence presented at trial, no rational factfinder could conclude there was sufficient connection to the United States. The Government responds that in some respects, Counts One and Three are linked because the specified unlawful activity alleged in the money laundering conspiracy charged in Count Three mirrored the drug conspiracy in Count One.

The Court gave the following jury instructions at trial as to the charged Counts One and Three of the Superseding Indictment:

(1) Count One of the Superseding Indictment charges the defendant with conspiracy to possess with intent to distribute and to distribute a controlled substance. It is a crime for two or more persons to conspire, or agree, to commit a drug crime, even if they never actually achieve their goal.

(2) A conspiracy is a kind of criminal partnership. For you to find the defendant guilty of the conspiracy charge, the government must prove each and every one of the following elements beyond a reasonable doubt:

(A) First, that two or more persons conspired, or agreed, to possess with intent to distribute or distribute a controlled substance.

(B) Second, that the defendant knew of the conspiracy and its objects, aims or goals, and

(C) Third, that the defendant joined the conspiracy with the intent that at least one of the conspirators engage in conduct that satisfies the elements of possess with intent to distribute or to distribute a controlled substance.

(3)　Now I will give you more detailed instructions on some of these terms.

(A) With regard to the first element, a criminal agreement, the government must prove that two or more persons conspired, or agreed, to cooperate with each other to possess with intent to distribute a controlled substance or that two or more persons conspired, or agreed, to cooperate with each other to distribute a controlled substance.

(1)　Proof of a conspiracy does not require proof of any formal agreement, written or spoken. Nor does this require proof that everyone involved agreed on all the details. But proof that people simply met together from time to time and talked about common interests, or engaged in similar conduct, is not enough to establish a criminal agreement. Nor is a single transaction between a buyer and seller sufficient to establish the existence of a conspiracy. These are things that you may consider in deciding whether the government has proved an agreement. But without more they are not enough.

(2)　What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people, to cooperate with each other to possess with intent to distribute a controlled substance or to distribute a controlled substance. This is essential.

(3) An agreement can be proved indirectly, by facts and circumstances which lead to a conclusion that an agreement existed. But it is up to the government to convince you that such facts and circumstances existed in this particular case.

(B)　With regard to the second and third elements, the defendant's connection to the conspiracy, the government must prove that the defendant knew of the conspiracy and its objects, aims or

goals and joined the conspiracy with the intent that at least one of the conspirators engage in conduct that satisfies the elements of possession with intent to distribute a controlled substance or distribution of a controlled substance.

(1)  Proof of conspiracy does not require proof that the defendant knew everything about the conspiracy, or everyone else involved, or that he was a member of it from the very beginning. Nor does it require proof that the defendant played a major role in the conspiracy, or that his connection to it was substantial. A slight role or connection may be enough.

(2)  Further, this does not require proof that the defendant knew the drug involved was cocaine. It is enough that the defendant knew that it was some kind of controlled substance. Nor does this require proof that the defendant knew how much cocaine was involved. It is enough that the defendant knew that some quantity was involved.

(3)  But proof that the defendant simply knew about a conspiracy, or was present at times, or associated with members of the group, is not enough, even if he approved of what was happening or did not object to it. Similarly, just because the defendant may have done something that happened to help a conspiracy does not necessarily make him a conspirator. These are all things that you may consider in deciding whether the government has proved that the defendant joined a conspiracy. But without more they are not enough.

(4)  A defendant's knowledge can be proved indirectly by facts and circumstances which lead to a conclusion that he knew the conspiracy's main purpose. But it is up to the government to convince you that such facts and circumstances existed in this particular case.

Sixth Circuit Pattern Criminal Jury Instruction 14.05.  As to Count Three, the following jury instructions were given:

6

(1) Count Three of the Superseding Indictment accuses the defendant of a conspiracy to commit the crime of money laundering in violation of federal law. It is a crime for two or more persons to conspire, or agree, to commit a criminal act, even if they never actually achieve their goal.

(2) A conspiracy is a kind of criminal partnership. For you to find the defendant guilty of the conspiracy charge, the government must prove each and every one of the following elements beyond a reasonable doubt:

   (A) First, that two or more persons conspired, or agreed, to commit the crime of money laundering. In a moment, I will define that offense.

   (B) Second, that the defendant knowingly and voluntarily joined the conspiracy.

(3) If you are convinced that the government has proved all of the elements of conspiracy to launder monetary instruments, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

Sixth Circuit Pattern Criminal Jury Instruction 3.01A. The following money laundering instructions as to elements of international transportation were given at trial:

(1) Now I will define for you the offense of laundering monetary instruments. The offense of laundering monetary instruments has the following elements:

   (A) First, that an individual transported, transmitted, or transferred a monetary instrument or funds.

   (B) Second, that the individual's transportation, transmission, or transfer was from a place in the United States to or through a place outside the United States.

   (C) Third, that the individual's transportation, transmission, or transfer of the monetary instrument or funds was done with the intent to promote the carrying on of a conspiracy to possess with intent to distribute and distribute a controlled substance.

7

(2)    Now I will give you more detailed instructions on one of these terms. The term "monetary instruments" means currency of the United States, or of any other country, personal checks, or bank checks.

Sixth Circuit Pattern Criminal Jury Instruction 11.03. The following instructions were further given as to the elements:

(1)    With regard to the first element – a criminal agreement - the government must prove that two or more persons conspired, or agreed, to cooperate with each other to commit the crime of money laundering.

(2)    This does not require proof of any formal agreement, written or spoken. Nor does this require proof that everyone involved agreed on all the details. But proof that people simply met together from time to time and talked about common interests, or engaged in similar conduct, is not enough to establish a criminal agreement. These are things that you may consider in deciding whether the government has proved an agreement. But without more they are not enough.

(3)    What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people, to cooperate with each other to commit the crime of money laundering. This is essential.

(4)    An agreement can be proved indirectly, by facts and circumstances which lead to a conclusion that an agreement existed. But it is up to the government to convince you that such facts and circumstances existed in this case.

Sixth Circuit Pattern Criminal Jury Instruction 3.02. As to proof of the conspiracy, the following jury instructions were given:

(1)    Proof of conspiracy does not require that the defendant knew everything about the conspiracy, or everyone else involved, or that he was a member of it from the very beginning. Nor does it require proof that the defendant played a major role in the conspiracy, or that his connection to it was substantial. A slight role or connection may be enough.

8

(2)     But proof that the defendant simply knew about a conspiracy, or was present at times, or associated with members of the group, is not enough, even if he approved of what was happening or did not object to it. Similarly, just because the defendant may have done something that happened to help a conspiracy does not necessarily make him a conspirator. These are all things that you may consider in deciding whether the government has proved that the defendant joined a conspiracy. But without more they are not enough.

(3)     A defendant's knowledge can be proved indirectly by facts and circumstances which lead to a conclusion that he knew of the conspiracy and its objects, aims, or goals. But it is up to the government to convince you that such facts and circumstances existed in this particular case.

Sixth Circuit Pattern Criminal Jury Instruction 3.03.

The following jury instruction on venue was given as to Counts One and Two:

Now, some of the events that you have heard about for Count One and Count Three happened in other places. There is no requirement that the entire conspiracy take place here in the Eastern District of Michigan. But for you to return a guilty verdict on the conspiracy charge in Counts One and Three, the government must convince you that either the agreement, or one of the overt acts in furtherance took place here in the Eastern District of Michigan.

(1)     The term "in furtherance" means the process of helping promote something or to advance something.

(2)     Unlike all the other elements that I have described, this is just a fact that the government only has to prove by a preponderance of the evidence. This means the government only has to convince you that it is more likely than not that part of the conspiracy charged in Counts One and Three took place here.

(3)     Remember that all the other elements I have described must be proved beyond a reasonable doubt.

Sixth Circuit Pattern Criminal Jury Instruction 3.07 Modified and *United States v. Ray*, 803 F.3d 244 (6th Cir. 2015).

9

After viewing the evidence in the light most favorable to the Government, the Court finds that a rational trier of fact could have found the essential elements of the crimes charged in Counts One and Three beyond a reasonable doubt and that certain acts of the conspiracies occurred in this District. Didani was physically in Michigan on several occasions. The evidence established that Didani stayed at Martin Tibbitts' residence in Grosse Pointe, Michigan and was given Tibbitts' wife's car to drive as Didani pleased. Evidence was presented that Tibbitts wrote checks in Michigan in the amount of almost $1,000,000, which were cashed in Michigan by Donald Larson and others. Further evidence established that Didani received some of the money from Larson in Michigan. Larson testified that he flew on an airplane owned by Tibbitts to an airport near Washington, D.C. to deliver approximately $450,000 in cash intended for Didani. Larson further testified that Didani told him that the money was to purchase cocaine. Internal Revenue Service Special Agent Derek Newsome testified as to how the money laundering scheme occurred.

More specifically as to the drug conspiracy charge in Count One, there was testimony and evidence that some of the acts and agreement occurred in this District. The Government presented evidence by text messages, photographs and testimony that Tibbitts and Didani planned to have an underwater drone or torpedo built to transport cocaine while attached to a ship underwater magnetically. Tibbits, using an alias, "Dale Johnson," hired a company, Peregrine 360 in Canada, to build a

10

prototype of such a device.  Tibbitts provided payment for the prototype and a notebook from Tibbitts' home, with drawings of and notes about the prototype, were presented to the jury.  Larson testified that he, Didani and Tibbits discussed the prototype in this District.

The Government presented other evidence at trial regarding the cocaine distribution conspiracy, including various text messages between Didani, Larson and Tibbits, with photographs that certain brick-shaped packages were on the move. Larson testified that he had discussed with Didani about moving cocaine.  Text messages were presented at trial exchanged between Tibbits and Didani regarding seizure of drugs in the Netherlands.

It is noted that the Court issued a decision on Didani's pre-trial Motion to Dismiss stating that "[a]lthough the Government must prove venue by a preponderance of the evidence at trial, it is sufficient to establish venue at the pre-trial stage where the indictment alleges that each offense occurred within a certain district."  (ECF No. 93, PageID.1124)  The Court found that venue was proper in this District as to the conspiracy counts in Counts One and Three because some of the acts in the conspiracies occurred in this District.  *Id*. at PageID.1124-.1126.  As set forth above and at trial, there were sufficient facts presented for a rational trier of fact to determine that venue was proper in this District, even though the drugs or the moneys at issue were not intended to be delivered to the United States.

Viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found that there was sufficient evidence that some of the acts of the conspiracies alleged in Counts One and Three occurred in this District.  The jury's findings at to Didani's guilt on Counts One and Three will not be set aside under Rule 29.

### 3.     Count Two, MDLEA

Didani argues that there was insufficient evidence to support a finding of guilt as to Count Two, violation of the MDLEA, 46 U.S.C. §70503(a)(1) and its related subsections.  In pertinent part, Didani cites the MDLEA that provides "[w]hile on board a covered vessel, an individual may not knowingly or intentionally . . . manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance." *Id*.  Didani also cites the definition of a "covered vessel" as "a vessel subject to the jurisdiction of the United States" *Id*. at 70503(e)(1). Whether a ship is subject to United States' jurisdiction is defined in several ways, but relevant here, Didani cites the definition as "a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of the United States law by the United States." *Id*. at 70502(c)(1)(A), (C) (emphasis added).

The Government responds that as to the requirement that the relevant foreign nation consented to jurisdiction over the relevant vessels at the time of the offense, under the MDLEA, it asserts that the law of the case has been established and that

12

Didani cannot raise it again in a Rule 29 motion. As to the nexus to the United States, the Government also asserts that this has been ruled on previously. The Government claims that even if it was required to prove that the conspiracy charged in Count Two had a nexus to the United States, the evidence sufficiently established such.

As more fully set forth below in the analysis on Didani's post-trial Motion to Dismiss, because the Court previously ruled on the nexus issue under the MDLEA, it will not now reconsider its decision. However, even if nexus was a factual issue for the jury to determine, the evidence presented at trial was sufficient for a rational juror to find that nexus was established in this District.

The following jury instructions were given as to Count Two:

(1) Count Two of the Superseding Indictment charges the defendant with having conspired with others, to possess with the intent to distribute and distribute a controlled substance on board a vessel subject to the jurisdiction of the United States. It is against federal law to possess with the intent to distribute and distribute a controlled substance while on board a vessel subject to United States jurisdiction.

(2) I have previously determined that three vessels in this case, the MSC Anisha R, the CMA CGM Jean Gabriel, and the Cartagena Express were subject to United States jurisdiction.

(3) To find the defendant guilty of this crime you must be convinced that the government has proven each of the following elements beyond a reasonable doubt:

(A) First, that an agreement existed between at least two people to possess with intent to distribute and distribute a controlled substance while at least one of them was on board the MSC Anisha R, the CMA CGM Jean Gabriel, or the Cartagena Express.

13

(B) Second, that the defendant knew of the conspiracy and its objects, aims or goals, and

(C) Third, that the defendant joined the conspiracy with the intent that at least one of the conspirators engage in conduct that satisfies the elements of possess with intent to distribute and to distribute a controlled substance while on board a vessel subject to United States jurisdiction.

(4) Now I will give you more detailed instructions on some of these terms.

(A) With regard to the first element, a criminal agreement, the government must prove that two or more persons conspired, or agreed, to cooperate with each other to possess with intent to distribute a controlled substance or to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States.

    i. This does not require proof of any formal agreement, written or spoken. Nor does this require proof that everyone involved agreed on all the details. But proof that people simply met together from time to time and talked about common interests, or engaged in similar conduct, is not enough to establish a criminal agreement. These are things that you may consider in deciding whether the government has proved an agreement. But without more they are not enough.

    ii. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people, to cooperate with each other to possess with intent to distribute a controlled substance. This is essential.

    iii. An agreement can be proved indirectly, by facts and circumstances which lead to a conclusion that an agreement existed. But it is up to the government to convince you that such facts and circumstances existed in this particular case.

(B) With regard to the second and third elements, the defendant's connection to the conspiracy, the government must prove that the defendant knowingly and voluntarily joined that agreement.

    i. The government must prove that the defendant knew the conspiracy's main purpose and voluntarily joined

14

the conspiracy intending to help advance or achieve its goals.

ii.   This does not require proof that the defendant knew everything about the conspiracy, or everyone else involved, or that he was a member of it from the very beginning. Nor does it require proof that the defendant played a major role in the conspiracy, or that his connection to it was substantial. A slight role or connection may be enough.

iii.   Further, this does not require proof that the defendant knew the kind of drug involved. It is enough that the defendant knew that it was some kind of controlled substance. Nor does this require proof that the defendant knew how much of the drug was involved. It is enough that the defendant knew that some quantity was involved.

iv.   But proof that the defendant simply knew about a conspiracy, or was present at times, or associated with members of the group, is not enough, even if he approved of what was happening or did not object to it. Similarly, just because the defendant may have done something that happened to help a conspiracy does not necessarily make him a conspirator. These are all things that you may consider in deciding whether the government has proved that the defendant joined a conspiracy. But without more they are not enough.

v.   The defendant's knowledge can be proved indirectly by facts and circumstances which lead to a conclusion that he knew the conspiracy's main purpose. But it is up to the government to convince you that such facts and circumstances existed in this particular case.

(5)   You must be convinced that the government has proved all of these elements beyond a reasonable doubt in order to find the defendant guilty of Count Two.

Sixth Circuit Pattern Criminal Jury Instruction 14.07B.

15

As to Didani's argument that the Government was required to prove that the relevant foreign nation consented to jurisdiction over the vessels at issue, the Court previously ruled on this issue before trial was held.  (ECF No. 93)  Didani cannot raise this argument in a Rule 29 motion, and the Court will not reconsider its prior ruling.

Didani also argues that the Government must prove nexus as to the conspiracy charge in Count Two.  Again, the Court has ruled on the nexus issue in a previous order.  (ECF No. 93)  The Government submits that even if it was required to prove nexus, the evidence at trial sufficiently established that there was a nexus to the United States and this District in particular.

The Government states that to protect himself and his co-conspirators from the dangerous business of drug trafficking, Didani utilized Fatjon Bajrami, who was living in Chicago, to purchase nine bulletproof jackets for Didani and his conspirators. (Gov. Trial Exs. 65.8, 65.9, 65.11, & 65.12).  Bajrami purchased the bulletproof jackets for Didani's organization from a company located in the United States. (Gov. Trial Exs. 35.0 – 35.6, 65.8 & 65.9). There was also evidence that Didani received the bulletproof jackets because he so indicated in text messages with Bajrami, including videos depicting Didani and several others testing the bulletproof jackets. (Gov. Trial Exs. 65.0, 65.18, 65.19 & 66.0).

16

The Government further cites to evidence at trial that Didani also moved large amounts of drug proceeds to and through the United States. Didani arranged for multiple wire transfers involving hundreds of thousands of dollars to be sent to Inkas for the purchase of several armored cars. Several of those wires were routed through the United States banking system to ensure that Inkas received payment in United States dollars. (Gov. Trial Exs. 119.2 & 121.3).

Evidence at trial also showed that Didani regularly discussed the transfer rates that the "Chinos" were charging him to move his drug proceeds throughout the world including the transfer of his drug proceeds to the United States. (e.g. Gov. Trial Ex. 61.1). The Government also introduced evidence that Didani used the "token" method to transfer over $200,000 in drug proceeds to the United States so he could buy a $3,000,000 parcel of oceanfront property in the Dominican Republic. (Gov. Trial Exs. 68.0 & 69.0).

The Government presented evidence that Didani arranged for the transfer of drug proceeds while he was in the United States.  In December 2020, while Didani was in the United States, he arranged the transfer of drug proceeds from "Uncle" to "Mefi," who was identified as Didani's primary co-conspirator, Dayiberto Torres Rosario. (Gov. Trial Exs. 78.0 & 78.13).  Evidence at trial showed that in March 2021, Didani arrived in the United States carrying $10,000 in cash and was arrested. There was no evidence at trial that established Didani had any legitimate

17

employment[2] and a rational jury could reasonably infer that the $10,000 Didani brought into the United States came from drug proceeds.

As to the jury's finding of guilt as to Count Two, the charge under the MDLEA, viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found that there was sufficient evidence that some of the acts of the conspiracy occurred in this District and elsewhere in the United States. The Court will not set aside the jury's findings as to Didani's guilt on Count Two under Rule 29.

### B.      Motion to Dismiss Count Two of the Superseding Indictment

Didani, through new counsel, filed a post-trial Motion to Dismiss arguing that the Court lacks subject matter jurisdiction because the State Department Certifications relied upon by the Court to establish jurisdiction under the MDLEA came from the wrong countries (Liberia, Malta, and Germany) because the drugs were no longer on the Anisha R., M/V Cartagena, and Jean Gabriel at the time consent was given. Didani argues that the drugs were in the sole and exclusive custody of law enforcement agents from Panama and Rotterdam. He further argues that even if the United States attempted obtain to certifications from Panama or Rotterdam, they could not have given consent. (ECF No. 214, PageID.4903) Didani

---

[2] There was testimony from Brandon Leach on cross-examination by the defense about possible business ownerships, including trying to be partial owner of a car dealership in Dubai, potential medical marijuana dispensary business, an ATM venture, and being part of a construction group in Albania. (ECF No. 192, PageID.3641-.3644)

claims that no provision in the MDLEA and no principle of American constitutional or international law, authorizes Liberia, Malta and/or Germany to consent to the retroactive enforcement of the United States law.  Didani further claims that this error was made exponentially worse by the admission of evidence of alleged "overt acts" pertaining to searches of two other vessels – the MJ Jenny and MV Star Care – that were not boarded in international waters for which no formal State Department Certificates were obtained.  *Id*. at PageID.4903-.4904.

The Government responds that Didani's motion is untimely.  Although Didani frames the motion as a challenge to the Court's subject matter jurisdiction under Rule 12(b)(2), which allows a defendant to challenge the court's jurisdiction at any time, the Court has already rejected most of Didani's claim in this new motion.  The Government argues the law of the case doctrine applies and Didani's new motion should not be considered.

Rule 12(b)(2) provides that a motion alleging lack of jurisdiction "may be raised at any time while the case is pending."  In *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997) the Sixth Circuit held that lack of subject matter jurisdiction may be raised at any time in the course of a proceeding and is never waived.  Matters of jurisdiction may be raised at any time, because if a court lacks subject matter jurisdiction, it does not have power to hear the case.

As a general matter, the law of the case doctrine precludes reconsideration of issues that were explicitly or implicitly decided at an earlier stage of the same case. *See Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017).  The Sixth Circuit has noted that "[t]he doctrine of law of the case provides that the courts should not 'reconsider a matter once resolved in a continuing proceeding.' 18B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice And Procedure: Jurisdiction And Related Matters § 4478 (4th ed.2015)."  *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015); *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994).  "The purpose of the law-of-the-case doctrine is to ensure that 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result.*'"  *Howe,* 801 F.3d at 739 (quoting *Sherley v. Sebelius,* 689 F.3d 776, 780 (D.C. Cir. 2012)).  "The law-of-the-case doctrine is a prudential practice; a court may revisit earlier issues but should decline to do so to encourage efficient litigation and deter 'indefatigable diehards.'" *Id.* at 740.  Unless the movant seeking reconsideration provides "compelling reasons" or "extraordinary circumstances" to revisit a previous holding, a court will not address the motion seeking reconsideration.  *Id*. at 741 (citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988)).  "We generally will not disturb these [holdings] unless there is '(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.'" *Entm't*

*Prods., Inc. v. Shelby Cnty.,* 721 F.3d 729, 742 (6th Cir.2013) (quoting

*Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.,* 590 F.3d 381, 389 (6th

Cir.2009)).  The Local Rules of the Eastern District of Michigan[3] on motions for

reconsideration reflect the Sixth Circuit's law of the case analysis, which provides

that any motion for reconsideration of non-final orders must be filed within 14 days

after entry of the  order.  E.D. Mich. LR 7.1(h)(2).  No response to the motion and

no oral argument is permitted unless the Court Orders otherwise.  E.D. Mich. LR

7.1(h)(3).  Motions for reconsideration may be brought upon the following grounds:

> (A)   The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
> (B)    An intervening change in controlling law warrants a different outcome; or
> (C)   New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2). The Sixth Circuit in a criminal case has noted that, "[a]

motion to reconsider generally is not a vehicle to reargue a case; it may not be used

to raise arguments that could have been raised on initial consideration.  *See In re*

*G.A.D., Inc.,* 340 F.3d 331, 334 (6th Cir.2003) (Rule 60(b)); *Sault Ste. Marie Tribe*

*of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir.1998) (Rule 59(e))."

*United States v. LaDeau*, 734 F.3d 561, 572 (6th Cir. 2013).

---

[3] "Motions in criminal cases shall be filed in accordance with the procedures set forth in LR 7.1." E.D. Mich LCrR 12.1(a).

"The federal courts' subject-matter jurisdiction to hear federal criminal prosecutions comes from 18 U.S.C. § 3231, which grants '[t]he district courts of the United States ... original jurisdiction ... of all offenses against the laws of the United States.'" *United States v. Titterington,* 374 F.3d 453, 458–59 (6th Cir.2004). "Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts. That's the beginning and the end of the 'jurisdictional' inquiry." *Hugi v. United States,* 164 F.3d 378, 380 (7th Cir. 1999).

The Court agrees that under Rule 12(b)(2) of the Rules of Criminal Jurisdiction subject matter jurisdiction can be raised at any time and is never waived. However, Didani does not address nor analyze the law of the case doctrine and whether it limits filing of a renewed motion for dismissal based on subject matter jurisdiction, especially where, as in this case, the Court previously denied a motion to dismiss based on subject matter jurisdiction and a trial has been held in the matter. The Court agrees Didani has not waived his claim that the Court has no subject matter jurisdiction under the MDLEA in this case, but the Court finds that under the law of the case doctrine Didani cannot keep raising the same issue if the Court has ruled on the matter.  Courts routinely deny motions for reconsideration involving issues of subject matter jurisdiction in both civil and criminal cases.  As the Sixth

22

Circuit noted above, the court should decline to address such motions so to encourage efficient litigation and deter "indefatigable diehards."  The Court finds that Didani's post-trial motion to dismiss is a motion for reconsideration as to the Court's subject matter jurisdiction ruling which is untimely and limited by the law of the case doctrine.  Didani has not raised a "compelling reason" nor shown "extraordinary circumstance" for the Court to revisit its previous holding.  He has not shown that there was (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.

Didani was charged, and now convicted, as to Count Two with Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance on Board a Vessel Subject to the Jurisdiction of the United States, 46 U.S.C. §§ 70503(a) and 70506(b), 21 U.S.C. § 960(b)(1)(B).  The term "vessel subject to the jurisdiction of the United States" includes, ... "(C) a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States;" or "(E) a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States."  46 U.S.C.A. § 70502(c)(1).  Consent or waiver of objection may be obtained by radio, telephone, or similar oral or electronic means; and is proved conclusively by certification of the Secretary of State or the Secretary's designee.  46 U.S.C.A. § 70502(c)(2).  The MDLEA jurisdictional element may be satisfied by consent of a

23

foreign nation provided at any time before trial. *United States v. Greer*, 285 F.3d 158 (2nd Cir. 2022); *United States v. Bustos-Useche*, 273 F.3d 622, 627 (5th Cir. 2011); *United States v. Juda*, 46 F.3d 961, 966 (9th Cir. 1995); *United States v. Hurtado*, 89 F.4th 881, 894 (11th Cir. 2023).

In its April 17, 2024 ruling, the Court found that it had subject matter jurisdiction over the MDLEA charge, that the Government received the appropriate consent from the applicable foreign countries and Secretary's certifications, and that the MDLEA is constitutional.  (ECF No 93, PageID.1126-.1132)  The Court will not reconsider the arguments now raised in Didani's current post-trial Motion to Dismiss, both old and new, which could have been raised at this Court's initial consideration of the subject matter issue. Didani's current Motion to Dismiss is denied.

## III.   CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion for Judgment of Acquittal **(ECF No. 204)** is **DENIED**.

IT IS FURTHER ORDERED that Defendant's post-trial Motion to Dismiss Count Two of the Superseding Indictment **(ECF No. 214)** filed by new counsel is **DENIED**.

24

25

IT IS FURTHER ORDERED that Defendant's Motion for Court to Rule on Pending Motions or in the Alternative for Reassignment of Case **(ECF No. 223)** filed by new counsel is now rendered **MOOT**.

IT IS FURTHER ORDERED that Sentencing will be held at the parties' request on **March 31, 2026, 10 a.m.**   The parties may file a Sentencing Memorandum within seven (7) days from the date of this Order.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: March 10, 2026